CHRISTINA DENNING, ESQ. (CA Bar No. 211137- Pro Hac Vice Pending)
denningc@higgslaw.com
SCOTT INGOLD, ESQ. (NV Bar No. 11818)
ingolds@higgslaw.com
Higgs Fletcher & Mack LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913
T:  619.236.1551
F:  619.696.1410

JAMES HOLTZ, ESQ. (NV Bar No. 8119)
james.holtz@holtzapc.com
LAW OFFICE OF JAMES F. HOLTZ
1120 Town Center Drive, Suite 200
Las Vegas, NV 89144
T: 702.304.1803
F: 702.304.1822

Attorneys for Plaintiff
MARK HUNT

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARK HUNT, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability company; BROCK LESNAR, an individual; DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | **Case No.:**<br><br>**PLAINTIFF MARK HUNT'S COMPLAINT FOR:**<br><br>1. **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) [18 U.S.C. § 1961 et seq.];**<br>2. **CONSPIRACY TO COMMIT CRIME RELATED TO RACKETEERING (NRS § 207.350 et seq.);**<br>3. **FRAUD (NRS § 205.377);**<br>4. **FALSE PRETENSES (NRS § 205.380);**<br>5. **BREACH OF CONTRACT;**<br>6. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>7. **NEGLIGENCE; and**<br>8. **UNJUST ENRICHMENT.**<br>                    **[JURY DEMAND]** |

Plaintiff MARK HUNT ("HUNT")[1], alleges the following against Defendants ZUFFA, LLC, d/b/a ULTIMATE FIGHTING CHAMPIONSHIP ("UFC"), BROCK LESNAR, an individual ("LESNAR"), DANA WHITE ("WHITE"), an individual, and DOES 1 through 50, inclusive (collectively "Defendants").   HUNT seeks compensatory damages, declaratory relief, punitive damages, statutory treble damages and attorneys' fees.   HUNT complains and alleges as follows based on: (a) personal knowledge; (b) the investigation of HUNT's counsel; and (c) public records productions.   Allegations made on information and belief are so indicated.

## JURISDICTION AND PARTIES

1.      The United States District Court for the District of Nevada has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1331 and the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961, et seq.

2.      The United States District Court for the District of Nevada also has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332.   The amount in controversy exceeds the statutory minimum in an amount to be proven at trial.   This Court further has subject matter jurisdiction pursuant to 28 U.S.C. section 1367.

3.      HUNT is a citizen of Australia.   No defendant in this action is a citizen of Australia.

4.      UFC is a limited liability company organized under the laws of the State of Nevada with its principal place of business in Nevada.   All parties to this action have entered into or performed the contractual duties at issue in this action in the State of Nevada.   The UFC 200 bout between HUNT and LESNAR at issue in this matter occurred in the State of Nevada.

[1] Pursuant to LR IA 11-2(c), Christina Denning, Esq., co-counsel for Plaintiff HUNT, will comply with LR IA 11-2 by submitting her petition to practice in this matter under that Rule within two days.

5.     LESNAR is a citizen of Canada.

6.     WHITE is a citizen of Nevada.

7.     The true names and capacities of DOE defendants named herein as DOES 1 through 50 are unknown to HUNT who therefore sues such defendants by fictitious names.  HUNT will seek leave to amend to allege the true names and capacities of such DOE defendants when the same are ascertained.  HUNT is informed and believes, and thereon alleges, that each of the Defendants sued herein as a DOE is and was responsible in some manner for the damages alleged.

8.     HUNT believes that each defendant is and at all relevant times was the agent or employee of each of the remaining defendants and, in committing the acts alleged herein, was acting within the scope of his, her or its authority as agent or employee and with the permission, knowledge and consent of the remaining defendants.

9.     Venue is proper in this judicial district under 28 U.S.C. sections 1391 (b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

10.    A live controversy exists.  HUNT has been injured, and is likely to continue to be injured, as a direct result of Defendants' unlawful conduct.

## BACKGROUND INFORMATION

11.    Mixed Martial Arts ("MMA") is one of America's fastest growing sports.  Competitors use a combination of fighting styles including wrestling, boxing, muay thai, jiu-jitsu and others to win by knockout, submission, referee stoppage or judge's decision.  The UFC controls nearly ninety percent of MMA revenue worldwide.[2]  In July of 2016, UFC was sold for $4,200,000,000.00, believed to be the largest sports franchise sale ever.  UFC's owners, the Fertitta

---

[2] Kartikay Mehrotra and Even Novy-Williams, *UFC's $4 Billion Sale is Fodder for Fighters' Antitrust Suit*, https://www.bloomberg.com/news/articles/2016-07-12/ufc-s-4-billion-sale-is-new-fodder-for-fighters-antitrust-suit, (last updated July 12, 2016.).

brothers, realized a 2000 percent return on their 2001 investment.[3]  UFC retains a disproportionate share of revenue compared to their fighters' allocation.  The UFC does not allows their fighters to fight for any other MMA promotion while they are under contract, regardless of working conditions including circumstances rising to contractual compulsion to repeatedly fight opponents who use illegal performance enhancing drugs, including amphetamines and anabolic steroids.  Serious injuries and death from MMA fights can and do occur.[4]

## SUMMARY OF ALLEGATIONS

12.     The substance of this action includes but is not limited to events surrounding a MMA bout that occurred on July 9, 2016, promoted by the UFC as "UFC 200."  Among other bouts on the card, UFC 200 featured a heavyweight bout between LESNAR and HUNT.

13.     The first paragraph of the UFC Anti-Doping Policy, as of July 9, 2016, reads:

> *This Policy is a central part of UFC's expanded efforts to protect the health and safety of its Athletes, and also to protect their right to compete on a level playing field.  UFC's goal for this Policy is to be the best anti-doping program in all of professional sports.*

14.     HUNT is currently and at all times has been a clean fighter, who competes in the sport of MMA without the use of performance enhancing substances prohibited by the UFC, United States Anti-Doping Agency ("USADA")[5] and the World Anti-Doping Agency ("WADA").

15.     The use and proliferation of banned substances is a threat to fair competition and fighter safety.

\ \ \

---

[3] Chuck Mindenhall & David Shoemaker, *How to Fix the UFC*, https://theringer.com/how-to-fix-the-ufc-3e5264e60eee#.l4lh4ib4g, (August 1, 2016).
[4] Cindy Boren, *MMA Fighter Joao Carvalho Dies From Head Injuries Suffered in Bout*, The Washington Post, https://www.washingtonpost.com/news/early-lead/wp/2016/04/12/mma-fighter-joao-carvalho-dies-from-head-injuries-suffered-in-bout/?utm_term=.ac77676809a2, (April 12, 2016).
[5] UFC contracted with USADA in 2015 for drug testing services.  USADA is not a named defendant in this action.

16.     UFC and its agents have affirmatively circumvented and obstructed fair competition for their own benefit, including being complicit in doping proliferation under the guise of advancing "*the best anti-doping program in all of professional sports*."  Defendants have accomplished this by means including but not limited to various and rampant purported use exemptions, drug testing exemptions and by failure to enforce its own policies.

17.     Just one month before UFC 200, the UFC granted LESNAR an exemption from established USADA pre-fight testing requirements that he participate in four months of drug testing in connection with UFC 200, with knowledge or willful indifference to the fact that LESNAR was using banned substances.  This exemption came just one month before the lucrative sale of the UFC.

18.     Without HUNT's knowledge or consent, the UFC conspired and caused LESNAR, a doping fighter, to fight HUNT, a clean fighter, despite the fact that LESNAR used substances banned by the UFC, USADA and WADA.  The substances, Clomiphene and 4-Hydroxyclomiphene, are known "Post Cycle Therapy" ("PCT") substances believed to be used after a period of strength training with anabolic steroids or similar prohibited substances.

19.     HUNT lost the UFC 200 bout to LESNAR and suffered severe physical injury, as well as economic and non-economic damages including without limit damage to his reputation, title contention, and future earning capacity.

20.     Defendants were unjustly enriched by their conduct to the detriment of HUNT, including through pay-per-view revenues far exceeding LESNAR's $2,500,000.00 fight purse, in an amount to be proven at trial.

21.     Defendants, and each of them, conspired to commit the violations of state and federal law described herein.

22.     Defendants' conduct in connection with UFC 200 was in furtherance of their own profit at the expense of fighter safety and fair competition.

23.    Defendants' conduct in connection with UFC 200 is representative of and consistent with a pattern of conduct by Defendants of wrongfully jeopardizing fighter health and safety for profit, in violation of state and federal law and the UFC's own policies.  The UFC's pattern of conduct includes, but is not limited to, granting doping exemptions and drug testing exemptions to known doping-competitors, and causing those drug-enhanced fighters to compete with clean fighters.

24.    HUNT's last three UFC opponents have used performance enhancing substances prohibited by the UFC and WADA.

25.    Prior to UFC 200, in or around April 2016, UFC executed an early renewal of its exclusive contract with HUNT such that HUNT is foreclosed from seeking employment with other promotions.

26.    On information and belief, HUNT's contract with the UFC is atypical for UFC fighters in that it calls for lockstep fixed compensation for bouts notwithstanding the bout outcomes and opponents' doping violations.

27.    UFC President, WHITE, was a nine (9) percent owner of UFC prior to its sale to new ownership for approximately $4,200,000,000.00.  WHITE will remain as president of the UFC and will retain a partial ownership interest.  WHITE had a strong monetary motive (of approximately $360,000,000.00) to ensure the "success" of the landmark UFC 200 event, which occurred immediately prior to finalizing the sale of UFC, and to ensure the UFC's high profile bout between LESNAR and HUNT would not be jeopardized regardless of doping violations.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### UFC 152: Jones v. Belfort- UFC Grants
### Testosterone Exemption and Then Suppresses Drug Test Results

28.    UFC 152 was held on September 22, 2012.  The main event was a bout between John Jones ("Jones") and Vitor Belfort ("Belfort").  Belfort accepted the fight on late notice.

29.     UFC 152 followed the embarrassing and first-ever UFC event cancellation.  UFC 151 was cancelled due to an injury to Dan Henderson, who was to fight Jones in the main event.  Jones declined to fight replacement opponent Chael Sonnen.

30.     Since as early as 2011, the UFC granted Belfort a "Testosterone Replacement Therapy" (TRT) use exemption at the recommendation of a UFC-affiliated doctor for Belfort to take testosterone supplements.  The existence of Belfort's exemption was not publicly known until 2013, after UFC 152.  At all times prior to 2013, the UFC willfully concealed Belfort's testosterone exemption, and opponents were not aware that he was granted a TRT exemption, allowing him to maintain abnormally high testosterone levels.  These elevated testosterone levels conferred a competitive advantage, including strength advantages useful in hand to hand combat.

31.     By September 4, 2012, nearly three weeks prior to UFC 152, the UFC was in possession of Belfort's pre-fight drug testing results.  At approximately 3:01 p.m. Pacific time on September 4, 2012, a UFC paralegal inadvertently e-mailed the drug test results to a group of people, including approximately 29 other fighters, trainers and managers.

32.     The content of Belfort's drug test results was "flagged" for containing free testosterone approximately two-and-one-half (2.5 times) the normal range.

33.     On September 4, 2012, at approximately 3:04 p.m., a UFC paralegal sent a follow up email attempting to recall the inadvertently disclosed drug test results.

34.     On September 4, 2012, at approximately 3:55 p.m., a UFC paralegal sent an additional follow up email imploring the unintended recipients to "*please disregard the e-mail, please delete ASAP!!!!!*"

35.     On September 4, 2012, at approximately 7:16 p.m., the unintended recipients were contacted by then UFC executive vice president and general

counsel, Ike Lawrence Epstein, threatening legal action for any disclosure of Belfort's drug testing results.

36.     At no time prior to the UFC 152 bout was Jones aware or informed that Belfort was granted a testosterone use exemption or that Belfort's drug test was flagged as abnormal for elevated testosterone.

37.     Notwithstanding Belfort's drug test result, the UFC concealed and actively suppressed by threat of litigation the test results, and caused and permitted the bout between Belfort and Jones to proceed.

38.     On information and belief, the UFC permitted Belfort to fight notwithstanding his drug testing results, in part, to prevent the embarrassment of a subsequent cancelled event, damage to the reputation and brand of the UFC, and in direct pursuit of profit, to the detriment of fighter safety, in violation of state and federal law as described further below.

UFC 200: HUNT V. LESNAR- UFC GRANTS DRUG TESTING EXEMPTION, LESNAR PROVIDES POSITIVE SAMPLES, AND STILL FIGHTS IN UFC 200

39.     The Nevada State Athletic Commission ("NSAC") prohibits the use of any alcohol, stimulant, drug, or injection that is not approved by the NSAC.  The NSAC has also adopted the Prohibited List published by WADA to provide notice to unarmed combatants of drugs, injections and stimulants that are not approved by the NSAC.

40.     On or around December 30, 2011, LESNAR retired from the UFC after losing at UFC 141.

41.     Pursuant to the UFC Anti-Doping Policy, as of July 9, 2016, a retired fighter:

> [M]ay not resume competing in UFC Bouts until he/she has given UFC written notice of his/her intent to resume competing and has made him/herself available for Testing for a period of four months before returning to competition.

\ \ \

42.     The UFC Anti-Doping Policy provides an exception for "*exceptional circumstances*" or where the strict application of the rule would be manifestly unfair to an athlete.

43.     At the time of UFC 200, LESNAR was still under contract with World Wrestling Entertainment ("WWE").

44.     On or around March 30, 2016, the UFC announced the UFC 200 main event to be Conor McGregor ("McGregor") versus Nate Diaz ("Diaz"), a rematch of UFC 196.

45.     The McGregor v. Diaz rematch was highly anticipated following Diaz's unexpected submission victory over the favored Featherweight Champion McGregor.

46.     On or around April 19, 2016, McGregor and the UFC were involved in a dispute over McGregor's marketing obligations for UFC 200, which resulted in McGregor threatening to retire and being removed from the UFC 200 card.

47.     On or around April 27, 2016, the UFC announced the new UFC 200 main event would be Daniel Cormier ("Cormier") versus Jones.

48.     The UFC and LESNAR had already begun negotiating LESNAR's UFC 200 return in March of 2016, more than four-months in advance of the event, as admitted by LESNAR and fully described in paragraph 55.

49.     As early as May of 2016, LESNAR's name appeared on the UFC Website as a current or active fighter.

50.     Like the above-referenced e-mail errors of UFC 152, UFC attributed LESNAR's addition to the active fighter roster as a technical error, and on June 3, 2016, affirmed LESNAR was not returning to the UFC.

51.     In an interview with ESPN's Brett Okamoto on June 3, 2016, WHITE denied LESNAR's return to the UFC.  WHITE provided an untruthful and admittedly "*wacky explanation*" of the purported error concerning the creation of a

\ \ \

UFC database leading to the inadvertent inclusion of LESNAR as an active fighter.[6]

52.     On or about June 3, 2016, the same day that WHITE denied LESNAR's UFC return, LESNAR and UFC executed the bout agreement for UFC 200.  The UFC would later admit on June 7, 2016, via public comment that ". . . *conversations with [LESNAR] have been ongoing for some time*."

53.     On June 4, 2016, during the airing of UFC 199, the UFC announced and promoted that LESNAR would return from retirement to fight HUNT in UFC 200.

54.     LESNAR's return for UFC 200 was to be a "one-off" UFC bout pursuant to WWE's express permission due to WWE's exclusive contract with LESNAR.

55.     The "one-off" nature of LESNAR's return operated to eliminate any deterrent or disincentive to LESNAR's pre-fight doping.  LESNAR's and UFC's interests in having LESNAR compete in UFC 200 were aligned such that any punishment from a doping violation, including suspensions or fines, would be relatively negligible.

56.     On June 6, 2016, live on ESPN's morning edition of SportsCenter with reporter Hannah Storm, LESNAR admitted his negotiations with the UFC began "*three months ago*", necessarily in or around early March of 2016, more than four months prior to UFC 200.

57.     LESNAR further admitted his motive putting money above all else:

> *Ms. Storm*: *Why do you think WHITE welcomed you back?*
>
> *LESNAR: Big business.  At the end of the day I'm a prize fighter . . . I fight for money, and it's no different, they're making money, I'm making money, everybody is making money. That's what this is all about . . . It just so happens I'm making a boatload of money . . . I can't disclose . . . there's lots of zeroes behind it.*

\ \ \

---

[6] The interview can be found at: https://www.youtube.com/watch?v=ffKKmTgsfV8&feature=youtu.be
A true and correct copy of this video, accessed January 9, 2017, is maintained by HUNT's counsel.

58.     LESNAR's conduct and repeated false statements concerning UFC 200 is consistent with the UFC's profit-first motive, despite any detriment to others including fighter safety.

> *Ms. Storm:* [What is your reaction to MMA reporter, Ariel Helwani, being banned for life by UFC for breaking the news of your UFC comeback.]
>
> *LESNAR: I don't even know who that is . . . the only thing I care about is me . . .*

**Figure A**:  LESNAR at UFC 200 weigh-in on July 8, 2016.



Zuffa LLC via Getty Images

59.     On or about June 6, 2016, LESNAR was registered by USADA into the UFC Anti-Doping Policy testing pool.

60.     On information and belief, premised on publicly available documents, on or around July 1, 2016, the NSAC requested further information from UFC justifying the LESNAR drug testing retirement exemption.

61.     In an email from UFC executive Jeff Novitzky, dated July 1, 2016 at 12:23 p.m., UFC admitted to the NSAC that UFC notified LESNAR he would not be drug tested until he executed his UFC 200 bout agreement.

62.     Defendants LESNAR and UFC both had actual knowledge of LESNAR's impending participation in UFC 200 more than four months in advance of that event, constituting sufficient time for LESNAR to comply with USADA

1   drug testing protocols.

2       63.     On or around July 6, 2016, the LESNAR versus HUNT bout was

3   promoted to the UFC 200 main event following Jones' removal from the fight card.

4       64.     On or around July 7, 2016, the UFC announced Anderson Silva would

5   replace Jones in UFC 200 to fight Cormier, and the bout between Miesha Tate and

6   Amanda Nunes was promoted to the UFC 200 co-main event along with the bout

7   between LESNAR and HUNT.

8       65.     On July 8, 2016, LESNAR completed a pre-fight questionnaire stating

9   he did not take or receive any medication or drugs, whether prescription or over-

10   the-counter, from anyone or anyplace, within the month prior to his UFC 200 bout.

11      66.     On information and belief, LESNAR used prohibited substances

12   including Clomiphene after negotiations for UFC 200 began, but before he

13   executed the UFC 200 bout agreement and became subject to drug testing.

14      67.     Defendants and each of them conspired with the other to permit

15   LESNAR to evade USADA drug testing protocols imposed by the UFC Anti-

16   Doping Agreement.

17      68.     UFC wrongfully abused its discretion to grant LESNAR's drug testing

18   exemption via USADA, as both Defendants had actual knowledge of LESNAR's

19   participation in UFC 200 more than four months prior to the event.

20      69.     UFC and LESNAR conspired and caused LESNAR to evade USADA

21   drug testing with actual knowledge or reckless disregard of LESNAR's use of

22   prohibited substances.  As a direct and proximate result of Defendants' conduct,

23   Defendants caused a doping competitor, LESNAR, to fight a clean fighter, HUNT,

24   in violation of state and federal law and the parties' respective contracts.

25      70.     On June 28, 2016, LESNAR produced a positive "out of competition"

26   urine sample to USADA.

27      71.     The UFC and USADA were aware of the option to expedite samples

28   for a nominal fee but failed to do so, notwithstanding LESNAR's drug testing

1  exemption and UFC's express statements to LESNAR as to the exact date he would
2  remain exempt from drug testing.

3      72.    On information and belief, based on publicly available documents, the
4  average turnaround time for expedited drug testing results is approximately three
5  (3) days.

6      73.    On July 9, 2016, at UFC 200, LESNAR defeated HUNT in a three
7  round unanimous judge's decision.  LESNAR's payout was a UFC all-time record
8  $2,500,000.00, not including his pay-per-view allocation, which HUNT is informed
9  and believes is in the millions of dollars.  HUNT's payout totaled $700,000.00.

10     74.    As a direct and proximate result of Defendants' conduct, HUNT
11  sustained physical injury as a result of hand to hand combat with the drug-enhanced
12  fighter LESNAR.

13     75.    Also on July 9, 2016, the day of UFC 200, LESNAR provided a
14  positive "in competition" sample for testing.

15     76.    On or around July 15, 2016, the USADA and UFC learned of
16  LESNAR'S doping violation from his June 28, 2016 "out of competition" sample.
17  LESNAR tested positive for Clomiphene, an anti-estrogenic substance, and 4-
18  Hydroxyclomiphene.  Clomiphene is not approved by the NSAC and is a substance
19  prohibited by the NSAC and by WADA.

20     77.    On or around July 19, 2016, USADA and UFC learned of LESNAR'S
21  anti-doping violation from his July 9, 2016 "in competition" sample.  LESNAR
22  again tested positive for Clomiphene and Hydroxyclomiphene, neither of which are
23  approved by the NSAC and are prohibited by the NSAC and by WADA.

24     78.    Despite LESNAR's win being overturned to a no contest, Defendants
25  directly and proximately caused HUNT damage to his reputation, lost opportunity
26  of career advancement, lost opportunity to fight and win fair bouts, and the lost
27  opportunity to further his earning potential including advancement to title fights
28  and promotional and marketing opportunities.

79.     UFC 200 was not the first time UFC caused or willfully permitted a doping fighter to compete against HUNT.

80.     On March 20, 2016, at UFC Fight Night, HUNT fought Frank Mir (Mir).  Mir tested positive for a prohibited substance classified as an anabolic steroid.  Mir had a pre-existing history of using prohibited substances and was granted a "Therapeutic Use Exemption."  Mir's use exemptions included amphetamines and testosterone via TRT.

81.     On December 7, 2013, at UFC Fight Night, HUNT fought Antonio "Bigfoot" Silva ("Silva").  Silva tested positive for abnormally high testosterone levels.  UFC wrongfully failed to discover Silva's doping violation until after he fought HUNT, who is a clean fighter.  UFC's failure was aggravated by the fact that Silva was under an active purported Therapeutic Use Exemption for testosterone via TRT.

82.     UFC's conduct represents a pattern of liberally granting purported use exemptions and other drug testing exemptions, without any additional safeguards to prevent abuse.

83.     UFC had actual knowledge that a material inducement for HUNT to compete in and contract with the UFC was UFC's assurances to maintain and actually implement stringent drug testing of its fighters.

84.     On August 21, 2016, LESNAR participated in WWE Summerslam.

85.     On August 23, 2016, the NSAC confirmed LESNAR tested positive for the estrogen blocker, Clomiphene, and temporarily suspended him. Clomiphene is a commonly used PST to regulate natural testosterone production following a cycle of anabolic steroids or similar banned substance.

86.     In an Adjudication Agreement between LESNAR and the NSAC, LESNAR admitted to the above-referenced positive drug tests, and admitted these positive tests "*brought disrepute to unarmed combat*."  Pursuant to the Adjudication Agreement, LESNAR accepted a 12-month suspension and

$250,000.00 fine.

87.     As a result of LESNAR's doping violation, and as reflected in the Adjudication Agreement, the result of the LESNAR-HUNT UFC 200 bout was changed to a no contest.  Indeed, every time HUNT fights a doping competitor with a resulting "no contest" outcome, his record remains stagnant, and is deprived of the opportunity to earn a win.

88.     LESNAR's and UFC's conduct in connection with UFC 200 constituted a wrongful threat to fighter health and safety.

## FIRST CAUSE OF ACTION: RICO [18 U.S.C. § 1961 et seq.]

### (Against UFC, LESNAR & WHITE)

89.     HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

90.     UFC is a "person" within the meaning of 18 U.S.C. section 1961(3).

91.     LESNAR is a "person" within the meaning of 18 U.S.C. section 1961(3).

92.     WHITE is a "person" within the meaning of 18 U.S.C. section 1961(3).

93.     Does 1 through 50 are "persons" within the meaning of 18 U.S.C. section 1961(3).

94.      Defendants and each of them, engaged in a continuing course of conduct ("CONDUCT"), which CONDUCT and activities in furtherance of such CONDUCT is described in this paragraph and which was and is designed to wrongfully cause doping fighters to engage in hand to hand combat known as MMA with non-doping, clean fighters, who are induced to compete against doping fighters to the detriment of the health and safety of all fighters, and to the monetary benefit of Defendants and others involved in this scheme, which is and continues to be perpetrated by fraud, deceit and false pretenses with the intention of wrongfully

obtaining labor and services of fighters, and with the intention of obtaining ticket and pay-per-view sales from the general public and other marketing and promotional opportunities, in the United States and abroad.  This scheme further includes devices and accommodations for doping fighters to circumvent drug testing or minimize punishment for positive drug tests to the detriment of any deterrent effect of the UFC and WADA Anti-Doping Policies, which CONDUCT is done for the purpose of wrongfully maximizing profit-including the recent approximately $4,200,000,000.00 sale of the UFC, to the detriment of the health and safety of all fighters and to the detriment of fair competition.  In furtherance of this scheme to acquire money and fighter labor and services by fraud and false pretenses, Defendants and each of them communicated by wire and radio communications (telephone and email), and, as discussed in detail below, each such communication is an indictable offense for Wire Fraud under 18 U.S.C. section 1343.

95.     Pursuant to the CONDUCT, doping fighters, including LESNAR, wrongfully obtained the benefit of enhanced physical strength, muscle recovery, and other improper competitive advantages over clean fighters. Doping fighters are materially benefited by advancing their likelihood of winning bouts and corresponding profits from win bonuses, title fight consideration, career advancement, promotional opportunities and other related monetary benefits. Such benefits are wrongfully derived at the expense of clean fighters and jeopardize and increase the risk of serious injury or death to all fighters.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

**Figure B**: Doping LESNAR fights HUNT, a clean competitor, at UFC 200.



UFC.com

96.     Pursuant to the CONDUCT, promoters, including UFC, wrongfully obtain the benefit of bouts featuring steroid-enhanced fighters that are bigger, faster, and stronger, notwithstanding any unfair competitive disadvantage to clean fighters. Permitting doping fighters to participate in bouts preserves the high name recognition and celebrity of many known doping fighters to wrongfully maximize fight attendance and pay-per-view subscriptions. Improper drug testing exemptions and failure to fully enforce doping penalties further wrongfully benefits promoters, including UFC, by minimizing doping fighter suspensions to preserve their availability to compete and profit from future fight cards, including UFC bouts.

97.     LESNAR and UFC knowingly implemented the CONDUCT in connection with UFC 200, as set forth fully above in the factual allegations. LESNAR's and UFC's CONDUCT was indispensable to achieving the enterprise's goals. LESNAR's public statements to date indicate it is uncertain if he will return to the UFC at some point. LESNAR therefore presents a continuing threat of repeated CONDUCT upon expiration of his suspension, which suspension will end in 2017.

98.     The above-referenced CONDUCT constitutes an "ENTERPRISE" within the meaning of 18 U.S.C. section 1961 (4). This ENTERPRISE, consisting

of individuals, corporations and other legal entities, and groups of individuals associated in fact, is separate and distinct from each individual Defendant.  The structure of the ENTERPRISE consists of fight promotions, including UFC, doping fighters, including but not limited to LESNAR and Belfort, UFC employees and agents specifically referenced below, which ENTERPRISE is disguised and appearing as legitimately engaged in efforts to combat doping in MMA, when actually, the ENTERPRISE advances and willfully facilitates the use of steroids, both affirmatively and by omission as described herein.  Each participant knowingly participates in the scheme and has a common purpose to acquire and obtain money by fraud, false pretenses or false representation or promises, which CONDUCT is facilitated by wire fraud including emails as described herein.

99.    In this case, the ENTERPRISE specifically includes, but is not limited to:

       a.    LESNAR;

       b.    Belfort;

       c.    Frank Mir;

       d.    Antonio Silva

       e.    UFC;

       f.    UFC official WHITE;

       g.    UFC official Jeff Novitzky;

       h.    UFC's former vice president and general counsel, Ike Epstein; and

       i.    WWE.

100.    The above-referenced participants in the ENTERPRISE, and each of them, are members of the larger associated-in-fact ENTERPRISE.

101.    Defendants and each of them are associated with the ENTERPRISE engaged in and affecting interstate commerce and conducted and participated in the CONDUCT and affairs of that ENTERPRISE through a pattern of racketeering

1  activity.

2      102.   Defendants engaged in CONDUCT that affects interstate commerce

3  through pay-per-view and ticket sales, as well as promoting the fight through

4  various media outlets across state lines.

5      103.   UFC is associated with the ENTERPRISE in that it knowingly

6  influences the ENTERPRISE participants to carry out the CONDUCT to

7  wrongfully cause and facilitate doping fighters to compete with clean fighters,

8  which clean fighters are induced to contract under the false representation that no

9  competitor shall use substances on the WADA prohibited list.  The UFC

10  CONDUCT includes a pattern of wrongfully granting doping or drug testing

11  exemptions and causing those doping fighters to compete with clean fighters.

12      104.   Defendants engaged in a pattern of racketeering activity within the

13  meaning of 18 U.S.C. section 1961(5), including use of wire, radio and mail in

14  furtherance of the scheme to advance the CONDUCT by false pretenses and fraud.

15  These acts occurred over the course of at least a four-year period and are indictable

16  under 18 U.S.C. section 1343 (relating to wire fraud).  Defendants participated in

17  the conduct of the affairs of the ENTERPRISE through this pattern of racketeering

18  activity.  The CONDUCT described herein has and continues to occur with no

19  indication the participants will cease their illegal CONDUCT.  The racketeering

20  CONDUCT described herein includes but is not limited to the schemes surrounding

21  UFC 152 and UFC 200.

22      105.   HUNT specifically alleges Defendants, and each of them engaged in

23  CONDUCT constituting both open-ended conduct and closed-ended conduct

24  representing a regular way of doing business for the ENTERPRISE such that it

25  presents a substantial risk of continuing and repeating violations of law.

26      106.   Defendants devised the CONDUCT or artifice to defraud HUNT, other

27  clean fighters, the general viewing public who purchase tickets and pay-per-view

28  subscriptions and merchandise, as well as advertisers and sponsors, which scheme

1  was devised to obtain property, including but not limited to, money, labor and

2  services by means of false or fraudulent pretenses, representations, or promises.

3      107.   Examples of Defendants' use of wire to further their scheme

4  constituting indictable offenses under 18 U.S.C. section 1343, include but are not

5  limited to:

6          a.   As to UFC, the above referenced emails, dated September 4,

7  2012 at 3:01 p.m.; September 4, 2012 at 3:04 p.m.; September 4, 2012 at 3:55 p.m.;

8  September 12, 2012 at 7:16 p.m.; and July 1, 2016, at 12:23 p.m.  Also the above-

9  referenced WHITE interview on June 3, 2016.

10          b.   As to LESNAR, he has publicly admitted to acts in furtherance

11  of the CONDUCT on televisions, ESPN's SportsCenter, including the morning of

12  June 6, 2016 with host Hannah Storm.[7]  HUNT will acquire the referenced

13  communications via discovery in this case and will seek leave to amend this section

14  of the complaint accordingly.

15          c.   As to LESNAR and UFC, Defendants promoted UFC 200 in

16  furtherance of the CONDUCT on television and via the internet, including a

17  television advertisement airing on June 4, 2016 during UFC 199.

18      108.   The CONDUCT is and has been UFC's and the ENTERPRISE's

19  continuing and ongoing way of doing business.  Carrying out the scheme

20  constitutes a threat of continued racketeering activity.

21      109.   HUNT currently lacks sufficient information as to whether

22  Defendants' racketeering activity is a result of an express agreement.

23      110.   Defendants and each of them perpetrated the CONDUCT described

24  herein and conspired to do the same, which is inferred from words, actions, or the

25  interdependence of the activities and persons involved in those activities.

26  \ \ \

27

28  [7] The interview can be found at: https://www.youtube.com/watch?v=y5L8Y_8wgxo
A true and correct copy of this video, accessed January 9, 2017, is maintained by HUNT's counsel.

111.   As to UFC and UFC employee or agent defendants, those defendants conspired to commit the acts described herein, and did so willfully or with actual knowledge of the CONDUCT, and which defendants conspired pursuant to both intracorporate and intercorporate conspiracies.

112.   In doing the things herein alleged, Defendants and each of them violated 18 U.S.C. section 1962 (c) and (d) by participating, directly or indirectly, in the CONDUCT of the ENTERPRISE's affairs through a pattern of racketeering activity and conspiring to do the same.

113.   As a direct and proximate result of Defendants' violations of 18 U.S.C. section 1962, HUNT has been damaged, the exact amount of which will be subject to proof at trial, which injury and damage was a foreseeable result of Defendants' misconduct.

114.   Defendants made the above communications in furtherance of the CONDUCT and in furtherance of the affairs of the ENTERPRISE, over the course of several years including from UFC headquarters in Nevada, and across state lines and in foreign countries.

## SECOND CAUSE OF ACTION: CONSPIRACY TO COMMIT CRIME RELATED TO RACKETEERING (NRS § 207.350 et seq.)

### (Against UFC, LESNAR & WHITE)

115.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, CONDUCT supporting this claim specifically alleged at paragraphs 11 through 113.

116.   Defendants committed, attempted to commit or conspired to take property under circumstances not amount to robbery in violation of Nevada Revised Statutes, section 207.360, subdivision (9), as described fully and specifically above in the factual allegations and RICO claim.

\ \ \

117.   Defendants committed, attempted to commit or conspired to obtain money by means of false pretenses, in violation of Nevada Revised Statutes, section 207.360, subdivision (26), as described fully and specifically above in the factual allegations and RICO claim, and the below cause of action for false pretenses, which is hereby incorporated as though set forth fully here.

118.   Defendants committed, attempted to commit or conspired to commit fraud, in violation of Nevada Revised Statutes, section 207.360, subdivision (33), as described fully and specifically above in the factual allegations and RICO claim, and the below cause of action for fraud, which is hereby incorporated as though set forth fully here.

119.   Defendants committed, attempted to commit or conspired to commit a battery against HUNT in violation of Nevada Revised Statutes, section 207.360, subdivision (4), in that HUNT did not contract and agree to hand to hand combat with a doping fighter, LESNAR, as described fully and specifically above in the factual allegations and RICO claim.

120.   Each of the above-referenced violations constitute crimes related to racketeering and unlawful acts in furtherance of the ENTERPRISE and criminal syndicate, as set forth fully in the above factual allegations and RICO claim, which is hereby incorporated as though set forth fully here.

121.   Defendants' CONDUCT is the direct and proximate cause of the damages to HUNT described herein.

## THIRD CAUSE OF ACTION: FRAUD (NRS § 205.377)
## (Against UFC, LESNAR & WHITE)

122.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, CONDUCT supporting this claim specifically alleged at paragraphs 11 through 113.

\ \ \

123. Defendants and each of them, in the course of the ENTERPRISE and their respective occupations, knowingly and with the intent to defraud, engaged in multiple acts, practices and schemes which operated as a fraud and deceit by false representations known to be false or omitted.

124. Such representations were intended to cause HUNT to rely on them, and HUNT did reasonably rely on them.

125. As a result of Defendants' CONDUCT, HUNT was damaged as described herein, in an amount according to proof at trial.

126. As fully set forth at paragraphs 11 through 113 Defendants acted with oppression, fraud and malice. HUNT requests an award of exemplary and punitive damages for the sake of example and by way of punishing Defendants, in an amount sufficient to deter continued or future similar CONDUCT.

## FOURTH CAUSE OF ACTION: FALSE PRETENSES (NRS § 205.380)
## (Against UFC and LESNAR)

127. HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, CONDUCT supporting this claim specifically alleged at paragraphs 11 through 113.

128. Defendants and each of them knowingly and designedly by false pretense obtained HUNT's labor and services and obtained money rightfully belonging to HUNT, with the intent to cheat and defraud HUNT of his money, labor and services.

129. The money, labor and services obtained from HUNT exceeded the statutory amount of $650.00, constituting a state law category B felony.

130. Defendants' CONDUCT was the direct and proximate cause of damages to HUNT in an amount to be proven at trial.

131. As fully set forth in paragraphs 11 through 113, Defendants acted with oppression, fraud and malice. HUNT requests an award of exemplary and punitive

damages for the sake of example and by way of punishing Defendants, in an amount sufficient to deter continued or future similar CONDUCT.

## FIFTH CAUSE OF ACTION: BREACH OF CONTRACT

### (Against UFC Only)

132.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, CONDUCT supporting this claim specifically alleged at paragraphs 11 through 113.

133.   UFC and HUNT entered a valid contract supported by consideration titled the Promotional and Ancillary Rights Agreement ("PARA").  A true and correct copy of this agreement is attached to the Appendix filed herewith under seal as **Exhibit A**, and is hereby incorporated by reference.

134.   UFC and HUNT entered a valid contract supported by consideration titled Zuffa, LLC Bout Agreement UFC 200 (UFC 200 Bout Agreement).  A true and correct copy of this agreement is attached to the Appendix filed herewith under seal as **Exhibit B**, and is hereby incorporated by reference.

135.   UFC breached and failed to perform pursuant to the PARA and UFC 200 Bout Agreement, and each of them, which breaches and failures to perform were unexcused.

136.   HUNT was damaged by UFC's breaches in an amount to be proven at trial, which damage was caused by and the foreseeable consequence of UFC's breach.

## SIXTH CAUSE OF ACTION: BREACH OF
## COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against UFC Only)

137.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF MARK HUNT'S COMPLAINT

138.   UFC and HUNT entered valid contracts, the PARA and UFC 200 Bout Agreement.

139.   In addition to the above-referenced breach of contract, UFC breached the implied covenant of good faith and fair dealing by deliberately countervening the intent and spirit of the contract through both its actions and omissions discussed herein, which CONDUCT was not in good faith.

140.   UFC was the party in the superior position, and wrongfully manipulated bouts, including UFC 200, in a manner that compromised HUNT's benefits under the above-referenced contracts.

141.   UFC's wrongful CONDUCT includes without limit negotiating with and causing HUNT to fight with known dopers and repeated knowing failures to provide HUNT with clean opponents as is the implied intent of the above-referenced contracts.

142.   UFC's acts and omissions were unfaithful to the purpose of the contract and violated HUNT's justified expectation of fair bouts pursuant to the parties' contract.

143.   As a direct, proximate and legal result of UFC's breach of this covenant, HUNT has been damaged as described herein and in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION: NEGLIGENCE

### (Against UFC Only)

144.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

145.   UFC owed HUNT a duty of care to act reasonably and consistent with the standard of care for a MMA promoter in that industry.

146.   UFC further owed HUNT a duty of care by way of contract pursuant to the PARA and pursuant to those duties imposed by the State of Nevada.

147.   UFC's duties are duties with the purpose of ensuring fighter safety and preventing serious injury and death, and preventing unnecessarily increasing risks to fighters.  These are nondelegable duties.

148.   UFC breached its duty of care owed to HUNT.

149.   UFC's breach was the direct, proximate and legal cause of injury to HUNT, including but not limited to his injury in connection with UFC 200.

150.   HUNT was physically injured, and suffered damage to his reputation, lost opportunity of career advancement, lost opportunity to fight and win fair bouts, and the lost opportunity to further his earning potential including advancement to title fights and promotional and marketing opportunities.

### EIGHTH CAUSE OF ACTION: UNJUST ENRICHMENT
### (Against UFC, LESNAR & WHITE)

151.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

152.   Defendants and each of them have wrongfully had monetary and other benefits conferred to them at the expense of HUNT.

153.   Defendants appreciated and accepted the benefits.

154.   Defendants retained the benefits and the circumstances described herein make it inequitable for Defendants to retains the benefit without payment of value for those benefits.

155.   These benefits include but are not limited to the profits wrongfully retained by LESNAR and UFC from UFC 200 at the expense of HUNT who competed in that event without the use of prohibited substances.

156.   Equity demands LESNAR surrender his fight purse and all pay-per-view proceeds to HUNT and that the UFC surrender a proportionate share of its UFC 200 profits in an amount to be proven at trial as justice requires pursuant to laws of equity.

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

## **PRAYER**

WHEREFORE, HUNT requests judgment as follows:

1.      For compensatory damages according to proof;

2.      For treble damages pursuant to statute;

3.      For punitive damages sufficient to deter illegal doping in the sport of mixed martial arts;

4.      For an order requiring the Defendants, and each of them, to disgorge their ill-gotten profits;

5.      For attorneys' fees;

6.      For costs of suit;

7.      For interest on all sums from dates according to proof; and

8.      For such further relief the Court deems just.


DATED:  January 10, 2017                    HIGGS FLETCHER & MACK LLP


                                            By: s/ SCOTT INGOLD
                                            CHRISTINA DENNING, ESQ.
                                            SCOTT INGOLD, ESQ.
                                            Attorneys for Plaintiff
                                            MARK HUNT

## **JURY DEMAND**

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

DATED:  January 10, 2017                    HIGGS FLETCHER & MACK LLP


                                            By: s/ SCOTT INGOLD
                                            CHRISTINA DENNING, ESQ.
                                            SCOTT INGOLD, ESQ.
                                            Attorneys for Plaintiff
                                            MARK HUNT