CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: 702.382.5222
Facsimile: 702.382.0540

*Attorneys for Defendants*
*Zuffa, LLC and Dana White*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual, | Case No. 2:17-cv-00085-JAD-CWH |
| Plaintiffs, | **DEFENDANTS ZUFFA, LLC'S AND DANA WHITE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability Company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive, | |
| Defendants. | |

**INTRODUCTION**

Mark Hunt is a highly-paid professional fighter who claims to be the victim of a vast conspiracy. Though not a model of clarity, the Complaint appears to contend that Hunt's fight promoter, Zuffa, LLC ("Zuffa"), and its President, Dana White, together with other company employees, other contracted athletes, and even the professional wrestling organization WWE, have operated as an associated-in-fact enterprise to perpetrate a scheme whereby Zuffa has knowingly pitted drug-doping fighters against Hunt. Ignoring the inconvenient fact that the strict anti-doping drug-testing procedures implemented by Zuffa and administered by the independent United States

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1   Anti-Doping Agency are the vehicle by which cheating fighters have been exposed and punished,

2   Hunt nonetheless seeks to employ the heavy hand of the federal RICO statutes to stigmatize

3   Defendants and other individuals with baseless allegations of quasi-criminal conduct in the hopes of

4   reaping a windfall in the form of treble damages.  Unfortunately for Hunt, his RICO claims are

5   fatally defective.

6        Hunt's biggest hurdle—an insurmountable one—is that he lacks standing under Fed. R. Civ.

7   P. 12(b)(6) and 18 U.S.C. § 1964 to pursue a RICO claim as his Complaint contains no competent

8   allegations of any concrete injury to a specific "business or property" interest cognizable under state

9   law.  While Hunt alleges he has suffered "severe physical injury" along with nebulous "lost

10  opportunities" to advance his career, to fight for titles and to further his earning potential, Ninth

11  Circuit precedent is abundantly clear that neither personal injuries nor the type of prospective,

12  intangible losses claimed by Hunt are compensable under RICO.  *See, e.g., Canyon County v.*

13  *Syngenta Seeds, Inc.,* 519 F.3d 969 (9th Cir. 2008).  The RICO claim is subject to dismissal for

14  additional reasons, including a lack of proximate causation between the injury asserted and the

15  purported injurious conduct, and an utter dearth of specific allegations against Defendant White.

16  

17       Hunt's state law claims fare no better.  The Complaint fails to allege with the required

18  particularity any specific false representations upon which Hunt relied, any false writing, or the

19  concrete financial loss necessary to support Hunt's predicate claims for criminal fraud, obtaining

20  something of value by false pretenses, or conspiracy to commit the foregoing criminal acts.  Hunt's

21  pleading deficiencies likely stem from the fact that Zuffa paid Hunt what was owed to him under

22  the parties' contracts, a fact which Hunt admits.

23       As for his contractual and quasi-contract claims, Hunt never identifies a single provision of

24  the parties' contracts that was purportedly breached.  Again, Hunt's failure in this regard is likely

25  attributable to the fact that no breach has occurred.  Because the relationship between Hunt and

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

Zuffa is governed by written agreements, Hunt's quasi-contractual claim for unjust enrichment also fails as a matter of law. Finally, Hunt's negligence claim is barred by Hunt's express assumption of the risk contained the parties' contracts.

SUMMARY OF ALLEGATIONS

**A.    The Parties**

Plaintiff Mark Hunt ("Hunt") is a professional mixed martial arts ("MMA") fighter. *See* ECF No. 1 (Complaint or "Comp.") ¶ 14.[1]

Defendant Zuffa does business as the Ultimate Fighting Championship® ("UFC") brand and is the leading promoter of MMA contests or exhibitions in the world. *Id.* ¶¶ 4; 11. MMA involves bouts between athletes skilled in various martial and combat arts, including karate, jiu-jitsu, boxing, kickboxing, grappling, judo, Muay Thai, and freestyle and Greco-Roman wrestling. *Id.*[2] Defendant Dana White ("White") is Zuffa's President. *Id.* ¶ 27.

In or about July 2015, Zuffa enacted the UFC Anti-Doping Policy ("ADP") to protect the health and safety of its contracted athletes. Comp. ¶ 13.[3] The ADP is administered by an independent third party known as the United States Anti-Doping Agency ("USADA"). *Id.* ¶ 14, n. 5.

---

[1]   Unless otherwise stated, the facts set forth herein are taken from Plaintiff's Complaint and assumed to be true for purposes of this Motion to Dismiss only.

[2]   MMA contests in Nevada are sanctioned by the Nevada State Athletic Commission ("NSAC"). *See* Nev. Rev. Stat. 467.070(1) ("The Commission has and is vested with the sole direction, management, control and jurisdiction over all contests or exhibitions of unarmed combat to be conducted, held or given within the State of Nevada, and no contest or exhibition may be conducted, held or given within this state except in accordance with the provisions of this chapter."); *see also* Nev. Admin. Code 467.00285 (defining MMA to be a form of "unarmed combat.").

[3]   A true and correct copy of the ADP is attached to the Declaration of J. Colby Williams ("Williams Decl.") as Exhibit 1. The Court can take judicial notice of the ADP as it is central to Hunt's claims and referred to throughout the Complaint. *See, e.g.*, Comp. ¶¶ 13, 41, 42; *see also* Request for Judicial Notice ("RJN") at 4-5; 7-8 (filed concurrently herewith).

Page 3 of 26

C A M P B E L L   &   W I L L I A M S

ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  ●  Fax: 702.382.0540
www.campbellandwilliams.com

Hunt is party to a Promotional and Ancillary Rights Agreement with Zuffa dated April 12, 2016 (the "2016 Promotional Agreement") pursuant to which he agreed to participate in a certain number of MMA bouts in exchange for Zuffa's agreement to promote those bouts. *Id.* ¶ 25 and ECF No. 1-7 ("App'x"), Ex. A. The 2016 Promotional Agreement superseded prior promotional agreements between Hunt and Zuffa. *Id.*; App'x, Ex. A (Recital C).

Defendant Brock Lesnar ("Lesnar") is a professional wrestler and a former professional mixed martial artist who fought Hunt at an event known as UFC 200 in Las Vegas, Nevada on July 9, 2016 (as further described below). *Id.* ¶ 73.

**B.    Causes of Action**

The Complaint alleges the following eight causes of action under federal law and the state law of Nevada: (1) Violations of 18 U.S.C. § 1961, et seq. (RICO) (Comp. ¶¶ 89-114); (2) Conspiracy to Commit Crime Related to Racketeering (NRS § 207.350 et seq.) (*id.* ¶¶ 115-121); (3) Criminal Fraud (NRS 205.377) (*id.* ¶¶ 122-126); (4) False Pretenses (NRS 205.380) (*id.* ¶¶ 127-131); (5) Breach of Contract (*id.* ¶¶ 132-136); (6) Breach of Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 137-143); (7) Negligence (*id.* ¶¶ 144-150); and (8) Unjust Enrichment (*id.* ¶¶ 151-156). Hunt's claims are predicated on certain acts alleged to have been taken by Zuffa, White, and Lesnar as "persons" under the RICO statutes in conjunction with several other Zuffa employees, other UFC fighters, and the WWE—all of which Hunt claims constitute an associated-in-fact "enterprise" that has engaged in a continuing course of conduct purposefully designed to cause doping fighters to compete against Hunt, a self-described "clean fighter." *Id.* ¶¶ 14; 89-114.

The allegations contained in Hunt's Complaint are premised largely on four UFC bouts—one of which did not involve Hunt at all, and three other bouts in which Hunt fought opponents who were later determined to have violated Zuffa's anti-doping policies.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

### 1.     UFC 152 – Jon Jones v. Vitor Belfort

Jon Jones fought Vitor Belfort on September 22, 2012 as part of UFC 152.  *See* Comp. ¶ 28. Jones won the fight by a submission in the fourth round.[4]   Hunt alleges that Zuffa had granted Belfort a Testosterone Replacement Therapy ("TRT") use exemption prior to UFC 152, that Zuffa willfully concealed Belfort's TRT use exemption, and that Zuffa allowed Belfort to fight in UFC 152 despite prior knowledge that his testosterone levels were unduly elevated.  *Id.* ¶¶ 30-32.  Hunt further alleges that a Zuffa paralegal inadvertently sent an e-mail in which she disclosed Belfort's drug test results to more than 29 unintended recipients, that she tried to recall the first e-mail by sending another e-mail, and that Zuffa's then-General Counsel threatened the unintended recipients with legal action (through yet another e-mail) in the event they disclosed Belfort's test results.  *Id.* ¶¶ 31-37.[5]

Hunt alleges that the foregoing e-mail communications constitute acts of wire fraud under 18 U.S.C. § 1343 and comprise part of his RICO claims.  *Id.* ¶ 107.  Nowhere, however, does the Complaint allege that Hunt was one of the unintended recipients of the foregoing e-mails, that he saw the e-mails at the time, that he ever relied on the e-mails, or that they directly and proximately caused any of the damages he presently seeks.  *See generally id.*

---

[4]   A true and correct portion of Jon Jones' fight record is attached to the Williams Decl. as Exhibit 2.  As explained in the accompanying RJN, the Court may consider the result of the Jones/Belfort bout as the bout is central to Hunt's claims and otherwise subject to judicial notice because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* RJN at 5; 7-8 (analyzing FRE 201(b)).

[5]   Not that it matters for purposes of this Motion, but Zuffa's desire for confidentiality regarding Belfort's TRT use exemption was not part of some conspiracy to keep the subject secret from Jones but, instead, was borne out of an effort to protect Belfort's private medical information consistent with the standards implemented by the World Anti-Doping Agency ("WADA").  *See* WADA Standards for Therapeutic Use Exemptions (https://www.wada-ama.org/sites/default/files/resources/files/WADA-2015-ISTUE-Final-EN.pdf) (last visited February 28, 2017) and Protection of Privacy and Personal Information (http://www.usada.org/wp-content/uploads/WADA-2015-ISPPPI.pdf) (last visited February 28, 2017).

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  ●  Fax: 702.382.0540
www.campbellandwilliams.com

### 2.    UFC Fight Night – Hunt v. Antonio Silva

Hunt fought Antonio Silva as part of a UFC Fight Night on December 7, 2013.  Comp. ¶ 81.  The fight ended in a majority draw (*i.e.*, one judge awarded the fight to Hunt and two judges called the fight even).[6]  Silva failed a post-bout drug test for elevated testosterone.  *Id.* ¶ 81.

### 3.    UFC Fight Night – Hunt v. Frank Mir

Years (and several opponents) later, Hunt fought Frank Mir as part of a UFC Fight Night on March 20, 2016.  Comp. ¶ 80.  Hunt won the fight by a first-round knockout.  *See* Williams Decl., Ex. 3.  A drug test administered to Mir on the day of the fight subsequently came back positive for a prohibited anabolic steroid.  Comp. ¶ 80.

### 4.    UFC 200 – Hunt v. Lesnar

Though he now complains about fighting two previous opponents who tested positive for prohibited substances, Hunt nonetheless signed a new Promotional Agreement with Zuffa in April 2016 just one month after his fight with Mir.  Comp. ¶ 25; App'x, Ex. A.  Absent circumstances not applicable here, the 2016 Promotional Agreement provides that Hunt will be paid a fixed purse amount regardless of whether he wins or loses a particular bout.  *Id.*; App'x, Ex. A § 6.1(A)(i)(a)-(f).  On or about June 6, 2016, Hunt signed a Bout Agreement with Zuffa pursuant to which Hunt agreed to fight Brock Lesnar at UFC 200 on July 9, 2016 in Las Vegas, Nevada.  *Id.* ¶ 134; App'x, Ex. B.  Hunt agreed to be paid the fixed purse amount of $700,000 to fight Lesnar.  *Id.*; App'x, Ex. A § 6.1(A)(i)(a) and Ex. B (Schedule A).[7]

---

[6]  A true and correct copy of Mark Hunt's' fight record is attached to Williams Decl. as Exhibit 3.  *See* RJN at 5-6; 7-8.

[7]  The 2016 Promotional Agreement and the Bout Agreement are confidential, integrated contracts.  *See* App'x, Ex. A § 22; Ex. B § 14(a).  Accordingly, Plaintiff appropriately sought and obtained leave to file the agreements under seal as part of his Appendix to the Complaint.  *See* ECF Nos. 1-7; 10.  Nevertheless, purse amounts for bouts fought in Nevada become a matter of public record at the time of the event.  *See* Williams Decl., Exhibit 4 (NSAC Bout Records for

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS

ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

1    Hunt makes much ado about an interview Dana White gave to ESPN on June 3, 2016

2    wherein he purportedly (i) gave an "untruthful" explanation why Lesnar appeared as an "active"

3    UFC fighter on the UFC website as early as May 2016, and (ii) "denied" that Lesnar was returning

4    to the UFC—only for Zuffa to announce publicly the next day during the airing of UFC 199 that

5    Lesnar would, in fact, be returning from retirement to fight Hunt at UFC 200.  Comp. ¶¶ 49-53.

6    Hunt alleges that White's June 3, 2016 interview and Zuffa's June 4, 2016 announcement constitute

7    acts of wire fraud under 18 U.S.C. § 1343 and comprise part of his RICO claims.  *Id.* ¶ 107.  He

8    ostensibly contends that the foregoing statements were misrepresentations designed to keep

9    Lesnar's return to the UFC secret so that he could delay entering the ADP testing program.  *Id.* ¶¶

10   62; 67-69.[8]

11

12   The Court can review the White interview, *see* Comp. at 10 n.6 (citing

13   https://www.youtube.com/watch?v=ffKKmTgsfV8&feature=youtu.be), and take judicial notice of

14   the fact that White never denies Lesnar's return to the UFC.  At most, he deflects when asked the

15   question.  Regardless, Hunt nowhere alleges that he saw White's June 3 interview or Zuffa's June 4

16   announcement at the time, that he relied on either of these communications, or that the

17   communications directly and proximately caused any of the damages being sought in the

18   Complaint.  *See generally id.*  Indeed, Hunt voluntarily went forward with signing the Bout

19

20

21

22

23   UFC 200) and RJN at 6; 7-8.  By referring to this public information, Zuffa does not intend to
     waive any of the confidentiality obligations that otherwise attach to the foregoing agreements.

24   [8]  But, as the July 1, 2016 email from Jeff Novitzky (Zuffa's Vice President of Athlete Health and
     Performance) to Robert Bennett (the Executive Director of the NSAC) makes clear, Lesnar

25   underwent multiple drug tests throughout the month of June even though he was unable to enter the

26   ADP testing program for a full four months prior to UFC 200.  A true and correct copy of the July
     1 email is attached to the Williams Decl. as Exhibit 5.  Again, the email is specifically referenced

27   in multiple allegations of the Complaint.  *See* Comp. ¶¶ 60-61; 107(a); RJN at 6; 7-8; *see also*
     *infra* at 8 and n. 9.

28

Agreement to fight Lesnar three days after the White interview and two days after the Zuffa announcement. Comp. ¶ 134; App'x, Ex. B.

Lesnar promptly entered the ADP testing pool after signing his bout agreement for UFC 200 on June 3. Comp. ¶¶ 52; 59; *see also* Williams Decl., Ex. 5. The information publicly available on the UFC-USADA website reflects that Lesnar was drug-tested eight times after he signed his bout agreement to participate in UFC 200.[9] Lesnar defeated Hunt by unanimous decision at UFC 200 on July 9, 2016. Comp. ¶ 73. Hunt received his contracted purse amount of $700,000. *Id.*

On July 15, 2016, nearly one week *after* UFC 200, Zuffa and USADA learned that an out-of-competition drug test administered to Lesnar on June 28, 2016 came back positive for a prohibited estrogen blocker. Comp. ¶ 76. Four days later, on July 19, 2016, Zuffa and USADA learned that an in-competition drug test administered to Lesnar on the night of UFC 200 also came back positive for the same estrogen blocker. *Id.* ¶ 77. Upon confirmation of Lesnar's violation of the ADP and NSAC regulations, the NSAC changed the result of the bout between Hunt and Lesnar from a loss for Hunt to a "no-contest," and Lesnar agreed to a 12-month suspension from MMA and to pay a $250,000 fine. *Id.* ¶¶ 78; 86.[10]

## C.    Hunt's Alleged Damages

The Complaint makes scattered references to Hunt's purported damages. For example, Hunt alleges that as a result of his bout with Lesnar, he "suffered severe physical injury, as well as economic and non-economic damages including without limit damage to his reputation, title contention, and future earning capacity." Comp. ¶ 19. Hunt further claims that "[d]espite Lesnar's win being overturned to a no contest, Defendants directly and proximately caused Hunt damage to

---

[9]   A true and correct copy of the testing history for Lesnar maintained on the UFC-USADA website is attached to the Williams Decl. as Exhibit 6. *See* RJN at 7-8.

[10]   A true and correct copy of the NSAC's Mixed Martial Arts Show Results for UFC 200 is attached to the Williams Decl. as Exhibit 7. *See* RJN at 7-8.

his reputation, lost opportunity of career advancement, lost opportunity to fight and win fair bouts, and the lost opportunity to further his earning potential including advancement to title fights and promotional and marketing opportunities." *Id.* ¶ 78; *see also id.* ¶ 87 ("every time Hunt fights a doping competitor with a resulting 'no contest' outcome, his record remains stagnant, and is deprived of the opportunity to earn a win."). With respect to his actual causes of action, Hunt simply alleges variations of the mantra that he "has been damaged, the exact amount of which will be subject to proof at trial[.]" *Id.* ¶ 113; *see also id.* ¶¶ 121, 125, 130, 136, 143, and 150.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if taken as true, demonstrate "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (interpreting pleading standards required under Fed. R. Civ. P. 8(a)(2)). This means a plaintiff must allege facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Community Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). A complaint fails to plead a "plausible" claim and must be dismissed if the facts alleged are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678.

As the Ninth Circuit has summarized, "[f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When performing the two-step approach set forth above, conclusions "couched as [ ] factual allegation[s]" are not entitled to a presumption of truth on a motion to dismiss. *Twombly*, 550 U.S.

at 555 (internal quotations omitted); *Caviness*, 590 F.3d at 812 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]") (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  "When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed." *Zuffa, LLC v. Justin.TV, Inc.*, 838 F. Supp. 2d 1102, 1104 (D. Nev. 2012) (citing *Twombly*).

### ARGUMENT

## I.   HUNT'S RICO CLAIM IS FATALLY DEFECTIVE

Hunt attempts to bring a RICO claim under "18 U.S.C. § 1961, et seq."  *See* Comp. ¶¶ 89-114.  Substantive RICO violations are defined in 18 U.S.C. § 1962, which makes it illegal "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering."  18 U.S.C. 1962(c); *see also* Comp. ¶ 113.  "Any person injured in his business or property by reason of a violation of [Section 1962] may sue therefor[.]"  18 U.S.C. § 1964(c).  "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason' of the RICO violation, which requires the plaintiff to establish proximate causation."  *Canyon County v. Syngenta Seeds, Inc.,* 519 F.3d 969, 972 (9th Cir. 2008) (affirming Rule 12(b)(6) dismissal of RICO claim due to lack of standing); *Moonin v. Dep't of Pub. Safety Highway Patrol*, 960 F. Supp. 2d 1130, 1138 (D. Nev. 2013).[11]  Hunt has not satisfied, and cannot satisfy, either requirement.

### A.   Hunt Lacks Standing To Pursue His RICO Claims As He Has Failed To Allege Any Concrete Injury To A Cognizable Business Or Property Interest.

"Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the Court to determine and may be raised on a motion to

---

[11]   Unlike standing under Article III, which is a pre-requisite to the Court's subject matter jurisdiction and may be challenged pursuant Fed. R. Civ. P. 12(b)(1), the Ninth Circuit has held that statutory standing is properly challenged under Fed. R. Civ. P. 12(b)(6).  *See Canyon County*, 519 F.3d at 974, n.4.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  ●  Fax: 702.382.0540
www.campbellandwilliams.com

dismiss." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009) (citing *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992) (en banc), *cert. denied,* 506 U.S. 1020 (1992)).  The Court must "carefully consider the nature of the asserted harm" when determining whether a plaintiff has sufficiently alleged injury to his business or property. *Canyon County*, 519 F.3d at 975.  The injury complained of must have resulted in "concrete" or "tangible financial loss." *Id.*; *see also Oscar*, 965 F.2d at 785.  "Financial loss alone, however, is insufficient.  'Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.'" *Id.* (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1131 (2006)).  The Nevada Supreme Court, in turn, has held that "a property right exists when (1) there is an interest capable of precise definition, (2) the interest is capable of exclusive possession or control, and (3) the putative owner has established a legitimate claim to exclusivity." *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008).

Here, Hunt alleges he has suffered severe physical injury, damage to his reputation, lost opportunity for career advancement, lost opportunity to fight and win fair bouts, and the lost opportunity to further his earning potential including advancement to title fights and promotional and marketing opportunities.  *See supra* at 8-9.  None of these categories of purported damages constitutes a cognizable business or property interest under well settled RICO jurisprudence.

For starters, "[p]ersonal injuries are not compensable under RICO."  *Oscar*, 965 F.2d at 785 (multiple citations omitted); *see also Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 509 (1985) (Marshall, J. dissenting) (RICO "permits recovery only for injuries to business or property.  It, therefore, excludes recovery for personal injuries."); *Allman v. Philip Morris, Inc.*, 865 F. Supp. 665 668 (S.D. Cal. 1994) ("for the purposes of bringing an action under RICO the courts have been clear

that even the economic consequences of personal injuries are not compensable under RICO."). Nor is purported damage to one's reputation compensable under RICO, as that is just another form of personal injury. *See C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 11, 2016) (citing *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.2d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).")).

Hunt's panoply of alleged "lost opportunities" likewise fail to establish tangible financial loss to a business or property interest. By definition, all of the "lost opportunities" about which Hunt complains are contingent events that may—or may not—occur in the future depending on a multitude of factors. As just one example, there is no guarantee that Hunt would have prevailed in his bout with Lesnar at UFC 200 even if the latter had not tested positive for a prohibited estrogen blocker. Nor is there any guarantee that a Hunt victory at UFC 200 would have resulted in the wholly unspecified "promotional and marketing opportunities" Hunt claims to have lost. In other words, these are "precisely the sort of speculative future injur[ies] which RICO disdains." *Oscar*, 965 F.2d at 787. Again, RICO injury "must be concrete, not prospective." *Hacker v. Hacker*, 2016 WL 4254108, at *5 (E.D. Cal. Aug. 12, 2016).

*Keel* is instructive on this point. In that case, the plaintiff claimed he was deprived of a resentencing hearing and immediate release from prison, which would have "resulted in gainful employment as a paralegal and/or self-employment opportunities." 2009 WL 144644, at *6. The district court dismissed the complaint due to lack of standing, finding:

> All of the 'injuries' alleged by Plaintiff are speculative. . . . Plaintiff does not allege that he has actually lost employment or employment opportunities because he was falsely imprisoned and forced to defend against unjust charges. Rather, Plaintiff's allegations involve prospective damages which are not compensable, absent concrete financial loss. The alleged injury of 'lost business opportunities' does not constitute a RICO injury. Plaintiff's claimed 'employment opportunity' losses

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

cannot be characterized as a kind of tangible financial loss to a business recoverable under RICO.

*Id.* (citing *Oscar*, 965 F.2d at 785). So, too, here. Hunt fails to specify a single title fight opportunity he lost, a single promotional opportunity he lost, or a single marketing opportunity he lost. That Hunt hoped these things would flow from a potential victory at UFC 200 is simply not enough. *See Chaset v. Fleer/Skybox Intern.*, L.P., 300 F.3d 1083, 1087 (9th Cir. 2002) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing.").

Finally, assuming *arguendo* that Hunt's alleged "lost opportunities" resulted in some sort of concrete financial loss—and they did not—he still cannot establish a cognizable property interest under Nevada law. That is because the nebulous opportunities Hunt claims to have lost are not "capable of precise definition;" are not "capable of exclusive possession or control;" and Hunt cannot establish a "legitimate claim of exclusivity" to any one of them. All three prongs must be met to establish a property interest under Nevada law. *See M.C. Multi-Family Dev.*, 193 P.3d at 543 (using the conjunctive "and" when listing the prongs). Hunt cannot meet a single one.

**B.      The Complaint Does Not Satisfy RICO's Strict Proximate Cause Requirement.**

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Homes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). This means there must be "some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." *Id.* (internal citations and quotations omitted). Mere foreseeability is not enough to establish proximate cause, *see Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *11 (C.D. Cal. Aug. 2, 2010), "the central question the court must ask is whether the

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Hemi Group*, 559 U.S. at 17-18 (there must be a "direct causal connection between the predicate wrong and the harm.").

Even if Hunt's alleged personal injuries and "lost opportunities" were cognizable RICO injuries, and they are not for reasons addressed above, the Complaint nevertheless lacks any showing of proximate cause between the foregoing injuries and Defendants' alleged wrongful conduct. As predicate acts for the RICO claim, the Complaint identifies seven communications by Zuffa employees that purportedly constitute acts of wire fraud. *See* Comp. ¶ 107(a)-(c). Yet, four of those communications occurred in September 2012 regarding UFC 152: Jones v. Belfort—an event in which Hunt had zero involvement. As such, these remote acts could not have "directly caused" the harm about which Hunt complains in 2016.

Similarly, while the June 3 White interview with ESPN, the June 4 Zuffa announcement about Lesnar's return, and the July 1 Novitzky email to the NSAC were arguably related to UFC 200, Hunt never alleges he was a recipient of these communications or relied on them to his detriment. More to the point, these random communications did not "directly cause" Hunt's alleged personal injuries and "lost opportunities" as they are, at best, the initial steps of a lengthy chain of events underlying Hunt's RICO claim, to wit: (1) White deflects answering an interviewer's question on June 3 about whether Lesnar is returning to the UFC; (2) Lesnar signs a bout agreement for UFC 200 the same day; (3) Zuffa publicly announces Lesnar's return to UFC on June 4; (4) Lesnar promptly enters Zuffa's anti-doping testing program but is exempted from being in the program for the normal 4-month period prior to fighting; (5) Hunt signs the Bout Agreement to fight Lesnar on June 6; (6) Lesnar undergoes multiple drug tests while in the program, including one on June 28; (7) Novitzky writes an e-mail to the NSAC on July 1 addressing Lesnar's participation in the testing program; (8) Lesnar defeats Hunt at UFC 200 on July 9 and undergoes a drug test the

same day; (9) Zuffa and USADA learn on July 15 that Lesnar's June 28 drug test came back positive for a prohibited substance; (10) Zuffa and USADA learn on July 19 that Lesnar's July 9 drug test came back positive for a prohibited substance; (11) Hunt claims to suffer personal injuries and unspecified "lost opportunities."

The Supreme Court has instructed that the "general tendency" in the proximate cause analysis is "not to go beyond the first step." *Hemi Group*, 559 U.S. at 10. Here, multiple steps separate and break the causation chain between Zuffa's purportedly fraudulent statements and Hunt's asserted harm including, at a minimum, the fact that Lesnar had taken multiple drug tests prior to June 28 without incident. If there is a "direct cause" of Hunt's claimed injuries, it flowed from later steps in the chain—*i.e.*, Lesnar's late-June 2016 ingestion of a prohibited substance (that was unknown to Zuffa until it received the test results on July 15) and Hunt's loss to Lesnar at UFC 200 on July 9—not the earlier, attenuated acts of White's interview with ESPN, Zuffa's announcement that Lesnar was returning to the UFC, or Novitzky's response to an inquiry from the NSAC as none of these communications could "directly" harm Hunt.

Besides the indirect nature of the predicate acts upon which he relies, Hunt's causation theory still fails because his alleged injuries are premised upon the contingencies that (i) he would have defeated Lesnar but for the latter's positive drug test, and (ii) he would have received future title bouts, other marketing and promotional activities, etc. had he won. Both outcomes are speculative. A fighter, for example, can obviously lose a bout for any number of reasons that are entirely divorced from alleged racketeering activity. *Cf. Canyon County*, 519 F.3d at 983 ("The causal chain would be difficult to ascertain because there are numerous alternative causes that might be the actual source or sources of [plaintiff's] alleged harm.") (affirming Rule 12(b)(6) dismissal). Given the Complaint's fatal shortcomings in meeting the proximate cause requirements, dismissal is required on this basis as well. *See Bryant v. Mattel, Inc.*, *supra* at *11 (recognizing propriety of

C A M P B E L L   &   W I L L I A M S
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222   •   Fax: 702.382.0540
www.campbellandwilliams.com

addressing standing component of a RICO claim at Rule 12(b)(6) stage: "*Hemi Group* affirmed a 12(b)(6) dismissal, and if it works for Chief Justice Roberts, it works for this Court.").

### C.  The Complaint Contains A Dearth Of Allegations Against Defendant White.

"To plead a RICO claim sufficient to withstand a motion to dismiss, Plaintiffs [a]re required to allege that each Defendant employed a pattern of racketeering activity to participate in the operation or management of an enterprise, which proximately resulted in harm to Plaintiffs." *Prime Partners IPA of Temecula, Inc. v. Chauduri*, 2012 WL 1669726, *12 (C.D. Cal. May 14, 2012). "The requirements of § 1962(c) must be established as to each individual Defendant." *Kreel v. Schwarzenegger*, *supra* at *5 (citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) ("the focus of § 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise[.]")).

Hunt appears to have named Defendant White as an individual defendant in a gratuitous effort to stigmatize him with baseless allegations of quasi-criminal conduct. Tellingly, White is only referenced in 4 out of the 88 allegations that comprise Hunt's substantive allegations. *See* Comp. ¶¶ 6, 27, 51, and 52. Of those, one simply identifies White as a Nevada citizen, one identifies White as Zuffa's President and a minority owner of the company, and two reference White's previously-addressed June 3 interview with ESPN. *See id.* That's it. The Complaint, thus, fails "to give fair notice" to enable White to defend himself on the RICO (or any other) claims, *see Starr*, 652 F.3d at 1216, which again necessitates dismissal.

## II.  HUNT'S STATE LAW CLAIMS ALSO FAIL AS A MATTER OF LAW

### A.  Hunt Fails To Allege The Required Elements Of His Quasi-Criminal Claims.

Hunt asserts quasi-criminal claims for conspiracy to commit a crime related to racketeering (Second Cause of Action), statutory fraud (Third Cause of Action), and false pretenses (Fourth

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Cause of Action).  We begin by addressing the latter two claims as doing so necessarily disposes of the conspiracy count.

### 1.    Statutory Fraud - (Nev. Rev. Stat. 205.377)

Nevada Revised Statute 205.377 provides as follows:

A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:

> (a) The person knows to be false or omitted;

> (b) The person intends another to rely on; and

> (c) Results in a loss to any person who relied on the false representation or omission,

in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $650."

Fraud must be pled with particularity, *see* Fed. R. Civ. P. 9(b), by providing "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  This particularity requirement applies to state-law causes of action.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

While Hunt parrots some of the elements of Nev. Rev. Stat. 205.377, *see* Comp. ¶¶ 123-125, he nowhere identifies the "specific content" of any purportedly false representations upon which he relied.  Nor can Hunt demonstrate that he suffered any loss caused by a purportedly fraudulent statement as he has admitted that he was paid what was owed under the parties' 2016 Promotional Agreement. Comp. ¶ 73.  Though the fraud claim fails for other reasons as well, the lack of even a single element of the claim is enough to warrant dismissal.  *Cf. Oaktree Capital*

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

*Mgmt., L.P. v. KPMG*, 2014 WL 3816392, at *3 (D. Nev. Aug. 4, 2014) (dismissing fraud claim under PSLRA where plaintiff failed to allege that defendant's statements were false or misleading, "a necessary element of their claim."). Here, Hunt has failed to allege at least two.

### 2. False Pretenses – (Nev. Rev. Stat. 205.380)

The predicate act of false pretenses requires the pleading of sufficient facts as to the following: "(1) intent to defraud; (2) a false representation; (3) reliance on the false representation; and (4) that the victim be defrauded." *Hale v. Burkhardt*, 764 P.2d 866, 870 (Nev. 1988). Like fraud, a false pretenses claim must be alleged with particularity, and "the failure to allege any one of [the foregoing] elements with the required specificity would defeat the entire criminal charge." *Id.* at 869-70 (affirming dismissal of RICO claim where plaintiff failed "to allege any *specific false representations* upon which he may have relied and that might have caused him to be defrauded.") (emphasis in original). "Further, the false pretense, or a note or memorandum thereof, must be in writing and either written or subscribed by the defendant." *Stoddardt v. Miller*, 238 P.3d 845, at *6 and n.24 (Nev. 2008) (citing Nev. Rev. Stat. 175.261).

Once again, Hunt has not alleged the specific content of any false statement made by Zuffa or White upon which he claims to have relied. Nor can Hunt properly allege that he suffered any loss as he has already admitted that he was paid according to the terms of the 2016 Promotional Agreement. Finally, Hunt nowhere identifies in the Complaint any false token or any written note or memorandum through which the alleged false pretense was perpetrated. Any one of these failings is sufficient to doom Hunt's claim. *See Hale supra*.

### 3. Conspiracy to Commit Racketeering Crime – (Nev. Rev. Stat. 207.350)

"Nevada's anti-racketeering statutes, NRS 207.350 through NRS 207.520 . . . are patterned after the federal . . . 'RICO' statutes" and are interpreted similarly. *Hale*, 764 P.2d at 867; 869 ("there is no reason the requirement of pleading with particularity should not apply in

state actions just as it does in the federal context.").  In the federal context, courts have made clear that "where a plaintiff fails to establish a claim for a substantive RICO violation . . . any claim for conspiracy to commit that violation must necessarily fail as well."  *Edmonds v. Seavey*, 2009 WL 2949757, at \*6–7 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (plaintiffs "cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO").  The same principle should apply to Hunt's state-based RICO conspiracy claim as Defendants have already established that Hunt cannot state a federal RICO claim or any state-based predicate acts.  *See* Points I and II(a)(1)-(2), *supra*.[12]

### B.  Hunt's Contract And Quasi-Contract Claims Are Nothing More Than Formulaic Recitations Of Elements.

Hunt asserts three contractual and quasi-contractual causes of action: breach of contract (Fifth Cause of Action); breach of the implied covenant of good faith and fair dealing (Sixth Cause of Action); and unjust enrichment (Eighth Cause of Action).  None state a claim.

#### 1.  Breach of Contract

The elements of a breach of contract claim are: (1) a valid contract, (2) that the plaintiff performed or was excused from performance, (3) the defendant failed to perform, and (4) the plaintiff suffered economic damage as a result of the defendant's breach.  *See Story-McPherson v. Bank of Am., N.A.*, 2012 WL 2000693, at \*4 (D. Nev. June 5, 2012) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)).  Hunt alleges in conclusory fashion that Zuffa breached the Bout Agreement for UFC 200 and the 2016 Promotional Agreement, *see* Comp. ¶¶ 133-135, but he never identifies a single provision of either contract that Zuffa

---

[12]  Hunt makes passing reference to Defendants having committed or conspired to commit the additional predicate acts of robbery (Nev. Rev. Stat. 207.360(9)) and battery (Nev. Rev. Stat. 207.360(4)), *see* Comp. ¶¶ 116; 119, but he has neither asserted those causes of action against Zuffa or White nor provided any allegations to support such claims.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

purportedly failed to perform.  To the contrary, Hunt admits he was paid the amount he was owed under the Bout Agreement and the 2016 Promotional Agreement for participating in UFC 200.  *Id.* ¶ 73.

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Where, as here, a plaintiff fails to allege the terms of the contract that were purportedly breached, the defendant does not have sufficient notice to defend itself, and the claim must be dismissed.  *See, e.g., Gowen v. Tiltware LLC*, 2009 WL 1441653, at **3–4 (D. Nev. May 19, 2009) (dismissing breach of contract claim), *aff'd,* 437 F. App'x 528 (9th Cir. 2011); *Collins ex rel. Brown v. Walgreen Co.*, 2013 WL 2482152, at **3–4 (E.D. Cal. June 10, 2013) ("there are no allegations relating to the performance, or failure to perform, any contractual duties.  Accordingly, Plaintiffs fail to state a claim for breach of contract.").

### 2.    Breach of the Implied Covenant of Good Faith and Fair Dealing

The elements of a claim for breach of the implied covenant of good faith and fair dealing are: (1) an existing contract, (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner unfaithful to the purpose of the contract, and (4) plaintiff's justified expectations were denied.  *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).  Hunt claims Zuffa breached the implied covenant by "negotiating with and causing Hunt to fight with known dopers and repeated knowing failures to provide Hunt with clean opponents."  Comp. ¶ 141.

While Defendants recognize that a party may press a claim for breach of the implied covenant even though the literal terms of the contract have been complied with, *see Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919 (Nev. 1991), such a claim cannot be used to seek redress for breach of contractual obligations that do not exist.  *See Nelson v. Heer*, 163 P.3d 420, 426-27 (Nev. 2007) (where there was no contractual duty to disclose water damage, omitting to

Page 20 of 26

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

make such a disclosure "did not constitute an arbitrary or unfair act" necessary to support claim for breach of the implied covenant of good faith and fair dealing.); *Chavez v. California Reconveyance Co.*, 2010 WL 2545006, at *4 (D. Nev. June 18, 2010) ("implied covenant of good faith and fair dealing cannot contradict the terms of the contract from which it stems.")

Nothing in the Bout Agreement or the 2016 Promotional Agreement imposes a contractual obligation on Zuffa "to provide Hunt with clean opponents." *See* App'x, Exs. A-B. While it is undisputedly Zuffa's goal and desire that all its contracted athletes comply with the ADP and applicable laws governing prohibited substances, the contractual obligation Hunt seeks to impose—whether as an express or implied term—is obviously impossible for Zuffa to perform as it has no ability to control what any given fighter is going to put into his or her body except by way of establishing a set of rules that (i) prohibits the taking of banned substances, and (ii) imposes penalties for established violations thereof. Zuffa has done that. *See* Comp. ¶¶ 13-14. It is then the obligation of the athlete to comply with the ADP and applicable laws governing this conduct. *See, e.g.,* App'x, Ex. A § 8.5 and Ex. B § 5(a)(vi)(c) and (d). Because the Bout Agreement and the 2016 Promotional Agreement contain no contractual obligation for Zuffa "to provide Hunt with clean opponents," the purported acts and omissions about which Hunt complains cannot constitute the "arbitrary and unfair acts" required to plead a viable claim for breach of the implied covenant. This claim, accordingly, must likewise be dismissed. *See Crusher Designs, LLC v. Atlas Copco Powercrusher*, 2015 WL 4508743, at *5 (D. Nev. July 23, 2015) (dismissing claim for breach of the implied covenant with prejudice) (quoting *Nelson*).

### 3.     Unjust Enrichment

Unjust enrichment occurs whenever "a person has and retains a benefit which in equity and good conscience belongs to another." *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004); *see also Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (defining

unjust enrichment as "the unjust retention of money and property of another against fundamental principles of justice or equity and good conscience."). A plaintiff cannot, however, "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." *Thomas v. Wachovia Mortgage, FSB*, 2011 WL 3159169, *6 (D. Nev. July 25, 2011); *see also LeasePartners Corp. v. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) **(**stating "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").

Hunt "demands" that Zuffa surrender to him "a proportionate share of its UFC 200 profits in an amount to be proven at trial as justice requires pursuant to laws of equity." Comp. ¶ 156. The subject of Hunt's compensation for UFC 200 was, however, expressly controlled by the Bout Agreement and the 2016 Promotional Agreement. *See* App'x, Exs. A-B. Hunt has admitted that he was paid the purse amount he was owed under those written contracts. Comp. ¶ 73. He cannot now employ the quasi-contractual principle of unjust enrichment to retroactively graft additional payment obligations on to the parties' agreements. Permitting Hunt to "recover[] by quasi-contract where a written agreement exists would constitute a subversion of contractual principles[,]" *see Lipshie v. Tracy Investment Co.*, 566 P.2d 819, 824 (Nev. 1977), that should not be countenanced by this Court.

### C. Hunt's Negligence Claim Is Barred By His Express Assumption Of The Risk Contained In The Parties' Agreements.

A negligence claim in Nevada requires (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages. *See Turner v. Mandalay Sports Entm't LLC*, 180 P.3d 1172, 1175 (Nev. 2008). "[T]he question of whether a 'duty' . . . exists is a question of law solely to be determined by the Court." *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001). Additionally, "[p]arties may agree to assume risk by contract, and, in Nevada, the issue of assumption of the

Page 22 of 26

risk is a question for the court, not a jury." *Burnett v. Tufguy Productions, Inc.*, 2010 WL 4282116, at \*4 (D. Nev. 2010) (citing *Turner*, 180 P.3d at 1777 (holding that assumption of the risk is a matter of law for the court, not a question of fact for the jury, because assumption of the risk concerns the scope of a defendant's duty)).  "Express assumption of the risk is a 'contractual undertaking that expressly relieves a putative defendant from any duty of care to the injured party' because the injured party has 'consented to bear the consequences of a voluntary exposure to a known risk.'"  *Moffitt v. 24 Hour Fitness USA, Inc.*, 2013 WL 1080441, at \*2 (D. Nev. March 14, 2013) (quoting *Mizushima v. Sunset Ranch, Inc.*, 737 P.2d 1158, 1159 (Nev. 1987), *overruled on other grounds by*, *Turner, supra*).

Hunt's negligence claim (Seventh Cause of Action) is premised directly on purported duties arising from the 2016 Promotional Agreement.  *See* Comp. ¶ 146 ("UFC further owed Hunt a duty of care by way of contract pursuant to the [2016 Promotional Agreement] . . . .").  But that agreement contains an express, broadly-worded assumption of the risk provision and waiver of all claims arising out of the inherently dangerous sport of MMA.  *See* App'x, Ex. A at §§ 14.1-14.3.  Hunt again expressly agreed to similar assumption of the risk and waiver provisions as part of the Bout Agreement.  *See id.*, Ex. B § 12.

In *Burnett*, a different division of this Court examined contractual assumption of the risk and waiver provisions nearly identical to that at issue here.  2010 WL 4282116, at \*\*3-4.  There, the plaintiff asserted a negligence claim against Zuffa affiliate, Tufguy Promotions, claiming he suffered a spinal injury while participating in Tufguy's "Ultimate Fighter 4" television show.  *Id.* at \*1.  Tufguy moved for summary disposition "based purely on contractual waiver of liability."  *Id.* at \*3.  After examining the contractual provisions in detail, the court granted Tufguy's motion for summary judgment.  *Id.* at \*\*5-6.  Other divisions of this court have reached similar results at the pleading or summary judgment stages.  *See, e.g., Parker v. Sorge*, 2014 WL 4251598, at \*2

(D. Nev. Aug. 27, 2014) (granting motion to dismiss pursuant to Rule 12(c) based on plaintiff's implied assumption of the risks inherent in motorcycle riding); *Moffitt*, 2013 WL 1080441, at **2-3 (granting summary judgment in negligence action based on exculpatory clause contained in gym's membership agreement).  Respectfully, this Court should do the same.

## CONCLUSION

Based on the foregoing, Defendants Zuffa and White respectfully submit that their Motion to Dismiss should be granted in its entirety.

DATED this 28th day of February, 2017.

CAMPBELL & WILLIAMS


By____/s/ *J. Colby Williams*_____
　　DONALD J. CAMPBELL, ESQ. (#1216)
　　djc@cwlawlv.com
　　J. COLBY WILLIAMS, ESQ. (#5549)
　　jcw@cwlawlv.com
　　700 South Seventh Street
　　Las Vegas, Nevada 89101
　　Tel. 702.382.5222
　　Fax. 702.382.0540

　　*Attorneys for Defendants*
　　*Zuffa, LLC and Dana White*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendants Zuffa, LLC's and Dana White's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** was served on the 28th day of February, 2017 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

_/s/ J. Colby Williams_
An employee of Campbell & Williams

1

**INDEX OF EXHIBITS**

2
Declaration of J. Colby Williams

3
Exhibit 1 – UFC Anti-Doping Policy

4
Exhibit 2 – Portion of Jon Jones' Fight Record

5
Exhibit 3 – Mark Hunt's Fight Record

6
Exhibit 4 – Nevada State Athletic Commission Bout Records for UFC 200

7

8
Exhibit 5 – July 1, 2016 Email from Jeff Novitzky to Nevada State Athletic Commission

9
Exhibit 6 – Brock Lesnar 2016 Drug Testing History in the ADP

10
Exhibit 7 – Nevada State Athletic Commission Mixed Martial Arts Show Results for UFC 200

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com