CHRISTINA M. DENNING, ESQ. (CA Bar No. 211137)
denningc@higgslaw.com
SCOTT J. INGOLD, ESQ. (NV Bar No. 11818)
ingolds@higgslaw.com
Higgs Fletcher & Mack LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913
T:  619.236.1551
F:  619.696.1410

JAMES F. HOLTZ, ESQ. (NV Bar No. 8119)
james.holtz@holtzapc.com
LAW OFFICE OF JAMES F. HOLTZ
1120 Town Center Drive, Suite 200
Las Vegas, NV 89144
T: 702.304.1803
F: 702.304.1822

Attorneys for Plaintiff
MARK HUNT

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARK HUNT, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability company; BROCK LESNAR, an individual; DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No.: 2:17-cv-00085-JAD-CWH<br><br>**MARK HUNT'S OPPOSITION TO DEFENDANTS ZUFFA, LLC'S AND DANA WHITE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

/ / /

/ / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

112567-00001
7897504.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.   DEFENDANTS APPLY THE WRONG LEGAL STANDARD ....................................... 2

III.   HUNT'S RICO CLAIM IS WELL-PLEADED (FIRST CLAIM) .................................... 3

   A.   Hunt Has Alleged Injury to Business And Property Interests ............................... 4
      1.   Hunt Alleges the Lost Opportunity to Acquire Valuable Rights ................ 5
      2.   Hunt Has a Legal Entitlement to Unhampered Business Relations ........... 9
   B.   Hunt Properly Alleges Causation ................................................................ 10
      1.   First Factor: There Is No More Direct Victim Than Hunt ...................... 12
      2.   Second Factor:  The Injury is Attributed to Defendants' Conduct .......... 13
      3.   Third Factor:  There is Zero Risk of Multiple "Passed-On Harm" Recovery ......................................................................................... 14
   C.   The Complaint Alleges White is as Culpable as the UFC .................................. 14

IV.   DEFENDANTS CONCEDES HUNT PROPERLY PLEADED NEVADA'S RICO ANALOGUE (SECOND CLAIM) ...................................................................... 15

V.   HUNT'S FRAUD CLAIM IS WELL-PLEADED (THIRD CLAIM)............................. 16

VI.   HUNT'S FALSE PRETENSES CLAIM IS WELL-PLEADED (FOURTH CLAIM) ............................................................................................... 17

VII.   HUNT'S BREACH OF CONTRACT CLAIM IS WELL-PLEADED (FIFTH CLAIM) ............................................................................................... 18

VIII.   HUNT'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS WELL-PLEADED (SIXTH CLAIM) .......................................... 19

IX.   HUNT'S NEGLIGENCE CLAIM IS WELL-PLEADED (SEVENTH CLAIM)........... 22

X.   HUNT'S UNJUST ENRICHMENT CLAIM IS WELL-PLEADED (EIGHTH CLAIM) ............................................................................................... 23

XI.   CONCLUSION................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

Ashcroft v. Iqbal
  556 U.S. 662, 678 (2009) ........................................................ 2, 14

Auckenthaler v. Grundmeyer
  877 P.2d 1039, 1041 (Nev. 1994) ................................................ 22

Bell Atl. Corp. v. Twombly
  550 U.S. 544 (2007) ............................................................... 2

Bridge v. Phoenix Bond & Indem. Co.
  553 U.S. 639, 648 (2008) ................................... 5, 6, 7, 8, 10, 11, 12

Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.
  518 F. Supp. 2d 1182 ............................................................. 5

Burnett v. Tufguy Productions, Inc.
  2010 WL 4252116 (D. Nev. 2010) ............................................... 23

Chaset v. Fleer/Skybox Int'l, LP
  300 F.3d 1083 ................................................................... 6

Collins ex rel. Brown v. Walgreen Co.
  2013 WL 2482152 (E.D. Cal. June 10, 2013) ................................... 18

Cont'l Ore Co. v. Union Carbide & Carbon Corp.
  370 U.S. 690 ................................................................... 12

Contreras v. Am. Family Mut. Ins. Co.
  135 F. Supp. 3d 1208 ........................................................... 18

Doe v. United States
  58 F.3d 494 .................................................................... 24

Dumas v. Major League Baseball Prop.
  104 F.Supp.2d 1220 ............................................................. 10

Gagnon v. State of Nevada, No. 2:13-CV-00528 (JAD) (PAL)
  2016 WL 2993599, at *1 (D. Nev. May 23, 2016) ............................... 24

Ghanem v. ADT Corp., 2016 U.S. Dist. LEXIS 55980
  at *8 (D. Nev. Apr. 26, 2016) ................................................. 18

Gibson v. United States
  781 F.2d 1334, 1337 (9th Cir.1986) ............................................ 2

Hale v. Burkhardt
  764 P.2d 866 ................................................................ 17, 18

Hemi Grp., LLC v. City of N.Y.
  N.Y., 559 U.S. 1 ............................................................ 10, 11

Hilton Hotels Corp. v. Butch Lewis Prods.
  808 P.2d 919, 922-23 (Nev. 1991) ......................................... 20, 21, 22

Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258 ................................. 10

In re Wal-Mart Wage & Hour Empl. Practices Litig.
  490 F. Supp. 2d 1091 ........................................................... 23

K Mart Corp. v. Ponsock
  732 P.2d 1364 (Nev. 1987) ..................................................... 21

Keel v. Schwarzenegger, No. CV0807591RMTVBK
  2009 WL 1444644 ............................................................. 7, 8, 9

Knevelbaard Dairies v. Kraft Foods, Inc.
  232 F.3d 979 ................................................................... 12

M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.
  193 P.3d 536 .................................................................... 5

Marceau v. Int'l Bhd. of Elec. Workers
  618 F. Supp. 2d 1127 ........................................................ 8, 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

Mendoza v. Zirkle Fruit Co.
   301 F.3d 1163, 1168 (9th Cir. 2002) .............................................. 3, 4, 5, 8, 9, 10, 11, 12, 13, 14
NOW v. Scheidler
   510 U.S. 249, 256 (1994)............................................................................................... 3, 11
Russello v. United States
   464 U.S. 16, 27 (1983) .................................................................................................... 3, 4
Shaw v. CitiMortgage, Inc.
   2016 U.S. Dist. LEXIS 109443, at *65 (D. Nev. Aug. 17, 2016) ...................................... 19, 20
Sierra Pac. Power Co. v. Anderson
   358 P.2d 892 ......................................................................................................................... 22
Stoddart v. Miller
   238 P.3d 845 (2008) .............................................................................................................. 18
United States v. Rock Springs Vista Dev. Corp.
   No. CV-S-97-1825(JBR) (RLH), 1999 WL 1491621, at *1 (D. Nev. July 2, 1999) ............... 24
Venzor v. Gonzalez
   936 F. Supp. 445 ................................................................................................................... 11
Williams v. Mohawk Indus., Inc.
   465 F.3d 1277 ....................................................................................................................... 10

**Statutes**
18 U.S.C. § 1964 (Civil RICO)................................................................................... 4, 16, 18
18 U.S.C. §§ 1962(c) ............................................................................................................ 10
Fed. R. Civ. P. 8 .................................................................................................................... 14
Local Rule IA 7-3................................................................................................................... 15
Nev. Rev. Stat. § 175.261 ...................................................................................................... 18
Nev. Rev. Stat. § 205.377 ...................................................................................................... 16
Nev. Rev. Stat. § 205.380 ...................................................................................................... 18
Nev. Rev. Stat. § 207.360 ................................................................................................. 15, 17
Nev. Rev. Stat. § 207.390 ...................................................................................................... 15
Nev. Rev. Stat. §§ 207.470, 207.400 ...................................................................................... 15
Restat. 2d of Torts, § 496B .................................................................................................... 23

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

Case No.: 2:17-cv-00085-JAD-CWH

Plaintiff, MARK HUNT ("Hunt"), submits this memorandum of points and authorities in opposition to the motion to dismiss filed by Defendants, ZUFFA, LLC ("UFC"), and its President, DANA WHITE ("White").

## I. <u>INTRODUCTION</u>

Hunt, a mixed-martial arts fighter under exclusive contract with UFC, was injured by another fighter (defendant BROCK LESNAR ("Lesnar")[1] on July 9, 2016, in a high-profile, "Main Event" fight promoted by UFC.  Hunt - a "clean" fighter who does not use banned performance-enhancing substances - lost the fight and opportunity to advance his brand and business interests in a fair fight, as a result of Defendants' scheme as alleged in Hunt's complaint ("Complaint").  In the process, Hunt sustained damage to his professional reputation and career, because UFC conspired to have him fight the illegally-enhanced Lesnar, whom UFC *knew* to benefit from multiple banned substances that increase one's strength and other attributes useful in hand to hand combat.  On that basis, Hunt sued Defendants, asserting causes of action for fraud, breach of contract, negligence, unjust enrichment, and RICO violations (engaging in a scheme to secretly employ "doped" fighters to increase ticket and pay-per-view revenue, all at the expense of honest, clean fighters like Hunt).

UFC and White have now filed a motion to dismiss Hunt's Complaint, arguing, in essence, that: (1) Hunt cannot state a RICO claim because he does not allege any specific injury to "business or property"; (2) Hunt cannot state any tort claims because he "fails to allege with the required particularity any specific false representation upon which [he] relied . . . or the concrete financial loss necessary to support" a claim; (3) Hunt cannot state any contract claims because he "never identifies a single provision of the parties' contracts that was purportedly breached"; and (4) Hunt's negligence claim is barred by the doctrine of assumption of the risk.

The motion filed by UFC and White is misguided at the outset in that it attempts to claim, as a matter of *fact*, some high moral ground in the battle against doping in professional sports, but fails at this pleading stage of the lawsuit to accept the detailed (and damning) allegations of the Complaint as true.  Thus, UFC and White blindly neglect the multiple allegations in the Complaint that specifically

---

[1] Lesnar has not agreed to accept service in this action.  Hunt is serving him in Saskatchewan, Canada, pursuant to The Hague Service Convention.  For purposes of this motion, "Defendants" refers to UFC and White.

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

1

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1   allege damage to property, false representations by Defendants, and detailed conduct by UFC that

2   constitutes a breach of its contracts with Hunt and frustrate the purpose of those contracts.  For these

3   reasons, the motion to dismiss fails and should be *denied* in its entirety.

## II.  <u>DEFENDANTS APPLY THE WRONG LEGAL STANDARD</u>

5       "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

6   true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7   "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task

8   that requires the reviewing court to draw on its judicial experience and *common sense*."  *Id.* at 679

9   (emphasis added).   "While legal conclusions can provide the framework of a complaint, they must be

10  supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume

11  their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id.*

12  "Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in

13  support of his claim which would entitle him to relief.'"  *Gibson v. United States*, 781 F.2d 1334, 1337

14  (9th Cir.1986) (citation omitted).

15      Defendants properly cite the well-known pleading standard from *Iqbal* and *Twombly*.  ECF No.

16  11 at 9:10-18. (citing *Iqbal*, 556 U.S. at 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

17  However, Defendants fail to apply this standard in their motion.  Instead, they vigorously attempt to

18  disprove Hunt's well-pleaded claims.  In doing so, Defendants seemingly urge the Court to adopt a novel

19  legal theory requiring Hunt to *prove* his claims at this pleading phase.  Further, notwithstanding their

20  improper attempt to introduce several documents outside the Complaint by judicial notice, this is not a

21  motion for summary judgment.  Hunt is required to state a claim - nothing more.

22      Defendants' opposition is misguided because it urges the Court to adopt a standard that is the

23  exact opposite of that set forth in *Iqbal*.  That is, it ignores Hunt's well-pleaded factual allegations and

24  focuses only on the legal framework of the Complaint.  *See, e.g.*, ECF No. 11 at 17:21 (arguing Hunt

25  only "parrots" statutory elements); ECF No. 11 at 19:22 (claiming Hunt alleges breach of contract in

26  "conclusory fashion").  Specifically, Defendants repeatedly make the erroneous assertion that Hunt fails

27  to properly allege damages or causation, overlooking the fact that each claim incorporates by reference:

28  1) Background Information, 2) Summary of Allegations, and 3) Factual Allegations Common to All

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

2

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1   Causes of Action.  *See* ECF No. 1 at ¶¶ 11-88; *see also* ECF No. 1 at ¶¶ 117, 118 (incorporating by

2   reference previous allegations in the Complaint *and* "the below [fraud and false pretenses claims]").[2]

3   Thus, Defendants' analysis begins with the premise that the Court will ignore more than one-third of

4   Hunt's twenty-seven (27) page complaint.  Federal Rule of Civil Procedure ("Rule") 8 does not require

5   Hunt to copy and paste factual allegations under the heading of each claim.  Fed. R. Civ. P. 8(a) (requiring

6   only a short plain statement of jurisdiction and entitlement to relief, and a demand for the relief sought).

7   Applying the correct legal standard, Hunt's Complaint is well-pleaded and more than plausibly states

8   entitlement to relief as to each claim.[3]

9   ### III.   HUNT'S RICO CLAIM IS WELL-PLEADED (FIRST CLAIM)

10          As noted by Justice Blackmun in *Russello v. United States,* Congress directed that the RICO

11   statute "shall be liberally construed to effectuate its remedial purpose."  464 U.S. 16, 27 (1983)

12   (affirming the Circuit court's expansive interpretation of the word "interest" in the RICO statute).  "In

13   the RICO context, '[a]t the pleading stage, general factual allegations of injury resulting from the

14   defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace

15   those specific facts that are necessary to support the claim.'"  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d

16   1163, 1168 (9th Cir. 2002) (citing *NOW v. Scheidler*, 510 U.S. 249, 256 (1994)).  Thus, as opposed to

17   the fraud claims, discussed below, a RICO "injury [to business or property] resulting from the

18   defendant's conduct" may be generally alleged.  *See id.*

19          Hunt alleges Defendants caused injury to his professional "reputation, title contention, and future

20   earning capacity," as well as "lost opportunity of career advancement, lost opportunity to fight and win

21   fair bouts, and the lost opportunity to further his earning potential including advancement to title fights

22   and promotional and marketing opportunities."  ECF No. 1 at ¶¶ 69, 78 (incorporated by reference in the

23   RICO claim).

24          As Defendants are no doubt aware, *and Hunt is not required to specifically allege*, Hunt is a

25   well-known professional fighter.  *Mendoza,* 301 F.3d at 1168; *see* ECF No. 1; ECF No. 11 at 1:20.

---

[2]  Defendants' oversight or inconsistency with the doctrine of incorporation by reference is highlighted by the fact that they belabored the point in their concurrently filed request for judicial notice.  ECF No. 12.

[3]  As noted in the Complaint, Hunt's claims are not only well-pleaded, but also well-supported.  With few exceptions for allegations made on information and belief, Hunt's factual allegations are made on his personal knowledge, investigation of counsel, or documents acquired via public records requests.  ECF No. 1 at 2:7-9.

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

3

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

Earlier in his career, Hunt was commonly known as "The Doctor," a nickname he received for "prescribing sleeping pills" to his opponents by virtue of his one-punch knockout power. More recently, Hunt has gone by the nickname "Super Samoan", which is prominently tattooed on his back and is highly visible during his bouts. Hunt maintains a large fan and consumer base in the United States, and his brand is also highly regarded in Japan, where he previously won the K-1 World Grand Prix in 2001, a premier kickboxing event. Hunt is the Director of Juggernaut, "Apparel & Fight Gear by Mark Hunt." Juggernaut, *About*, www.jugnt.com/about/ (last visited Mar. 18, 2017). His fighting style is described as: "sheer power, technical boxing prowess, and a great jaw." *Id.* Hunt's damages go to the core of his brand, reputation and profitability as a professional fighter. Although Hunt is not required to allege each of these facts at the pleading stage, they demonstrate that he has a good faith basis for his allegations of injury to his business and property interests, which will be proven at the time of trial. The Court is not required to ignore the obvious truth that is a major part of Hunt's damages - losing bouts is bad for business. Standing is perfected when that harm is caused by a pattern of RICO conduct. As discussed further below, the proliferation of doping in professional MMA has depressed wages for clean fighters, in that it artificially increases the number of fighters able compete at a world-class level, which they could otherwise not attain without the benefit of banned performance enhancing drugs.

A.      **Hunt Has Alleged Injury to Business *And* Property Interests**

Defendants identify the correct injury standard: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . " 18 U.S.C. § 1964 (Civil RICO). Interest is not a specifically defined term in the RICO statute. *Russello*, 464 U.S. at 21. For RICO purposes, the United States Supreme Court has defined "interest" as "[t]he most general term that can be employed to denote a right, claim, title or legal share in something." *Id.*

Defendants focus only on the Nevada state law definition of property interest. ECF No. 11 at 11:11-15. They justify this oversight by noting a RICO business or property interest is "typically determined by reference to state law." ECF No. 11 at 11:7. The United States Supreme Court and Ninth Circuit Court of Appeals ("Ninth Circuit") both demonstrate state law "business or property interest" definitions are *additional or alternative* bases for stating a RICO injury. *See e.g. Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) (rejecting defendants' contention that plaintiff must allege a

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

4

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1   lost property right, and noting plaintiff need only allege "a legal entitlement to business relations

2   unhampered by schemes prohibited by the RICO predicate statutes").  Therefore, as explained in detail

3   at Part III.A.1., *infra*, a RICO injury can be alleged pursuant to state law *or* by alleging injury to an

4   interest already recognized by the United States Supreme Court or Ninth Circuit, within the plain

5   meaning of the RICO statutes.  *See id.*; *see also Bulletin Displays, LLC v. Regency Outdoor Advert.,*

6   *Inc*., 518 F. Supp. 2d 1182, 1191 (C.D. Cal. 2007) (holding loss of opportunity to compete due to alleged

7   collusion stated RICO standing).

8           Defendants cite *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd*., 193 P.3d 536, 543

9   (2008), for the proposition that Hunt does not state a recognized property interest.  Defendants' reliance

10  on *M.C.* is misplaced for two reasons.  First, it repeatedly and expressly notes its 3-prong analysis applies

11  to *personal property*, and Defendants ignore the injury to "business" portion of the (disjunctive) RICO

12  injury statute.  *Id.* at 911-912.  Second, there is no need for this Court to apply Defendants' proffered 3-

13  prong analysis, because the Supreme Court and Ninth Circuit have already expressly recognized the

14  RICO injury alleged by Hunt.  Although only one is required, Hunt has pleaded at least two categories

15  of RICO "injury to business or property": (1) injury by lost opportunity to acquire a valuable right

16  (*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008)); and (2) lost legal entitlement to

17  business relations (*Mendoza,* 301 F.3d at 1163).

         *1.*     ***Hunt Alleges the Lost Opportunity to Acquire Valuable Rights***

18          In 2008, the United States Supreme Court held the *opportunity* to submit a bid for the right to

19  acquire a valuable tax lien was an injury to "business or property."  *Bridge,* 553 U.S. at 648.[4]  The Court

20  emphatically and unequivocally rejected Defendants' assertion that lost opportunities are not legally

21  cognizable RICO injuries.  *Id.*  Rather than citing Justice Thomas' opinion directly on point, Defendants

22  forego any citation at all and declare "[n]one of [Hunt's] categories of purported [lost opportunity]

23  damages constitutes a cognizable business or property interest under well settled RICO jurisprudence."

24  ECF No. 11 at 11:20-21.  Defendants quickly shift to attacking the straw man argument that "personal

25  injuries" are a disfavored RICO injury.

26          In *Bridge,* the County Treasurer's Office held public auctions to sell tax liens on property of

27  _____

28  [4] Defendants make only a cursory mention of Hunt's purported failure to allege a reliance element of RICO.  It is
    appropriately not substantively discussed in Defendants' RICO analysis.  *Bridge*, *supra*, also holds the RICO fraud
    predicate does not require the element of reliance.  *Id.* at 661.

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

5

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

delinquent taxpayers. *Bridge,* 553 U.S. 642.  There was a competitive bidding process whereby the winning bidder would gain the right to purchase a valuable tax lien, which could be resold at a significant profit.  *Id.*  The bidding system operated such that the more bids an entity submitted, the higher the likelihood it would be awarded a winning bid.  *Id.*  This system created a "perverse incentive" to have entities send agents to bid on its behalf to increase the opportunity for success.  *Id.*  The county then implemented a "Single, Simultaneous Bidder Rule" disallowing multiple agents of the same entity from bidding to rig the system.  *Id.* at 644.  Plaintiff-petitioners were regular participants in the county tax lien auctions, and alleged defendants cheated the system by skirting the Single Bidder Rule by filing false affidavits of compliance.  *Id.*  As a result, plaintiffs alleged they were deprived of their opportunity to win a fair share of liens and attendant financial benefits.  *Id.* at 644, 647.

The district court granted defendants' motion to dismiss on standing grounds for want of a "financial loss."  *Id.* at 645.  The Court of Appeals for the Seventh Circuit reversed, finding "[plaintiffs] suffered a 'real injury' when they lost the valuable chance to acquire more liens . . . ."  *Id.*  The United States Supreme Court affirmed, finding "[plaintiffs] lost the opportunity to acquire valuable liens.  Accordingly, [plaintiffs] were injured in their business or property by reason of defendants' violations of § 1962(c), and RICO's plain terms give them a private right of action for treble damages."  *Id.* at 648.  *Bridge* holds a lost opportunity for financial gain is a RICO injury.

Defendants' reliance on *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1087 (9th Cir. 2002), for the proposition that Hunt alleges only intangible "hope" is completely misguided.  *Chaset* concerned plaintiffs suing baseball trading card companies when they failed to draw certain valuable trading cards from randomly assorted trading card packs.  *Id.*  The odds (statistical probability) of receiving one of the more valuable trading cards was displayed on the trading card pack.  *Id.* at 1086. Plaintiffs compared it to illegal gambling, a RICO predicate.  *Id.* at 1087.  The court rejected this theory and concluded that plaintiffs were awarded exactly what they bargained for - a random chance that their pack of cards would contain one of the valuable baseballs cards.  *Id.*  Here, Hunt's allegations are completely different.  He has not merely alleged a loss in a contest of pure chance.  Rather, Hunt alleges he was deprived of the opportunity to fight on a level playing field and the chance to win bouts free from Defendants wrongfully manipulating the odds by intentionally pitting him against dopers.  ECF No. 1 at ¶¶ 69, 97, 98, 103.

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

6

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1  Here, Hunt has unequivocally alleged multiple opportunities and "attendant financial benefits."

2  *Bridge,* 553 U.S. 644, 647.  He particularly alleges the lost opportunity to advance his career,

3  professional reputation and brand, opportunity for higher-paying title fights, promotional and marketing

4  opportunities and the respective attendant benefits of each.  This is in addition to the tangible injury to

5  his body, which represents more than just routine personal injury. Hunt's body is a physical, tangible

6  tool-of-the-trade for a professional fighter, no different than a construction worker's tools or a retailer's

7  stock of goods.[5]  Notably, however, Hunt alleges that the lost opportunity itself is the RICO injury, which

8  occurs when "Defendants cause[] a doping competitor . . . to fight a clean fighter," Hunt.  Thus, that lost

9  opportunity constitutes a RICO injury to business or property the moment Hunt steps into the octagon

10  with the doping opponent (or even sooner, see discussion *infra* Part III.B.).  Hunt has also alleged the

11  attendant financial benefits as an "economic" loss, "future earning capacity," and "monetary benefits"

12  lost due to the RICO scheme.  ECF No. 1 at ¶¶ 19, 95.  Defendants' motion incorrectly claims Hunt must

13  "guarantee[] that [he] would have prevailed in his bout with Lesnar at UFC 200 even if the latter had not

14  tested positive . . . ."  ECF No. 11 at 12:11-12.  This analysis flies in the face of *Bridge*.  The result of

15  the bout is immaterial for purposes of identifying a lost opportunity, which arises before the first punch

16  is thrown.  No one will argue Hunt was entitled to or "guaranteed" a win and title bouts simply by

17  fighting; but, under the circumstances alleged in his Complaint, Hunt *is* entitled to his fair opportunity

18  to earn and acquire those valuable rights, without illegal interference from Defendants.  Defendants not

19  only fall short of the legal standard in *Bridge*, but they fail to abide by the Nevada Athletic Commission

20  ("NAC") standards and Defendants' own representations.

21  *Keel v. Schwarzenegger*, No. CV0807591RMTVBK, 2009 WL 1444644, at *1 (C.D. Cal. May

22  19, 2009), cited by Defendants, is indeed instructive on these points.  However, *Keel* defeats Defendants'

23  own argument.  Defendants quote from *Keel* that "Plaintiff does not allege that he actually lost

24  employment or employment opportunities because he was falsely imprisoned and forced to defend

25  against unjust charges."  ECF No. 11 at 12:23-25.  In contrast, Hunt alleged that he has *actually lost* a

26  business opportunity, as he specifically alleges he lost the opportunity to compete in title fights, which

27

28  [5] Hunt suffered 137 total strikes and 51 "significant strikes" from the doping Lesnar.  This opposition explains why Hunt's various injuries and damages are legally cognizable.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

7

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1   are worth the increased amount of **$850,000.00 to $1,000,000.00 per fight, pursuant to an *actual***

2   ***contract provision executed by Hunt and Defendants, at Article VI, 6.1A, subparts (ii) and (iii)***.

3   ECF No. 1 at Appendix (Promotional and Ancillary Rights Agreement, ("PARA")).   As such, Hunt has

4   stated an even stronger, and more tangible financial injury than the lost opportunity alleged in *Bridge*.

5   Here, the lost opportunity is memorialized in a signed contract.   *Id.*   Thus, that injury is "concrete" and

6   not prospective.   Contrary to Defendants' assertion, Hunt is not required to "guarantee" his lost

7   opportunity would have led to a victory over Lesnar and a subsequent title bout.   He was deprived of the

8   opportunity to compete in a fight free from RICO manipulation and the attendant financial benefits.   To

9   the extent there is any conflict in the required pleading specificity for the RICO injury element, the Ninth

10   Circuit's *Mendoza* opinion is binding on this issue notwithstanding Defendants' citation to the *Keel*

11   district court opinion.   *Mendoza*, 301 F.3d at 1168 (finding in the RICO context "general allegations

12   embrace those specific facts that are necessary to support the claim").

13         A district court reached the same conclusion applying *Bridge* to another form of lost business

14   opportunity.   *Marceau v. Int'l Bhd. of Elec. Workers*, 618 F. Supp. 2d 1127, 1166 (D. Ariz. 2009).[6]   In

15   *Marceau,* plaintiff-salespersons alleged their employer was manipulating account assignment functions

16   so that union representatives were given the most profitable accounts and resulting commissions.   *Id.* at

17   1138-1139.   The court determined this differing treatment and failure "to provide Plaintiffs with the same

18   opportunities" constituted a RICO injury to a business interest.   *Id.* at 1166.   The court noted the lost

19   opportunity was a "thing[] of value" that was alleged to be "wrongfully funneled to the Union Agents."

20   *Id.*   The court also clarified that a "concrete loss" only required "*some*" damage, and defendants' contrary

21   arguments went only to the amount and not the existence of damage.   *Id.* (italics in original).   Like the

22   *Bridge* analysis, *Marceau* is applicable here, as Hunt alleges multiple categories of concrete lost

23   opportunities, which have been wrongfully "funneled" to doping competitors.   *See* ECF No. 1 at ¶¶ 19,

24   38, 74, 78, 87, 94, 96.   Those opportunities diverted to doping fighters are opportunities that rightfully

25   belong to clean fighters, like Hunt.   Civil RICO is a proper avenue for redress.

26         Hunt's other lost opportunity allegations state a RICO injury for the same reasons.   The lost

27

28   _____

[6] In addition to a "lost opportunity," the *Marceau* reasoning is equally applicable to "lost wages," which is discussed in the next section.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

8

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    marketing and promotional opportunities "embrace those specific facts necessary to support [his] claim."

2    *Mendoza,* 301 F.3d at 1168 (citing *NOW,* 510 U.S. at 256).   Hunt could, in good faith, for example,

3    allege he would have sold more Juggernaut brand T-shirts absent Defendants' wrongful conduct.   He is

4    not required to so specifically allege these lost opportunities at this stage.   *NOW,* 510 U.S. at 256;

5    *Mendoza,* 301 F.3d at 1168.   Hunt is not the unemployed, incarcerated plaintiff from *Keel.*   He has an

6    existing brand as a professional fighter, and as the "Super Samoan," he sells related fight apparel.

7        Because the United States Supreme Court and Ninth Circuit both recognize the lost opportunities

8    alleged by Hunt, Defendants' motion to dismiss this claim must be denied.

9        ### 2.   *Hunt Has a Legal Entitlement to Unhampered Business Relations*

10       Hunt alleges economic damages, past and future lost income, and that Defendants wrongfully

11   obtained his labor and services.   ECF No. 1 at ¶¶ 19, 69, 78, 94.   His Complaint is a plain statement of

12   an injury to a RICO business or property interest.   In the verbiage of the Ninth Circuit, Hunt alleges "a

13   legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate

14   statutes," regardless of state law definitions of "property rights."   *Mendoza,* 301 F.3d at 1168, n.4.

15       In *Mendoza,* agricultural farmworkers ("Workers") sued grower-defendants ("Growers") for a

16   RICO scheme of employing "workers of illegal status," which depressed wages and operated to the

17   economic detriment of persons legally authorized to be employed in the United States.   *Mendoza,* 301

18   F.3d at 1166.   "According to the complaint, the scheme is facilitated by Selective Employment Agency,

19   Inc., a separate company that employs the workers and then 'loans' them to the growers," in an attempt

20   to be "shielded by charges" by this "front company."   *Id.* at 1167.   Growers filed a motion to dismiss.

21   *Id.*   The district court granted the motion, deciding that although the injury was "direct" the RICO

22   damages were "too speculative and difficult to ascertain."   *Id.*   The Ninth Circuit reversed.   *Id.* at 1175.

23       The court first addressed standing.   *Id.* at 1168.   The court acknowledged that Workers had

24   alleged an injury to their property in the form of lost wages.   *Id.*   Growers suggested that employees

25   should have to show a "property right" in lost wages, by showing they were promised or contracted for

26   higher wages.   The court stated Growers' "argument is misplaced in the context of RICO."   *Id.* at 1168,

27   n. 4.   The court held "what is required is precisely what the employees allege here: **a legal entitlement**

28   **to business relations unhampered by schemes prohibited by the RICO predicate statutes.**"   *Id.*

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

9

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    (citing 18 U.S.C. §§ 1962(c), 1961(1); *Dumas v. Major League Baseball Prop.*, 104 F.Supp.2d 1220,

2    1222 (S.D.Cal.2000) (emphasis added)).  Notably, the court's explanation and citation is to the RICO

3    statute itself.  *See id.*  Workers were not required to prove a state law right to lost wages.[7]  *Id.*

4    Accordingly, the court reversed the district court ruling and found Workers had RICO standing.  *Id.; see*

5    *also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1285 (11th Cir. 2006) (citing *Mendoza, supra*)

6    (finding injury by employer's alleged practice of employing illegal workers depressing legal workers

7    wage is a business interest; the court reached this conclusion without reference to state law), *overruled*

8    *on other grounds*.

9        Like "legal versus illegal" workers in *Mendoza*, Hunt has alleged Defendants conspired to pit

10   doping fighters against clean fighters, causing economic harm to Hunt.  *See e.g.* ECF No. 1 at ¶¶ 19, 69,

11   78, 94.  Unlike Workers though, Hunt also has a contractual right to the lost wages, which is "concrete"

12   as set forth in the Article VI, 6.1A, subparts (ii) and (iii) of the PARA.  ECF No. 1 at PARA.  Moreover,

13   Hunt has existing marketing and promotional opportunities that he has alleged were directly harmed by

14   Defendants' RICO scheme, which constitutes an even greater harm than that alleged by the Workers.

15   *See, e.g.* ECF No. 1 at ¶ 78.  Finally, like *Mendoza*, the Court should reject Defendants' attempt to hide

16   behind a "front company."  *See* ECF No. 11 at 3:16-17.  Hunt has not named USADA as a defendant

17   and has not alleged USADA is participating in Defendants' RICO enterprise.  Hunt merely highlights

18   this factual similarity to establish that Defendants' attempt to "shield" itself with USADA is an untenable

19   RICO defense, as confirmed by the Ninth Circuit Court of Appeals.

20   **B.    Hunt Properly Alleges Causation**

21       Defendants correctly note the proximate cause standard for RICO causation, but fail to identify

22   the established proximate cause factors.  *See Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010);

23   *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  "Proximate cause, . . . is a flexible concept

24   that does not lend itself to 'a black-letter rule that will dictate the result in every case.'"  *Bridge,* 553

25   U.S. at 654.  Proximate cause is used to "label generically the judicial tools used to limit a person's

26   responsibility for the consequences of that person's own acts."  *Holmes*, 503 U.S. at 268.  The Ninth

27   Circuit focuses on three non-exhaustive factors in considering causation:

28

---

[7] As discussed in the next section, Hunt has nevertheless stated state law business and property injuries.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

10

Case No.: 2:17-cv-00085--JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

*(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general;*
*(2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and*
*(3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.*

*Mendoza*, 301 F.3d at 1169.  Defendants' causation analysis misstates the injury Hunt alleges. As even Defendants will agree, the proximate cause inquiry considers whether the wrong caused the harm.  ECF No. 11 at 14:2-3 (citing *Hemi Group*, 559 U.S. at 17-18.)  As set forth fully above, Hunt alleges lost opportunities and the lost opportunity to acquire valuable rights and a legal entitlement to business relations unhampered by RICO schemes.  *See, e.g.* ECF No. 1 at ¶¶ 19, 38, 74, 78, 87, 94, 96. Defendants narrowly focus on UFC 200, when Hunt alleges an ongoing course of conduct, including UFC 152 in 2012.  ECF No. 1 at ¶¶ 28-38, 108.  Hunt alleges that the totality of the RICO enterprise and its conduct injured his business and property interests.  See discussion *supra* Part III.A.1-2.; *Venzor v. Gonzalez*, 936 F. Supp. 445, 452 (N.D. Ill. 1996) (denying motion to dismiss RICO claim brought by boxing promoter for fight fixing where plaintiff "expressly allege[d] that he suffered injury to his business and property as a "proximate result" of each RICO violation" and noting proof of the claim is not required at the pleading stage.)

Even as applied to UFC 200, which is too narrow an application, the injury to Hunt occurred prior to the beginning of the fight because his opportunity at a level playing field was already compromised by the time he stepped inside the octagon with Lesnar.  *See* discussion *supra* Part IIIA.1. Thus, by erroneously extending the causal chain to July 19, 2016, Defendants present an absurd eleven (11) step process in an effort to make causation appear "indirect" or attenuated.  ECF No. 11 at 14:19-15:4.  Hunt has pleaded the predicate fraud with particularity, but he is not required to plead his RICO injury with particularity.  *Mendoza*, 301 F.3d at 1168 (citing *NOW*, 510 U.S. at 256.)  Therefore, Hunt's specific allegations of wire fraud[8] and the direct lost business opportunities and lost legal entitlements state a claim recognized in *Bridge* and *Mendoza.*[9]

---

[8] As set forth in Hunt's complaint, defendant Lesnar has publicly admitted to acts in furtherance of the RICO conduct alleged by Hunt, and Hunt's Complaint states he will acquire those communications via discovery and seek leave to amend his Complaint at that time.  ECF No. 1 at ¶ 107(b).  This section discusses, however, why the Complaint is sufficiently pleaded even without alleging further RICO predicate acts.

[9] Again, Defendants make a cursory reference to fraud "reliance" as an element of RICO causation.  ECF No. 11 at

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

11

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

As in *Mendoza*, Hunt alleges a direct injury because of the illegal RICO doping scheme.  ECF No. 1 at ¶¶ 10, 69, 74, 78, 113.  Defendants disagree.  ECF No. 11 at 13:17-16:2.  These are "disputed claims of causation and injury [that] cannot be decided on a Rule 12(b)(6) motion.  *Mendoza*, 301 F.3d at 1169 (citing *Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 990 (9th Cir. 2000) (finding proximate causation sufficiently pleaded where plaintiff alleged cheese producers restrained the market on milk by artificially manipulating cheese prices).  "The law requires that every conspiracy be judged as a whole."  *Knevelbaard Dairies*, 232 F.3d at 990 (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 699 (1962).  "[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."  *Knevelbaard Dairies*, 232 F.3d 990–91 (citations omitted).  This is exactly what Defendants attempt to do by offering a hyper-technical causation analysis and manufacturing an illogical causal chain that is contrary to RICO jurisprudence.  *See id.*  **"[W]here a plaintiff is injured by one facet of a multi-faceted conspiracy he is entitled to damages regardless of whether the other facets of the defendants' collusion had any economic impact on him."**  *Id.* (emphasis added).  As such, Defendants' attempt to distance themselves from UFC 152, ECF 11 at 14:9-12 (arguing the UFC 152 RICO conduct is too remote), is precluded by *Knevelbaard Dairies*.  Similarly, any argument that Hunt was not injured by UFC 152 also fails.  *See id.*

### 1.    First Factor: There Is No More Direct Victim Than Hunt

This factor is indistinguishable from *Mendoza* where the court stated, "[t]urning to the first factor, taking the allegations in the complaint as true, we are unable to discern a more direct victim of the illegal conduct."  *Mendoza,* 301 F.3d at 1171.  Hunt alleges economic injury as a "direct result" of Defendants' RICO conduct.  ECF No. 1 at ¶¶ 10, 69, 74, 78, 113.  While Hunt may accept or decline certain fights pursuant to the PARA, the selection of Hunt's opponents is exclusively within the control of Defendants.  Hunt's last four opponents were caught doping or had a pre-existing history of doping: Antonio Silva, Frank Mir, Lesnar, and Alistair Overeem.  There is no more direct victim than Hunt.

---

14:16-17.  No such element exists for RICO purposes.  The United States Supreme Court resolved a circuit conflict on this issue in 2008.  *Bridge,* 553 U.S. 639.

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

12

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    Like *Mendoza*, there is also disproportionate bargaining power, as Hunt alleges the UFC controls

2    nearly ninety percent (90%) of MMA revenue worldwide.  ECF No. 1 at ¶ 11.  This is evidenced by the

3    clearly lopsided, and likely unconscionable, PARA.  Indeed, there appears to be no other potential

4    plaintiff that can "be counted on to bring suit for the law's vindication."  *Mendoza*, 301 F.3d at 1170.

5    Hunt has standing as a direct victim, and is uniquely situated to bring this claim as Defendants' continue

6    to match Hunt against known dopers.

### 2.    Second Factor:  The Injury is Attributed to Defendants' Conduct

8    In *Mendoza,* the district court noted intervening factors could have affected plaintiffs' pay, even

9    in the absence of the RICO scheme.  *Id.*  These potential intervening factors included wages paid by

10   other employers, the skill and qualification of each plaintiff, the profitability of defendants' businesses

11   without the undocumented workers, and general availability of documented workers in the area.  *Id.*  On

12   appeal, the Ninth Circuit noted the district court's error, stating "[i]n other words, the district court

13   dismissed the complaint based on the conclusion that factors other than the scheme coupled with the

14   growers' power in the relevant labor market *could* account for the plaintiffs' depressed wages."  *Id.* at

15   1171 (emphasis in original).  The court noted that reasoning was flawed considering the market power

16   of defendants.  *Id.* Here, too, the UFC wields unrivaled power in the sport of MMA.  ECF No. 1 at 11.

17   The Ninth Circuit acknowledged it should defer to the well-pleaded allegations of the complaint, which

18   "spell[ed] out a broad conspiracy causing direct harm to the [plaintiffs]."  *See id.*  The court's analysis

19   on this factor stressed the procedural posture, noting "it is inappropriate at this stage to substitute

20   speculation for the complaint's allegations of causation."  *Mendoza,* 301 F.3d 1171.   Hunt "must be

21   allowed to make [his] case through presentation of evidence, including experts who will testify about the

22   [MMA-related] market, and the effects of the illegal scheme."  *Id.; see also Marceau*, 618 F. Supp. 2d

23   at 1168 (holding "uncertainty [of the fact of damage and amount of damage] at the motion to dismiss

24   stage need not foreclose the plaintiff's attempt to ascertain proximate cause and the amount of damage

25   attributable to the alleged RICO violation as opposed to intervening factors").

26   Defendants' opposition ignores the lesson from *Mendoza* and offers alternative outcomes that

27   *could account* for Hunt's economic damages, rather than accepting as true Hunt's well-pleaded factual

28   allegations.  Thus, Defendants' proffered "contingencies" are irrelevant pursuant to *Mendoza*.  ECF No.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

13

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

11 at 15:17-25.  Accordingly, the Court should decline Defendants' invitation to speculate as to whether Hunt would have defeated a "clean" Lesnar at UFC 200, and if he would have advanced his position for a title fight or sold more apparel.  See *id.*

### 3.   Third Factor:  There is Zero Risk of Multiple "Passed-On Harm" Recovery

There is no risk of multiple recoveries in this case.  Defendants appear to concede this point as it is not addressed in their motion.  Presumably, they will not identify further potential plaintiffs, which would further uncover Defendants' RICO conduct.  While other plaintiffs may potentially exist, "[n]o other potential plaintiffs emerge with clarity."  See *id.* (finding third factor lacked any significant risk of multiple recovery).  Furthermore, even if other plaintiffs emerge, the damages alleged by Hunt are unique to him, his brand and associated lost opportunities.  This is because he alleges a "direct" harm and not a suit for derivative or passed-on harm.  *Id.*

Each of these three factors establish Hunt has satisfied the pleading standard on causation.

## C.   The Complaint Alleges White is as Culpable as the UFC

Hunt's complaint expressly defines "Defendants" to include Dana White.  ECF No. 1 at 2:2-5.  The word "Defendant(s)," exclusive of respective pronouns, appears sixty-five (65) times in the Complaint, contrary to Defendants' disingenuous argument and arithmetic.  *Compare* ECF No. 1 at 2:2-5 *with* ECF No. 11 at 16:17 (incorrectly asserting White is only referenced four times).

Defendants strain to convince the Court that White's affirmative misrepresentation in an ESPN interview was a mere *deflection*.  ECF No. 11 at 7:14, 14:19.  This argument fails for two reasons.  First, this argument ignores the legal standard controlling this motion.  The Court must accept Hunt's common sense assertion over Defendants' creative deflection theory.  *Iqbal*, 556 U.S. at 679.  Second, the interview Defendants reference is not part of the record before the Court.[10]  While Hunt included certain hyperlinks to provide context and convenience, the text of Hunt's allegation at paragraph fifty-one (51) controls - "White provided an untruthful" statement about Lesnar's UFC return.  ECF No. 1 at ¶ 51.  The Federal Rules of Civil Procedure and Local Rules preclude any other conclusion.  Fed. R. Civ. P. 8;

---

[10] "Neither a hyperlink nor any site to which it refers will be considered part of the official record.  Hyperlinks are simply convenient mechanisms for accessing material cited in a filed document. If a party wishes to make any hyperlinked material part of the record, the party must attach the material as an exhibit." Local Rule IA 7-3. The complaint did not attach as an exhibit any hyperlinked materials.  See ECF No. 1.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7897504.1

14

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

Local Rule IA 7-3.   Hunt has far exceeded the threshold requirement of only two predicate acts to state a RICO claim as to each Defendant.

## IV. DEFENDANTS CONCEDES HUNT PROPERLY PLEADED NEVADA'S RICO ANALOGUE (SECOND CLAIM)

Nevada's RICO statutes are far broader than their federal counterparts.   Nevada law defines a "crime related to racketeering" by a list of thirty-five (35) crimes enumerated by statute.   Hunt has alleged four such crimes constitute predicate acts supporting his Nevada RICO claim: (1) Taking property from another under circumstances not amounting to robbery; (2) Obtaining possession of money or property valued at $650 or more, or obtaining a signature by means of false pretenses; (3) Multiple transactions involving fraud or deceit in the course of enterprise or occupation; and (4) Battery which is punished as a felony.   Nev. Rev. Stat. § 207.360, subd. (9), (26), (33), and (4).   "Racketeering activity" is defined as "engaging in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents" within a five-year period. Nev. Rev. Stat. § 207.390.   Nevada's statutory scheme provides a private right of action for treble damages to any person injured in his business or property by reason of the racketeering activity.   Nev. Rev. Stat. §§ 207.470, 207.400.

Defendants contend this claim fails because Hunt cannot establish his federal RICO predicate violations, nor his state law predicate violations.   ECF No. 11 at 19:8-10.   As discussed immediately above, Hunt's federal RICO claim is well-pleaded, including its wire fraud predicates.   As to the state law predicate violations, Defendants completely fail to substantively address battery and taking property from another under circumstances not amounting to robbery.   Nev. Rev. Stat. § 207.360, subd. (4), (9). They offer only a one sentence footnote.   ECF No. 11 at 19, n. 12.   For this reason alone, the Court should deny Defendants' motion as to this claim for knowingly failing to address it, and failing to put Hunt on notice of any claimed deficiency.   Nevertheless, both predicate acts are well-pleaded.   Each expressly incorporates the detailed factual allegations of the complaint and the federal RICO claim.   They establish that Hunt never consented to fight doping competitors, and it further describes Defendants' deprivation of property.   These predicate acts alone perfect Hunt's state law RICO allegations.   The

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

15

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    additional predicate violations of fraud and false pretenses are nevertheless discussed, *infra*, under their

2    respective headings because Hunt alleges those predicate violations as independent claims.

3    ## V.  HUNT'S FRAUD CLAIM IS WELL-PLEADED (THIRD CLAIM)

4        Defendants contend Hunt failed to allege his fraud claim with particularity and that he failed to

5    "demonstrate that he suffered any loss" (i.e. failed to allege damages).   ECF No. 11 at 17:15-23.

6    Defendants' contention can only rest on an apparent oversight, that each of the four predicate violations

7    alleged by Hunt expressly incorporates the detailed factual background and federal RICO allegations.

8    ECF No. 1 at ¶¶ 116-119.  As to the fraud and false pretenses claims, Hunt additionally incorporates the

9    respective "below cause[s] of action."  ECF No. 1 at ¶¶ 117, 118.  More specifically, his fraud cause of

10   action incorporates more than one-hundred paragraphs of detailed factual allegations.  ECF No. 1 at ¶

11   122, 126 (incorporating paragraphs 11-113).  Hunt's factual allegations as incorporated by reference to

12   his fraud claim, allege Defendants engaged in an "act, practice or course of business" by a "scheme and

13   artifice that operates as a fraud" by a false representation **"or omission of material fact."**  Nev. Rev.

14   Stat. § 205.377 (emphasis added).  Hunt alleges the contours of Defendants' doping conspiracy, whereby

15   they knowingly and repeatedly, by false representation and more often by "omission of material facts,"

16   carry out the described RICO scheme.  The Complaint is replete with detailed explanations of the various

17   "Therapeutic Use Exemptions" and other exemptions, whereby Defendants permit certain fighters to

18   take prohibited substances and *fail to disclose this fact to their opponents, and even threaten legal action*

19   *against those who would expose it.*  ECF No. 1 at ¶¶ 16, 17, 23, 30, 36, 60, 68, 71, 80, 81, 82, 96, 103.

20   Hunt alleges use of these exemptions was knowingly suppressed from UFC fighters, including Hunt, in

21   furtherance of Defendants' fraudulent scheme to dupe Hunt into believing his opponents would be held

22   to the same standards and precluded from UFC-sanctioned doping.

23       Specific allegations concerning UFC 152 and UFC 200 are only the most egregious examples of

24   Defendants' getting "caught" carrying out their RICO-fraud.  Hunt alleges those instances down to the

25   minute.  *See, e.g.* ECF No. 1 at ¶¶ 31-38, 51, 56, 107.  Thus, Hunt has pleaded with particularity

26   Defendants' false representations.  As noted by Defendants' citation to the controlling law, however, the

27   Nevada fraud statute includes fraudulent omissions.  Of course, the time, place and content of an

28   omission cannot be pleaded with particularity.  Defendants do not contend otherwise, but, again, simply

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

16

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    fail to address this issue.  Hunt alleges certain fraudulent omissions he relied on to his detriment for both

2    the Antonio Silva fight and the Lesnar fight.  ECF No. 1 at ¶¶ 81, 82, 124.  Hunt lost his bout with

3    Lesnar.  His bout with Silva was judged a majority draw. As Defendants are aware, Hunt broke his hand

4    against the doping Silva in that bout.  Hunt could certainly allege, in good faith, that but for Defendants'

5    sanctioning his opponent's doping, he would have knocked him out in the first round, earned a victory,

6    not suffered a broken hand, and gained all attendant benefits.

7    ### VI.  HUNT'S FALSE PRETENSES CLAIM IS WELL-PLEADED (FOURTH CLAIM)

8        Defendants allege Hunt's false pretenses claims fail for three reasons: (1) it lacks specific content

9    of a false statement Hunt relied on;( 2) Hunt has not alleged damages; and (3) Hunt does not identify a

10   written memorandum.  In Nevada, "[o]btaining possession of money or property valued at $650 or more"

11   is a crime related to racketeering.   Nev. Rev. Stat. § 207.360.  *Hale v. Burkhardt*, 764 P.2d 866, 870

12   (1988), has interpreted this to require: (1) intent to defraud; (2) a false representation; (3) reliance on the

13   false representation; and (4) that the victim be defrauded.  *Id.* (citation omitted).

14       First, Defendants repeat the same mistaken argument that Hunt has not specifically pleaded his

15   claim, presumably on their failure to credit the expressly incorporated provisions of Hunt's detailed

16   factual allegations and the incorporation of the federal RICO allegations.  ECF No. 1 at ¶ 127, 131

17   (incorporating paragraphs 11-113).  The Complaint sets forth the fraudulent scheme, an explanation of

18   Hunt's reliance on the Defendants' *written* assurances that all competitors would be subject to the ADP,

19   and how Defendants fraudulently circumvented the policy, including through various improper

20   "Therapeutic Use Exemptions."  Additionally, Hunt has sufficiently alleged a "false representation of a

21   state of mind, that is, that [Defendants] entered into the agreement[s] while having no intention to

22   perform."  *Hale v. Burkhardt*, 764 P.2d at 870 (citation omitted).  Hunt adequately alleges that

23   Defendants had no intention of performing consistent with the PARA and bout agreements, and that

24   Defendants' true intent was to circumvent and not perform pursuant to those agreements.  *See e.g.* ECF

25   No. 1 at ¶¶ 16, 94.  Hunt makes the additional specific allegation of White's false representation, which

26   was broadcast on ESPN to Brett Okamoto on June 3, 2016, that Lesnar was not returning to fight in the

27   UFC.  ECF No. 1 at ¶¶ 51, 52, 107.  Hunt also expressly alleges he relied on Defendants' false

28   representations.  ECF No. 1 at ¶ 124.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

17

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    Second, Hunt has clearly alleged damages as set forth fully above in the federal RICO analysis,

2    which is even stricter than the Nevada state law counterpart.  See discussion *supra* Part III.

3    Third, Defendants mistakenly assert that a written memorandum is required by citing to the

4    criminal statute, Nev. Rev. Stat. § 175.261, rather than the civil statute identified in the Complaint, Nev.

5    Rev. Stat. § 205.380.  ECF No. 11 at 18:15.  *Hale,* cited by Defendants for its interpretation of Nevada's

6    civil RICO statutes, correctly applies the civil false pretenses standard.  It makes no reference to any

7    writing component of false pretenses.  In any event, even if the Court entertains the *unpublished* opinion

8    cited by Defendants, *Stoddart v. Miller*, 238 P.3d 845 (2008), it does not stand for their cited proposition.

9    Defendants' reference to Nev. Rev. Stat. § 175.261 conspicuously fails to mention that a "writing" is

10   only one of multiple alternative evidentiary bases to prove false pretenses.  It may also be proven by

11   witness testimony or other corroborating evidence.  Nev. Rev. Stat. § 175.261.  Furthermore, the *Stoddart*

12   analysis was a review of the evidence presented at trial, not on a motion to dismiss.   For the foregoing

13   reasons, Defendants' arguments fail to identify any pleading deficiency in Hunt's false pretenses claim.

14   **VII.  HUNT'S BREACH OF CONTRACT CLAIM IS WELL-PLEADED (FIFTH CLAIM)**

15   "[T]he elements of a breach of contract claim in Nevada are: (1) the existence of a valid

16   contract;(2) a breach by the defendant; and (3) damage as a result of the breach."  *Contreras v. Am.*

17   *Family Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1227 (D. Nev. 2015).  Defendants argue that the cause of

18   action for breach of contract is inadequately pleaded because it fails to specify the contractual provisions

19   breached.[11]  Yet, "**Nevada law does not require that plaintiffs plead breach of contract by specifying**

20   **the specific contract term(s) allegedly breached** . . . ."  *Ghanem v. ADT Corp.*, 2016 U.S. Dist. LEXIS

21   55980, at *8 (D. Nev. Apr. 26, 2016) (emphasis added).  Thus, contrary to Defendants' assertions, there

22   is no requirement that Hunt set forth the specific provisions UFC has breached, and therefore the entire

23   premise of its motion in this respect must be denied.

24   Even if this Court were to accept as true that, contrary to *Ghanem*, Hunt is required to set forth

25   the specific provisions UFC breached, Hunt's act of attaching the written agreements and incorporating

26

27   [11] Defendants cite an out-of-district case, *Collins ex rel. Brown v. Walgreen Co.*, 2013 WL 2482152 (E.D. Cal. June

28   10, 2013), decided under California law, to support their assertion.  Yet, in *Collins*, the plaintiffs failed to so much as
     allege the existence of a contract; the allegations in the complaint here explain the detailed breaches by UFC.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

18

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

them by reference, combined with the factual allegations showing the various breaches by Defendants, is more than adequate to meet virtually any pleading standard. The PARA and UFC 200 Bout Agreement ("Bout Agreement") are attached to the complaint and incorporated by reference. ECF No. 1 at ¶¶ 133-134. Specifically, Paragraph 3.1 of the PARA provides:

> Each Bout shall be . . . conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout . . . . Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission.

The Bout Agreement expressly incorporates the PARA at paragraph 14(a). Thus, in both the Bout Agreement and the PARA (both of which were incorporated into the complaint), UFC agreed that each bout would be conducted pursuant to the rules and regulations of the NAC.

The Bout was organized, publicized, and conducted by UFC; UFC exercised essentially complete control over the Bouts. ECF No. 1 at ¶¶ 11-12, 63-64, 133-134; PARA at Recital A, ¶ 1. By knowingly permitting Hunt (a clean fighter) to fight an opponent UFC knew was using substances banned by the NAC, UFC failed to uphold its contractual obligation to conform the Bout to the "rules and regulations of the athletic commission." The facts demonstrating UFC's knowingly permitting an unclean fighter to participate in the UFC 200 Bout are pleaded with great specificity throughout the Complaint, and go far beyond what is required to allege conduct that breached the referenced agreements between Defendant UFC and Hunt. *See, generally*, ECF No. 1 at ¶¶ 14-27, 39-79, 82-87, 135.

Finally, the Complaint alleges damages as a result of the breaches by Defendants. ECF No. 1 at ¶ 19, 87, 136. As such, the Complaint properly alleges the existence of an agreement, the specific breach by UFC (more than just "conclusory" allegations as claimed by Defendants), and damage to Hunt.

## VIII.   HUNT'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS WELL-PLEADED (SIXTH CLAIM)

"To establish a claim for breach of the implied covenants of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *Shaw v. CitiMortgage, Inc.*, 2016 U.S. Dist. LEXIS 109443, at *65 (D. Nev. Aug. 17, 2016) ("*Shaw*"). "Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

19

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991) ("*Hilton Hotels*").

Hunt alleges there was a contract. ECF No. 1 at ¶¶ 133-134.  He further alleges that UFC "act[ed] in a manner unfaithful to the purpose of the contract" by knowingly arranging for Hunt, a clean fighter, to fight opponents UFC *knew or had reason to know* were using banned substances for the purposes of enhancing its own profits and inflating its value for the purposes of the sale of the promotion. *See generally*, ECF No. 1 at ¶¶ 14-27, 39-79, 82-87, 135.   Hunt had justified expectations that UFC would hold all fighters to the same standards in seeking to prevent cheating, and would not intentionally permit and encourage fighters using banned substances to fight clean fighters.  His expectations in that regard were denied insofar as the Complaint explains that UFC intentionally matched Hunt, who adhered to the rules and contractual obligations set forth by the UFC, against a fighter UFC knew was not adhering to the rules and contractual obligations set forth by the UFC and the NAC. *See id.*  As such, Hunt has properly pleaded all the elements of this claim.

Defendants set up a "straw man" by arguing that the claim fails because the bout agreement did not require UFC "to provide Hunt with clean opponents."  ECF No. 11 at Part II.B.1-2.  That argument ignores the numerous obligations that UFC *did* have with respect to the agreements, including an obligation to ensure the bout was conducted in accordance NAC rules (as discussed above).

Defendants further ignore the fact that this claim may be brought as either one sounding in tort or one sounding in contract. *Shaw*, *supra*, at *65-79.  While it is true that the contractual breach of the implied covenant of good faith and fair dealing cannot extend to obligations "not contemplated" by the agreement, Hunt has adequately alleged that the agreements at-issue here "contemplated" the understanding that *all* fighters would be subject to the same enforcement of banned substances. Moreover, the UFC's justification that it was not technically contractually bound to provide Hunt with clean opponents demonstrates the applicability of the claim to this situation.  "A contractual breach of the implied covenants of good faith and fair dealing occurs '[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract.'"  *Id.* at *66 quoting *Hilton Hotels*, *supra*, at 922-23.  Thus, even if UFC has no *specific*

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

20

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1    obligation in the agreements to provide a clean fighter to Hunt, at the very least it had the obligation not

2    to actively participate in setting up a knowingly-cheating fighter to fight Hunt for the purposes of its own

3    fraudulent gain. Such action "deliberately countervenes the intention and spirit of the contract . . . ."

4    *Hilton Hotels*, *supra*, at 922-23.

5        Defendants additionally fail to discuss tortious violation of the implied covenant of good faith

6    and fair dealing, a separate avenue under which Hunt can establish liability under the sixth claim for

7    relief. The "tort action requires a special element of reliance or fiduciary duty . . ." *Id.* at 923. In *K*

8    *Mart Corp. v. Ponsock*, 732 P.2d 1364 (Nev. 1987) (*disapproved on other grounds*), for example, an

9    employee sued his employer for breach of his employment agreement. The Nevada Supreme Court held

10   that the employer could be liable not only for breach of contract but also for tortious breach of the implied

11   covenant of good faith and fair dealing where it found that the employer terminated the employee

12   specifically to prevent vesting of his retirement benefits. *Id.* at 1371-72. Specifically, the court held that

13   tortious breach of the implied covenant of good faith and fair dealing applies where a "weak" party is

14   aggrieved by a "strong" party, such as in the case of an insured against his insurer, an employee against

15   his employer, a franchisee against a franchisor, or even a customer of a storage company against the

16   storage company. *Id.* at 1370-1371. Here, UFC is the self-proclaimed "leading promoter of MMA

17   contests or exhibitions in the world." ECF No. 11 at p. 3. Hunt is just one of many fighters under

18   contract with UFC. UFC thus holds a position of strength over Hunt, similar to that of a

19   franchisee/franchisor or employee/employer relationship. Hunt further relied on UFC to equitably carry

20   out its responsibilities under the contract; he entered into the agreement with the belief that UFC would

21   not intentionally pit him against cheating fighters for the purposes of increasing UFC's own profit. In

22   this sense, given that Hunt relied on UFC to fairly carry out the spirit and intention of the agreements he

23   signed, UFC can be tortiously liable for breach of the implied covenant of good faith and fair dealing.

24       The facts of *Hilton Hotels* demonstrate that this case is a textbook example of breach of the

25   implied covenant of good faith and fair dealing. There, a boxing promoter and hotel contracted to put

26   on a four-bout series intended to establish the top boxer in the world. Hilton alleged that, although the

27   written contract was silent on this point, the parties understood that the then top-ranked heavyweight

28   boxer in the world, Michael Spinks, would be featured in the four bouts. *Hilton Hotels*, 808 P.2d at 919.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

21

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

Hilton alleged that the promoter induced Spinks to forfeit his title, thereby rendering him ineligible to fight in the four-round series, in contravention of the expectations of the contracting parties. *Ibid.* The court held that the jury was properly instructed that the promoters had an obligation "'not to do anything to destroy or injure the right of [Hilton] to receive the benefits of the contract,'" *and* that Hilton had established its prima facie case for breach of the implied covenant of good faith and fair dealing insofar as its contention that the parties understood Spinks would be fighting. *Id.* at 923. In much the same way, UFC was bound "not to do anything to destroy or injure the right of [Hunt] to receive the benefits of the contract[s]" between UFC and Hunt. UFC and Hunt understood that, at the very least, UFC would not deliberately encourage and facilitate fights in which it knew Hunt's opponent was using banned substances. Like the plaintiff in *Hilton Hotels*, Hunt can recover for breach of the implied covenant of good faith and fair dealing based on UFC's frustration of the intention and spirit of the contracts.

## IX.  HUNT'S NEGLIGENCE CLAIM IS WELL-PLEADED (SEVENTH CLAIM)

UFC's argument on Hunt's negligence claim is misplaced on both substantive as well as procedural grounds. Procedurally, UFC seeks to enforce an affirmative defense that it has not yet alleged at the pleading stage. Substantively, its argument that Hunt's negligence claim is barred by the doctrine of express assumption of the risk is mistaken based on the duty UFC owed to Hunt. "Express assumption of risk is essentially a contract where the plaintiff signs a document and openly agrees to hold the defendant harmless for **known and inherent dangers of a particular activity**." *Auckenthaler v. Grundmeyer*, 877 P.2d 1039, 1041 (Nev. 1994) (emphasis added). Thus, the doctrine only applies to those dangers that are "known and inherent" in the specific activity.

UFC mistakenly seeks to lump the egregious nature of UFC's conduct toward Hunt and Hunt's specific damages suffered as a result thereof with the more typical injuries (those "known and inherent") in a sport like MMA, like bruises and broken bones. Yet Hunt's negligence claim is not over bruises or broken bones (the types of fighting injuries contemplated by the assumption of the risk provisions here), but over UFC's calculated conduct depriving Hunt of his business, brand, and opportunities. Nothing in the agreements between the parties contemplated Hunt was assuming the risk that UFC would intentionally pit him against a cheating fighter for the purposes of increasing UFC's profits at the expense of Hunt's business and opportunity. *See*, *Sierra Pac. Power Co. v. Anderson*, 358 P.2d 892, 894, (1961)

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

22

Case No.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1   (holding assumption of the risk "operates only when the party actually knows the full scope and

2   magnitude of the danger . . ."); *see also*, Restat. 2d of Torts, § 496B ("In order for the agreement to

3   assume the risk to be effective, it must also appear that its terms were intended by both parties to apply

4   to the particular conduct of the defendant which has caused the harm. Again, where the agreement is

5   drawn by the defendant and the plaintiff passively accepts it, its terms will ordinarily be construed strictly

6   against the defendant. In particular, general clauses exempting the defendant from all liability for loss or

7   damage will not be construed to include loss or damage resulting from his intentional, negligent, or

8   reckless misconduct . . .").

9          In this regard, UFC's reliance on *Burnett v. Tufguy Productions, Inc.*, 2010 WL 4252116 (D.

10   Nev. 2010) is misplaced.   There, the plaintiff suffered a spinal injury while participating in an "Ultimate

11   Fighter" reality fighting show.   Fighting injuries are precisely the types of injuries covered by the

12   assumption of the risk provisions in the agreement UFC has its fighters sign.   Intentional and malicious

13   conduct constituting calculated damage to a fighter's brand and business opportunities are not remotely

14   contemplated by the assumption of the risk provisions.   As such, it cannot be said at the pleading stage

15   that Hunt's negligence claim is barred by his agreeing to accept the physical risks inherent in being a

16   professional fighter.   Put simply, UFC owed a duty of due care to Hunt, it breached its duty of care, and

17   Hunt suffered injury as a result.   As such, Hunt's negligence claim is well-pleaded.

18   **X.   HUNT'S UNJUST ENRICHMENT CLAIM IS WELL-PLEADED (EIGHTH CLAIM)**

19          "Under Nevada law, unjust enrichment is 'the unjust retention . . . of money or property of

20   another against the fundamental principles of justice or equity and good conscience.'"   *In re Wal-Mart*

21   *Wage & Hour Empl. Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007).   Defendants point out

22   correctly, but incompletely, that under Nevada law unjust enrichment cannot lie where there is a contract

23   between the parties.   Their arguments are misplaced for two main reasons.   First, Hunt had a contract

24   only with UFC; there is no direct contractual relationship between Hunt and Defendants White and

25   Lesnar, so the motion must at the very least be denied as to those defendants.

26          However, the motion should be dismissed as to all defendants because the actions that give rise

27   to Defendants' unjust enrichment are separate and distinct from the actions of UFC constituting a breach

28   of the agreement with Hunt.   Under Nevada law, Defendants were unjustly enriched if they received

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
7897504.1

23

Case No.: 2:17-cv-00085–JAD-CWH
MARK HUNT'S OPPOSITION TO MOTION TO DISMISS

1  property "against the fundamental principles of justice or equity and good conscience."  The property

2  Defendants received included pay-per-view profits, Lesnar's fight purse and win bonus, and ultimately

3  White and UFC's massive profits from the sale of UFC just days after UFC 200.  These were not gains

4  contemplated by Hunt's agreements with UFC, but nevertheless are compensable under Nevada law as

5  gained "against the fundamental principles of justice or equity and good conscience."  The fact that these

6  gains were not specifically addressed by Hunt's agreement with UFC does not mean that it is fair and

7  equitable for Defendants to retain them.  As such, Hunt can recover against all named Defendants on his

8  claim for unjust enrichment, and at the very least, can recover against White and Lesnar.

9  ## XI.  CONCLUSION

10  Hunt respectfully requests this Court to deny Defendants' motion in its entirety.  If the Court is

11  inclined to grant Defendants' motion as to any claim, Hunt requests the Court to make such an order

12  *without prejudice* and *with leave to amend.*  Hunt further requests the opportunity to file a surreply in

13  the event Defendants raise by reply the issues not initially presented in their moving papers.

14  Should this Court be inclined to grant Defendants' motion in any respect, Hunt asserts that he

15  can, in good faith, set forth such claims that are not subject to dismissal through an amendment that will

16  not cause prejudice to Defendants.  As such, should this Court grant Defendant's motion in any respect,

17  Hunt requests it be made without prejudice and with leave to amend.[12]

18

19  DATED:  March 21, 2017        HIGGS FLETCHER & MACK LLP

20

21  By: s:/CHRISTINA M. DENNING

22        CHRISTINA M. DENNING, ESQ.
        SCOTT J. INGOLD, ESQ.

23        Attorneys for Plaintiff MARK HUNT

24

25

26  [12] Pursuant to Federal Rule of Civil Procedure, Rule 15(a), "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served." *Doe v. United States*, 58 F.3d 494, 496–97 (9th Cir. 1995).  "The Ninth Circuit has held "a motion to dismiss is not a 'responsive pleading' within the meaning of the Rule.  Neither the filing nor granting of such a motion before answer terminates the right to amend; an order of dismissal denying leave to amend at that stage is improper." *Id.; United States v. Rock Springs Vista Dev. Corp.*, No. CV-S-97-1825(JBR) (RLH), 1999 WL 1491621, at *1 (D. Nev. July 2, 1999).  No defendant in this action has filed a responsive pleading, therefore, Hunt must be granted leave to amend at his option, as a matter of course.

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO