PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 240-7979
Fax: (866) 412-6992
-and-
HOWARD L. JACOBS, Application for Admission Pro Hac Vice Pending
howard.jacobs@athleteslawyer.com
Law Offices of Howard L. Jacobs
2815 Townsgate Road, Suite 200
Westlake Village, California 91361
Tel: (805) 418-9892
Fax: (805) 418-9899
*Attorneys for Defendant Brock Lesnar*

**CHRISTIANSEN LAW OFFICES**
**810 S. Casino Center Blvd., Suite 104**
**Las Vegas, Nevada 89101**
**702-240-7979 • Fax 866-412-6992**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability Company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:17-cv-00085-JAD-CWH<br><br>**DEFENDANT BROCK LESNAR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Brock Lesnar, through his undersigned counsel, respectfully moves this Court to dismiss Mark Hunt's Complaint for Racketeer Influenced and Corrupt Organizations Act (RICO); Conspiracy to Commit Crime Related to Racketeering; Fraud; False Pretenses; and Unjust Enrichment (the "Complaint") for failure to

state a claim upon which relief can be granted. Mr. Lesnar joins his co-defendants' motion to dismiss and incorporates by reference their supporting memoranda. Mr. Lesnar submits this Motion to address additional grounds for dismissal unique to him.

## I. INTRODUCTION

To fully comprehend the absurdity of plaintiff's Complaint, it is necessary to start with a short primer on the purpose of civil RICO actions. In 1970, Congress passed the Racketeer Influenced and Corrupt Organizations (RICO) statute in an effort to combat mafia groups; and while the statute has expanded in scope since that time, it still requires proof of a pattern of wrongdoing *as a member of a criminal enterprise*. To meet his strict pleading requirements, a plaintiff in a civil RICO action must specifically plead a *pattern* of racketeering activity by a member or members of an *enterprise*. Those terms of art - "racketeering activity," "pattern of racketeering activity," and "enterprise" – each have a specific meaning for the purpose of a civil RICO action, which are addressed in detail below.

Civil RICO complaints have been poignantly described as the "litigation equivalent of a thermonuclear device,"[1] and for that reason, they must be carefully scrutinized at the outset. Not every perceived wrong meets the precise civil RICO definition of "racketeering activity." Not every sequence of events meets the precise civil RICO definition of "pattern of racketeering activity." Not every grouping of defendants meets the precise civil RICO definition of an "enterprise."

Here, plaintiff Mark Hunt attempts to convert a positive test for trace amounts of a banned substance by his opponent at the UFC 200 event into a scheming RICO claim. As set forth below, Plaintiffs' frivolous Complaint has not, and cannot, allege a RICO cause of action because:

- Plaintiff has failed to adequately plead any predicate RICO offense – in this case, fraud;

---

[1] See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996): "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." Because the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." (citation omitted)



CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

- Plaintiff has not, and cannot, plead a "pattern or racketeering activity" within the meaning of 18 U.S.C. § 1962 (c);
- Plaintiff has failed to adequately plead a RICO "enterprise;" and
- Plaintiff has failed to adequately plead a RICO conspiracy.

Plaintiff's claims are not even close to meeting the pleading requirements of the Federal Rules of Civil Procedure. Supreme Court decisions have made it clear that Plaintiff must do more than merely state that the law has been violated – he must plead sufficient facts to show that he has a plausible claim for relief. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiff must, at the very least, identify with particularity the factual basis of each of the alleged claims against Defendant Brock Lesnar. However, Plaintiff's Complaint is so devoid of any facts to support his RICO and fraud claims that it would be almost impossible for Mr. Lesnar to respond. Furthermore, as explained in detail below, Plaintiff *cannot* meet his pleading requirements in this case, and for that reason, leave to amend would be a fruitless exercise. For these reasons, it is submitted that the Complaint should be dismissed without leave to amend.

## II. FACTUAL AND LEGAL BACKGROUND

Brock Lesnar is a 39-year-old professional wrestler and MMA fighter, and former professional American football player. He has had a long and successful tenure in sports, including an NCAA Division I Heavyweight Wrestling Championship, four WWE World Championships, and a UFC Heavyweight Championship. His MMA career began with the UFC in 2007 and continued until his retirement in 2011.

On or about May 25, 2016, at a public meeting, the Nevada State Athletic Commission (hereinafter "NSAC") granted an event permit to Promoter Zuffa, LLC d/b/a/ Ultimate Fighting Championship (hereinafter "UFC") to promote a professional mixed martial arts event at the T-Mobile Arena in Las Vegas, Nevada, on July 9, 2016. On or about June 6, 2016, the UFC announced that Mr. Lesnar would be a featured competitor at the event, "UFC 200." On June

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

21, 2016, the NSAC granted Mr. Lesnar an Unarmed Combatant's License for the 2016 Calendar year.

Pursuant to the UFC Anti-Doping Policy that went into effect July 1, 2015, UFC athletes licensed with the NSAC are subject to testing by the United States Anti-Doping Agency ("USADA"). Because Mr. Lesnar had previously retired from the UFC, and because permission had to be obtained from the WWE to allow Mr. Lesnar to return to the UFC, the UFC granted Mr. Lesnar an exemption from UFC Anti-Doping Policy Art. 5.7.1[2] (which required a fighter returning from retirement to be in USADA's testing pool for four months prior to competition, unless an exemption is granted based on exceptional circumstances).[3] In connection with the UFC Anti-Doping Policy, Mr. Lesnar submitted numerous urine samples, including an out-of-competition urine sample on June 28, 2016, and an in-competition urine sample on July 8, 2016. On July 9, 2016, Mr. Lesnar defeated Mark Hunt in the Heavyweight Main Card Event at UFC 200 in three rounds by unanimous decision.

**A. Facts Unique to Brock Lesnar's Positive Tests**

Brock Lesnar was tested a total of eight times by USADA between the time he agreed to terms and signed a UFC 200 Bout Agreement and the date of the bout. All samples prior to the June 28, 2016 sample were reported as negative.[4] Brock Lesnar was shocked that his June 28, 2016 and July 8, 2016 urine samples were positive for the presence of clomiphene. Unsure of where the positive test resulted from, Mr. Lesnar then took extensive measures, at his own expense, to try to determine any possible source of clomiphene. A Notice of Hearing and Notice of Disciplinary Complaint (see Exhibit C to request for Judicial Notice, filed concurrently herewith) was sent to Mr. Lesnar on September 14th. Mr. Lesnar, by and through his attorney, submitted his Answer and Affirmative Defenses on September 26, 2016 (see Exhibit D to Request for Judicial Notice, filed concurrently herewith).

---

[2] See Exhibit A to Request for Judicial Notice, filed concurrently herewith.

[3] See http://sports.yahoo.com/blogs/mma-cagewriter/brock-lesnar-granted-waiver-from-four-month-drug-testing-requirement-003253522.html, Ex. --- to Request for Judicial Notice, filed concurrently herewith.

[4] See http://www.mmafighting.com/2016/7/16/12204914/brock-lesnar-passed-multiple-other-usada-drug-tests-before-ufc-200, Exhibit B to Request for Judicial Notice, filed concurrently herewith.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

A hearing on the matter was scheduled for October 10, 2016. To allow for more time to test additional products or substances that may identify the source of contamination, Mr. Lesnar requested a continuance, by and through his attorney, on September 19, 2016 (see Exhibit E to Request for Judicial Notice, filed concurrently herewith) which was granted by e-mail on September 20, 2016 (and later confirmed as a matter of procedure by the Commission on October 10, 2016); and rescheduled for November 10, 2016. The continuance request related primarily to the need for further testing on a foot cream that Mr. Lesnar had been using at the time of his positive tests.

Due to the difficulty in the extraction process for the testing of the topical foot cream, Mr. Lesnar requested that USADA arrange to have the foot cream separately tested by the WADA-accredited laboratory in Salt Lake City (SMRTL). Because it was necessary to coordinate this testing through USADA, this required additional time. Mr. Lesnar made another request for continuance on October 25, 2016 (see Exhibit F to Request for Judicial Notice, filed concurrently herewith), which was then granted on November 10, 2016 and continued until December 15, 2016.

Ultimately unable to definitively establish the source of the clomiphene found in his June 28, 2016 and July 8, 2016 urine samples, Mr. Lesnar, by and through his attorney, ultimately agreed to a sanction by the NSAC Executive Director of a one-year sanction and $250,000 fine which was subsequently unanimously approved by the NSAC on December 15, 2016 at a hearing telephonically attended by both Plaintiff and Mr. Lesnar. See Adjudication Agreement and Order, Exhibit G to Request for Judicial Notice, filed concurrently herewith. On January 4, 2017, USADA announced its sanction of Brock Lesnar, also for the duration of one year, which is the sanction specified by UFC ADP 10.2.2 for substances other than anabolic steroids.[5]

---

[5] See UFC ADP; see also USADA Press Release on Brock Lesnar's Suspension, available at http://ufc.usada.org/brock-lesnar-receives-doping-sanction/, submitted as Exhibit H to Request for Judicial Notice, filed concurrently herewith.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

On February 14, 2017, it was publicly reported that Mr. Lesnar notified the UFC of his retirement.[6] He continues to actively compete in the WWE. Plaintiff, in spite of this lawsuit alleging the UFC to be a part of a criminal enterprise, entered into a new contract and fought in UFC 209, less than two months after the filing of his Complaint.[7]

## III. LEGAL STANDARDS

Federal courts have noted that "it is incumbent upon courts, especially in civil RICO actions where the restraint of prosecutorial discretion is not present, to scrutinize claims to ensure that the statute is not applied to contexts outside those intended by Congress." Lopez v. Dean Witter Reynolds, Inc., 591 F.Supp. 581, 588 (N.D. Cal. 1984).

Under Fed.R.Civ.P. 9(b), allegations of fraudulent predicate acts supporting a claim under RICO must be pled with particularity. See Cohen v. S.A.C. Trading Corp, 711 F3d 353, 359 (2nd Cir. 2013). In the context of a Fed. R. Civ. P. 12 (b)(6) motion, a court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991). As is shown below, Plaintiff's effort to state a RICO violation fails miserably, "float[ing] on a sea of bombast," not "anchored in a bed of facts." See Id.

To constitute a RICO violation, there must be a "pattern of racketeering activity" by an "enterprise." 18 U.S.C. Sec. 1962.

### A. "Enterprise"

An *enterprise* for RICO purposes is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In the context of a civil RICO Complaint, a defendant who is charged with violating 18 U.S.C. § 1962(c)[8] must be separate and distinct from the enterprise through which the defendant is alleged to have conducted a pattern of

---

[6] See, e.g., http://www.mmafighting.com/2017/2/14/14613038/brock-lesnar-notifies-ufc-of-his-retirement-from-mma, Exhibit I to Request for Judicial Notice, filed concurrently herewith.

[7] Mark Hunt fought Alistair Overeem in the opening fight of UFC 209's main card, which took place on March 4, 2017. Hunt lost by knockout in round three. See http://www.mmafighting.com/2017/3/5/14819284/mark-hunt-says-he-suffered-broken-tibia-at-ufc-209, Exhibit J to Request for Judicial Notice, filed concurrently herewith.

[8] See Complaint par. 112.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

racketeering activity. See, e.g., Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi., 747 F.2d 384, 402 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606 (1985). Limiting the persons who can violate 18 U.S.C. § 1962(c), ensures that it will be properly used to pursue those individuals who are "insiders" of an organization, and who use an organization and its resources to commit racketeering activity. See Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994). An enterprise must have "at least three structural features: a purpose, relationships among those associated with the enterprise, *and longevity sufficient to permit these associates to pursue the enterprise's purpose*." Boyle v. United States, 556 U.S. 938 (2009) [emphasis added].

**B. "Pattern of Racketeering Activity"**

Courts use the "pattern" requirement to determine whether a case actually warrants use of the civil RICO statute. See, e.g., Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000).

To sufficiently show a pattern of racketeering activity, a plaintiff must allege that predicate acts of racketeering pose a threat of continued criminal activity. H.J. Inc. v. Nw Bell Tel. Co., 492 U.S. 229, 239-242 (1989):

> The legislative history, which we discussed in Sedima, supra, 473 U.S., at 496, n. 14, 105 S.Ct., at 3285, n. 14, shows that Congress indeed had a fairly flexible concept of a pattern in mind. A pattern is not formed by "sporadic activity," S.Rep. No. 91–617, supra, p. 158 (1969), and a person cannot "be subjected to the sanctions of title IX simply for committing two widely separated and isolated criminal offenses," 116 Cong. Rec., at 18940 (1970) (Sen. McClellan). Instead, "[t]he term 'pattern' itself requires the showing of a relationship" between the predicates, ibid., and of " 'the threat of continuing activity,' " ibid., quoting S.Rep. No. 91–617, at 158. "It is this factor of continuity plus relationship which combines to produce a pattern." Ibid. (emphasis added). RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity … "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. See Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

> and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. See S.Rep. No. 91–617, at 158.

Id.

Courts have made clear that isolated incidents of alleged fraud will not satisfy the continuity requirement, especially where, as here, there is nothing alleged by the Plaintiff to suggest "further misrepresentations by the defendants in regard to other potential transactions." Banks v. Wolk, 918 F.2d 418, 422 (3rd Cir. 1990).

## IV. PLAINITFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED AS TO DEFENDANT LESNAR

Plaintiff's RICO claim is so incredibly deficient as to Defendant Lesnar, that it is difficult to know where to even begin. As an initial matter, Plaintiff lacks standing to bring this claim, because he does not even allege the type of injury that is covered by the RICO statute. Furthermore, as to defendant Lesnar, the Complaint fails to plead long-term criminal activity, fails to plead a predicate act, fails to adequately plead intent, fails to adequately plead fraud, fails to adequately plead false pretenses, fails to adequately plead the requisite pattern of activity, and fails to adequately plead a conspiracy within the meaning of the RICO statute.

### A. Plaintiff's Allegations That Do Not Involve Defendant Lesnar Must Be Disregarded For The Purpose Of This Motion

In determining whether Plaintiff has adequately pled a RICO Claim *against Defendant Lesnar*, the Court must disregard the allegations which simply do not involve Mr. Lesnar. See, e.g., Capitol West Appraisals, LLC v. Countrywide Financial Corp., 759 F.Supp.2d 1267, 1271 (W.D. Wash. 2010) [if the complaint alleges that several defendants participated in a fraudulent scheme, "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

require[s] plaintiffs to differentiate their allegations...and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."]

Therefore, in considering whether the RICO claim is adequately pled against defendant Lesnar, it is submitted that the Court should disregard the following allegations from Plaintiff's Complaint, which are simply of no relevance to Plaintiff's claims against defendant Lesnar:

> 24. HUNT's last three UFC opponents have used performance enhancing substances prohibited by the UFC and WADA.
>
> 28. UFC 152 was held on September 22, 2012. The main event was a bout between John Jones ("Jones") and Vitor Belfort ("Belfort"). Belfort accepted the fight on late notice.
>
> 29. UFC 152 followed the embarrassing and first-ever UFC event cancellation. UFC 151 was cancelled due to an injury to Dan Henderson, who was to fight Jones in the main event. Jones declined to fight replacement opponent Chael Sonnen.
>
> 30. Since as early as 2011, the UFC granted Belfort a "Testosterone Replacement Therapy" (TRT) use exemption at the recommendation of a UFC-affiliated doctor for Belfort to take testosterone supplements. The existence of Belfort's exemption was not publicly known until 2013, after UFC 152. At all times prior to 2013, the UFC willfully concealed Belfort's testosterone exemption, and opponents were not aware that he was granted a TRT exemption, allowing him to maintain abnormally high testosterone levels. These elevated testosterone levels conferred a competitive advantage, including strength advantages useful in hand to hand combat.
>
> 31. By September 4, 2012, nearly three weeks prior to UFC 152, the UFC was in possession of Belfort's pre-fight drug testing results. At approximately 3:01 p.m. Pacific time on September 4, 2012, a UFC paralegal inadvertently e-mailed the drug test results to a group of people, including approximately 29 other fighters, trainers and managers.
>
> 32. The content of Belfort's drug test results was "flagged" for containing free testosterone approximately two-and-one-half (2.5 times) the normal range.
>
> 33. On September 4, 2012, at approximately 3:04 p.m., a UFC paralegal sent a follow up email attempting to recall the inadvertently disclosed drug test results.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

34. On September 4, 2012, at approximately 3:55 p.m., a UFC paralegal sent an additional follow up email imploring the unintended recipients to "please disregard the e-mail, please delete ASAP!!!!!"

35. On September 4, 2012, at approximately 7:16 p.m., the unintended recipients were contacted by then UFC executive vice president and general counsel, Ike Lawrence Epstein, threatening legal action for any disclosure of Belfort's drug testing results.

36. At no time prior to the UFC 152 bout was Jones aware or informed that Belfort was granted a testosterone use exemption or that Belfort's drug test was flagged as abnormal for elevated testosterone.

37. Notwithstanding Belfort's drug test result, the UFC concealed and actively suppressed by threat of litigation the test results, and caused and permitted the bout between Belfort and Jones to proceed.

38. On information and belief, the UFC permitted Belfort to fight notwithstanding his drug testing results, in part, to prevent the embarrassment of a subsequent cancelled event, damage to the reputation and brand of the UFC, and in direct pursuit of profit, to the detriment of fighter safety, in violation of state and federal law as described further below."

44. On or around March 30, 2016, the UFC announced the UFC 200 main event to be Conor McGregor ("McGregor") versus Nate Diaz ("Diaz"), a rematch of UFC 196.

45. The McGregor v. Diaz rematch was highly anticipated following Diaz's unexpected submission victory over the favored Featherweight Champion McGregor.

46. On or around April 19, 2016, McGregor and the UFC were involved in a dispute over McGregor's marketing obligations for UFC 200, which resulted in McGregor threatening to retire and being removed from the UFC 200 card.

47. On or around April 27, 2016, the UFC announced the new UFC 200 main event would be Daniel Cormier ("Cormier") versus Jones."

. . .

79. UFC 200 was not the first time UFC caused or willfully permitted a doping fighter to compete against HUNT.

/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

> 80. On March 20, 2016, at UFC Fight Night, HUNT fought Frank Mir (Mir). Mir tested positive for a prohibited substance classified as an anabolic steroid. Mir had a pre-existing history of using prohibited substances and was granted a "Therapeutic Use Exemption." Mir's use exemptions included amphetamines and testosterone via TRT.
>
> 81. On December 7, 2013, at UFC Fight Night, HUNT fought Antonio "Bigfoot" Silva ("Silva"). Silva tested positive for abnormally high testosterone levels. UFC wrongfully failed to discover Silva's doping violation until after he fought HUNT, who is a clean fighter. UFC's failure was aggravated by the fact that Silva was under an active purported Therapeutic Use Exemption for testosterone via TRT.
>
> 82. UFC's conduct represents a pattern of liberally granting purported use exemptions and other drug testing exemptions, without any additional safeguards to prevent abuse.

Id.

**B. Plaintiff Lacks Standing to Pursue a RICO Claim**

Defendant Lesnar joins in Co-Defendants Zuffa, LLC and Dana White's arguments regarding lack of standing. "Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the Court to determine and may be raised on a motion to dismiss." Keel v. Schwarzenegger, 2009 WL 1444644, at *5 (C.D. Cal. 2009) (citing Oscar v. University Students Co-Op Ass'n, 965 F.2d 790, 785 (9th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1020 (1992)). Plaintiff's injury must have resulted in "concrete" or "tangible financial loss." Oscar, 965 F.2d at 785. However, financial loss is insufficient. "Without a harm to a specific business or property interest – a categorical inquiry typically determined by reference to state law – there is no injury to business or property within the meaning of RICO." Id. A property right exists only when (1) there is an interest capable of precise definition, (2) the interest is capable of exclusive possession or control, *and* (3) the putative owner has established a legitimate claim to exclusivity." M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd., 193 P.3d 536, 543 (Nev. 2008).

Plaintiff alleges several generic tortious claims, including physical injury, damage to his reputation, lost opportunity for career advancement, and lost opportunity to further his earning

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

potential (including advancement to title fights and promotional and marketing opportunities). However, under RICO jurisprudence, all of these purported damages fall under the category of "personal injuries," which are not compensable under RICO.[9] See Oscar, 965 F.2d at 785; Allman v. Philip Morris, Inc., 865 F. Supp. 665, 668 (S.D. Cal. 1994) ("for the purposes of bringing an action under RICO the courts have been clear that even the economic consequences of personal injuries are not compensable under RICO."). Nor is purported damage to one's reputation compensable under RICO, as that is just another form of personal injury. See C&M Cafe v. Kinetic Farm, Inc., 2016 WL 6822071, at *8 (N.D. Cal. Nov. 11, 2016) (citing Hamm v. Rhone-Poulenc Rorer Pharms., 187 F.2d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).")).

Furthermore, Plaintiff fails to specify any specific lost opportunity - be it a title fight, promotion, or marketing event that would have resulted from a potential victory at UFC 200. Injury to mere expectancy interests or to an "intangible property interest" is not sufficient to confer RICO standing. Chaset v. Fleer/Skybox Intern. L.P., 300 F.3d 1083, 1087 (9th Cir. 2002). Even if Plaintiff had won the fight against Defendant Lesnar, Plaintiff has not and cannot honestly allege that significant economic opportunities would have presented themselves, beyond the opportunity that the UFC has already granted to Plaintiff even in spite of the results at UFC 200.

For all of the foregoing reasons, Plaintiff's RICO claim fails to state a claim upon which relief can be granted, as Plaintiff lacks standing.

### C. Plaintiff's Complaint Fails to Show Proximate Cause

A claim made under RICO requires strict proximate cause from a RICO predicate offense (as further described below). "To state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well." Hemi Group, LLC v. City of New York, 559 U.S. 1, 9

[9] As noted by Co-Defendants Zuffa, LLC and Dana White in their Motion to Dismiss Pursuant to 12(b)(6) at p. 11.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

(2010). Therefore, the injuries alleged throughout the Complaint must have been *directly related* to the conduct alleged. For this reason, the court must assess whether the alleged conduct by Mr. Lesnar led directly to the plaintiff's injuries. See Anza v. Idea Steel Supply Corp., 547 U.S. 451, 461 (2006).

Here, as further discussed below, Plaintiff asserts one alleged instance of wire fraud, in the form of Mr. Lesnar's ESPN interview on June 6, 2016[10] during which no representations were made that could have possibly resulted in any of the damages which Hunt now seeks. For example, during the interview Mr. Lesnar admitted to nothing more than contemplating participation in UFC 200 "over a cup of coffee at his farm in Canada"[11] Furthermore, he told Hannah Storm that he "didn't care" who his opponent was, and that he would not turn down the opportunity to fight.[12] Furthermore, in characterizing his return as "big business," Mr. Lesnar merely stated the obvious: that the UFC is a business institution and everybody has an interest in making money (including Mr. Hunt). Plaintiff simply ignores the fact that Mr. Lesnar engaged in a routine interview to discuss his return to the UFC, a reasonable business decision wholly unrelated to Plaintiff's speculative damages. Plaintiff's allegations against Mr. Lesnar of wire fraud in furtherance of the "conduct" (which remains unclear) are therefore misplaced.

Furthermore, Plaintiff's proximate cause theory is fatally flawed, because it is predicated on the assumption that (i) Plaintiff would have defeated Lesnar but for Lesnar's positive clomiphene test and (ii) Plaintiff would have received future title bouts and other marketing opportunities as a result of that win that have not otherwise materialized. This claim is purely speculative in nature.

Had Lesnar not tested positive, Plaintiff Hunt could have lost for any number of reasons or factors unrelated to the alleged conduct for which he asserts. In fact, Plaintiff Hunt has lost several bouts to other athletes who have not tested positive for a banned substance, and

---

[10] Offered by Plaintiff at youtube.com/watch?v=y5L8Y_8wgxo.

[11] See Id. at approximately 01:10 mins.

[12] See Id. at approximately 03:27 mins.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

furthermore, it is impossible to assign the loss of any specific opportunity (even if a lost specific opportunity had actually been pled) to any one of Mr. Hunt's many losses within the UFC.[13] –

For all of the foregoing reasons, Plaintiff's RICO claim fails to state a claim upon which relief can be granted, as Plaintiff has failed to adequately plead proximate cause.

**D. Plaintiff Has Failed To Adequately Plead A Pattern of Racketeering Activity**

RICO applies only to organized, long-term criminal activity and not ordinary business disputes. See Calcasieu Marine Nat. Bank v. Grant, 943 F.2d 1453, 1463 (5th Cir. 1991) ("although Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction"). Here, Plaintiff has not adequately pled the requisite predicate offense. In his Complaint, Plaintiff relies upon broad allegations, specifically claiming that Defendants engaged in

> "…a continuing course of conduct ("CONDUCT"), which CONDUCT and activities in furtherance of such CONDUCT is described in this paragraph and which was and is designed to wrongfully cause doping fighters to engage in hand to hand combat known as MMA with non-doping, clean fighters…which is and continues to be perpetrated by fraud, deceit and false pretenses…"

See Complaint at ¶ 94. and:

> "Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. section 1961(5), including use of wire, radio and mail in furtherance of the scheme to advance the CONDUCT by false pretenses and fraud."

See Complaint at ¶ 104. Where the racketeering activity alleged in a civil RICO complaint is fraud, including mail fraud or wire fraud, the heightened fraud pleading requirements apply to the predicate acts of racketeering that demonstrate a pattern. See 18 U.S.C.A. Sections 1341; 18 U.S.C.A. Section 1961 et seq; Fed. R. Civ. P. 9(b). Under the law of the Ninth Circuit, a plaintiff alleging mail fraud must set forth the following elements: (1) the formation of a scheme or artifice to defraud; and (2) use of interstate telephone wires in furtherance thereof. See United States v. Hubbard, 96 F.3d 1223, (9th Cir. 1996); Virden v. Graphics One, 632

---

[13] Mr. Hunt's record is officially listed by the UFC as 12 wins, *11 losses*, 1 draw, and one "No contest." See http://www.ufc.com/fighter/mark-hunt, Exhibit K to Request for Judicial Notice, filed concurrently herewith.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

F.Supp. 1417, 1422 (C.D. Cal. 1985). A RICO plaintiff relying upon wire fraud must allege and establish that "the defendant had the specific intent to engage in the scheme or artifice to defraud." See Virden, supra, 632 F.Supp. at 1422. Plaintiffs' Complaint fails to (1) adequately plead the requisite intent; (2) adequately plead a "pattern" of racketeering activity within the meaning of the statute; and (3) to include sufficient allegations regarding **all** of the alleged defendants.

**1. Plaintiff Fails To Adequately Plead The Intent Necessary For Allegations Of Fraud**

Plaintiff fails to allege the specific intent necessary for a RICO cause of action premised upon alleged fraud. In order to plead fraud, a plaintiff must plead "facts giving rise to a strong showing of scienter," and the scienter required is fraudulent intent. See United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999); United States v. Cusino, 694 F.2d 185, 187 (9th Cir. 1982); Atlantic Gypsum Co., Inc. v. Lloyds International Corp., 753 F.Supp. 505, 513 (S.D.N.Y. 1990). Plaintiff alleges the scienter in mere conclusory paragraphs, specifically alleging that:

> Defendants devised the CONDUCT or artifice to defraud HUNT, other clean fighters, the general viewing public who purchase tickets and pay-per-view subscriptions and merchandise, as well as advertisers and sponsors, which scheme was to obtain property, including but not limited to, money, labor and services by means of false or fraudulent pretenses, representations or promises.

See Plaintiff's Complaint at ¶ 106.

> As to LESNAR, he has publicly admitted to acts in furtherance of the CONDUCT on televisions, ESPN's SportsCenter, including the morning of June 6, 2016 with host Hannah Storm…
>
> As to LESNAR and UFC, Defendants promoted UFC 200 in furtherance of the CONDUCT on television and via the internet, including a television advertisement airing on June 4, 2016 during UFC 199.

See Plaintiff's Complaint at ¶ 107 (b) and (c). Plaintiffs' allegations are insufficient to lead to a "strong inference of scienter." See Atlantic Gypsum, supra, 753 F.Supp. at 513.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

The allegations at issue here are comparable to those in Atlantic Gypsum. In that case, the Court granted a motion to dismiss a RICO cause of action, *inter alia*, because the complaint failed to adequately allege the intent necessary for the predicate offense of wire fraud. As described by the Court in Atlantic Gypsum, the complaint consisted of:

> "little more than a description of routine business communications connected to the negotiation, consummation, and possible workout of a complex loan transaction, in addition to later communications which show only the existence of a dispute over the propriety of continued payments to Flakt."

Id. In determining that these allegations did not sufficiently lead to a "strong inference of scienter," the Court relied upon the rule that "routine business communications that show only a dispute between the parties do not lead to a reasonable inference of fraudulent intent." Id. Like the plaintiff in Atlantic Gypsum (the difference in business operations notwithstanding), Plaintiff has done no more than rely upon routine communications by Brock Lesnar to media outlets which cover UFC headline events. There is nothing in the nature of Mr. Lesnar's statements that could reasonably lead to a conclusion of fraudulent intent. In fact, the Complaint does not contain a single fact that supports an inference that Lesnar could have known his conduct would result in fraud, even if Mr. Hunt's allegations against co-Defendants had merit. Accordingly, Plaintiff has failed to allege facts sufficient to lead to a "strong inference of scienter," and has therefore failed to adequately plead any predicate RICO offense.

**2. There are No Specific Fraud Allegations Pled**

Plaintiff has also failed to plead fraud with the requisite particularity. See Fed. R. Civ. P. 9 (b). This requirement applies to RICO complaints premised upon wire fraud. See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). In order to satisfy Rule 9 (b), the pleader must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in the scheme." Id.; see also Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986). "Mere recitation of the content of the alleged misrepresentations and the context in which they were made" is not sufficient under Fed. R. Civ. P. 9 (b). See Comwest, Inc. v.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

American Operator Svcs., Inc., 765 F.Supp. 1467, 1470-71 (C.D. Cal. 1991). Rather, to withstand a Rule 9 (b) challenge, because allegations of fraud are particularly injurious to business and professional reputations, the complaint must state "the manner in which the alleged misrepresentations are false, and the facts that support an inference of fraud by each defendant." Id. at 1471. This particularity requirement applies to state-law causes of action as well. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).

In this case, Plaintiff not only fails to adequately plead the role of each defendant in the alleged scheme, but also fails to state the "manner in which the alleged misrepresentations are false, and the facts that support an inference of fraud by each defendant." Turning to the alleged claim of fraud against Mr. Lesnar, the court must weigh the facts under Nev. Rev. Stat. 205.377, of which Mr. Lesnar cannot possibly be found to have violated:

> A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:
>
> (a) The person knows to be false or omitted;
>
> (b) The person intends another to rely on; and
>
> (c) Results in a loss to any person who relied on the false representation or omission, in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $650.

Id.

Nowhere in Plaintiff's complaint does he allege facts under which Mr. Lesnar could be found liable under the Nevada law. A defendant, in this case, Mr. Lesnar should not have to guess or infer the basis for which he is accused of fraud. While Plaintiff makes reference to Mr.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Lesnar's "repeated false statements,"[14] he fails to allege even a single instance of the same. Accordingly, Plaintiff's RICO cause of action fails for lack of sufficient particularity, *and* Plaintiff's claim of fraud also fails.

**3. There Are No Specific False Pretenses Allegations Pled**

The predicate act of false pretenses under Nev. Rev. Stat. 205.380 requires (1) intent to defraud; (2) a false representation; (3) reliance on the false representation[15]; and (4) that the victim be defrauded. Hale v. Burkhardt, 764 P.2d 866, 870 (Nev. 1988). As with accusations of fraud, a false pretenses claim must be pled with particularity. Further, the false pretense, or a note or memorandum thereof "must be in writing and either written or subscribed by the defendant." Stoddardt v. Miller, 238 P.3d 845, at *6 and n.24 (Nev. 2008) (citing Nev. Rev. Stat. 175.261). For the same reasons for which the Plaintiff cannot allege any element for a claim of fraud with specificity, Plaintiff is unable to do so under False Pretenses[16].

Here, Plaintiff has not alleged the specific content of any false statement made by Lesnar upon which he claims to have relied. Nor can Plaintiff demonstrate that he suffered any loss as a result of his reliance on an alleged false representation. Plaintiff has not shown that he was in fact defrauded under any circumstances by Mr. Lesnar, or that Mr. Lesnar ever intended to defraud Plaintiff in the first place. Because Plaintiff fails to properly allege any of the above elements, this claim must fail as a matter of law.

/ / /

/ / /

---

[14] See Complaint Paragraph 58.

[15] Further proof that Mr. Hunt did not rely on any representations by Mr. Lesnar is evidenced in the following article (submitted concurrently as Exhibit L with Request for Judicial Notice): http://www.mmafighting.com/2016/6/9/11894188/mark-hunt-on-brock-lesnar-i-think-hes-juiced-to-the-gills-ufc-200 [in which Hunt asserts that Mr. Lesnar is "juiced to the gills" but he would knock him out regardless]. Therefore, Plaintiff cannot claim that he relied on a misrepresentation by Mr. Lesnar that his in-competition sample would be clean if Mr. Hunt believed that Mr. Lesnar was already in violation of the UFC ADP.

[16] As Co-Defendants note in their Motion to Dismiss, A false pretenses claim must be alleged with particularity, and "the failure to allege any one of [the foregoing] elements with the required specificity would defeat the entire criminal charge." *Hale* at 869-70 (affirming dismissal of a RICO claim where plaintiff failed to "allege *any specific false representations* upon which he may have relied and that might have caused him to be defrauded.") (emphasis in original).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

**4. Plaintiff Has Not, And Cannot, Allege A Pattern of Racketeering Activity or a Conspiracy to Commit Racketeering**

In order to allege a violation of 18 U.S.C. § 1962 (c), a plaintiff must allege a "pattern of racketeering activity." See 18 U.S.C. § 1962 (c). The United States Code defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." See 18 U.S.C. § 1961 (5). This requirement refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with the threat of repetition." See H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240-41 (1989). As noted by the Supreme Court,

> "…[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."

Id. at 242. In the event of a closed period, the "circumstances of the case … must suggest that the predicate acts are indicative of a threat of continuing activity." See Medallion Television Enterprises, Inc. v. SelectTV of California, Inc., 833 F.2d 1360, 1363 (9th Cir. 1988). In the Ninth Circuit, "continuing activity" in these circumstances has generally been read to mean a pattern of activity lasting more than a year. See, e.g., Religious Technology Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

**a. *Plaintiff Fails To Allege A Sufficient Number Of Predicate Acts To Constitute A RICO "Pattern"***

The predicate offenses of mail or wire fraud, for example, have been described as follows:

> [P]erhaps unique among the various sorts of racketeering activity possible under RICO in that the existence of a multiplicity of predicate acts may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate into a pattern of racketeering activity.

See Rindal v. Seckler Co., Inc., 786 F.Supp. 890 (D. Mont. 1992) (citing United States Textiles, Inc. v. Anheuser-Busch Cos., Inc., (7th Cir. 1990). Courts have clarified the "pattern" requirement in the context of allegations of wire fraud by noting that:

> [V]irtually every garden variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependent solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time. Given its "natural and common sense approach to RICO's pattern element," we think it is unlikely that Congress intended RICO to apply in the absence of a more significant societal threat.

See United States Textiles, 911 F.2d at 1268 (citing Marshall Silver Const. Co., Inc. v. Mendel, 894 F.2d 593, 597 (3d Cir. 1990)).

In his Complaint (both with respect to Lesnar and in general), Plaintiff fails to allege a sufficient number of alleged predicate acts to qualify as a "pattern," and certainly does not allege a "significant societal threat." Plaintiff identifies perhaps a total of one act (being an interview conducted on ESPN prior to UFC 200) that he alleges constitute wire fraud on the part of defendant Lesnar. See Plaintiff's Complaint at ¶ 56-58. However, a single allegation of wire fraud in conjunction with a scheme that has no threat of repetition does not establish a RICO pattern. See Medallion Television supra, 833 F.2d at 1363-64 (finding that single scheme with definite conclusion did not establish RICO "pattern"); Rindal, supra, 765 F.Supp. at 897 (motion to dismiss RICO cause of action granted where plaintiff alleged some sixteen acts of

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

mail fraud, forty acts of wire fraud and three acts of extortion over twenty-five month period where scheme had a definite conclusion and posed no threat of continued activity); Olive Can Co., Inc. v. Martin, 906 F.2d 1147, (7th Cir. 1990) (holding that a single scheme with natural ending and no threat of continued criminal activity fails to establish RICO "pattern").[17]

***b. Plaintiff Has Not Alleged Conduct Spanning A Sufficient Period Of Time To Constitute A Pattern***

While failing to plead any predicate acts, Plaintiff also only identifies, with respect to Defendant Lesnar, a closed period of conduct of less than six months. In his Complaint, Plaintiff alleges that "the UFC and LESNAR had already begun negotiating LESNAR'S UFC 200 return in March of 2016, more than four-months in advance of the event…" See Plaintiff's Complaint at ¶ 48, and that "as early as May of 2016, LESNAR's name appeared on the UFC Website as a current or active fighter." See Plaintiff's Complaint at ¶ 49. Regardless of when negotiations for Mr. Lesnar to fight in UFC 200 began, any clerical error on the part of the UFC and subsequent statements by Mr. Lesnar on ESPN do not render irrelevant the date that Mr. Lesnar *signed his agreement* (June 3, 2016) or change the fact that it was for a "one-off" bout, as Plaintiff so poignantly characterizes it. As explained above, Plaintiff can point to no Ninth Circuit case involving a threat of future criminal conduct where the "court has held the requirement to be satisfied by a pattern of activity lasting less than a year." See Wollersheim, supra, 971 F.2d at 366-67.[18]

---

[17] While under certain circumstances a single scheme may be sufficient to allege a RICO violation, the existence of a single scheme is a relevant factor to be considered in determining whether a RICO plaintiff has adequately alleged the requisite continuity for a RICO "pattern." See Rindal, 765 F.Supp. 897 n.11; United States Textiles, 911 F.2d at 1269.

[18] Additionally, where the conduct at issue is terminable by either party, the continuity requirement fails. In this case, Plaintiff alleges that the defendants entered into a "one-off" UFC bout agreement. See Complaint at ¶ 54, 55. Certainly, alleged fraudulent activity by one of the parties would constitute good case to terminate the alleged employment agreement. Thus, as noted by the Court in Comwest, Inc. v. American Operator Svcs., Inc., 765 F.Supp. 1467, 1477 (C.D. Cal. 1991), where either party has the power to terminate an agreement at issue, the Court cannot conclude that [the] conduct posed a threat of continuing criminal conduct 'at any point during the alleged racketeering activity.' If the 'continuity' requirement is to have any force at all, it cannot encompass alleged racketeering activity that can be so easily and permanently truncated at the will of another.
Because Hunt possessed the power to "truncate" the alleged racketeering conduct (i.e. by declining to fight under the UFC), the continuity requirement necessarily fails. See Comwest, 765 F.Supp. at 1477.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Under the facts pled, the maximum length of time of any alleged RICO violation by Defendant Lesnar is approximately five to six months. As noted above, Plaintiffs cannot point to any case finding that a requisite pattern in a closed period was six months. Furthermore, there is no allegation (nor can there be) of any threat of future criminal conduct on the part of defendant Lesnar. Accordingly, Plaintiff has not, and cannot, plead a RICO "pattern," and his RICO cause of action must therefore fail.

**5. Plaintiff Has Not Adequately Alleged A RICO "Enterprise" With Respect to Brock Lesnar**

In order to claim a RICO violation, Plaintiff must adequately allege the existence of an "enterprise." A RICO "enterprise" is defined as either: (1) "any individual, partnership, corporation, association, or other legal entity;" or (2) "any union or group of individuals associated in fact although not a legal entity." See 18 U.S.C. § 1961 (4). In order to adequately plead an association-in-fact enterprise, Plaintiff must establish "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). To establish the existence of such an enterprise, a plaintiff must provide both "evidence of an ongoing organization, formal or informal," and "evidence the various associates function as a continuing unit." Id. See also Odom v. Microsoft Corp., 486 F.3d 541, 452 (2007). The continuity requirement focuses on whether the associates' behavior was "ongoing" rather than isolated activity. United States v. Patrick, 248 F.3d 11, 19 (2001). That several employees engaged in the activity at different times does not defeat the continuity requirement. See Odom [where an almost two-year time span was "far more than adequate" to establish that Best Buy and Microsoft functioned as a continuing unit].

Here, Plaintiff relies upon vague allegations of conduct to purportedly satisfy the definition of "enterprise" within the scope of 18 U.S.C. section 1961 (4). See Plaintiff's Complaint at ¶ 98. Plaintiff makes no other allegations regarding his claimed RICO "enterprise." Further, Plaintiff cannot show that Mr. Lesnar engaged in any "ongoing" behavior

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

with respect to this Complaint.[19] Fighters, within the scope of the UFC, are individually contracted employees hired by the UFC and subjected to the rules of the Nevada State Athletic Commission. Though many UFC athletes retain an ongoing relationship with the UFC, this was not the case for Mr. Lesnar. His "one-off" fight (as described by Plaintiff) following his return from retirement was just that; therefore, Plaintiff lacks evidence to establish an association-in-fact enterprise against Mr. Lesnar. In fact, the nature of Mr. Lesnar's participation in UFC 200 was so short-notice that it **necessitated invocation** of UFC ADP Rule 5.7[20]. Once again, Plaintiff attempts and fails to transcend a routine business contract into evidence of a RICO scheme.

### 6. Plaintiff Has Not, And Cannot Plead A RICO Conspiracy

Plaintiff has failed to adequately plead the existence of a RICO conspiracy. In alleging a violation of 18 U.S.C. § 1962 (d), a plaintiff may not simply allege that the defendants conspired to violate § 1962 (c). The defining element of any conspiracy claim (RICO or otherwise) is that a defendant "agreed to the overall objective of the violation." United States v. Philip Morris USA, Inc., 327 F. Supp. 2d 13, 19 (D.D.C. 2004). Thus, to state such a claim, a plaintiff must set forth more than "bare and conclusory allegations" that are "insufficient to withstand a motion to dismiss and a plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the conspiracy." See Schmidt v. Fleet Bank, 16 F.Supp. 2d 340, 354 (S.D.N.Y. 1998). Rather, a RICO plaintiff must "inform each defendant of what he did to join the conspiracy," and must allege at least one overt act that causes injury to the plaintiff. See Rhoades v. Powell, 644 F.Supp. 645, 671 (E.D. Cal. 1986), *aff'd* 961 F.2d 217 (1992). Furthermore, a Plaintiff must set forth specific allegations of fact – such as "events, conversations, or documents" – that indicate that each defendant joined in the conspiratorial agreement. See doe I v. Israel, 400 F. Supp. 2d 86, 119-120 (D.D.C. 2004), Brady v.

---

[19] Plaintiff's conclusory allegations of an enterprise are simply insufficient. Even if this court finds Mr. Lesnar to be included in the "enterprise" within the broad application of Turkette (see also Plaintiff's ¶ 99), there is not basis upon which it may find that he conspired to commit a crime related to racketeering (*supra*).

[20] As referenced by Mr. Novitzky in his e-mail to Bob Bennett of the Nevada State Athletic Commission.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Livengood, 360 F. Supp. 2d 94, 104 (2004) (dismissing conspiracy claim, holding that "[a] plaintiff must set forth more than conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.") Plaintiffs' Complaint is completely devoid of any allegations regarding an agreement among the various defendants and/or any overt act causing injury to Plaintiff. At best, Plaintiff attempts to disguise banal promotional fodder and Mr. Lesnar's exemption from some of the terms and conditions of the UFC Anti-Doping program as sufficient evidence to allege a RICO Claim[21]. However, as set forth in Co-Defendant's Ex. 5 (July 1, 2016 Email from Jeff Novitzky), Plaintiff can in no way demonstrate conspiracy on Mr. Lesnar's behalf, because Mr. Novitzky plainly explains the circumstances of Mr. Lesnar's status in the USADA RTP under UFC ADP 5.7:

"Here is our reasoning:

- Lesnar needed permission from the WWE to compete in UFC 200. He did not control when that permission was given.
- Lesnar has not competed in UFC since December 30, 2011, when there was no USADA drug testing program. He did not use retirement to remove himself from USADA testing program, then rejoin at his discretion (he was only able to rejoin after receiving permission from WWE).
- When UFC conversations/negotiations began with Lesnar/WWE, UFC informed Lesnar that he would be included in the testing program if he signed to fight with the organization.
- Once the final deal was reached, USADA was immediately notified by UFC, who indicated they were making use of the exemption to the four month rule. USADA immediately began the anti-doping policy education process. UFC Vice President of Athlete Health and Performance Jeff Novitzky has also met with Lesnar in person to educate him on the process.
- Once Lesnar received permission from WWE to compete in UFC 200 and signed a contract with UFC, he was included in the UFC/USADA anti-doping program the same day as his contract was completed.

[21] See also, Plaintiff's Complaint at par. 109, in which Mr. Hunt admits that he "currently lacks sufficient information as to whether Defendants' racketeering activity is a result of an express agreement."

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

- Athletes subjected to USADA anti-doping programs have all their samples analyzed at WADA-accredited laboratories that employ the latest state-of-the-art detection techniques. Long term metabolites of prohibited steroids may be detectable in a sample for weeks to months, long after the athlete has stopped using the prohibited anabolic agent.
- Lesnar has been tested multiple times by USADA since his inclusion into the anti-doping program.

Accordingly, Plaintiff has failed to adequately plead the necessary elements of a RICO conspiracy.

For all of these reasons, Plaintiff's First Cause of Action must be dismissed as to Defendant Lesnar.

## V. PLAINITFF'S SECOND CAUSE OF ACTION MUST BE DISMISSED AS TO DEFENDANT LESNAR

Federal courts have held that to establish the existence of a RICO conspiracy, a plaintiff "must prove the existence of an agreement to violate RICO's substantive provision." Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999). The plaintiff must also show that each defendant "embraced the objective of the alleged conspiracy and agreed to commit two predicate acts in furtherance thereof." Edmonds v. Seavy, 2009 WL 2949757, at *7 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010) [citing United States v. Viola, 35 F.3d 37, 43 (2d Cir. 1994). Nevada's anti-racketeering statutes (NRS 207.350 though NRS 207.520) are "patterned after the federal…'RICO' statutes" and are therefore interpreted similarly.[22]

The majority of courts have held that plaintiff may not claim a conspiracy to violate RICO if Plaintiff has not adequately pled a substantive violation of RICO in the first place. See Edwards v. First Nat'l Bank, 872 F.2d 347 (10th Cir. 1989) (If the allegations of a substantive violation of 1962 (a), (b), or (c) are infirm, then subsection (d) claims to conspire must fail), and Grider v. Texas Oil & Gas Corp., 868 F.2d 1147 (10th Cir.), cert. denied 493 U.S. 820 (1989) ("the conspiracy claim falls when the substantive claim…is deficient"). Defendant Lesnar

[22] See also Zuffa, LLC and White's 12(b)(6) Motion to Dismiss at pp. 18-19.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

supports Co-Defendants' assertion that this principle should apply to Plaintiff's state-based RICO conspiracy claim as well, because Mr. Lesnar has already shown (as explained above) that Plaintiff cannot state a federal RICO claim nor any state-based predicate acts. Here, plaintiff merely attempts a "shotgun" accusation in hopes of bolstering a weak legal argument.

For all of these reasons, Plaintiff's Second Cause of Action must be dismissed as to Defendant Lesnar.

## VI. PLAINITFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED AS TO DEFENDANT LESNAR

Plaintiff alleges statutory fraud against Mr. Lesnar in addition to his claim of federal wire fraud. Under the relevant statute, Nev. Rev. Stat. 205.377:

> 1. A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:
>
> (a) The person knows to be false or omitted;
>
> (b) The person intends another to rely on; and
>
> (c) Results in a loss to any person who relied on the false representation or omission, in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $650.

Claims of fraud must be pled with particularity in both federal and state-law causes of action. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). As exhaustively explained above, Plaintiff has failed to plead his fraud allegations with the required specificity, regardless of whether one is considering his federal or state law fraud claims.

/ / /

/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

**VII. PLAINITFF'S FOURTH CAUSE OF ACTION MUST BE DISMISSED AS TO DEFENDANT LESNAR**

"False pretense" is a representation of some fact or circumstance which is not true and is calculated to mislead, and may consist of any words or actions intended to deceive. N. R. S. 205.380. The "factual basis" of acts of false pretense claim, given its similarity to the other fraud claims, must be "set out with particularity." Bache Halsey Stuart Shields v. Tracy Collins Bank, 558 F.Supp. 1042, 1045-46 (C.D. Utah 1983); Hale v. Burkhardt, 764 P.2d 866, 869 (Nev. 1988).

As exhaustively explained above, Plaintiff has failed to plead his allegations with the required specificity, regardless of whether they are coined as "fraud" or "false pretenses."[23]

**VIII. PLAINITFF'S EIGHTH CAUSE OF ACTION MUST BE DISMISSED AS TO DEFENDANT LESNAR**

Unjust enrichment exists where "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would in inequitable for him to retain the benefit without payment of the value thereof.'" Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 257 (Nev. 2012) citing Unionamerica Mtg. v. McDonald, 626 P.2d 1272, 1273 (1981) (quoting Dass v. Epplen, 424 P.2d 779, 780 (1967)). Benefit in the unjust enrichment context can include "services beneficial to or at the request of the other…and is not confined to retention of money or property." See *Restatement of Restitution* Sec. 1 cmt. B (1937); see also Topaz Mutual Co. v. Marsh, 839 P.2d 606, 613 (Nev. 1992). However, a plaintiff cannot "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." Thomas v. Wachovia Mortgage, FSB, 2011 WL 3159169, *6 (D. Nev. July 25, 2011).

Plaintiff requests that this Court order that Mr. Lesnar surrender his fight purse and all pay-per-view proceeds *to Plaintiff*. Complaint ¶ 156. However, Plaintiff's compensation, just

---

[23] Furthermore, Mr. Lesnar did not receive any "money, labor and services" from Mr. Hunt as alleged his par. 129 of his complaint.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

as that of Defendant Lesnar, was governed by the Bout Agreement and the 2016 Promotional Agreement. Defendant Lesnar's positive test resulted in a sanction and a fine of a substantial portion of his purse. Plaintiff does not and cannot allege that either Mr. Lesnar's contract with the UFC or the rules of the UFC ADP (see Co-Defendant's Ex. 1) require Mr. Lesnar to surrender any amount of his fight purse to Mr. Hunt in in the event that Mr. Lesnar tested positive for a banned substance. This is plainly clear pursuant to the UFC ADP Rule 10.9 [Allocation of Forfeited Compensation]:

> "Unless required otherwise by an *Athletic Commission*, forfeited compensation shall, at *UFC's* discretion, be applied to offset the costs of the Program or given to anti-doping research.

This is again repeated at UFC ADP Rule 10.10 [Additional Financial Consequences]:

> "…All money received by *UFC* on account of fines shall be applied in the same manner as provided in Article 10.9."

Therefore, it is clear that there is no basis – based in either contract or rules – for Mr. Hunt to claim entitlement to any share of Mr. Lesnar's purse. The fact that Mr. Lesnar may have negotiated a more lucrative contract with the UFC than Plaintiff may be cause for Mr. Hunt to complain to his agent or manager, but cannot and should not form the basis for the Complaint to this Court in this cause of action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IX. CONCLUSION

For all the above reasons, defendant Brock Lesnar respectfully requests that the instant Motion to Dismiss be granted without leave to amend.

RESPECTFULLY SUBMITTED this 23rd day of March, 2017.

CHRISTIANSEN LAW OFFICES

By______________________________
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.

-and-

HOWARD L JACOBS, ESQ.
THE LAW OFFICES
OF HOWARD L. JACOBS
*Attorneys for Defendant Brock Lesnar*

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the undersigned hereby certifies that on this day, March 14, 2017, a copy of the foregoing document entitled ***DEFENDANT BROCK LESNAR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)*** was filed and served through the Court's electronic filing system (CM/ECF) upon all registered parties and their counsel.

An employee of Christiansen Law Offices