CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendants*
*Zuffa, LLC and Dana White*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual, | Case No. 2:17-cv-00085-JAD-CWH |
| Plaintiffs, | **DEFENDANTS ZUFFA, LLC'S AND DANA WHITE'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .......................................................................................................................1

ARGUMENT ...............................................................................................................................1

I. HUNT'S RICO CLAIM STILL FAILS DESPITE THE IMPROPER EFFORT TO EXPAND ON HIS ALLEGED INJURIES ..............................................................1

    A. The "Lost Opportunities" About Which Hunt Complains Are Not Compensable Injuries Under RICO .............................................................2

    B. The Alleged RICO Violations Did Not Proximately Cause Hunt's Injuries .........7

    C. Lumping White Together with all Defendants Does Not State a Claim .................9

II. ALL OF HUNT'S STATE LAW CLAIMS REMAIN DEFICIENT ...............................9

    A. Quasi-Criminal Claims (Counts 2-4) ........................................................9

    B. Contract and Quasi-Contract Claims (Counts 5-6 and 8) ........................................10

    C. Negligence Claim (Count 7) ....................................................................13

CONCLUSION ..........................................................................................................................14

CERTIFICATE OF SERVICE ..................................................................................................15

INDEX OF EXHIBITS ..............................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Aluevich v. Harrah's*,
660 P.2d 986 (Nev. 1983) ..................................................................................................12

*Bell v. Bimbo*,
2016 WL 3536173 (D. Nev. June 27, 2016) ......................................................................11

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ........................................................................................ 2, 3, 4, 6, 10

*Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*
518 F. Supp. 2d 1182 (C.D. Cal. 2007) ............................................................................5, 6

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ............................................................................................7, 9

*Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*,
759 F. Supp. 2d 1267 (W.D. Wash. 2010),
*aff'd*, 467 F. App'x 738 (9th Cir. 2012) ...............................................................................9

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..............................................................................11

*Dearaujo v. PNC Bank, Nat. Ass'n*,
2012 WL 5818131 (D. Nev. Nov. 15, 2012) ........................................................................2

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005) (en banc), ce*rt. denied*, 546 U.S. 1131 (2006) ................. 3, 4

*Doe v. Roe*,
958 F.2d 763 (7th Cir. 1992) ................................................................................................3

*Dow Chem. Co. v. Exxon Corp.*,
30 F. Supp. 2d 673 (D. Del. 1998) .......................................................................................9

*Ghanem v. ADT Corp.*,
2016 WL 1698286 (D. Nev. April 26, 2016) .....................................................................10

*Great Am. Ins. Co. v. Gen. Builders, Inc.*,
934 P.2d 257 (Nev. 1997) ...................................................................................................12

*Kilgore v. Ocwen Loan Servicing, LLC*,
89 F. Supp. 3d 526 (E.D. N.Y. 2015) .................................................................................11

*Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*,
2009 WL 9419499 (C.D. Cal. Nov. 24, 2009) .....................................................................8

*Marceau v. Int'l Bhd. of Elec. Workers*
618 F. Supp. 2d 1127 (D. Ariz. 2009) .................................................................................. 4, 5

*M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*,
193 P.3d 536 (Nev. 2008) ......................................................................................................... 4

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002) ................................................................................. 2, 3, 5, 7, 8

*Russello v. United States*,
464 U.S. 16 (1983) .................................................................................................................... 3

*Scheppegrell v. Hicks*,
2016 WL 3020884 (E.D. La. May 26, 2016) ........................................................................... 6

*Schneider v. Cal. Dept. of Corr.*,
151 F.2d 1194 (9th Cir. 1998) ................................................................................................. 2

*Strates Shows, Inc. v. Amusements of America, Inc.*,
379 F. Supp. 2d 817 (E.D. N.C. 2005) ................................................................................. 5, 9

*Terracon Consultants Western, Inc. v. Mandalay Resort Group*,
206 P.3d 81 (Nev. 2009) ......................................................................................................... 13

*The Garshman Co., Ltd v. General Elec. Co., Inc.*,
993 F. Supp. 25 (D. Mass 1998) ............................................................................................ 12

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 9

LR IA 7-3(f) .............................................................................................................................. 10

Nev Rev. Stat. 200.380(1) ....................................................................................................... 10

Nev. Rev. Stat. 200.481(1)(a) ................................................................................................. 10

18 U.S.C. § 1962 ......................................................................................................................... 7

18 U.S.C. § 1963(a)(1) ............................................................................................................... 3

18 U.S.C. § 1964(c) ................................................................................................................. 1, 7

# INTRODUCTION

Zuffa and White established in their Motion to Dismiss (ECF No. 11 "Mot.") that Hunt's RICO claims failed on multiple grounds, the most prominent of which was Hunt's lack of any alleged injury to a cognizable business or property interest as is required for RICO standing under 18 U.S.C. § 1964(c). Hunt attempts to remedy this dispositive problem by using his Opposition (ECF No. 19 "Opp.") to alter and amplify his purported injuries in hopes of falling within the ambit of certain cases where the courts have found RICO standing based on alleged "lost opportunities." Even if Hunt were permitted to augment his allegations in this manner, which is clearly improper, he fundamentally misunderstands the nature of the past, identifiable opportunities that the courts in the distinguishable cases he cites deemed sufficient to allege RICO injury. Those were measurable, certain opportunities resulting in concrete financial loss that stand in stark contrast to the speculative, contingent, future opportunities Hunt alleged in his Complaint. The former may, in certain circumstances, be actionable under RICO; the latter decisively are not. Hunt's efforts to address the other pleading defects associated with his RICO and state law claims are likewise unpersuasive. Defendants will address each in turn.

# ARGUMENT

## I. HUNT'S RICO CLAIM STILL FAILS DESPITE THE IMPROPER EFFORT TO EXPAND ON HIS ALLEGED INJURIES

The Court will recall that Hunt alleged the following injuries in his Complaint: "severe *physical injury*, as well as economic and *non-economic damages* including without limit *damage to his reputation*, title contention, and *future earning capacity*." *See* Comp. ¶ 19 (emphasis added). Personal injuries, reputational harm, non-economic damages, and future harm are not, however, compensable under RICO. *See* Mot. at 11:5-12:6. To bolster his alleged injuries, Hunt spends considerable time recounting his fighting style and nicknames, his popularity in the United States

and Japan, and his status as director of an apparel company named Juggernaut—all in an effort to allege purported harm to a business interest in the form of his "brand, reputation and profitability as a professional fighter." *See, e.g.,* Opp. at 3:24-4:16; 9:2-6 ("he would have sold more T-shirts absent Defendants' wrongful conduct."). These allegations do not appear anywhere in Hunt's Complaint. The Court should, therefore, disregard them along with any other new allegations that Hunt raised for the first time in his Opposition. *See, e.g., Dearaujo v. PNC Bank, Nat. Ass'n,* 2012 WL 5818131, at *2 (D. Nev. Nov. 15, 2012) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (quoting *Schneider v. Cal. Dept. of Corr.*, 151 F.2d 1194, 1197 n.1 (9th Cir. 1998)).

Indeed, even if the Court were to consider Hunt's reformulated damage allegations, it would find they still fail to allege RICO injury for reasons addressed below.

### A. The "Lost Opportunities" About Which Hunt Complains Are Not Compensable Injuries Under RICO.

Hunt's analysis of RICO standing begins with a false premise. Specifically, Hunt contends he can satisfy the statutory standing requirement by alleging an injury to a business or property interest under state law *or* by alleging an injury to "an interest" already recognized by the Supreme Court or Ninth Circuit. *See* Opp. at 4:23-5:7 ("state law 'business or property interest' definitions are *additional or alternative* bases for stating RICO injury.") (emphasis in original). Hunt purports to have done the latter, *see id.* at 5:14-16 (claiming he has alleged "(1) injury by lost opportunity to acquire a valuable right (*Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 648 (2008)); and (2) lost legal entitlement to business relations (*Mendoza* [*v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th

Cir. 2002)]"), but neither *Bridge* nor *Mendoza* created or endorsed the "alternative" route to standing that Hunt proffers.[1]

In *Mendoza* (a case decided under the more lenient pre-*Twombly* and *Iqbal* motion to dismiss standards), the plaintiffs alleged "an injury to *their property* in the form of lost wages." 301 F.3d at 1168 (emphasis added). Hunt makes no such allegation in his Complaint, but his Opposition asserts that *Mendoza* "reject[ed] defendants' contention that plaintiff must allege a lost property right, and not[ed] plaintiff need only allege 'a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.'" *See* Opp. at 4:27-5:5 (quoting *Mendoza*, 301 F.3d at 1168). Even if Hunt had alleged a "lost entitlement to business relations" in his Complaint, and he did not, belatedly invoking this language from *Mendoza* does not have any talismanic effect nor does it dispense with the requirement to allege actual financial loss resulting from injury to a business or property interest. The Ninth Circuit, sitting en banc, made this very point three years after *Mendoza* was decided:

> *Mendoza* did not elaborate on the source of the 'legal entitlement to business relations,' relegating its discussion of the nature of the injury to a footnote. We believe the best reasoned approach is that of *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992), under which we typically look to state law to determine 'whether a particular interest amounts to property.'
>
> ***

---

[1] In hopes of expanding the scope of actionable interests under RICO, the Opposition cites *Russello v. United States*, 464 U.S. 16, 21 (1983) for the proposition that while the RICO statutes do not define the term "interest," the United States Supreme Court has described it as "[t]he most general term that can be employed to denote a right, claim, title or legal share in something." *See* Opp. 4:21-22. The *Russello* court, though, was not addressing the "business or property interest" required under 18 U.S.C. § 1964(c) for RICO standing but, rather, the criminal forfeiture provisions of 18 U.S.C. § 1963(a)(1). *See Russello*, 464 U.S. at 20-22. It is understandable that when determining what may be subject to forfeiture after a racketeering conviction, courts would construe the term "interest" broadly to achieve the remedial purpose of the statute. Where, however, the courts are addressing the injury to a "business or property interest" required to pursue a civil RICO claim in the first instance, a different analysis applies. *See infra* at 3-4 (discussing *Diaz v. Gates*).

> We agree with the Seventh Circuit. ***Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO***.

*See Diaz v. Gates*, 420 F.3d 897, 899-900 (9th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1131 (2006) (emphasis added).

Hunt must resort to his novel construct of RICO standing because the lost opportunities he alleges cannot meet the three-prong definition of a property interest under Nevada law as set forth in *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008). *See* Mot. at 9:13-16. Hunt, thus, tries to squeeze himself within the purported holdings of several cases in which he claims the courts have held that certain lost opportunities are sufficient to allege RICO standing. But like fingerprints or snowflakes, no two lost opportunities are exactly alike. The lost opportunities that were sufficient to allege RICO standing in the cases cited by Hunt all qualified as injuries to business or property interests under state law because they were specifically identifiable, had occurred in the past, and resulted in concrete financial loss. None of these characteristics apply to Hunt's alleged lost opportunities.

In *Bridge,* for example, the defendants' manipulation of the bidding process for delinquent tax liens meant that plaintiffs suffered a "real injury" to their business from "lost valuable liens *they otherwise would have been awarded*" under the county's rational allocation system. 553 U.S. at 645; 649 (emphasis added).[2] Similarly, in *Marceau v. Int'l Bhd. of Elec. Workers*, the non-union employee plaintiffs "contend[ed] they were injured *in their property* by lost compensation" attributable to advertising accounts that were preferentially assigned or diverted to their union

---

[2] Hunt mistakenly claims that the *Bridge* court "*held* the *opportunity* to submit a bid for the right to acquire a valuable tax lien was an injury to 'business or property.'" Opp. at 5:18-19 (first emphasis added); *see also id.* at 6:17 ("*Bridge holds* a lost opportunity for financial gain is a RICO injury.") (emphasis added). The actual holding in *Bridge* was entirely unrelated to the definition of RICO injury, but instead addressed whether a plaintiff asserting a RICO claim premised on mail fraud needed to show that it relied on the alleged misrepresentations at issue, a question the Court answered in the negative. 553 U.S. at 661.

colleagues. 618 F. Supp. 2d 1127, 1165 (D. Ariz. 2009) (emphasis added). Again, these "lost assignment opportunities" had occurred in the past and were specifically identifiable. *Id.* ("e.g., the Peterson account, the Starving Students and A-1 Professional movers accounts[.]"). Finally, *Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*, is another rigged bidding case where the alleged injury was "the failure to be awarded a contract with the City" due to the defendant's bribing of city officials. 518 F. Supp. 2d 1182, 1189-90 (C.D. Cal. 2007). There, too, the "lost opportunity to compete in the bidding process" had already occurred and resulted in the loss of a specifically identifiable contract. *Id.* at 1191.

Contrast the foregoing with Hunt's alleged injuries. Though Hunt now makes passing reference to the concept in his Opposition, *see* Opp. at 10:11, this is not a "lost wages" case like *Mendoza* or *Marceau* as Hunt admits he was paid what he was owed for UFC 200. *See* Comp. ¶ 73. Hunt instead argues he "lost a business opportunity . . . to compete in title fights . . . pursuant to an actual contract provision" that would have paid him more money. *See* Opp. at 7:25-8:12. The actual contract terms demonstrate otherwise.

While the parties' Promotional Agreement may specify what Hunt would be paid *if* he participates in a title fight, *see* ECF No. 1-7 (App'x), Ex. A § 6.1(A)(ii), nothing therein (or elsewhere) provides Hunt with any right (contractual or otherwise) to the title fight itself. Regardless of how many bouts Hunt may win, the matchmaking process is the product of Zuffa's discretion based on a multitude of factors. Hunt's Opposition acknowledges as much: "[w]hile Hunt may accept or decline certain fights pursuant to the PARA, the selection of Hunt's opponents is exclusively within the control of Defendants." Opp. at 12:23-25; *see also* App'x, Ex. A § 3.1. As Defendants have previously explained, Hunt's expectation that he would have the opportunity to participate in a title fight after UFC 200 is simply not a compensable injury under RICO. *See* Mot. at 12:7-13:8; *see also Strates Shows, Inc. v. Amusements of America, Inc.*, 379 F. Supp. 2d 817,

827-28 (E.D. N.C. 2005) ("Absent such an allegation of a definite pre-existing contractual right [ ], any claim of injury based upon the failure to award this contract to [plaintiff] is based only upon an "expectancy interest" for which RICO does not grant standing.").[3]

Nor is this a rigged bidding case like *Bridge* and *Bulletin Display* where the plaintiffs could identify the specific liens and contracts they lost that resulted in the requisite concrete financial loss. Hunt's alleged injuries are, by definition, based on contingencies in the future. *See* Comp. ¶ 78. (alleging "lost opportunity of *career advancement*, lost opportunity to fight and win fair bouts, and the lost opportunity *to further* his earning *potential* including *advancement* to title fights and promotional and marketing opportunities."). Such speculative damages are not recoverable under RICO. *See* Mot. at 10:23-12:18; *see also Scheppegrell v. Hicks*, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016) ("Threatened injuries and fear of future injuries are speculative and not actual damages because they have not yet occurred"; dismissing RICO complaint). Even where Hunt attempts to reframe his injuries in the past tense—*see, e.g.*, Opp. at 7:8-10 ("that lost opportunity constitutes a RICO injury to business or property the moment Hunt steps into the Octagon with a doping competitor")—he does not (and cannot) allege any related "concrete financial loss" required to support RICO standing because he was paid everything he was owed when "he step[ped] into the Octagon." *See* Mot. at 11:5-11. For all these reasons, Hunt cannot show any RICO injury.

---

[3] While Hunt claims to have lost an opportunity to compete in title fights, the judicially noticeable facts establish that he has nevertheless capitalized on the opportunity to compete in post-Complaint, higher-paying fights under the terms of his Promotional Agreement with Zuffa. Specifically, days after Defendants filed their Motion to Dismiss, Hunt fought Alistair Overeem in Las Vegas, Nevada on March 4, 2017 as part of UFC 209 for which he was paid $750,000, a purse amount that was greater than he received for UFC 200. *See* Nevada State Athletic Commission Payment Verification and Breakdown Sheet for UFC 209, which is attached to the Supplemental Declaration of J. Colby Williams ("Supp. Williams Decl.") as Exhibit 8; *see also* Second Request for Judicial Notice at 3-4.

### B. The Alleged RICO Violations Did Not Proximately Cause Hunt's Injuries.

The Opposition additionally fails to meet the second requirement for RICO standing—proximate cause between the alleged RICO violations and Hunt's alleged injuries. While Hunt criticizes Defendants for presenting a "hyper-technical" and "absurd eleven (11) step process" to make causation appear attenuated, *see* Opp. at 11:20-23; 12:12-13, those steps simply mirror the allegations contained in the Complaint. Hunt, thus, tries to compress the chain of events by now claiming his injury "occurred prior to the beginning of the fight," *see id.* at 11:17-19, and that he need only allege his RICO injury "generally." *Id.* at 11:22-25 (citing *Mendoza*). Setting aside the utter lack of any alleged concrete loss that "occurred prior to" UFC 200, "[a] showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a 'but for' cause of plaintiff's injury is insufficient to meet the requirement in § 1964(c) that the plaintiff's injury be by reason of the RICO violation." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (internal quotations omitted). Hunt has not even done that.

While Hunt claims to have satisfied the Ninth Circuit's set of three non-exhaustive factors to evaluate proximate cause, he grossly distorts the analysis. Hunt first claims there is no more direct victim of Defendants' alleged illegal conduct than him. See Opp. at 12:19-13:6. In so doing, he conveniently ignores that more than 11 paragraphs of his RICO allegations are devoted to UFC 152, an event that did not involve Hunt in any way. *See* Comp. ¶¶ 28-38; 107(a). Thus, Hunt is certainly not a "*direct* victim" of any purported harm flowing from a fight in which he did not participate. Hunt additionally blurs this factor by claiming Zuffa has disproportionate bargaining power that has resulted in a "likely unconscionable" Promotional Agreement between the parties.

Opp. at 13:1-6. But Hunt's Complaint never makes such an assertion and instead admits the agreement is a "valid contract supported by consideration." Comp. ¶ 133.[4]

After labeling the next factor "the injury is attributed to Defendants' conduct," Hunt chastises Zuffa for identifying a number of contingencies and alternative causes of Hunt's alleged harm as those are supposedly irrelevant under *Mendoza*. *See* Opp. at 13:7-14:3. The actual inquiry under the second factor is "whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct." *Mendoza*, 301 F.3d at 1169. That is unquestionably the case here.

First, Hunt has not alleged any actual financial loss in the Complaint. Second, to the extent he later identifies lost t-shirt sales by the separate entity Juggernaut, it "would be speculative in the extreme" to link such an injury to his "no contest" results with Silva or Lesnar as opposed to any of the multiple losses on Hunt's fight record or other possible factors like poor design, color or fabric quality of the apparel. *Canyon County*, 519 F.3d at 982-83. Third, insofar as Hunt complains about the lost opportunity to compete in a title fight, he not only disregards Zuffa's discretion in making matches, but also his fellow fighters' discretion to turn down fights. *See supra* at 5:17-24. In other words, even if Zuffa decided to offer Hunt the chance to compete in a title fight, the existing UFC heavyweight champion would still be free to reject a fight with Hunt. Courts routinely find that the presence of such factors and alternative causes undermine the proximate cause required for RICO standing. *See, e.g, Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, 2009 WL 9419499, at *6 (C.D. Cal. Nov. 24, 2009) (alleged injury was too speculative under RICO where it

---

[4] This is not the only example of inconsistencies either between Hunt's Opposition and his Complaint or within the Opposition itself. For instance, when trying to characterize the nature of his purported injury as harm to a business interest, Hunt proclaims the "obvious truth" that "losing bouts is bad for business." Opp. at 4:11-13. Yet, in an effort to downplay the speculative nature of his alleged harm, Hunt contends just a few pages later that "[t]he result of the bout is immaterial for purposes of identifying a lost opportunity, which arises before the first punch in thrown." *Id.* at 7:12-18. Hunt never reconciles these contradictory assertions.

depended on "intervening acts" of government agencies that "involved discretion whether or not to grant patent rights") (quoting *Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 694-96 (D. Del. 1998)); *Strates Shows, Inc.*, 379 F. Supp. 2d at 829 ("the level of discretion bestowed upon state officials in considering proposals . . . also contributes to the speculative nature of the injury alleged."). In the end, Hunt's inadequate allegations of proximate cause between the alleged RICO violations and Hunt's alleged injuries are an independent basis for dismissal. *See Canyon County*, 519 F.3d at 983, n.12 ("courts need not allow RICO plaintiffs leeway to continue on with their case in an attempt to prove an entirely remote causal link.").

### C. Lumping White Together with all Defendants Does Not State a Claim.

In response to Defendant White's argument that only four paragraphs of the Complaint specifically reference him, thereby failing to give fair notice to enable White to defend himself, Hunt boasts that White has been included within the term "Defendant(s)" 65 times. Opp. at 14:14-17. That's the point. Where, as here, an alleged RICO scheme is premised on purportedly fraudulent activity by multiple defendants, Rule 9(b)—which applies to RICO actions—"does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1271–72 (W.D. Wash. 2010) (dismissing RICO claims), *aff'd*, 467 F. App'x 738 (9th Cir. 2012). Hunt has not satisfied this pleading requirement.

## II.   ALL OF HUNT'S STATE LAW CLAIMS REMAIN DEFICIENT

### A.   Quasi-Criminal Claims (Counts 2-4).

Hunt argues he has satisfied the predicate violations for his state-law RICO claim because Defendants failed to substantively address his allegations of battery and robbery and, thus, failed "to put Hunt on notice of any claimed deficiency." Opp. at 15:18-16:2. He has it exactly

backwards.  Hunt is the party required to provide Defendants with "fair notice" to enable them to mount a defense.  *See* Mot. at 9:10-10:5.  Nothing in Hunt's conclusory references to these predicate acts puts Zuffa and White on notice how they purportedly committed any "willful and unlawful use of force or violence upon" Hunt, *see* Nev. Rev. Stat. 200.481(1)(a) (defining Battery), or how they took Hunt's personal property against his will "by means of force or violence or fear of injury," *see* Nev. Rev. Stat. 200.380(1) (defining Robbery), particularly when the Complaint admits Hunt was paid what he was owed for UFC 200.

Regarding Hunt's causes of action for statutory fraud and false pretenses, Defendants have already argued at length about Hunt's failure to allege any cognizable damages, an element of both claims.  *See* Mot. at 17:3-18:22.  Hunt never meaningfully grapples with this fact and instead argues about the sufficiency of his fraud allegations by pointing to the high number of background allegations contained in the Complaint.  *See* Opp. at 16:6-8.  Quantity does not, however, necessarily equate to the particularity required.  While Hunt claims he has alleged his fraud claims "down to the minute"—presumably referencing the e-mail communications alleged in Paragraphs 33-35, 61, and 107(a) of the Complaint—nowhere does Hunt allege that he relied on those communications to his detriment.  While such an allegation may not be required to allege a RICO claim premised on mail fraud, *see Bridge*, 553 U.S. at 661, Hunt must identify the specific false representations upon which he relied when pursuing fraud and false pretenses as independent causes of action.  *See* Mot. at 18:9-13.  He has not done so.

### B. Contract and Quasi-Contract Claims (Counts 5-6 and 8).

***Breach of Contract.***  Hunt misplaces reliance on *Ghanem v. ADT Corp.*, 2016 WL 1698286, at *3 (D. Nev. April 26, 2016) for the proposition that "Nevada law does not require that plaintiffs plead breach of contract by specifying the specific contract term(s) allegedly breached[.]"  Opp. at 18:15-23.  With due respect to the *Ghanem* court's opinion, which

obviously does not bind Her Honor (*see* LR IA 7-3(f)), it focused on the elements of a breach of contract claim under Nevada law as opposed to the requisite pleading standards under federal procedure. When the latter are properly considered, the courts uniformly hold that the complaint must identify the contract provision allegedly breached in order to provide proper notice. *See, e.g., Bell v. Bimbo*, 2016 WL 3536173, at *2-3 (D. Nev. June 27, 2016) (granting motion to dismiss where plaintiffs had "not sufficiently plead enough facts to allege the specific terms of the Agreement that [were] breached."); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("To properly plead breach of contract, 'the complaint must identify the specific provision of the contract allegedly breached by the defendant.'"); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 532-33 (E.D. N.Y. 2015) (same).[5]

***Breach of the Implied Covenant.*** Hunt seems to recognize that Zuffa has no contractual obligation to provide Hunt with clean opponents, *see* Opp. at 20:20-21:1, but claims his justified expectations under the Promotional Agreement were denied because Zuffa "did not hold all fighters to the same standards in seeking to prevent cheating[.]" *Id.* at 20:8-14. Zuffa explained in its Motion the judicially noticeable steps it has taken to combat cheating in MMA and the impossible nature of the duty Hunt seeks to impose by way of an implied covenant. *See* Mot. at 21:5-22. Additionally, Hunt did not sign the Promotional Agreement and the Bout Agreement for UFC 200 in a vacuum. The allegations of the Complaint make abundantly clear that Hunt was well aware of the reality that other fighters have taken banned substances for which they were later caught and punished. *See* Comp. ¶¶ 80-81. Despite this knowledge, Hunt still signed a new Promotional Agreement with Zuffa just one month after he defeated a fighter who had

---

[5] Hunt's attempt to remedy this pleading defect by supplying the missing information in his Opposition is improper for reasons already discussed. *See* Point I, *supra*. The parties, moreover, continue to perform their respective obligations under the Promotional Agreement. *See supra* at n. 3.

tested positive for steroids. *See* Comp. ¶ 25; App'x, Ex. A (Promo. Agm't dated April 12, 2016). As it relates to Hunt's alleged expectations for UFC 200, Defendant Lesnar has submitted documentation as part of his Motion to Dismiss indicating that Hunt publicly declared before the bout his belief that Lesnar was taking banned substances and that he would knock him out anyway. *See* ECF No. 30 (Amended Mot. to Dismiss) at 17:23-18:2; ECF No. 24 (Lesnar Request for Judicial Notice) at 5:26-6:4.

Hunt actually devotes the bulk of his argument on the implied covenant to the contention that Zuffa failed to address his claim for tortious breach. *See* Opp. at 5:23 – 6:11. That is because Hunt's Complaint never specified that he was seeking recovery under both the contractual and tortious theories of breach. *See* Comp. ¶¶ 137-143. These are "distinct causes of action," *see The Garshman Co., Ltd v. General Elec. Co., Inc.*, 993 F. Supp. 25, 27 (D. Mass. 1998) (applying Nevada law), and should be plead as such. Regardless, the tort action is limited to "rare and exceptional" cases where there is a special element of reliance or fiduciary duty. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (identifying relationships formed by bailment, insurance, partnership, and franchise agreements as examples). The Nevada Supreme Court has "denied tort liability in certain relationships where agreements have been heavily negotiated and the aggrieved party was a sophisticated businessman." *Id.* (citing *Aluevich v. Harrah's,* 660 P.2d 986 (Nev. 1983)). Hunt is an independent contractor who has entered into multiple agreements with Zuffa over the years for which he has been paid millions of dollars. There is no special element of reliance here.

***Unjust Enrichment.*** Though Hunt acknowledges his unjust enrichment claim against Zuffa is dubious given the existence of written contracts between the parties, *see* Opp. at 23:19-24:8, he argues this claim should nonetheless survive against all defendants because the actions underlying the unjust enrichment and breach of contract claims are distinct. *See id.* The

Opposition never elaborates on this conclusory statement. It instead focuses on the categories of money Hunt believes he is entitled to—Defendants' pay-per-view profits, Lesnar's fight purse and win bonus, and Zuffa's and White's proceeds from the WME-IMG purchase. Hunt's contracts, however, expressly address the compensation he is owed for fighting, including the amount of his purses, when he gets pay-per-view and when he does not, and whether he gets win bonuses. This should end the matter as it relates to Zuffa. *See* Mot. 22:2-19. Hunt's argument that Defendants White and Lesnar are "unjustly enriched if they received property 'against the fundamental principles of justice or equity and good conscience,'" *see* Opp. at 23:28-24:1, likewise fails because it purposefully omits the first part of the unjust enrichment calculus—that the money or property unjustly retained must belong "to another." *See* Mot. at 21:25-22:2. Hunt does not (and cannot) allege that Defendants' pay-per-view profits, purses and win bonuses, and sale proceeds ever belonged to him under any legitimate theory.

      **C.**     **Negligence Claim (Count 7).**

Recognizing that the express assumption of the risk provisions contained in the parties' Promotional and Bout Agreements foreclose his ability to recover for personal injuries, Hunt changes direction and contends that his negligence claim actually seeks to recover for damage to his "business, brand and opportunities" not "bruises or broken bones." *See* Opp. at 22:21-23. This detour leads Hunt into another dead end. Nevada's economic loss doctrine expressly precludes a party from using a negligence claim as a vehicle by which to recover for purely economic harm. *See Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 206 P.3d 81, 87 (Nev. 2009) ("unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses."). By disavowing that his negligence claim seeks to recover for personal injuries, Hunt has provided the Court with an additional basis upon which to dismiss this claim.

## CONCLUSION

Based on the foregoing, Defendants Zuffa and White respectfully submit that their Motion to Dismiss should be granted in its entirety.

DATED this 7th day of April, 2017.

          CAMPBELL & WILLIAMS

By   /s/ *J. Colby Williams*
    DONALD J. CAMPBELL, ESQ. (#1216)
    J. COLBY WILLIAMS, ESQ. (#5549)
    700 South Seventh Street
    Las Vegas, Nevada 89101

*Attorneys for Defendants*
*Zuffa, LLC and Dana White*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendants Zuffa, LLC's and Dana White's Reply in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** was served on the 7th day of April, 2017 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

                                                                                                      /s/ *J. Colby Williams*
                                                                                    An employee of Campbell & Williams

# INDEX OF EXHIBITS

Supplemental Declaration of J. Colby Williams

Exhibit 8 –   Nevada State Athletic Commission Payment Verification and Breakdown Sheet for UFC 209.