CHRISTINA DENNING, ESQ. (CA Bar No. 211137- Pro Hac Vice)
denningc@higgslaw.com
SCOTT INGOLD, ESQ. (NV Bar No. 11818)
ingolds@higgslaw.com
JOSEPH A. GONNELLA, ESQ. (CA Bar No. 306619 – Pro Hac Vice)
gonnellaj@higgslaw.com
Higgs Fletcher & Mack LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913

JAMES HOLTZ, ESQ. (NV Bar No. 8119)
james.holtz@holtzapc.com
LAW OFFICE OF JAMES F. HOLTZ
1120 Town Center Drive, Suite 200
Las Vegas, NV 89144
T: 702.304.1803
Attorneys for Plaintiff - MARK HUNT

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARK HUNT, an individual,<br><br>              Plaintiff,<br><br>v.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability company; BROCK LESNAR, an individual; DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>              Defendants. | Case No.: 2:17-cv-00085-JAD-CWH<br><br>**PLAINTIFF MARK HUNT'S FIRST AMENDED COMPLAINT FOR:**<br><br>1. **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) [18 U.S.C. § 1961 et seq.];**<br>2. **CONSPIRACY TO COMMIT CRIME RELATED TO RACKETEERING (NRS § 207.350 et seq.);**<br>3. **COMMON LAW FRAUD;**<br>4. **CIVIL AIDING AND ABETTING FRAUD;**<br>5. **BREACH OF CONTRACT;**<br>6. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>7. **UNJUST ENRICHMENT;**<br>8. **BATTERY;**<br>9. **CIVIL AIDING AND ABETTING BATTERY.**<br>10. **CIVIL CONSPIRACY**<br>              **[JURY DEMAND]** |

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
7997129.1

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

Plaintiff MARK HUNT ("HUNT"), alleges the following against Defendants ZUFFA, LLC, d/b/a ULTIMATE FIGHTING CHAMPIONSHIP ("UFC"), BROCK LESNAR, an individual ("LESNAR"), DANA WHITE ("WHITE"), an individual, and DOES 1 through 50, inclusive (collectively "Defendants").   HUNT seeks compensatory damages, declaratory relief, punitive damages, statutory treble damages and attorneys' fees.  HUNT complains and alleges as follows based on: (a) personal knowledge; (b) the investigation of HUNT's counsel; and (c) public records productions.  Allegations made on information and belief are so indicated.

## JURISDICTION AND PARTIES

1.      The United States District Court for the District of Nevada has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1331 and the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961, et seq.

2.      The United States District Court for the District of Nevada also has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332.  The amount in controversy exceeds the statutory minimum in an amount to be proven at trial.  This Court further has subject matter jurisdiction pursuant to 28 U.S.C. section 1367.

3.      HUNT is a citizen of Australia.  No defendant in this action is a citizen of Australia.

4.      UFC is a limited liability company organized under the laws of the State of Nevada with its principal place of business in Nevada.  All parties to this action have entered into or performed the contractual duties at issue in this action in the State of Nevada.  The UFC 200 bout between HUNT and LESNAR at issue in this matter occurred in the State of Nevada.

5.      LESNAR is a citizen of Canada.

6.      WHITE is a citizen of Nevada.

7.      The true names and capacities of DOE defendants named herein as

DOES 1 through 50 are unknown to HUNT who therefore sues such defendants by fictitious names.  HUNT will seek leave to amend to allege the true names and capacities of such DOE defendants when the same are ascertained.  HUNT is informed and believes, and thereon alleges, that each of the Defendants sued herein as a DOE is and was responsible in some manner for the damages alleged.

8.     HUNT believes that each defendant is and at all relevant times was the agent or employee of each of the remaining defendants and, in committing the acts alleged herein, was acting within the scope of his, her or its authority as agent or employee and with the permission, knowledge and consent of the remaining defendants.

9.     Each and every allegation against defendant WHITE is made against him both individually and is imputed to UFC acting through its high-ranking official, WHITE, including without limitation for the purposes of the RICO claim, consistent with *Cedric Kushner Promotions, LTD v. King* 533 U.S. 158 (2001).

10.     Venue is proper in this judicial district under 28 U.S.C. sections 1391 (b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

11.     A live controversy exists.  HUNT has been injured, and is likely to continue to be injured, as a direct result of Defendants' unlawful conduct.

## **BACKGROUND INFORMATION**

12.     Mixed Martial Arts ("MMA") is one of America's fastest growing sports.  Competitors use a combination of fighting styles including wrestling, boxing, muay thai, jiu-jitsu and others to win by knockout, submission, referee stoppage or judge's decision.  UFC controls nearly ninety percent of MMA revenue worldwide.[1]  In July of 2016, UFC was sold for $4,200,000,000.00,

---

[1] Kartikay Mehrotra and Even Novy-Williams, *UFC's $4 Billion Sale is Fodder for Fighters' Antitrust Suit*, https://www.bloomberg.com/news/articles/2016-07-12/ufc-s-4-billion-sale-is-new-fodder-for-fighters-antitrust-suit, (last updated July 12, 2016).

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

3

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

1  believed to be the largest sports franchise sale ever.  UFC's owners, the Fertitta

2  brothers, realized a 2000 percent return on their 2001 investment.[2]  UFC retains a

3  disproportionate share of revenue compared to their fighters' allocation.  UFC

4  does not allow their fighters to fight for any other MMA promotion while they are

5  under contract, regardless of working conditions including circumstances rising to

6  contractual compulsion to repeatedly fight opponents who use illegal performance

7  enhancing drugs, including amphetamines and anabolic steroids.  Serious injuries

8  and death from MMA fights can and do occur.[3]

9  ## SUMMARY OF ALLEGATIONS

10     13.    The substance of this action includes but is not limited to events

11  surrounding a MMA bout that occurred on July 9, 2016, promoted by UFC as

12  "UFC 200."  Among other bouts on the card, UFC 200 featured a heavyweight bout

13  between LESNAR and HUNT.

14     14.    The first paragraph of the UFC Anti-Doping Policy, as of July 9,

15  2016, reads:

16  *This Policy is a central part of UFC's expanded efforts to protect the*
17  *health and safety of its Athletes, and also to protect their right to*
   *compete on a level playing field.  UFC's goal for this Policy is to be*
18  *the best anti-doping program in all of professional sports.*

19     15.    HUNT is currently and at all times has been a clean fighter, who

20  competes in the sport of MMA without the use of performance enhancing

21  substances prohibited by UFC, United States Anti-Doping Agency ("USADA")[4]

22  and the World Anti-Doping Agency ("WADA").

23     16.    The use and proliferation of banned substances is a threat to fair

24  competition and fighter safety.

25

26  [2] Chuck Mindenhall & David Shoemaker, *How to Fix the UFC*, https://theringer.com/how-to-fix-the-ufc-
   3e5264e60eee#.l4lh4ib4g, (August 1, 2016).
27  [3] Cindy Boren, *MMA Fighter Joao Carvalho Dies From Head Injuries Suffered in Bout*, The Washington Post,
   https://www.washingtonpost.com/news/early-lead/wp/2016/04/12/mma-fighter-joao-carvalho-dies-from-head-
   injuries-suffered-in-bout/?utm_term=.ac77676809a2, (April 12, 2016).
28  [4] UFC contracted with USADA in 2015 for drug testing services.  USADA is not a named defendant in this action.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO
112567-00001                    4                    PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

17.     UFC and its agents have affirmatively circumvented and obstructed fair competition for their own benefit, including being complicit in doping proliferation under the guise of advancing "*the best anti-doping program in all of professional sports*."  Defendants have accomplished this by means including but not limited to various and rampant purported use exemptions, drug testing exemptions and by failure to enforce its own policies.

18.     Defendants' wrongful conduct described in this complaint predated the implementation of the current UFC Anti-Doping Policy and continued notwithstanding the implementation of the current UFC Anti-Doping Policy.

19.     Just one month before UFC 200, UFC granted LESNAR an exemption from established USADA pre-fight testing requirements that he participate in four months of drug testing in connection with UFC 200, with knowledge or willful indifference to the fact that LESNAR was using banned substances.  This exemption came just one month before the lucrative sale of UFC.

20.     Without HUNT's knowledge or consent, UFC conspired and caused LESNAR, a doping fighter, to fight HUNT, a clean fighter, despite the fact that LESNAR used substances banned by UFC, USADA and WADA.  The substances, Clomiphene and 4-Hydroxyclomiphene, are known "Post Cycle Therapy" ("PCT") substances believed to be used after a period of strength training with anabolic steroids or similar prohibited substances.

21.     HUNT lost the UFC 200 bout to LESNAR and suffered severe physical injury, as well as economic and non-economic damages including without limit damage to his business and property, interest, past and future economic damages, including losses in apparel, both sales and appearance fees.

22.     HUNT lost the UFC 200 bout as a result of Defendant's wrongful conduct in facilitating LESNAR's doping and conferring a known, illegal competitive advantage over HUNT.

23.     HUNT would have defeated LESNAR at UFC 200 had LESNAR not

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

5

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

cheated with the knowing aid of WHITE and UFC, HUNT would have fared better (i.e. a less lopsided and less damaging loss), or had the doping scheme not been concealed, HUNT would have refused the fight altogether.  Defendants were unjustly enriched by their conduct to the detriment of HUNT, including through pay-per-view revenues far exceeding LESNAR's $2,500,000.00 fight purse, in an amount to be proven at trial.

24.    Defendants, and each of them, conspired to commit the violations of state and federal law described herein.

25.    Defendants' conduct in connection with UFC 200 was in furtherance of their own profit at the expense of fighter safety and fair competition.

26.    Defendants' conduct in connection with UFC 200 is representative of and consistent with a pattern of conduct by Defendants of wrongfully jeopardizing fighter health and safety for profit, in violation of state and federal law and UFC's own policies.  UFC's pattern of conduct includes, but is not limited to, granting doping exemptions and drug testing exemptions to known doping-competitors, and causing those drug-enhanced fighters to compete with clean fighters.

27.    Defendants' conduct described in the foregoing paragraph caused HUNT harm.  Defendants wrongful conduct artificially increased the number of UFC title contenders in the fighter pool.  By reason of the wrongful benefit of banned substances facilitated by Defendants, more fighters wrongfully gain strength, power, skill or ability to compete at elite levels of MMA.  Such artificial manipulation of the fighter pool depressed wages paid to HUNT and awarded opportunities including title fights, marketing and promotional opportunities to doping fighters that would have otherwise been awarded to HUNT.

28.    HUNT's last four opponents in UFC-promoted bouts have used performance enhancing substances prohibited by UFC and WADA.

29.    Prior to UFC 200, in or around April 2016, UFC executed an early renewal of its exclusive contract with HUNT such that HUNT is foreclosed from

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

6

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

seeking employment with other promotions.

    a. HUNT entered this contract after expressly informing WHITE and UFC that he had competing offers to advance his business and property interests. WHITE and UFC had actual knowledge that HUNT sought the opportunity to earn title fights for one million dollars per fight plus pay-per-view profit sharing. (See PARA at § 6.1)

    b. Specifically, on March 30, 2016 at 7:44 a.m. (Australian Eastern Time Zone, "AET") HUNT stated to WHITE in writing: "*I got kids I have to put through college I have already had offers from others about competing as well.*"

    c. At this time, WHITE and UFC were aware that HUNT sought title fights, title fight compensation and pay-per-view compensation. Specifically, on March 31, 2016 at 9:03 a.m. (AET) HUNT stated to WHITE in writing: "*Thanks Dana I will look at contract and get back to u guys I would want my next contract to be my last 1 million a fight 6 fights 6 mil I can retire and be happy and ppv of title if I get title.*"

    d. WHITE responded in writing on March 31, 2016 at 11:22 a.m. (AET): "*We can't do 1M a fight bro*"

    e. HUNT responded in writing on March 31, 2016 at 11:27 a.m. (AET): "*Ok let's start new contract on 8 and go up from there if I win title we can talk ppv*"

30. WHITE and UFC had actual knowledge that HUNT's exclusive contract with UFC caused HUNT to lose earning opportunities with other fight promotions, and on April 9, 2016 at 7:26 a.m. (AET) HUNT expressly requested in writing that his new contract be completed within two years to permit HUNT to compete in other fight promotions in other countries. On April 9, 2016 at 8:38

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

7

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

a.m., WHITE's written response was "*I can't commit to the country thing mark cause I can't promise where we will go.*"  HUNT's written reply on April 9, 2016 at 9:18 a.m. stated:  "*I know I'm talking about wen the UFC contract is done I want to finish my career with 1 off fights could be kick boxing or Mma*"

31.    HUNT relied on the foregoing express representations in entering the contract and reasonably believed Defendants would not engage in RICO conduct to assist his opponents' doping, causing him a competitive disadvantage in advancing to title fights.

32.    On information and belief, HUNT's contract with UFC is atypical for UFC fighters in that it calls for lockstep fixed compensation for bouts notwithstanding the bout outcomes and opponents' doping violations.

33.    As a professional athlete, HUNT sought to build his fan base on social media based on the fact that a broader and more active fan base inevitably leads to greater promotional opportunities, book and merchandise sales, licensing opportunities, appearance fees, and related means of business income for HUNT.

34.    UFC and WHITE also had actual knowledge that HUNT had an interest in his existing fan base and that HUNT sought to expand his social media presence, promotional opportunities, book and merchandise sales, licensing opportunities, and appearance fees, including through footage of his MMA fights. On April 12, 2016 at 4:02 p.m., HUNT stated to WHITE in writing:  "*Hey Dana I am trying to build my fan base as well with social media and wanted to know if u can allow me to use ufc footage on my page.*"

35.    UFC President, WHITE, was a nine (9) percent owner of UFC prior to its sale to new ownership for approximately $4,200,000,000.00.  WHITE will remain as president of UFC and will retain a partial ownership interest.  WHITE had a strong monetary motive (of approximately $360,000,000.00) to ensure the "success" of the landmark UFC 200 event, which occurred immediately prior to finalizing the sale of UFC, and to ensure UFC's high profile bout between

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

8

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

LESNAR and HUNT would not be jeopardized regardless of doping violations.

36.    Doping fighters are bigger, stronger, faster, more aggressive, can deliver and withstand more punishing blows, and therefore are a more entertaining product for UFC to feature in its televised bouts.  Specifically, LESNAR is one of the most famous names in MMA history and had a substantial WWE following; by featuring LESNAR, despite his doping, UFC ensured it would receive a substantial boost to its pay-per-view sales, both from existing MMA fans who may not otherwise have purchased this fight, as well as from cross-over WWE fans who wanted to watch LESNAR fight in MMA once again.

37.    By concealing LESNAR's doping until after UFC 200, UFC and WHITE could enjoy and retain the lucrative benefits of the UFC 200 HUNT-LESNAR bout, while the damages were suffered solely by HUNT.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### UFC 152: Jones v. Belfort- UFC Grants
### Testosterone Exemption and Then Suppresses Drug Test Results

38.    UFC 152 was held on September 22, 2012.  The main event was a bout between John Jones ("Jones") and Vitor Belfort ("Belfort").  Belfort accepted the fight on late notice.

39.    UFC 152 followed the embarrassing and first-ever UFC event cancellation.  UFC 151 was cancelled due to an injury to Dan Henderson, who was to fight Jones in the main event.  Jones declined to fight replacement opponent Chael Sonnen.

40.    Since as early as 2011, UFC granted Belfort a "Testosterone Replacement Therapy" (TRT) use exemption at the recommendation of a UFC-affiliated doctor for Belfort to take testosterone supplements.  The existence of Belfort's exemption was not publicly known until 2013, after UFC 152.  At all times prior to 2013, UFC willfully concealed Belfort's testosterone exemption, and opponents were not aware that he was granted a TRT exemption, allowing him to

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

9

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

maintain abnormally high testosterone levels.  These elevated testosterone levels conferred a competitive advantage, including strength advantages useful in hand to hand combat.

41.    By September 4, 2012, nearly three weeks prior to UFC 152, UFC was in possession of Belfort's pre-fight drug testing results.  At approximately 3:01 p.m. Pacific time on September 4, 2012, a UFC paralegal inadvertently e-mailed the drug test results to a group of people, including approximately 29 other fighters, trainers and managers.

42.    The content of Belfort's drug test results was "flagged" for containing free testosterone approximately two-and-one-half (2.5 times) the normal range.

43.    On September 4, 2012, at approximately 3:04 p.m., a UFC paralegal sent a follow up email attempting to recall the inadvertently disclosed drug test results.

44.    On September 4, 2012, at approximately 3:55 p.m., a UFC paralegal sent an additional follow up email imploring the unintended recipients to "*please disregard the e-mail, please delete ASAP!!!!!*"

45.    On September 4, 2012, at approximately 7:16 p.m., the unintended recipients were contacted by then UFC executive vice president and general counsel, Ike Lawrence Epstein, threatening legal action for any disclosure of Belfort's drug testing results.

46.    At no time prior to the UFC 152 bout was Jones aware or informed that Belfort was granted a testosterone use exemption or that Belfort's drug test was flagged as abnormal for elevated testosterone.

47.    Notwithstanding Belfort's drug test result, UFC concealed and actively suppressed by threat of litigation the test results, and caused and permitted the bout between Belfort and Jones to proceed.

48.    On information and belief, UFC permitted Belfort to fight notwithstanding his drug testing results, in part, to prevent the embarrassment of a

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

10

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

subsequent cancelled event, damage to the reputation and brand of UFC, and in direct pursuit of profit, to the detriment of fighter safety, in violation of state and federal law as described further below.

UFC 200: HUNT V. LESNAR- UFC GRANTS DRUG TESTING EXEMPTION, LESNAR PROVIDES POSITIVE SAMPLES, AND STILL FIGHTS IN UFC 200

49.     The Nevada Athletic Commission ("NAC") prohibits the use of any alcohol, stimulant, drug, or injection that is not approved by the NAC.  The NAC has also adopted the Prohibited List published by WADA to provide notice to unarmed combatants of drugs, injections and stimulants that are not approved by the NAC.

50.     On or around December 30, 2011, LESNAR retired from UFC after losing at UFC 141.

51.     Pursuant to the UFC Anti-Doping Policy, as of July 9, 2016, a retired fighter:

> [M]ay not resume competing in UFC Bouts until he/she has given UFC written notice of his/her intent to resume competing and has made him/herself available for Testing for a period of four months before returning to competition.

52.     The UFC Anti-Doping Policy provides an exception for "*exceptional circumstances*" or where the strict application of the rule would be manifestly unfair to an athlete.

53.     At the time of UFC 200, LESNAR was still under contract with World Wrestling Entertainment ("WWE").

54.     On or around March 30, 2016, UFC announced UFC 200 main event to be Conor McGregor ("McGregor") versus Nate Diaz ("Diaz"), a rematch of UFC 196.

55.     The McGregor v. Diaz rematch was highly anticipated following Diaz's unexpected submission victory over the favored Featherweight Champion McGregor.

56.     On or around April 19, 2016, McGregor and UFC were involved in a dispute over McGregor's marketing obligations for UFC 200, which resulted in McGregor threatening to retire and being removed from the UFC 200 card.

57.     On April 20, 2016 at 12:34 p.m. (AET), WHITE stated to HUNT in writing: *"I am working on something for u for 200.  Stay in shape . . . And keep it quiet about 200 please."*  UFC and WHITE wanted HUNT to "keep quiet about 200" because Defendants were wrongfully delaying LESNAR's entry into the USADA testing pool.

58.     On or around April 27, 2016, UFC announced the new UFC 200 main event would be Daniel Cormier ("Cormier") versus Jones.

59.     UFC and LESNAR had already begun negotiating LESNAR's UFC 200 return in March of 2016, more than four-months in advance of the event, as admitted by LESNAR in a television broadcast.

60.     As early as May of 2016, LESNAR's name appeared on UFC Website as a current or active fighter.  Like the above-referenced e-mail errors of UFC 152, UFC attributed LESNAR's addition to the active fighter roster as a technical error, and on June 3, 2016, affirmed LESNAR was not returning to UFC.

61.     On May 15, 2016 at 2:57 (AET) WHITE told HUNT in writing: *"U be in shape for 200 my friend . . . But don't tell anyone"*.  At this time LESNAR, UFC and WHITE knew LESNAR would be HUNT's opponent at UFC 200, but failed to disclose this to HUNT in order to wrongfully delay and conceal LESNAR's entry into the USADA testing pool.

62.     Hunt repeatedly asked WHITE who his UFC 200 opponent would be. On May 27, 2016, at 1:16 p.m. (AET) HUNT asked WHITE in writing: *"Who am I fighting at 200? Has Connor gotten that swoll?"*  WHITE responded in writing on May 27, 2016 at 1:20 p.m. *"I'm working on it as we speak.  I will have an opponent for u next week my friend!!!"*  At this time LESNAR, UFC and WHITE knew LESNAR would be HUNT's opponent at UFC 200, but again failed to disclose this

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

12

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

to HUNT in order to continue wrongfully delaying and concealing LESNAR's entry into the USADA testing pool.  On information and belief, WHITE and UFC were intentionally delaying the announcement because LESNAR was using banned substances and needed additional time in order to circumvent testing procedures.

63.     In response to HUNT's denial to leaking UFC 200 reports to the media, WHITE stated to HUNT in writing on June 1, 2016 at 9:23 a.m. (AET): *"Ok please just keep it quiet Mark.  It's important."*

64.     At this time, UFC and WHITE were aware that HUNT was trying to build his brand and social media following and that these were monetized interests.  At UFC and WHITE's express demand, HUNT agreed to forego media interviews, which operated to the detriment of his brand, marketing, and promotional opportunities.  On June 1, 2016 at 9:24 a.m. (AET), HUNT agreed in writing to WHITE to forego media interviews and keep quiet:  *"I won't do anymore interviews."*

65.     Also on June 1, 2016, at 11:53 a.m. (AET), HUNT notified WHITE in writing that WHITE and UFC's delay was harming HUNT and would cost him a title fight.

66.     Defendants wrongfully continued to delay LESNAR's entry into the testing pool and announcement of the bout.

67.     In an interview with ESPN's Brett Okamoto on June 3, 2016, WHITE denied LESNAR's return to UFC.  WHITE provided an untruthful and admittedly *"wacky explanation"* of the purported error concerning the creation of a UFC database leading to the inadvertent inclusion of LESNAR as an active fighter.[5]

68.     On or about June 3, 2016, the same day that WHITE denied LESNAR's UFC return, LESNAR and UFC executed the bout agreement for UFC 200.  UFC would later admit on June 7, 2016, via public comment that ". . .

[5] The interview can be found at: https://www.youtube.com/watch?v=ffKKmTgsfV8&feature=youtu.be
A true and correct copy of this video, accessed January 9, 2017, is maintained by HUNT's counsel.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

13

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

*conversations with [LESNAR] have been ongoing for some time*."

69.     On June 4, 2016, during the airing of UFC 199, UFC announced and promoted that LESNAR would return from retirement to fight HUNT in UFC 200.

70.     LESNAR's return for UFC 200 was to be a "one-off" UFC bout pursuant to WWE's express permission due to WWE's exclusive contract with LESNAR.

71.     The "one-off" nature of LESNAR's return operated to eliminate any deterrent or disincentive to LESNAR's pre-fight doping.  LESNAR's and UFC's interests in having LESNAR compete in UFC 200 were aligned such that any punishment from a doping violation, including suspensions or fines, would be relatively negligible.

72.     On June 5, 2016 at 12:23 p.m. (AET) HUNT asked WHITE in writing *"Can u make sure [LESNAR] gets test properly . . ."*  WHITE responded in writing on June 5, 2016 at 2:14 (AET) *"They are all over him"*.  That representation by WHITE communicated to HUNT that UFC and WHITE would take reasonable steps to ensure LESNAR would be a clean fighter at the time of UFC 200, and was knowingly false such that UFC, WHITE and LESNAR had conspired to lure LESNAR back for UFC 200 with a substantial purse with the actual knowledge and intent that LESNAR would not be a clean fighter.  HUNT reasonably relied on that representation believing that LESNAR would not use banned substances and that UFC and WHITE would not assist LESNAR in evading testing.  On June 5, 2016, at 5:06 p.m. (AET), WHITE again told HUNT in writing: *"Don't say anything to any media"*.  WHITE and UFC were continuing to intentionally delay the announcement; on information and belief, this was because LESNAR was using banned substances and needed additional time in order to circumvent testing procedures.

73.     On June 6, 2016, live on ESPN's morning edition of SportsCenter with reporter Hannah Storm, LESNAR admitted his negotiations with UFC began

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

14

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

"*three months ago*", necessarily in or around early March of 2016, more than four months prior to UFC 200.

74.    LESNAR further admitted his motive putting money above all else:

*Ms. Storm*: *Why do you think WHITE welcomed you back?*

*LESNAR: Big business.  At the end of the day I'm a prize fighter . . . I fight for money, and it's no different, they're making money, I'm making money, everybody is making money. That's what this is all about . . . It just so happens I'm making a boatload of money . . . I can't disclose . . . there's lots of zeroes behind it.*

75.    LESNAR's conduct and repeated false statements concerning UFC 200 is consistent with UFC's profit-first motive, despite any detriment to others including fighter safety.

*Ms. Storm:* [What is your reaction to MMA reporter, Ariel Helwani, being banned for life by UFC for breaking the news of your UFC comeback.]

*LESNAR: I don't even know who that is . . . the only thing I care about is me . . .*

**Figure A**:  LESNAR at UFC 200 weigh-in on July 8, 2016.



Zuffa LLC via Getty Images

76.    On or about June 6, 2016, LESNAR was registered by USADA into UFC Anti-Doping Policy testing pool.

77.    On June 7, 2016 at 7:19 a.m. (AET) HUNT stated to WHITE in writing: *"Dana if he test positive for juicing send me his ppv numbers . . ."*

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

15

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

WHITE and UFC had actual knowledge that HUNT relied on their representations that LESNAR would be clean and that UFC and WHITE would not aid LESNAR in concealing his doping.

78.   HUNT continued to express his reliance that LESNAR would not take banned substances and that WHITE and UFC would not aid LESNAR's attempt to cheat and evade detection.

a.  On June 8, 2016 at 7:23 (AET) HUNT stated to WHITE in writing: *"Can u do 20 and 8 [UFC 200 tickets] up front and how about if he is positive for cheating . . ."*

b.  On June 8, 2016 at 8:35 a.m. (AET) WHITE responded to HUNT in writing: *"USADA is testing the shit outta him . . ."*

c.  In reliance on WHITE's representation, HUNT responded in writing on June 8, 2016 at 9:11 a.m. (AET): *"Ok"*

d.  On June 8, 2016 at 5:15 p.m. (AET) HUNT stated to WHITE in writing: *"Hey Dana wats this waiver that Lesnar is getting from usada wats the deal"*

e.  On June 8, 2016 at 6:59 p.m. (AET) HUNT stated to WHITE in writing: *"I'm not making weight if that guy doesn't have to test [comical emoticon/emoji face]"*

f.  On June 8, 2016 at 7:50 p.m. (AET) HUNT stated to WHITE in writing: *"On a serious not why is he exempt from testing for 4 months wen everyone has to"*

g.  On June 9, 2016 at 12:10 a.m. (AET) WHITE stated to HUNT: *"We made a move to get a deal done with Vince to get him back for UFC200.  USADA is testing the shit outta him as we speak.  We went after Brock. He has no problem doing whatever tests USADA wants.*

h.  On June 9, 2016 at 1:13 a.m. HUNT responded to WHITE in

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

16

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

writing and HUNT expressed concern that the four month testing exemption was being manipulated so LESNAR could get banned substances "*out of his system*".

    i.  On June 9, 2016 at 3:22 a.m. WHITE stated to HUNT in writing: "*Brock is not exempt for any testing. He will be the most tested athlete on this card That are ALL OVER HIM.*" WHITE's assertion was false.

    j.  Hunt reasonably relied on the foregoing statements by WHITE and UFC, which statements were false as Defendants were engaged in illegal RICO conduct described further below.

79.    On information and belief, premised on publicly available documents, on or around July 1, 2016, the NAC requested further information from UFC justifying the LESNAR drug testing retirement exemption.

80.    In an email from UFC executive Jeff Novitzky, dated July 1, 2016 at 12:23 p.m., UFC admitted to the NAC that UFC notified LESNAR he would not be drug tested until he executed his UFC 200 bout agreement.

81.    Defendants LESNAR and UFC both had actual knowledge of LESNAR's impending participation in UFC 200 more than four months in advance of that event, constituting sufficient time for LESNAR to comply with USADA drug testing protocols.

82.    On or around July 6, 2016, the LESNAR versus HUNT bout was promoted to UFC 200 main event following Jones' removal from the fight card.

83.    On or around July 7, 2016, UFC announced Anderson Silva would replace Jones in UFC 200 to fight Cormier, and the bout between Miesha Tate and Amanda Nunes was promoted to UFC 200 co-main event along with the bout between LESNAR and HUNT.

84.    On July 8, 2016, LESNAR completed a pre-fight questionnaire stating he did not take or receive any medication or drugs, whether prescription or over-

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

17

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

the-counter, from anyone or anyplace, within the month prior to his UFC 200 bout.

85.     On information and belief, LESNAR used prohibited substances including Clomiphene after negotiations for UFC 200 began, but before he executed UFC 200 bout agreement and became subject to drug testing.

86.     Defendants and each of them conspired with the other to permit LESNAR to evade USADA drug testing protocols imposed by the UFC Anti-Doping Agreement.

87.     UFC wrongfully abused its discretion to grant LESNAR's drug testing exemption via USADA, as all Defendants had actual knowledge of LESNAR's participation in UFC 200 more than four months prior to the event.

88.     UFC, WHITE and LESNAR conspired and caused LESNAR to evade USADA drug testing with actual knowledge or reckless disregard of LESNAR's use of prohibited substances.  As a direct and proximate result of Defendants' conduct, Defendants caused a doping competitor, LESNAR, to fight a clean fighter, HUNT, in violation of state and federal law and the parties' respective contracts.

89.     On June 28, 2016, LESNAR produced a positive "out of competition" urine sample to USADA.

90.     UFC and USADA were aware of the option to expedite samples for a nominal fee but failed to do so, notwithstanding LESNAR's drug testing exemption and UFC's express statements to LESNAR as to the exact date he would remain exempt from drug testing.

91.     On information and belief, based on publicly available documents, the average turnaround time for expedited drug testing results is approximately three (3) days.

92.     WHITE and UFC had actual knowledge that HUNT was building his professional brand.  On July 5, 2016 at 12:03 p.m. (AET) HUNT stated to WHITE in writing: *"Hey Boss, can I have my camera guy have access to film me around UFC 200 please.  Doco on the book.  Will have 2-3 guys."*  WHITE and UFC

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

18

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

1   refused.

2        93.    On July 9, 2016, at UFC 200, LESNAR defeated HUNT in a three

3   round unanimous judge's decision.  LESNAR's payout was a UFC all-time record

4   $2,500,000.00, not including his pay-per-view allocation, which HUNT is informed

5   and believes is in the millions of dollars.  HUNT's payout totaled $700,000.00.

6        94.    As a direct and proximate result of Defendants' conduct, HUNT

7   sustained physical injury as a result of hand to hand combat with the drug-enhanced

8   fighter LESNAR.  HUNT also sustained injury to his business and property

9   interests as described further below.

10        95.    Also on July 9, 2016, the day of UFC 200, LESNAR provided a

11   positive "in competition" sample for testing.

12        96.    On or around July 15, 2016, USADA and UFC learned of LESNAR'S

13   doping violation from his June 28, 2016 "out of competition" sample.  LESNAR

14   tested positive for Clomiphene, an anti-estrogenic substance, and 4-

15   Hydroxyclomiphene.  Clomiphene is not approved by the NAC and is a substance

16   prohibited by the NAC and by WADA.

17        97.    On or around July 19, 2016, USADA and UFC learned of LESNAR'S

18   anti-doping violation from his July 9, 2016 "in competition" sample.  LESNAR

19   again tested positive for Clomiphene and Hydroxyclomiphene, neither of which are

20   approved by the NAC and are prohibited by the NAC and by WADA.

21        98.    ON July 27, 2016 at 7:15 a.m., HUNT stated to WHITE in writing:

22   *"This is what I want done . . . cheater forfeits his entire money to opponent . . . u*

23   *told me he was clean."*

24        99.    Despite LESNAR's win being overturned to a no contest, Defendants

25   directly and proximately caused HUNT lost opportunities for career advancement,

26   lost opportunity to fight and win fair bouts, past and future lost wages, and the lost

27   opportunity to further his earning potential including advancement to title fights

28   and promotional and marketing opportunities.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

19

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

100.   UFC 200 was not the first time UFC caused or willfully permitted a doping fighter to compete against HUNT.

101.   On March 20, 2016, at UFC Fight Night, HUNT fought Mir which was broadcast globally by wire including via television and internet.

    a.  Mir had a pre-existing history of using prohibited substances and was granted a "Therapeutic Use Exemption" ("TUE").

    b.  Mir's TUE included amphetamines and testosterone via TRT.

    c.  UFC and WHITE, knowingly facilitated Mir's use of banned substances, concealed the information from HUNT, and caused the doping Mir to fight HUNT.  Mir tested positive for a prohibited substance classified as an anabolic steroid.  UFC and WHITE's conduct is consistent with a pattern, both prior to the current Anti-Doping Policy and after the enactment of the Anti-Doping Policy, to aid cheating fighters in circumventing drug testing or facilitating outright doping under the guise and false pretense of medical or therapeutic use exemptions.  Mir's TUE conferred a wrongful competitive advantage, including strength advantages useful in hand to hand combat.

    d.  Mir's presence in the fighter pool, aided by UFC and WHITE, was illegitimate and artificially inflated the fighter pool, depressing wages paid to HUNT, as Mir and other doping fighters would not otherwise possess the power, strength, skill or ability to compete at elite levels of MMA without banned substances.

102.   On December 7, 2013, at UFC Fight Night, HUNT fought Antonio "Bigfoot" Silva ("Silva"), which was broadcast globally by wire including via television and internet.

    a.  Silva had a pre-existing history of using prohibited substances, was granted a TUE, and knowingly permitted to inject testosterone.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

20

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

    b.  Silva tested positive for abnormally high testosterone levels.

    c.  UFC and WHITE knowingly facilitated Silva's use of banned substances, concealed the information from HUNT, and caused the doping Silva to fight HUNT.

    d.  UFC and WHITE's conduct is consistent with a pattern, both prior to the current Anti-Doping Policy and after the enactment of the Anti-Doping Policy, to aid cheating fighters in circumventing drug testing or facilitating outright doping under the guise and false pretense of medical or therapeutic use exemptions.  Silva's TUE conferred a wrongful competitive advantage, including strength advantages useful in hand to hand combat.

    e.  HUNT was harmed in fight with Silva.  HUNT broke his hand in two places, and required surgery inserting screws in his hand.

    f.  The fight ended in a draw.

    g.  By reason of UFC and WHITE's wrongful conduct, HUNT fought Silva; HUNT would not have broken his hand otherwise.

        i.  Causation is twofold.  First, Silva was only permitted to fight by reason of WHITE and UFC's wrongful conduct, he would otherwise be precluded from fighting for taking banned substances.  HUNT would not have suffered a broken hand or suffered a draw.  Second, HUNT will establish by expert testimony, that Silva and all doping opponents, are more difficult to knock out or otherwise defeat, and are also more powerful and cause more damage while taking and receiving strikes, such that HUNT would not have broken his hand even if the bout proceeded as it did.

        ii.  Indeed, in a bout that was judged as an exceedingly rare draw by decision, Silva earned a draw (and HUNT suffered a

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001

21

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

draw) only by reason of UFC, WHITE, and Silva's wrongful conduct. That is, in a bout that was too close to call, one competitor's doping advantage was a common sense cause of the result.

      iii.  Like UFC 200, HUNT would have been in a better position had he not competed in the bout at all. HUNT was deprived of an informed choice due to Defendants' practice of concealing that his opponent will have the benefit of banned performance enhancing substances.

  h.  At this time, HUNT was under contract with UFC and forced to miss at least three (3) fights while he recovered from surgery for more than nine months.

  i.  HUNT earned no income during that period.

  j.  HUNT was deprived of his contractual income for those three additional fights by reason of UFC and WHITE's wrongful conduct.

103.  UFC's conduct represents a pattern of liberally granting purported use exemptions and other drug testing exemptions, without any additional safeguards to prevent abuse.

104.  UFC had actual knowledge that a material inducement for HUNT to compete in and contract with UFC was UFC's assurances to maintain and actually implement stringent drug testing of its fighters.

105.  On August 21, 2016, LESNAR participated in WWE Summerslam.

106.  On August 23, 2016, the NAC confirmed LESNAR tested positive for the estrogen blocker, Clomiphene, and temporarily suspended him. Clomiphene is a commonly used PCT to regulate natural testosterone production following a cycle of anabolic steroids or similar banned substance.

107.  In an Adjudication Agreement between LESNAR and the NAC,

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

22

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

LESNAR admitted to the above-referenced positive drug tests, and admitted these positive tests "*brought disrepute to unarmed combat*."  Pursuant to the Adjudication Agreement, LESNAR accepted a 12-month suspension from UFC and a fine of $250,000.00, equal to just one-tenth of his total UFC 200 purse, not including additional pay-per-view proceeds LESNAR received, if any.  LESNAR continues to participate in WWE as one of its most famous stars.

108.    As a result of LESNAR's doping violation, and as reflected in the Adjudication Agreement, the result of the LESNAR-HUNT UFC 200 bout was changed to a no contest.

109.    LESNAR's and UFC's conduct in connection with UFC 200 constituted a wrongful threat to fighter health and safety.

110.   HUNT suffered damage to his business and property interests.

111.   HUNT's appearance fees prior to UFC 200 were as follows:

| Date | Event | Amount | Status |
|---|---|---|---|
| March 4, 2016 | Gold Coast UFC Bar Appearance | $10,000.00 (AUD) | Paid |
| March 14, 2016 | Smart College Appearance | $10,000.00 (AUD) | Paid |
| March 20, 2016 | Brisbane UFC After Party | $10,000.00  (AUD) | Paid |
| June 13, 2016 | Razer Laptop Appearance | $10,000.00 (AUD) | Paid |
| July 7, 2016 | Documentary License Fee | $50,000.00 (NZD) | Paid |

112.   HUNT appearances after UFC 200:

| Date | Event | Amount | Status |
|------|-------|--------|--------|
| July 9, 2016 | UFC 200 After Party | $10,000.00 | Not paid- HUNT appearance canceled |
| September 4, 2016 | Call of Duty Ambassador | $12,500.00 (AUD) | Not paid- HUNT dropped as ambassador |
| September 22, 2016 | Rizen Movie Shoot | $50,000.00 (AUD) + 5% profit share | Not paid- HUNT removed from role |
| September 30, 2016 | PlayStation/Activision Commercial | $40,000.00 (AUD) | Not paid- HUNT appearance canceled |
| December 5, 2016 | Fight Night Appearance | $40,000.00 (USD) | Not paid- HUNT appearance cancelled |
| April 2017 | Sydney Health Expo | $10,000.00 (AUD) | Not paid- HUNT appearance cancelled |

On information and belief, these appearances were cancelled by the respective event promoters/organizers because Defendants' collusion to facilitate LESNAR's doping and illegitimate victory in UFC 200 damaged HUNT's brand such that those appearance offers were revoked.  None of the appearances were cancelled by HUNT.  The cancellations injured HUNT's business and property interests in excess of $90,000.00 in an amount to be proven at trial.

113.   HUNT generates advertisement revenue via the internet including twitter, facebook and markhunt.tv.  The advertising revenue is calculated based upon website traffic.  HUNT suffered damages in reduced advertisement revenue because Defendants' collusion to facilitate LESNAR's doping and illegitimate

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

victory in UFC 200 damaged HUNT's brand such that fewer internet users frequent his social media pages.

    a. In the two months prior and one month following HUNT's March 20, 2016, bout against Frank Mir ("Mir"), a far lesser draw than LESNAR, HUNT's social media generated five (5) independent volume spikes in excess of 2 million posts, including four meeting or exceeding 4 million posts.

    b. In the two months prior and one month after HUNT's UFC 200 bout with LESNAR, a far greater draw than Mir, HUNT's social media generated only two independent volume spikes in excess of 2 million posts, and none exceeded 4 million posts.

    c. The advertising revenue data establishes that Defendants wrongful conduct caused HUNT twofold harm.  First, HUNT's advertising revenue was harmed by Defendants' wrongful delay in announcing the bout.  Second, HUNT's advertising revenue was harmed by losing the bout caused by Defendants' illegal scheme to confer LESNAR a wrongful competitive advantage in the bout.

    d. HUNT's advertising revenue damages will be proven at the time of trial, including through the testimony of qualified experts as to causation and quantifiable damages.

114.  Earlier in his career, HUNT was commonly known as "The Doctor," a nickname he received for "prescribing sleeping pills" to his opponents by virtue of his one-punch knockout power.  More recently, HUNT has gone by the nickname "Super Samoan," which is prominently tattooed on his back and is highly visible during his bouts.  HUNT maintains a large fan and consumer base in the United States, and his brand is also highly regarded in Japan, where he previously won the K-1 World Grand Prix in 2001, a premier kickboxing event.  HUNT is also the Director of Juggernaut, "Apparel & Fight Gear by Mark Hunt" and earns income

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

25

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

therefrom. His fighting style is described as: "sheer power, technical boxing prowess, and a great jaw."

115.    On July 8, 2016, one day prior to UFC 200, HUNT earned $5,000.00 in licensing and royalties by and through Juggernaut.  HUNT has not generated license or royalty fees since UFC 200.  HUNT's lost revenue from his clothing brand will be proven at the time of trial, including through the testimony of qualified experts as to causation and quantifiable damages.

116.    HUNT authored a book titled "Born to Fight."  Book sales generated and continue to generate revenue for HUNT.  HUNT suffered damages in declining book sales because Defendants' collusion to facilitate LESNAR's doping and illegitimate victory in UFC 200 directly damaged HUNT's brand, reducing the demand for his book.  The amount of HUNT's damages attributable to the decline in book sales revenue due to Defendants' actions described herein will be proven at the time of trial, including through the testimony of qualified experts as to causation and quantifiable damages.

117.    Had HUNT known of WHITE, UFC and LESNAR's doping scheme, HUNT would have declined the fight, negotiated a far more lucrative agreement contemplating a clean fighter being subjected to hand-to-hand combat with a doping fighter, or otherwise protected his interests.

118.    WHITE, UFC, and LESNAR's doping scheme worked to the wrongful benefit of all Defendants.  LESNAR gained a lucrative payday notwithstanding his use of banned substances, and the negligible subsequent fine.

119.    By suppressing LESNAR's positive drug tests until after UFC 200, UFC and WHITE were able to profit from the LESNAR-HUNT main event draw. *The alternative was to publicly confront the fact that UFC was struggling to find legitimate, non-doping opponents for HUNT in the heavyweight division*.  The highly anticipated UFC 200 spectacle would have been an embarrassing failure with an underwhelming main event.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

26

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

120.   UFC continues its practice of wrongfully facilitating and concealing doping under the guise of an anti-doping mission.  As a direct consequence, UFC fighter pool is infested with doping competitors.

121.   UFC's wrongful doping scheme artificially increases the fighter pool and allows inferior competitors to succeed who would otherwise be incapable of becoming professional mixed martial artists.  This illegitimate surplus of fighters in the heavyweight division depressed and continues to depress wages of HUNT.

122.   UFC puts a disproportionate number of its doping fighters in the octagon with HUNT (four in a row).

123.   By reason of LESNAR, UFC, and WHITE's fraud, including written statements constituting wire fraud, HUNT, a clean competitor, fought against LESNAR, a doping competitor.

124.   By reason of Defendants' doping scheme and wrongful concealment of LESNAR's known doping, HUNT's business and property interests were harmed as described above.

125.   HUNT was and is in a worse financial position for having competed in UFC 200.

## FIRST CAUSE OF ACTION: RICO VIOLATIONS AND CONSPIRACY TO COMMIT RICO VIOLATIONS [18 U.S.C. § 1961 et seq.]

### (Against UFC, LESNAR & WHITE)

126.    HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

127.   UFC is a "person" within the meaning of 18 U.S.C. section 1961(3).

128.   LESNAR is a "person" within the meaning of 18 U.S.C. section 1961(3).

129.   WHITE is a "person" within the meaning of 18 U.S.C. section 1961(3).

130.   Does 1 through 50 are "persons" within the meaning of 18 U.S.C. section 1961(3).

131.   Defendants and each of them, engaged in a continuing course of conduct ("CONDUCT"), which CONDUCT and activities in furtherance of such CONDUCT is described in this paragraph and which was and is designed to wrongfully cause doping fighters to engage in hand to hand combat known as MMA with non-doping, clean fighters, who are induced to compete against doping fighters to the detriment of the health and safety of all fighters, and to the monetary benefit of Defendants and others involved in this scheme, which is and continues to be perpetrated by fraud, deceit and false pretenses with the intention of wrongfully obtaining labor and services of fighters, and with the intention of obtaining ticket and pay-per-view sales from the general public and other marketing and promotional opportunities, in the United States and abroad.  This scheme further includes devices and accommodations for doping fighters to circumvent drug testing or minimize punishment for positive drug tests to the detriment of any deterrent effect of UFC and WADA Anti-Doping Policies, which CONDUCT is done for the purpose of wrongfully maximizing profit-including the recent approximately $4,200,000,000.00 sale of UFC, to the detriment of the health and safety of all fighters and to the detriment of fair competition.  In furtherance of this scheme to acquire money and fighter labor and services by fraud and false pretenses, Defendants and each of them communicated by wire and radio communications, and, as discussed in detail below, each such communication is an indictable offense for Wire Fraud under 18 U.S.C. section 1343.

132.   Pursuant to the CONDUCT, doping fighters, including LESNAR, wrongfully obtained the benefit of enhanced physical strength, muscle recovery, and other improper competitive advantages over clean fighters.  Doping fighters are materially benefited by advancing their likelihood of winning bouts and corresponding profits from win bonuses, title fight consideration, career

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

28

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

advancement, promotional opportunities and other related monetary benefits.  Such benefits are wrongfully derived at the expense of clean fighters and jeopardize and increase the risk of serious injury or death to all fighters.

**Figure B**: Doping LESNAR fights HUNT, a clean competitor, at UFC 200.



UFC.com    *"[Dana White] told me he was clean."*

133.   Pursuant to the CONDUCT, promoters, including UFC, wrongfully obtain the benefit of bouts featuring steroid-enhanced fighters that are bigger, faster, and stronger, notwithstanding any unfair competitive disadvantage to clean fighters.  Permitting doping fighters to participate in bouts preserves the high name recognition and celebrity of many known doping fighters to wrongfully maximize fight attendance and pay-per-view subscriptions.  Improper drug testing exemptions and failure to fully enforce doping penalties further wrongfully benefits promoters, including UFC, by minimizing doping fighter suspensions to preserve their availability to compete and profit from future fight cards, including UFC bouts.

134.   LESNAR and UFC knowingly implemented the CONDUCT in connection with UFC 200, as set forth fully above in the factual allegations.  LESNAR's and UFC's CONDUCT was indispensable to achieving the enterprise's goals.  LESNAR may return to fight in UFC.  LESNAR therefore presents a continuing threat of repeated CONDUCT.

135.   The above-referenced CONDUCT constitutes an "ENTERPRISE"

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

29

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

within the meaning of 18 U.S.C. section 1961 (4).  This ENTERPRISE, consisting of individuals, corporations and other legal entities, and groups of individuals associated in fact, is separate and distinct from each individual Defendant.  The structure of the ENTERPRISE consists of fight promotions, including UFC, doping fighters, including but not limited to LESNAR and Belfort, UFC employees and agents specifically referenced below, which ENTERPRISE is disguised and appearing as legitimately engaged in efforts to combat doping in MMA, when actually, the ENTERPRISE advances and willfully facilitates the use of steroids, both affirmatively and by omission as described herein.  Each participant knowingly participates in the scheme and has a common purpose to acquire and obtain money by fraud, false pretenses or false representation or promises, which CONDUCT is facilitated by wire fraud including emails as described herein.

136.   In this case, the ENTERPRISE specifically includes, but is not limited to:

a.     LESNAR;

b.     Belfort;

c.     Frank Mir;

d.     Antonio Silva

e.     UFC;

f.     UFC official WHITE;

g.     UFC official Jeff Novitzky;

h.     UFC's former vice president and general counsel, Ike Epstein; and

i.     WWE.

137.   The above-referenced participants in the ENTERPRISE, and each of them, are members of the larger associated-in-fact ENTERPRISE.

138.   Defendants and each of them are associated with the ENTERPRISE engaged in and affecting interstate commerce and conducted and participated in the

CONDUCT and affairs of that ENTERPRISE through a pattern of racketeering activity.

139.   Defendants engaged in CONDUCT that affects interstate commerce through pay-per-view and ticket sales, as well as promoting the fight through various media outlets across state lines.

140.   UFC is associated with the ENTERPRISE in that it knowingly influences the ENTERPRISE participants to carry out the CONDUCT to wrongfully cause and facilitate doping fighters to compete with clean fighters, which clean fighters are induced to contract under the false representation that no competitor shall use substances on the WADA prohibited list.  UFC CONDUCT includes a pattern of wrongfully granting doping or drug testing exemptions and causing those doping fighters to compete with clean fighters.

141.   Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. section 1961(5), including use of wire, radio and mail in furtherance of the scheme to advance the CONDUCT by false pretenses and fraud. These acts occurred over the course of at least a four-year period and are indictable under 18 U.S.C. section 1343 (relating to wire fraud).  Defendants participated in the conduct of the affairs of the ENTERPRISE through this pattern of racketeering activity.  The CONDUCT described herein has and continues to occur with no indication the participants will cease their illegal CONDUCT.  The racketeering CONDUCT described herein includes but is not limited to the schemes surrounding UFC 152 and UFC 200.

142.   HUNT specifically alleges Defendants, and each of them engaged in CONDUCT constituting both open-ended conduct and closed-ended conduct representing a regular way of doing business for the ENTERPRISE such that it presents a substantial risk of continuing and repeating violations of law.

143.   Defendants devised the CONDUCT or artifice to defraud HUNT, other clean fighters, the general viewing public who purchase tickets and pay-per-view

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

31

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

subscriptions and merchandise, as well as advertisers and sponsors, which scheme was devised to obtain property, including but not limited to, money, labor and services by means of false or fraudulent pretenses, representations, or promises.

144.    Examples of Defendants' use of wire to further their scheme constituting indictable offenses under 18 U.S.C. section 1343, include but are not limited to:

a.    As to UFC, the above referenced emails, dated September 4, 2012 at 3:01 p.m.; September 4, 2012 at 3:04 p.m.; September 4, 2012 at 3:55 p.m.; September 12, 2012 at 7:16 p.m.; and July 1, 2016, at 12:23 p.m.  Also the above-referenced WHITE interview on June 3, 2016.

b.    As to LESNAR, he has publicly admitted to acts in furtherance of the CONDUCT on televisions, ESPN's SportsCenter, including the morning of June 6, 2016 with host Hannah Storm.[6]  HUNT will acquire the referenced communications via discovery in this case and will seek leave to amend this section of the complaint accordingly.

c.    As to LESNAR and UFC, Defendants promoted UFC 200 in furtherance of the CONDUCT on television and via the internet, including a television advertisement airing on June 4, 2016 during UFC 199.

d.    As to UFC and WHITE, as specifically described in paragraphs 29, 30, 34, 57, 61, 62, 63, 64, 72, 77, 78, 92, and 98, which provide exact quotations of the representations, sender and recipient and time stamp.

145.    The CONDUCT is and has been UFC's and the ENTERPRISE's continuing and ongoing way of doing business.  Carrying out the scheme constitutes a threat of continued racketeering activity.

146.    HUNT currently lacks sufficient information as to whether Defendants' racketeering activity is a result of an express agreement.

---

[6] The interview can be found at: https://www.youtube.com/watch?v=y5L8Y_8wgxo
A true and correct copy of this video, accessed January 9, 2017, is maintained by HUNT's counsel.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

32

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

147.   Defendants and each of them perpetrated the CONDUCT described herein and conspired to do the same, which is inferred from words, actions, or the interdependence of the activities and persons involved in those activities.

148.   As to UFC and UFC employee or agent defendants, those defendants conspired to commit the acts described herein, and did so willfully or with actual knowledge of the CONDUCT, and which defendants conspired pursuant to both intracorporate and intercorporate conspiracies.

149.   In doing the things herein alleged, Defendants and each of them violated 18 U.S.C. section 1962 (c) and (d) by participating, directly or indirectly, in the CONDUCT of the ENTERPRISE's affairs through a pattern of racketeering activity and conspiring to do the same.

150.   As a direct and proximate result of Defendants' violations of 18 U.S.C. section 1962, HUNT has been damaged, the exact amount of which will be subject to proof at trial, which injury and damage was a foreseeable result of Defendants' misconduct.

151.   Defendants made the above communications in furtherance of the CONDUCT and in furtherance of the affairs of the ENTERPRISE, over the course of several years including from UFC headquarters in Nevada, and across state lines and in foreign countries.

152.   Defendants committed the substantive violations for this claim as described in this section and also conspired to commit those substantive violations.

**SECOND CAUSE OF ACTION: RACKETEERING & CONSPIRACY TO COMMIT CRIME RELATED TO RACKETEERING (NRS § 207.350 et seq.)**

**(Against UFC, LESNAR & WHITE)**

153.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation paragraphs 8 through 152.

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

PLAINTIFF MARK HUNT'S FIRST AMENDED COMPLAINT

154.   Defendants committed, attempted to commit or conspired to take property under circumstances not amounting to robbery in violation of Nevada Revised Statutes, section 207.360, subdivision (9), as described fully and specifically above in the factual allegations and RICO claim.

155.   Defendants committed, attempted to commit or conspired to obtain money by means of false pretenses, in violation of Nevada Revised Statutes, section 207.360, subdivision (26), as described fully and specifically above in the factual allegations and RICO claim:

    a. HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, paragraphs 8 through 152.

    b. Defendants and each of them knowingly and designedly by false pretense obtained HUNT's labor and services and obtained money rightfully belonging to HUNT, with the intent to cheat and defraud HUNT of his money, labor and services.

    c. The money, labor and services obtained from HUNT exceeded the statutory amount of $650.00, constituting a state law category B felony.

    d. Defendants' CONDUCT was the direct and proximate cause of damages to HUNT in an amount to be proven at trial.

156.   Defendants committed, attempted to commit or conspired to commit fraud, in violation of Nevada Revised Statutes, section 207.360, subdivision (33), as described fully and specifically above in the factual allegations and RICO claim:

    a. HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein, including without limitation, paragraphs 8 through 152.

b. Defendants and each of them, in the course of the ENTERPRISE and their respective occupations, knowingly and with the intent to defraud, engaged in multiple acts, practices and schemes which operated as a fraud and deceit by false representations known to be false or omitted.

c. Such representations were intended to cause HUNT to rely on them, and HUNT did reasonably rely on them.

d. As a result of Defendants' CONDUCT, HUNT was damaged as described herein, in an amount according to proof at trial.

e. As fully set forth at paragraphs 8 through 152 Defendants acted with oppression, fraud and malice.

157. Defendants committed, attempted to commit or conspired to commit a battery against HUNT in violation of Nevada Revised Statutes, section 207.360, subdivision (4), in that HUNT did not contract and agree to hand to hand combat with a doping fighter, LESNAR, as discussed in the below battery claim.

158. Each of the above-referenced violations constitute crimes related to racketeering and unlawful acts in furtherance of the ENTERPRISE and criminal syndicate, as set forth fully in the above factual allegations and RICO claim, which is hereby incorporated as though set forth fully here.

159. By reason of Defendants' CONDUCT, HUNT suffered special and general damages in an amount to be proven at trial, including physical, economic and business and property loss set forth fully above.

160. Defendants committed the substantive violations for this claim as described in this section and also conspired to commit those substantive violations.

## THIRD CAUSE OF ACTION: COMMON LAW FRAUD
### (Against UFC, LESNAR & WHITE)

161. HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

35

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

herein, including without limitation, CONDUCT supporting this claim specifically alleged at paragraphs 8 through 152.

162. Defendants and each of them, in the course of the ENTERPRISE and their respective occupations, knowingly and/or with insufficient basis of information to make the representation, and with the intent to defraud, engaged in multiple acts, practices and schemes which operated as a fraud and deceit by false representations known to be false or omissions of material facts where Defendants should have otherwise made full disclosures of facts known to them.

163. Specifically, WHITE in his individual capacity, and UFC through WHITE made the false statements and omissions described in paragraphs 29, 30, 34, 57, 61, 62, 63, 64, 72, 77, 78, 92, and 98, which provide exact quotations of the representations, sender and recipient and time stamp.

164. Such representations and omissions were intended to cause HUNT to rely on them, and HUNT did reasonably rely on them as evidenced by HUNT's written statements in reply to WHITE. In reliance on WHITE and UFC's statements, HUNT fought the doping competitor, LESNAR.

165. As a result of Defendants' CONDUCT, HUNT was damaged as described herein, in an amount according to proof at trial.

166. As fully set forth in paragraphs 8 through 152, Defendants acted with oppression, fraud and malice. HUNT requests an award of exemplary and punitive damages for the sake of example and by way of punishing Defendants, in an amount sufficient to deter continued or future similar CONDUCT.

## FOURTH CAUSE OF ACTION: CIVIL AIDING AND ABETTING FRAUD
### (Against UFC, LESNAR & WHITE)

167. HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

36

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

168.   WHITE knew that a fraud was being committed by UFC and LESNAR against HUNT, as set forth in claims one through three.

169.   WHITE gave substantial assistance and encouragement to them, and WHITE was aware of his role in promoting the fraud at the time it occurred, as set forth fully in the background and factual allegations section and claims one through three.

170.   WHITE's conduct caused harm to HUNT.

171.   LESNAR knew that a fraud was being committed by UFC and WHITE against HUNT, as set forth in claims one through three.

172.   LESNAR gave substantial assistance and encouragement to them, and LESNAR was aware of his role in promoting the fraud at the time it occurred, as set forth fully in the background and factual allegations section and claims one through three.

173.   LESNAR's conduct caused harm to HUNT.

174.   UFC knew that a fraud was being committed by WHITE and LESNAR against HUNT, as set forth in claims one through three.

175.   UFC gave substantial assistance and encouragement to them, and UFC was aware of his role in promoting the fraud at the time it occurred, as set forth fully in the background and factual allegations section and claims one through three.

176.   UFC's conduct caused harm to HUNT.

## FIFTH CAUSE OF ACTION: BREACH OF CONTRACT
### (Against UFC Only)

177.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth here, including without limitation, paragraphs 8 through 152.

178.   UFC and HUNT entered a valid contract supported by consideration

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

37

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

1  titled the Promotional and Ancillary Rights Agreement ("PARA").  A true and

2  correct copy of this agreement is attached to the Appendix filed herewith under seal

3  as **Exhibit A**, and is hereby incorporated by reference. (Under seal pursuant to

4  Court Order ECF No. 10.)

5       179.  UFC and HUNT entered a valid contract supported by consideration

6  titled Zuffa, LLC Bout Agreement UFC 200 (UFC 200 Bout Agreement).  A true

7  and correct copy of this agreement is attached to the Appendix filed herewith under

8  seal as **Exhibit B**, and is hereby incorporated by reference.  (Under seal pursuant to

9  Court Order ECF No. 10.)

10      180.  Specifically, UFC agreed under the PARA at section 3.1 and UFC 200

11  Bout Agreement (incorporating the PARA) that "ZUFFA shall comply with and be

12  bound by the rules and regulations of the Athletic Commission."

13      181.  UFC breached and failed to perform pursuant to the PARA and UFC

14  200 Bout Agreement, and each of them, by failing to comply with rules and

15  regulations of the Athletic Commission.

16      182.  UFC failed to comply with the following rules and regulations of the

17  Nevada Athletic Commission ("NAC"):

18          **a.**  NAC Rule: If a promoter is approached with a request or

19               suggestion that a contest not be conducted honestly, that person

20               must immediately report that to the Commission.

21               **i.**  UFC Failure to Comply:  As set forth above in the factual

22                    allegations, LESNAR suggested or requested the UFC 200

23                    bout not be conducted honestly because he was using banned

24                    substances.  UFC failed to report that to the Commission and

25                    affirmatively concealed and aided LESNAR's doping.

26          **b.**  NAC Rule: Do not violate laws of Nevada.

27               **i.**  UFC Failure to Comply:  As set forth in this complaint, UFC

28                    violated Nevada law, including the breach of the covenant of

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

38

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

good faith and fair dealing.

    **c.** NAC Rule: Do not provide false or misleading information to the Commission.

        **i.** UFC Failure to Comply: As set forth above in the factual allegations, the NAC inquired about LESNAR's 4-month testing exemption and UFC provided false and misleading information to the NAC in an email from UFC executive Jeff Novitzky, dated July 1, 2016 at 12:23 p.m., which concealed UFC, WHITE, and LESNAR's doping scheme.

    **d.** NAC Rule: Do not knowingly deal with a person who is engaged in any activity or practice that is detrimental to the best interests of unarmed combat.

        **i.** UFC Failure to Comply:  LESNAR, as acknowledged by his own admission, brought disrepute to unarmed combat through his positive drug tests, which is detrimental to the best interests of the sport.  UFC had actual knowledge of LESNAR's doping in advance of UFC 200 and continued to knowingly deal with LESNAR.

183.   HUNT further alleges and asserts, on information and belief, that UFC knowingly permitting and encouraging a cheating fighter to fight a clean fighter is contrary to the rules of the NAC, and UFC breached its contracts with HUNT by knowingly encouraging and facilitating a cheating fighter to fight a clean fighter.

184.   The breaches and failures to perform were unexcused.

185.   HUNT was damaged by UFC's breaches in an amount to be proven at trial, which damage was caused by and the foreseeable consequence of UFC's breach.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

39

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

## SIXTH CAUSE OF ACTION: BREACH OF
## COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against UFC Only)

186.   HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

187.   UFC and HUNT entered valid contracts, the PARA and UFC 200 Bout Agreement.

188.   In addition to the above-referenced breach of contract, UFC breached the implied covenant of good faith and fair dealing by deliberately countervening the intent and spirit of the contract through both its actions and omissions discussed herein, which CONDUCT was not in good faith.

189.   UFC was the party in the superior position, and wrongfully manipulated bouts, including UFC 200, in a manner that compromised HUNT's benefits under the above-referenced contracts.

190.   UFC's wrongful CONDUCT includes without limit negotiating with and causing HUNT to fight with known dopers and repeated knowing failures to provide HUNT with clean opponents as is the implied intent of the above-referenced contracts.

191.   UFC's acts and omissions were unfaithful to the purpose of the contract and violated HUNT's justified expectation of fair bouts pursuant to the parties' contract.

192.   As a direct, proximate and legal result of UFC's breach of this covenant, HUNT has been damaged as described herein and in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION: UNJUST ENRICHMENT
### (Against UFC, LESNAR & WHITE)

193.   HUNT realleges and incorporates herein by this reference each and

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

40

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

112567-00001

1   every allegation contained in the preceding paragraphs as though fully set forth

2   herein.

3       194.   UFC purports to have the leading anti-doping policy in the world.

4   That assertion is false.  Other anti-doping policies award to the non-doping athlete

5   the purse or win proceeds earned by the doping fighter.  UFC and WHITE elected

6   not to do so against LESNAR, given their arrangement with LESNAR to pay him

7   far in excess of the sum that they knew he would be fined for cheating.

8       195.   Defendants and each of them have wrongfully had monetary and other

9   benefits conferred to them at the expense of HUNT.

10       196.   UFC and WHITE negotiated the PARA and UFC 200 Bout Agreement

11   with HUNT.

12       197.   Neither UFC, WHITE, nor LESNAR obtained HUNT's consent to

13   fight an opponent with the competitive physical advantage of using banned

14   substances.

15       198.   WHITE and LESNAR have each obtained HUNT's services at UFC

16   200 for which they have not paid.  UFC obtained HUNT's services at UFC 200 for

17   which it has only partially paid because HUNT's services far exceeded the scope of

18   the contract.

19       199.   Defendants did not, and have not ever compensated HUNT for the

20   value of fighting an opponent with the competitive physical advantage of banned

21   substances.

22       200.   Defendants appreciated and accepted the benefits, including HUNT's

23   services at UFC 200.   HUNT's services rendered, fighting a doping competitor

24   (whose doping was known to all Defendants but not HUNT), exceeded the scope of

25   services HUNT agreed to provide by contract.

26       201.   Defendants retained the benefits of HUNT's services and the

27   circumstances described herein make it inequitable for Defendants to retains the

28   benefit without payment of value for those benefits.

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

41

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

202. These benefits include but are not limited to the profits wrongfully retained by LESNAR and UFC from UFC 200 at the expense of HUNT who competed in that event without the use of prohibited substances.

203. Equity demands LESNAR surrender his fight purse and all pay-per-view proceeds to HUNT and that UFC surrender a proportionate share of its UFC 200 profits in an amount to be proven at trial as justice requires pursuant to laws of equity.

204. HUNT seeks equitable recovery by quantum meruit, restitution, and disgorgement.

205. Specifically, HUNT seeks the reasonable value of services which exceeded the scope of the contract – the difference in value of fighting a clean opponent versus the value of fighting a doping opponent (which must reflect the heightened risk of injury or death), in an amount to be proven at trial.

206. UFC (and WHITE through his ownership interest in UFC) gained increased pay-per-view revenue and maximized UFC value for sale.

207. LESNAR gained increased pay-per-view profit sharing revenue. LESNAR also bolstered his brand, marketing, and promotional opportunities at the expense of HUNT, a clean fighter.

208. HUNT further seeks Defendants to be disgorged of all ill-gotten gains and those gains awarded to HUNT, regardless of HUNT's entitlement thereto, as equity requires Defendants cannot retain the benefit.

## EIGHT CAUSE OF ACTION: BATTERY

### (Against LESNAR)

209. HUNT hereby incorporates the entirety of his factual allegations concerning UFC 200.

210. LESNAR intended to cause harmful and offensive contact to HUNT.

211. HUNT did not consent to a bout with a doping competitor.

212. LESNAR caused harmful and offensive contact to HUNT, including

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001

42

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

137 total strikes to HUNT and 51 significant strikes in the UFC 200 bout.

213.  HUNT was injured and suffered special damages and general damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION: CIVIL AIDING AND ABETTING BATTERY

### (Against UFC and WHITE)

214.  HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

215.  WHITE and UFC knew that a battery was or would be committed by LESNAR against HUNT.

216.  WHITE and UFC knew that the UFC 200 bout between LESNAR and HUNT would and did exceed the scope of HUNT's consent.

217.  WHITE and UFC gave substantial assistance and encouragement to LESNAR, and WHITE and UFC were aware of their role in promoting the fraud at the time it occurred.

218.  WHITE and UFC's conduct caused harm to HUNT.

## TENTH CAUSE OF ACTION: CIVIL CONSPIRACY (FRAUD & BATTERY)

### (Against UFC, WHITE and LESNAR)

219.  HUNT realleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

220.  LESNAR, WHITE, and UFC, acted in concert as set forth fully above, to defraud HUNT and commit a battery against HUNT by a scheme to knowingly pit HUNT, a clean fighter, against LESNAR, a doping fighter, to the wrongful benefit of Defendants and to the detriment of HUNT.

221.  LESNAR, WHITE, and UFC intended to accomplish their unlawful objective knowing the natural and necessary consequence would harm HUNT.

222.   LESNAR, WHITE, and UFC conspired against HUNT by explicit and/or tacit agreement to carry out the doping scheme.

223.   HUNT suffered special and general damages in an amount to be proven at trial, including without limit physical injury, injury to his brand, marketing, and promotional opportunities.

## **PRAYER**

WHEREFORE, HUNT requests judgment as follows:

1.     For compensatory damages according to proof;

2.     For treble damages pursuant to statute;

3.     For punitive damages sufficient to deter illegal doping in the sport of mixed martial arts;

4.     For an order requiring the Defendants, and each of them, to disgorge their ill-gotten profits;

5.     For attorneys' fees;

6.     For costs of suit;

7.     For interest on all sums from dates according to proof; and

8.     For such further relief the Court deems just.


DATED:  June 1, 2017                    HIGGS FLETCHER & MACK LLP


                                        By: s/ CHRISTINA DENNING
                                        _____
                                        CHRISTINA DENNING, ESQ.
                                        SCOTT INGOLD, ESQ.
                                        JOSEPH GONNELLA, ESQ.
                                        Attorneys for Plaintiff
                                        MARK HUNT

## **JURY DEMAND**

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

44

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

1    DATED:  June 1, 2017                    HIGGS FLETCHER & MACK LLP

2

3                                            By: s/ CHRISTINA DENNING

4                                                CHRISTINA DENNING, ESQ.
                                                 SCOTT INGOLD, ESQ.
5                                                JOSEPH GONNELLA, ESQ.
                                                 Attorneys for Plaintiff
6                                                MARK HUNT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

45

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT

1

## **CERTIFICATE OF SERVICE**

2          Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the

3    undersigned hereby certifies that on this day, June 1, 2017, a copy of the foregoing

4    document entitled **PLAINTIFF MARK HUNT'S FIRST AMENDED COMPLAINT**

5    was filed and served through the Court's electronic filing system (CM/ECF) upon all

6    registered parties and their counsel.

7

8

9                                         /s/ Barbara Lodovice
                                          Barbara Lodovice
10                                        An employee of Higgs Fletcher & Mack LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001

PLAINTIFF MARK HUNT'S FIRST
AMENDED COMPLAINT