PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 240-7979
Fax: (866) 412-6992
-and-
HOWARD L. JACOBS, ESQ.
howard.jacobs@athleteslawyer.com
Law Offices of Howard L. Jacobs
2815 Townsgate Road, Suite 200
Westlake Village, California 91361
Tel: (805) 418-9892
Fax: (805) 418-9899
*Attorneys for Defendant Brock Lesnar*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability Company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No. 2:17-cv-00085-JAD-CWH<br><br>**DEFENDANT BROCK LESNAR'S MOTION TO DISMISS MARK HUNT'S FIRST AMENDED COMPLAINT [ECF NO. 64] PURSUANT TO FED.R.CIV.P. 12(B)(6)** |

Defendant Brock Lesnar hereby submits his Motion to Dismiss Plaintiff Mark Hunt's First Amended Complaint.

/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

## I.      INTRODUCTION

On May 22, 2017, this Court dismissed all but one of Plaintiff Mark Hunt's claims against defendant Brock Lesnar, all with leave to amend.  However, that leave to amend came with very pointed guidance and warnings:

> "I'm starting with Count 1, the racketeering claim, the Federal RICO claim. I dismiss this claim with leave to amend and with some cautionary advice. I find that there are a number of deficiencies with this claim as it's pled. I'm going to borrow Mr. Williams's term and say that this claim appears to me, as does the Nevada RICO claim, to be an overenthusiastic use of RICO in this case.
>
> The primary problem, and alone a reason to dismiss this case, is the lack of demonstrated RICO standing. A RICO plaintiff must plead a tangible and concrete financial loss to business or property. Personal injuries don't qualify as injuries recoverable under RICO. Even when you try to explain that it's some specialized business personal injury, it doesn't change the nature of these damages. These are personal injuries. Those don't qualify. They are not recoverable under racketeering laws. And the losses alleged to reputation and business are purely expectancy damages here or they are too speculative. Neither of those are recoverable then[1] …
>
> I also don't find that the facts as pled permit me to infer proximate cause here. This is compounded by the absence of facts from which I can reasonably infer that the RICO conduct -- this concealing of exemptions to cause clean fighters to fight doping fighters -- caused the plaintiff's injury. This theory is attenuated. And there are so many factors, possibly intervening factors here. I think the Canyon County case is instructive. And here when I apply this law there are no facts at this point from which I can infer that these alleged damages flowed from racketeering conduct. More is needed. And I'm just gonna say, quite candidly, that I don't know that you can get there at this point. I think this maybe an overenthusiastic use of RICO[2] …
>
> The final deficiency -- or one final deficiency with this claim is that the plaintiff has not pled facts to show that Lesnar or White had involvement in the operation of the RICO enterprise itself as required by the Supreme Court's decision in Reeves v. Ernst & Young, 507 U.S. 170. Sort of the direction of the enterprise. I just didn't see any facts suggesting direction of the enterprise.
>
> So those are the numerous deficiencies, any one of which justifies the dismissal or requires the dismissal of Claim 1. I am dismissing it with leave to amend if you can cure

---

[1] *See* Hearing Transcript, attached as Exhibit "A" at p. 40
[2] *See* Exhibit "A" at p. 41

these deficiencies. But, again, I'm just telling you that's -- it's a high hurdle and I'm not sure you can get there[3] …

I find that the same deficiencies that require the dismissal of the federal claim in Count 1 compels the dismissal of the state claim in Count 2[4] …

The Eighth Cause of Action, unjust enrichment … Hunt has not pled any facts from which I can infer that any of these defendants has retained money or other benefits that rightly belong to Hunt. The theory that Hunt deserves Lesnar's purse, fight purse, which is alleged in paragraph 156, and all Pay-Per-View proceeds just has no connection to a right that Hunt has. I -- based on the facts pled in this Complaint, I'm just not seeing how those are his property. And so I can't find at this point anything that would suggest one of these defendants retained a right or benefit of Hunt's[5] …

So, in short, I think what I see emerging from these facts as -- these more than a hundred and fifty paragraphs of facts is the general theory that UFC enforced the Anti-Doping Policy inconsistently which was a breach of the implied covenant of good faith and fair dealing or a breach of the contract. I think that any further tort theories or racketeering theories are going to be a bit of a stretch and will probably stretch those -- or possibly stretch those theories too far."[6]

Desperate to salvage his legally baseless RICO and tort claims, plaintiff has adopted a "truth be damned" approach to his First Amended Complaint [ECF No. 64]. However, notwithstanding the obvious Fed.R.Civ.P Rule 11 problems with such an approach (should this strategy prove successful in avoiding dismissal at this stage of the case), the amendments do not adequately address the serious reservations raised by this Court on May 22; and as a result, the First, Second Third, Fourth and Seventh Causes of Action should be dismissed – this time without leave to amend.

In addition, plaintiff has added new and novel claims for Battery (Eighth Cause of Action) and Civil Conspiracy (Tenth Cause of Action). In essence, rather than heeding the Court's advice that this is simply not a tort case, the plaintiff decided to add these two tort claims to the list of other legally unsustainable tort claims. Like all of the other tort claims,

---

[3] *See* Exhibit "A" at pp. 41-42
[4] *See* Exhibit "A" at p. 42
[5] *See* Exhibit "A" at p. 47
[6] *See* Exhibit "A" at p. 47

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

these causes of action should be dismissed as well.  Further, defendant Lesnar submits that these claims should also be dismissed without leave to amend, because (i) they could have been raised in the original Complaint; and (ii) they suffer from the same or similar infirmities to the claims which have already been dismissed with leave to amend in connection with the prior Motion to Dismiss.

## II.     ARGUMENT

### A. THE FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

#### i.      Mark Hunt's Changes to his RICO Claims

In order to determine if Plaintiff has remedied the shortcomings of his original Complaint, it is useful to summarize the actual changes that were made (or the relative lack thereof) following the hearing on defendants' May 22, 2017 Motions to Dismiss. *See* Exhibit "A."  In summary:

- Hunt's First Cause of Action is now "rebranded" as "RICO Violations and Conspiracy to Commit RICO Violations [18 U.S.C. § 1961 et seq.].

- Paragraphs 89-95 of the original Complaint were unchanged (except for being renumbered as paragraphs 126-132).

- Figure B remains unchanged, except for the addition of the unattributed quote "[Dana White] told me he was clean."

- Paragraph 96 of the original Complaint was unchanged (except for being renumbered as paragraphs 133).

- Certain language in Paragraph 97 of the original Complaint ["LESNAR's public statements to date indicate it is uncertain if he will return to the UFC at some point. LESNAR therefore presents a continuing threat of repeated CONDUCT upon expiration of his suspension, which suspension will end in 2017"] was modified in the new paragraph 134 ["LESNAR may return to fight in UFC. LESNAR therefore presents a continuing threat of repeated CONDUCT"].

- Paragraphs 98-106 of the original Complaint were unchanged (except for being renumbered as paragraphs 135-143).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

- Paragraph 107 of the original Complaint was unchanged (except for being renumbered as paragraph 144), with the exception of the addition of a sub-paragraph d (which is explicitly limited to defendants UFC and WHITE).

- Paragraphs 108-114 of the original Complaint were unchanged (except for being renumbered as paragraphs 145-151).
- A new paragraph 152 was added ["Defendants committed the substantive violations for this claim as described in this section and also conspired to commit those substantive violations"].

- Hunt's Second Cause of Action is now "rebranded" as "Racketeering & Conspiracy to Commit Crime Related to Racketeering (NRS § 207.350 et seq.)".

- Paragraphs 115-116 of the original Complaint were unchanged (except for being renumbered as paragraphs 153-154).

- To Paragraph 117 of the original Complaint (now renumbered as paragraph 155), Plaintiff added additional subparagraphs (i) incorporating all prior paragraphs of the First Amended Complaint; (ii) alleging the obtaining of services from Hunt under false pretenses (which would have to be limited to defendant UFC, and certainly could not reasonably be read as an allegation against defendant Lesnar); and (iii) added a generic proximate cause statement.

- To Paragraph 118 of the original Complaint (now renumbered as paragraph 156), Plaintiff added additional subparagraphs (i) incorporating all prior paragraphs of the First Amended Complaint; (ii) generically asserting an intent to defraud; (iii) generically asserting an intent to cause plaintiff to rely on the alleged fraud; (iv) generically asserting damages; and (v) generically asserting oppression, fraud and malice.

- Paragraphs 119-120 of the original Complaint were unchanged (except for being renumbered as paragraphs 157-158).

- Paragraph 121 of the original Complaint was marginally modified at the new paragraph 159 (generic damage allegations).

- A new paragraph 160 was added ["Defendants committed the substantive violations for this claim as described in this section and also conspired to commit those substantive violations"].

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

ii.     The Above Amended Claims Fail to Establish Standing

Hunt remains unable to demonstrate RICO Standing.  As this Court noted, "A RICO plaintiff must plead a tangible and concrete financial loss to business or property.  Personal injuries don't qualify as injuries recoverable under RICO."  Exhibit "A" at 40:13-16.  Plaintiff's injury must have resulted in "concrete" or "tangible financial loss."  *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992) (en banc), *cert denied*, 506 U.S. 1020 (1992)).  The Court further warned Hunt:

"Even when you try to explain that it's some specialized business personal injury, it doesn't change the nature of these damages.  These are personal injuries.  Those don't qualify."  Further, "they are not recoverable under racketeering laws."  Exhibit "A" at 40:16-20.  (The Court found *Ove v. Gwinn*, 264 F.3d 817) applicable in the argument).  Plaintiff stands by his argument that defendant Brock Lesnar's RICO predicate offenses, as well as statutory racketeering, exist by virtue of his interview with Hannah Storm and peripheral promotional materials.  ECF No. 64 at ¶ 144 (c). and 144 (d).  Because Mr. Lesnar already addressed these arguments, in his Motion to Dismiss and Reply in Support thereof (ECF No. 30 and ECF No. 48, respectively), he will not repeat those arguments herein.  It is abundantly clear that Plaintiff has not and cannot establish standing to assert his RICO-related causes of action.

iii.     The Amendments Still Fail to Allege Proximate Cause and Recoverable Damages

At the May 22 hearing, the Court noted:

"I also don't find that the facts as pled permit me to infer proximate cause here.  This is compounded by the absence of facts from which I can reasonably infer that the RICO conduct – this concealing of exemptions to cause clean fighters to fight doping fighters – caused the plaintiff's injury.  This theory is attenuated.  And there **are so many factors, possibly intervening factors here**.  I think the *Canyon County* case is instructive.  And here when I apply this law there are no facts at this point from which I can infer that

these alleged damages flowed from racketeering conduct.  More is needed.  And I'm just gonna say, quite candidly, that I don't know that you can get there at this point."

[Emphasis Added].  Exhibit "A" at 41:1-13.

Plaintiff's amendments to try to cure this defect are woefully inadequate, and as the Court previously noted, this is likely because an adequate amendment would likely be impossible.  The best that Plaintiff can offer in the way of addressing the Court's concerns is to throw out a chart of his "appearances" before and after UFC 200 (ECF No. 64 ¶¶111-12), ostensibly suggesting that his loss at UFC 200 directly caused him to be dropped from several appearances or ambassador opportunities.  The proximate cause issues remain, however, because even if Hunt's loss in that fight was the reason for the cancellation of appearances, it still improperly assumes that (1) but for the presence of clomiphene in Lesnar's system, Hunt would have won the fight; (2) no other factor would have caused Hunt to lose the fight; and, (3) had Hunt won the fight, all of the listed appearances in Par. 112 would have been fulfilled.  Furthermore, the First Amended Complaint does not even bother to advise which of the listed appearances had even been scheduled at the time of the UFC 200 event.  For example, an April 2017 Sydney Health Expo event (well after Hunt's bout against Lesnar) is listed as "appearance cancelled."  If it was not scheduled prior to the fight against Lesnar, it would be a stretch, at best, to suggest that Plaintiff's loss to Brock Lesnar caused that appearance cancellation.  Furthermore, Plaintiff's allegations of damages to the clothing company Juggernaut (*see* First Amended Complaint [ECF No. 64], para. 114-115) – who is not a party to this lawsuit – are irrelevant (as well as completely speculative).  Plaintiff is not permitted to ask this Court to infer, based on pure speculation, that his loss to Brock Lesnar proximately caused these injuries.[7]

---

[7] Injuries that remain personal and purely expectancy damages which cannot be characterized as to business or property within the meaning of RICO.  *See* Exhibit "A" at 40:21. *See also M.C. Multi-Family Dev., L.L.C. v. Crestdale Assoc., Ltd.*, 193 P.ed 536, 543 (Nev. 2008).

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

Lastly, the allegations regarding reduced social media traffic resulting in recoverable damages (*see* First Amended Complaint [ECF No. 64], para. 113) is not only patently speculative, it is demonstrably false:

- First, Plaintiff alleges that the social media volume on his website was diminished by "Defendants' wrongful delay in announcing the bout. Notwithstanding the fact that the UFC can announce the bout whenever it wants to, the bout was announced by the UFC on June 7 (*see* First Amended Complaint [ECF No. 64], para. 68), which was a full month before the bout occurred. It is nonsensical to argue that this had any material impact on website traffic "two months prior and one month after HUNT's UFC 200 bout with LESNAR; and in any event, the amount that the alleged delay in announcement affected website traffic is almost the definition of speculation.

- Second, Plaintiff alleges that the social media volume on his website was diminished by "losing the bout caused by Defendants' illegal scheme to confer LESNAR a wrongful competitive advantage in the bout." The patently speculative nature of the claim that Mark Hunt would have won the fight but for Brock Lesnar's alleged doping is dealt with above, and will not be repeated. Furthermore, it is worth noting that Brock Lesnar's positive test was announced within 1 week of the date of the bout, which was followed by a barrage of public statements by mark Hunt on the matter. If Mr. Hunt is trying to measure his damages by "website hits," then he fails to account for the *increased traffic* that he generated on the back of the positive test [which only further illustrates the utterly speculative nature of this damage claim].

/ / /
/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

iv.   The Amendments Still Fail to Adequately Allege Brock Lesnar's
Involvement in the Operation of the Alleged RICO Enterprise

At the May 22 hearing, the Court specifically noted that Plaintiff had not pled facts to show that defendant Lesnar had involvement in the *operation* of the RICO enterprise itself.  In trying to correct the numerous deficiencies in the Complaint, Plaintiff either overlooked this particular deficiency, or simply realized that it was incurable and hoped that the Court would fail to notice his failure to even attempt to correct it.   There is nothing in the First Amended Complaint that specifically identifies Brock Lesnar's alleged involvement in the operation of the RICO enterprise itself.  The *only* addition here is a series of text messages between Plaintiff and Dana White.  Nothing in those messages, however, speaks to Mr. Lesnar's conduct, and nothing in those text messages shows that Brock Lesnar had any involvement in the operation of the alleged RICO conspiracy:  if anything, the new text messages prove that Brock Lesnar had *no involvement* in the operation of the alleged RICO conspiracy.

Furthermore, these text messages do reflect that Brock Lesnar *was* subject to a myriad of testing.  *See* ECF No. 64 at ¶ 74(g) ("On June 9, 2016 at 12:30 a.m. (AET) WHITE stated to HUNT: *'We made a move to get a deal done with Vince to get him back for UFC200.  USADA is testing the shit outta him as we speak.  We went after Brock. He has no problem doing whatever tests USADA wants.'*"); *see also* ECF No. 64 at ¶ 74(i) ("On June 9, 2016 at 3:22 a.m. WHITE stated to HUNT in writing: *'Brock is not exempt for any testing.  He will be the most tested athlete on this card That are ALL OVER HIM.'* WHITE's assertion was false.").[8]

It is a mystery how Plaintiff believes that these text messages from Dana White to Mark Hunt show that *Brock Lesnar* was involved in the operation of the alleged RICO conspiracy. The fact remains that Mr. Lesnar had no control over what Mr. White said to Mr. Hunt.

---

[8] In fact, the testing history has always been publicly available on USADA's website [https://ufc.usada.org/testing/results/athlete-test-history/], and demonstrates the number of times that Brock Lesnar was actually tested by USADA prior to UFC 200.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   Plaintiff has still failed to allege in any manner that Brock Lesnar had any involvement in the

2   operation of the alleged RICO conspiracy.

3       For all of the foregoing reasons, the First and Second Causes of Action should be

4   dismissed without leave to amend, at least as to defendant Lesnar.

5   **B.   THE THIRD, FOURTH AND TENTH CAUSES OF ACTION SHOULD BE**
6   **     DISMISSED WITHOUT LEAVE TO AMEND**

7       i.   <u>Summary of Hunt's Amended Claims</u>

8       In order to determine if Plaintiff has remedied the shortcomings of his original

9   Complaint, it is again useful to summarize the actual changes that were made (or the relative

10  lack thereof) following the hearing on defendants' May 22, 2017 Motions to Dismiss. *See*

11  Exhibit "A." In summary:

13  • Hunt's Third Cause of Action is now "rebranded" as "Common Law Fraud";

15  • To paragraph 123 of the original Complaint (now renumbered as paragraph
16    162), added the words "and/or with insufficient basis of information to make
      the representation" and "or omissions of material facts where Defendants
17    should have otherwise made full disclosures of facts known to them."

18  • Added a new paragraph 163, which is expressly limited to defendants UFC and
19    WHITE.

21  • To paragraph 124 of the original Complaint (now renumbered as paragraph
      164), added the words "as evidenced by HUNT's written statements in reply to
22    WHITE. In reliance on WHITE and UFC's statements, HUNT fought the
      doping competitor, LESNAR."

24  • Paragraphs 125-126 of the original Complaint were unchanged (except for
25    being renumbered as paragraphs 165-166).

26  • Plaintiff's Fourth Cause of Action for "False Pretenses" was replaced with a
27    cause of action for "Civil Aiding and Abetting Fraud."

28

- Plaintiff added a Tenth Cause of Action titled "Civil Conspiracy (Fraud & Battery)."

As further explained below, the elements of reliance are much the same for both common-law and statutory fraud.  Therefore, Plaintiff's new allegations remain deficient.

      ii.      <u>Hunt's Fraud and Civil Conspiracy Causes of Action Still Lack Particularity as to Defendant Brock Lesnar</u>

To successfully allege a claim for common law fraud, a plaintiff must plead each element with specificity and particularity.  In Nevada, "'[i]n all averments of fraud or mistake' a heightened pleading standard requires that 'the circumstances constituting fraud...shall be stated with particularity.'"  *Davenport v. GMAC Mortg.*, 2013 WL 5437119, at \*1 (D. Nev. Sept. 25, 2013).  Plaintiff has, once again, failed to plead the elements of fraud with particularity.

This Court granted Hunt leave to amend his statutory claims of Fraud (N.R.S. § 205.377) and False Pretenses (N.R.S. § 205.380) because, essentially, he attempted to assert criminal statutory claims against Mr. Lesnar instead of Common Law Fraud under the same premises for which he alleged a RICO claim:

> The Court: "I have a question on the way those are framed.  So they are pled – so Claims 3 and 4, they are essentially pled as crimes; right?  Would you agree with me those are the statutory basis for those crimes under Nevada law?"
>
> . . .
>
> The Court: "So then why did you use the criminal as opposed to – the criminal statute...instead of the common law elements?"
>
> Mr. Ingold: "...[w]e cited under the criminal law statutes, but I think that the common-law standards still apply.  And I think we've adequately alleged under the common-law elements."

*See* Exhibit "A" at 21:21-23:7.

Much like Hunt's attempt to assert a statutory claim against Mr. Lesnar under the theory that he committed the predicate offense of fraud under the RICO claim, he asserts common law

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

fraud (and conspiracy to commit fraud) under the same umbrella argument.[9]  As with the original complaint, the fraud allegations lack specificity as to defendant Lesnar.  Furthermore, Mr. Lesnar should not be required to defend against allegations made against others.

Plaintiff's cause of action for Conspiracy to Commit Fraud against Lesnar likewise fails, because it is predicated on Mr. Lesnar's knowledge and participation in a fraudulent activity, of which there remains no evidence or even allegation:

171.  "LESNAR knew that a fraud was being committed by UFC and WHITE against HUNT, as set for in claims one through three.

172.  "LESNAR gave substantial assistance and encouragement to them, and LESNAR was aware of his role in promoting the fraud at the time it occurred, as set forth fully in the background and factual allegations section and claims one through three."

173.  "LESNAR's conduct caused harm to HUNT."

These allegations are woefully inadequate.  They fail to allege what allegedly fraudulent activity on the part of defendants WHITE and the UFC Mr. Lesnar was aware of.  They fail to allege *how* Brock Lesnar allegedly "gave substantial assistance and encouragement to" the other defendants, and there is nothing in the First Amended Complaint [ECF No. 64] from which such conduct could be inferred.  Having failed to allege what allegedly fraudulent activity on the part of defendants WHITE and the UFC Mr. Lesnar was aware of, the First Amended Complaint is equally deficient in explaining in what manner or by what actions "LESNAR was

---

[9] *See* ECF 64 at ¶ 162 (the only mention of Lesnar in the allegations is "Defendants and each of them, in the course of the ENTERPRISE and their respective occupations, knowingly and/or with insufficient basis of information to make the representation, and with the intent to defraud, engaged in multiple acts, practices and schemes which operated as a fraud and deceit by false representations known to be false or omissions of material facts where Defendants should have otherwise made full disclosures of facts known to them.")

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1    aware of his role in promoting the fraud at the time it occurred." These are precisely the types

2    of vague and conclusory allegations that are improper in a fraud claim.

3            iii.    The Fraud and Civil Conspiracy Causes of Action Still Fail to Adequately
4                    Allege Proximate Cause and Recoverable Damages

5            To state a claim for fraud, a plaintiff must show that (1) the defendant provided a false

6    representation of a material fact, which he knew to be false; (2) the defendant intended the

7    plaintiff to rely on the misrepresentation; (3) that the plaintiff detrimentally relied on the

8    misrepresentation; and (4) the misrepresentation proximately caused damages. *Chen v. Nevada*

9    *State Gaming Control Bd.*, 994 P.2d 1151, 1152 (Nev. 2000). A plaintiff has the burden of

10   proving the elements of fraud by clear and convincing evidence. *Lubbe v. Barba*, 91 Nev. 596,

11   598, 540 P.2d 115 (1975).

12           Plaintiff's damages remain as speculative in the First Amended Complaint as they were

13   in the original. Had Brock Lesnar not tested positive, Plaintiff could have lost for any number of

14   factors unrelated to the alleged conduct for which he asserts. The claim that Mr. Lesnar would

15   have tested positive earlier if he had not been given the testing exemption is patently

16   speculative, as is the claim that Mr. Lesnar would not have been allowed to compete if he had

17   not been given the testing exemption. The allegation that Mark Hunt would have beaten Brock

18   Lesnar or even that Hunt would not have been beaten as badly but for the presence of

19   clomiphene is Brock Lesnar's system - is utterly speculative. Finally, the claim that all of Mr.

20   Hunt's woes can be traced to this one fight, despite the fact that he has had numerous prior and

21   subsequent fights – is speculation in the extreme.

22

23           Provable damage to Hunt's reputation and Hunt's brand simply do not exist and have

24   not been properly pled. No further amendment can or will solve this problem, and as a result,

25   these causes of action should be dismissed without leave to amend (at least as to defendant

26   Lesnar).

27   / / /

28

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

### C. THE SEVENTH CAUSE OF ACTION SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

i.   Summary of Changes to Mr. Hunt's Unjust Enrichment Allegation

Plaintiff maintains his claim of Unjust Enrichment against Brock Lesnar, in spite of Mr. Lesnar's compliance with his contractual obligations and forfeiture of a portion of his UFC 200 purse following adjudication of his anti-doping violation before the Nevada State Athletic Commission. *See* ECF No. 64 at ¶ 107. This also is in spite of this Court's skepticism as to Plaintiff's ability to maintain an unjust enrichment claim against Brock Lesnar:

> "But there are some problems that require me to dismiss this one with leave and that is Hunt has not pled any facts from which I can infer that any of these defendants has retained money or other benefits that rightly belong to Hunt. The theory that Hunt deserves Lesnar's purse, right purse, which is alleged in paragraph 156, and all Pay-Per-View proceeds just has no connection to a right that Hunt has. I – based on the facts pled in this Complaint, I'm jut [sic] not seeing how those are his property. And so I can't find at this point anything that would suggest one of these defendants retained a right or benefit of Hunt's. So that one's dismissed with leave if you can plead facts to support that theory."[10]

In order to determine if Plaintiff has remedied these shortcomings, it is again useful to summarize the actual changes that were made (or the relative lack thereof) following the hearing on defendants' May 22, 2017 Motions to Dismiss. *See* ECF No. 64. In summary:

- The First Amended Complaint has added a new paragraph 194, which only pleads wrongful acts on the part of defendants UFC and WHITE.

- Paragraph 152 of the original Complaint was unchanged (except for being renumbered as paragraph 195).

- The First Amended Complaint has added a new paragraph 196, which only pleads wrongful acts on the part of defendants UFC and WHITE.

---

[10] Exhibit "A" at 47:14-25.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

- The First Amended Complaint has added a new paragraph 197 ["Neither UFC, WHITE, nor LESNAR obtained HUNT's consent to fight an opponent with the competitive physical advantage of using banned substances"]. However, Plaintiff does not explain the basis upon which he claims that Brock Lesnar would be required to obtain his consent to the alleged conduct, and the assertion is directly contrary to the pleaded facts at paragraph 196 that the Bout Agreement was between Mark Hunt and UFC.

- The First Amended Complaint has added a new paragraph 198 ["WHITE and LESNAR have each obtained HUNT's services at UFC 200 for which they have not paid. UFC obtained HUNT's services at UFC 200 for which it has only partially paid because HUNT's services far exceeded the scope of the contract."] However, Plaintiff does not explain the basis upon which he claims that Brock Lesnar would be required to pay Mark Hunt for his services[11], and the assertion is directly contrary to the pleaded facts at paragraph 196 that the Bout Agreement was between Mark Hunt and UFC.

- The First Amended Complaint has added a new paragraph 199 ["Defendants did not, and have not ever compensated HUNT for the value of fighting an opponent with the competitive physical advantage of banned substances"]. However, Plaintiff does not explain the basis upon which he claims that Brock Lesnar would be required to compensate Mark Hunt for fighting against him, and the assertion is directly contrary to the pleaded facts at paragraph 196 that the Bout Agreement was between Mark Hunt and UFC.

- The First Amended Complaint has added a new paragraph 200, which alleges (*inter alia*) that the services rendered by Mark Hunt "exceeded the scope of services HUNT agreed to provide by contract. Because the contract referred to was between Hunt and the UFC, these allegations are irrelevant to the cause of action as against defendant Brock Lesnar.

- Paragraphs 154-156 of the original Complaint was unchanged (except for being renumbered as paragraphs 201-203).

- The First Amended Complaint has added new paragraphs 204-205, which adds a claim for "equitable recovery by quantum meruit, restitution, and disgorgement" based upon "the reasonable value of services which exceeded the scope of the contract – the difference in value of fighting a clean opponent versus the value of fighting a doping opponent (which must reflect the heightened risk of injury or death)." Because the contract referred to here is

---

[11] Furthermore, Mark Hunt did not provide any services to Brock Lesnar.

15

**CHRISTIANSEN LAW OFFICES**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

between Mark Hunt and the UFC, these additional allegations are irrelevant to the cause of action as against defendant Brock Lesnar.

- The First Amended Complaint has added a new paragraph 206, which is expressly limited to defendants UFC and WHITE.

- The First Amended Complaint has added a new paragraph 207 ["LESNAR gained increased pay-per-view profit sharing revenue. LESNAR also bolstered his brand, marketing, and promotional opportunities at the expense of HUNT, a clean fighter."]. The new allegations fail to set forth any basis upon which Plaintiff might be entitled to Brock Lesnar's alleged "pay-per-view profit sharing revenue"; and fails to explain the illogical and utterly speculative claim that Brock Lesnar received marketing and promotional opportunities that would have otherwise gone to Mark Hunt.

- Lastly, the First Amended Complaint has added a new paragraph 208, which shockingly "seeks Defendants to be disgorged of all ill-gotten gains and those gains awarded to HUNT, *regardless of HUNT's entitlement thereto.*" [emphasis added]

ii.  The Unjust Enrichment Cause of Action Still Fails to Adequately Allege Proximate Cause and Recoverable Damages.

Unjust enrichment exists only where "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it could be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012). Benefit in the unjust enrichment context can include "services beneficial to or at the request of the other...and is not confined to retention of money or property." *See Restatement of Restitution* Sec. 1 cmt. B (1937); *see also Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992). However, a plaintiff cannot "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." *Thomas v. Wachovia Mortgage, FSB*, 2011 WL 3159169, *6 (D. Nev. July 25, 2011). In order for a plaintiff to recover under a theory of *quantum meruit*, there must be substantial evidence to support a finding that a benefit was conferred. *Las Vegas Sands Corp. v. Suen*, 2016 WL

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1    4076421 at *4 (Nev. 2016).

2        Mark Hunt has, once again, offered no legal basis under which Brock Lesnar could be

3    required to surrender his fight purse, his alleged share of pay-per-view revenue, or any other

4    sums that he received pursuant to his contract with the UFC.  The contracts signed between

5    athletes and the UFC govern the essential terms of the bout, including the earnings of each

6    athlete; and the fact that Mark Hunt is clearly jealous of Brock Lesnar's contract does not create

7    a cause of action.

8        Traditionally, in actions based on *quantum meruit*, the actual value of recovery is the

9    lesser of market value and a price the defendant has expressed a willingness to pay; however, a

10   previous agreement between the parties may be a proper consideration in determining the

11   reasonable value of services rendered.  *Las Vegas Sands Corp.* at *4.  Although Hunt seems to

12   argue that he conferred a benefit upon Mr. Lesnar by fighting Lesnar in UFC 200, Mr. Lesnar's

13   earnings were subject to his contractual agreement with the UFC, not to Mark Hunt's

14   participation.  Lesnar's opponent, therefore, was inconsequential to the remuneration that he

15   contractually received (Mark Hunt's inflated sense of his own commercial value

16   notwithstanding).

17

18       For all of the foregoing reasons, it is submitted that the Seventh Cause of Action should

19   be dismissed without leave to amend, at least as to defendant Lesnar.

20   **D.  THE EIGHTH CAUSE OF ACTION SHOULD BE DISMISSED WITHOUT
     LEAVE TO AMEND**

21

22       i.    Summary of the Additional Cause of Action: Civil Battery and Civil
               Conspiracy (Fraud & Battery)

23

24   Ignoring this Court's skepticism that any "further tort theories or racketeering

25   theories"[12] could survive another motion to dismiss, and despite the fact that his negligence

26   cause of action was *already* dismissed without leave to amend, Plaintiff has added a cause of

27   _____

28   [12] Exhibit "A" at 48:11-14.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1   action for Battery against defendant Brock Lesnar.  In doing so, Plaintiff ignores the fact that

2   the very same contractual assumption of risk and consent issues that barred his negligence claim

3   should also bar this new Battery claim.

4          ii.    Plaintiff's Civil Battery Cause of Action is Barred by Contractual
5                 Assumption of Risk

6          Express assumption of risk is "essentially a contract where the plaintiff signs a

7   document and openly agrees to hold the defendant harmless for known and inherent dangers of

8   a particular activity." *Aukenthaler v. Grundmeyer*, 877 P.2d 1039, 1040 (1994).  Pursuant to the

9   Bout Agreement, fighters such as Hunt are required to acknowledge their full understanding

10  that the professional sport of MMA is an inherently and abnormally dangerous activity that can

11  result in severe and permanent physical injury. *See* Sample UFC Bout Agreement attached

12  hereto as Exhibit "B." [13]  *See also* ECF No. 64 at ¶ 179 referencing Hunt's UFC 200 Bout

13  Agreement, which is attached as Exhibit "B" thereto and was filed under seal. If Mr. Hunt had

14  any suspicion that he might be pitted against "doping" fighters, he did not have to

15  unambiguously and explicitly accept all risks, foreseen and unforeseen. *See generally Id.*

16         In his claim for negligence against the UFC, Mark Hunt similarly asserted that the UFC

17  owed him a duty of care to act reasonably and consistent with the standard of care for a MMA

18  promoter in that industry, and, that the breach of that duty was the proximate and legal cause of

19

20  _____

21  [13] **Exhibit "B"** is a true and correct copy of the Nevada State Athletic Commission's Official Bout Agreement.  It
    is publicly available

22  at:http://boxing.nv.gov/uploadedFiles/boxingnvgov/content/Licensing/Renewal/SampleBoutAgreementnInstructio
    ns.pdf.  The agreement contains plain instructions as to the filing instructions required by the NSAC, as well as

23  required provisions therein.  All MMA fighters participating in a bout in Nevada must sign a copy of Exhibit
    B.  *See* NAC 467.112.  Mark Hunt would have signed a copy of Exhibit B as part of UFC 200,

24  which contains essential contract terms that are dispositive of his claims in his First Amended Complaint.  The
    Sample Bout Agreement states in part:   **Assumption of the Risk.**  The Contestant understands that by participating

25  in a contest exhibition of unarmed combat, that the Contestant is engaging in an abnormally dangerous activity.
    The Contestant further understands that this participation subjects the Contestant to a risk of severe injury or death.

26  The Contestant, with full knowledge of this risk, nonetheless, agrees to enter into this agreement and hereby waives

27  any claim that the Contestant or Contestant's heirs may have against the Commission and/or the State of Nevada as
    the result of any injury the Contestant may suffer as a result of Contestant's participation in any contest or

28  exhibition of unarmed combat in the State of Nevada."

injury to Mr. Hunt, including his physical injury in connection with UFC 200 (among other speculative damages)[14].  Likewise, Hunt now attempts to assert the claim of battery under a similar theory: that, even though the sport of MMA is inherently a series or acts of harmful and offensive contacts by nature, he did not consent to a bout with a doping competitor.  This is problematic for a variety of reasons, including:

1.  Brock Lesnar's positive test for clomiphene did not exempt Mark Hunt from his Bout Agreement, and in fact, he is not seeking to set aside that Bout Agreement;

2.  Plaintiff's claim presupposes that but for the presence of clomiphene (which is not an anabolic steroid) in Brock Lesnar's system, he would not have hit Mark Hunt with 137 total strikes; and

3.  Plaintiff acknowledged, on several occasions, that he believed that Brock Lesnar was doping and consented to the fight anyways.

Plaintiff expressly assumed the risk of fighting against Brock Lesnar when he signed a contractual undertaking, and in that contract he assumed all risks of his participation.  That contractual assumption of risk bars not only his already-dismissed negligence action, but it equally bars his newly-added civil battery claim.

iii.   <u>Plaintiff's Civil Battery Cause of Action is Barred by the Lack of Duty Owed by Brock Lesnar to Mark Hunt</u>

In *Turner v. Mandalay Sports Entertainment, LLC*, 180 P.3d 1172, 1176-7 (Nev. 2008), the Court addressed the issue of implied assumption of risk in the sporting context, as follows:

[S]ince the limited duty rule is logically related to the broader doctrine of primary implied assumption of risk,18 we take this opportunity to clarify certain strained language from this court's decision in *Mizushima v. Sunset Ranch*. In *Mizushima*, the

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

---

[14] In dismissing Hunt's claim of negligence, the court said: "So there are a number of reasons that this claim fails. And, as much as I have to take the plaintiff's statements and facts as pled, because I can look at that entire contract because it was incorporated so substantially into the Complaint, I can't overlook it and it just -- it appears to me that it squarely would preclude that negligence claim."  Exhibit "A" at 46:18-23.

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

court addressed the viability of the assumption of risk doctrine as a defense to negligence actions in Nevada. According to the court, although express assumption of risk remained a viable defense (in part because it stemmed from a contractual undertaking expressly relieving the potential defendant from liability), the implied assumption of risk doctrine failed to survive the enactment of Nevada's comparative negligence statute. Because this conclusion was based on an incorrect understanding of primary implied assumption of risk, however, we now readdress the issue.

The implied assumption of risk doctrine generally is divided into two subcategories: "primary" and "secondary." Of these subcategories, only "primary" implied assumption of risk is at issue here. As commonly understood, this form of assumption of risk arises when "the plaintiff impliedly assumes those risks that are inherent in a particular activity.

In *Mizushima*, this court described the doctrine of primary implied assumption of risk as "a relationship voluntarily accepted with an imputed understanding that the other party has no duty to the injured plaintiff." After making this statement, however, the court mischaracterized duty as a factor "left to the jury ... in the comparative negligence analysis.

We have clearly and consistently stated—since at least 2001—that whether a duty exists is actually a question of law to be determined solely by the courts. Several other courts that have recognized duty as a legal question also have recognized that the primary implied assumption of risk doctrine merely "goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff." These courts treat the doctrine as a part of the initial duty analysis, rather than as an affirmative defense to be decided by a jury. In our opinion, this is a better application of the doctrine, and one that makes it compatible with our comparative negligence statute. Accordingly, we overrule *Mizushima* to the extent that it held that the primary implied assumption of risk doctrine was abolished by our comparative negligence statute. Whether that doctrine bars a plaintiff's claim should be incorporated into the district court's initial duty analysis, and therefore it should not be treated as an affirmative defense to be decided by a jury.

*Id.*

Here, as in *Turner*, the limited duty rule bars Mark Hunt's civil battery claim against Brock Lesnar, as a matter of law. *See also, Burnett v. Tufguy Productions, Inc.*, 2010 WL 4282116, *4 (D. Nev. 2010) [assumption of the risk is always treated as a question of law]. Therefore, the Eighth Cause of Action should be dismissed, without leave to amend.

/ / /

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

iv.    Mark Hunt's Civil Battery Cause of Action is Barred by Mark Hunt's Consent to Fight Brock Lesnar

Consent of an injured party negates the existence of tort and, therefore, denies liability. *Prell Hotel Corp. v. Antonacci*, 469 P.2d 399 (Nev. 1970). In Nevada, lack of consent is an "essential element of the offense of assault and battery." *Wright v. Starr*, 179 P. 877, 878 (Nev. 1919); *see also Prell Hotel Crop.* at 401. "Capacity to consent requires the mental ability to appreciate 'the nature, extent and probable consequences of the conduct consented to.'" *Douglas v. Stalmach*, 2016 WL 4479538 at 12 (D. Nev. 2016), citing to *Davis v. Butler*, 602 P.2d 605, 612 (Nev. 1979) (quoting 4 Restatement (Second) of Torts § 892A cm t. b at 365).

Hunt's claim of battery must fail, because he consented to the bout against Brock Lesnar. A battery is an intentional and offensive touching of a person who has not consented to the touching. *Humboldt Gen. Hospital v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016). Nothing indicates that Hunt was unable to appreciate the nature or extent of the consequences of entering into unarmed combat at UFC 200, and it is quite clear that Mark Hunt consented to the touching of Brock Lesnar when he stepped into the octagon with him. Furthermore, the evidence indicates that Hunt, at the very least, suspected Mr. Lesnar to be using performance enhancing drugs, regardless of his rigorous testing conducted by USADA. *See*, e.g., the text message exchanges between Dana White and Mark Hunt submitted by Plaintiff (ECF No. 64):

72. "On June 5, 2016 at 12:23 P.m. (AET) HUNT asked WHITE in writing "*Can u make sure [LESNAR] gets tests…*"

78. a. "On June 8, 2016 at 7:23 (AET) HUNT stated to WHITE in writing: *'Can u do 20 and 8 [UFC 200 tickets] up front and how about if he is positive for cheating…'*"

Hunt's claim of battery is based on "reliance" upon text message exchanges with Dana White that, ostensibly, created the "consent" to fight a non-doping athlete. However, Mark Hunt's persistent text messages to Dana White do not show a "reliance" that Brock Lesnar was not "doping," but rather a chronic suspicion. Regardless, the responses to Hunt's questions came from Dana White, not Lesnar. Further, White did not warrant that Lesnar would never

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

test positive for a banned substance. Hunt was able to understand and appreciate the risks of a fight against Lesnar, he consented to such a fight, and thus the convoluted, quasi-contractual theory upon which he bases this claim fails.

      v.    <u>Lesnar's Positive Test for Clomiphene is not a Defense to Hunt's Consent to the Bout</u>

Consent is not effective as a defense to battery "where the beating is excessively disproportionate to the consent given or implied, or where the party injured is exposed to loss of life or great bodily harm." *Davies v. Butler*, 602 P.2d 605, 612 (Nev. 1978), citing to *Wright v. Starr*, 179 P. 877 (Nev. 1919). Mr. Lesnar's imposition of physical harm upon Mr. Hunt during UFC 200 was not excessive in his capacity as a Heavyweight MMA athlete. There was no overt act or evidence that an overt act caused Hunt injuries beyond what he would expect to incur at UFC 200. Further, there is no way to determine that, had Mr. Lesnar not tested positive for clomiphene, Mark Hunt would have suffered any less physical injury. As with his negligence claim, Mark Hunt fails to connect the dots of causation and liability, thus his battery claim must fail.

For all of the foregoing reasons, it is submitted that the Eighth Cause of Action should be dismissed without leave to amend.

**E. THE TENTH CAUSE OF ACTION SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

Not content to add one more bogus tort claim (Civil Battery), Plaintiff has also added a cause of action for "Civil Conspiracy (Fraud and Battery)." This cause of action, which alleges that the defendants conspired to defraud Plaintiff and conspired to commit a battery against him, are necessarily dependent on the pleading of a valid cause of action (or actions) for fraud and/or battery. *See, e.g., Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety,* 121 Nev. 44, 74–75, 110 P.3d 30, 51 (2005), abrogated on other grounds by *Buzz Stew, LLC v. City of N. Las Vegas,* 124 Nev. 224, 228 n. 6, 181 P.3d 670, 672 n. 6 (2008) [To state an actionable claim for civil conspiracy to defraud, a plaintiff must allege: (1) a conspiracy agreement formed by the

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992

1  defendants to unlawfully harm the plaintiff, (2) an act of fraud in furtherance thereof, and (3)

2  resulting damages to the plaintiff]. For all of the reasons stated above, all of the fraud claims as

3  well as the battery claim are deficient and should be dismissed. If the fraud claims are

4  dismissed, the civil conspiracy to commit fraud claim must also be dismissed. Likewise, if the

5  civil battery claim is dismissed, then the civil conspiracy to commit battery claim must also be

6  dismissed.

7       Furthermore, while it does not appear that Nevada has squarely addressed the issue,

8  numerous courts have rejected the notion of civil conspiracy in the negligence or even the

9  products liability contexts. *See*, e.g., *Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419

10  (S.D. Fla. 1996) ["Logic and case law dictate that a conspiracy to commit negligence is a non

11  sequitur."]; *Campbell v. A.H. Robins Co.*, 615 F. Supp. 496, 500 (W.D. Wis. 1985) [stating that

12  it is "incomprehensible" to hold that the defendants conspired to cause "negligent harm" or

13  "damages under a strict liability theory" or a warranty claim]. The same can be said here: the

14  notion that the defendants got together and conspired to commit a battery against Mark Hunt is

15  nonsensical.

16       For all of the foregoing reasons, it is submitted that the Tenth Cause of Action should be

17  dismissed without leave to amend, at least as to defendant Lesnar.

18

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25

26

27

28

**III.    CONCLUSION**

For the reasons set forth above, Defendant Brock Lesnar respectfully requests that this Court dismiss all of the claims asserted against him.

DATED this 19th day of June, 2017.

CHRISTIANSEN LAW OFFICES

By _____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.

-and-

HOWARD L JACOBS, ESQ.
THE LAW OFFICES
OF HOWARD L. JACOBS
*Attorneys for Defendant Brock Lesnar*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the undersigned hereby certifies that on this day, June 19, 2017, a copy of the foregoing document entitled **DEFENDANT BROCK LESNAR'S MOTION TO DISMISS MARK HUNT'S FIRST AMENDED COMPLAINT [ECF NO. 64] PURSUANT TO FED.R.CIV.P. 12(B)(6)** was filed and served through the Court's electronic filing system (CM/ECF) upon all registered parties and their counsel.

_____
An employee of Christiansen Law Offices

CHRISTIANSEN LAW OFFICES
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
702-240-7979 • Fax 866-412-6992