1  CHRISTINA M. DENNING, ESQ. (CA Bar No. 211137)
2  denningc@higgslaw.com
   SCOTT J. INGOLD, ESQ. (NV Bar No. 11818)
3  ingolds@higgslaw.com
4  JOSEPH A. GONNELLA, ESQ. (CA Bar No. 306619)
   Higgs Fletcher & Mack LLP
5  401 West "A" Street, Suite 2600
   San Diego, CA  92101-7913
6  T:  619.236.1551
7  F:  619.696.1410

8  JAMES F. HOLTZ, ESQ. (NV Bar No. 8119)
9  james.holtz@holtzapc.com
   LAW OFFICE OF JAMES F. HOLTZ
10 1120 Town Center Drive, Suite 200
   Las Vegas, NV 89144
11 T: 702.304.1803
12 F: 702.304.1822

13 Attorneys for Plaintiff
14 MARK HUNT

15                 UNITED STATES DISTRICT COURT

16                       DISTRICT OF NEVADA

17 MARK HUNT, an individual,           Case No.: 2:17-cv-00085-JAD-CWH

18               Plaintiff,            MARK HUNT'S OPPOSITION TO
                                       DEFENDANT BROCK LESNAR'S
19 v.                                  MOTION TO DISMISS MARK
                                       HUNT'S FIRST AMENDED
20 ZUFFA, LLC d/b/a ULTIMATE           COMPLAINT [ECF NO. 64]
   FIGHTING CHAMPIONSHIP, a            PURSUANT TO FED. R. CIV. P.
21 Nevada limited liability company;   12(b)(6)
   BROCK LESNAR, an individual;
22 DANA WHITE, an individual; and
   DOES 1-50, inclusive,
23
24               Defendants.
25

26 / / /

27 / / /

28 / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  HUNT'S RICO CAUSES OF ACTION ARE ADEQUATELY PLEADED
(CLAIM NOS. 1 & 2) ........................................................................................... 2

    A.  Hunt has alleged loss to "business or property".................................... 2
    B.  Hunt Alleges Proximate Causation ........................................................ 3
    C.  Lesnar was Involved in the Operation of the Enterprise......................... 7

III.  HUNT'S AMENDED FRAUD CLAIM CURES THE DEFECT IDENTIFIED BY
THE COURT (CLAIM NO. 3) ............................................................................. 8

IV.  CIVIL AIDING AND ABETTING FRAUD.......................................................... 10

V.  UNJUST ENRICHMENT (CLAIM NO. 7) ......................................................... 11

VI.  BATTERY ............................................................................................................ 14

    A.  Contractual Assumption of the Risk ..................................................... 14
    B.  Implied Assumption of the Risk ........................................................... 16
    C.  Consent ................................................................................................. 17

VII.  CIVIL CONSPIRACY TO COMMIT FRAUD AND BATTERY ................................. 18

VIII.  IF DEFENDANTS' MOTION IS GRANTED IN ANY MANNER, HUNT
SHOULD BE GIVEN LEAVE TO AMEND, AND TO CONDUCT DISCOVERY ...... 19

IX.  CONCLUSION ..................................................................................................... 20

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

i

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adhikari v. Daoud & Partners*
 697 F. Supp. 2d 674, 691 (S.D. Tex. 2009) ................................................................ 2

*Ahn v. Hanil Dev., Inc.*
 471 F. App'x 615, 617 (9th Cir. 2012) .................................................................... 3

*Anderson v. Brown Indus.*
 No. 411CV00225HLMWEJ, 2012 WL 12860887, at *8 (N.D. Ga. June 13, 2012) ................ 2

*Auckenthaler v. Grundmeyer*
 877 P.2d 1039, 1039 (1994) .............................................................................. 15, 16

*Barclay v. Med. Show Land Trust*
 No. CV-12-1060-PHX-SMM, 2014 WL 644558, at *7 (D. Ariz. Feb. 19, 2014) .................... 16

*Bridge v. Phoenix Bond & Indem. Co.*
 553 U.S. 639, 654 (2008) ........................................................................................ 3

*Burnett v. Tufguy Prods., Inc.*
 No. 2:08-CV-01335-GMN, 2010 WL 4282116, at *3 (D. Nev. Oct. 20, 2010) ................ 17, 18

*Canyon County v. Sygenta Seeds, Inc.*
 519 F.3d 969 (9th Cir. 2008) .................................................................................. 5

*Certified Fire Prot. Inc. v. Precision Constr.*
 283 P.3d 250, 257 (Nev. 2012) ...................................................................... 11, 12, 13

*Diaz v. Gates*
 420 F.3d 897, 901 (9th Cir. 2005) ........................................................................ 6, 7

*Douglas v. Stalmach*
 No. 2:13-CV-02326-RFB-PAL, 2016 WL 4479538, at *12 (D. Nev. Aug. 24, 2016) .............. 17

*Dow Chemical Co. v. Mahlum*
 970 P.2d 98, 112 (1998) ...................................................................................... 10

*Eminence Capital, LLC v. Aspeon, Inc.*
 316 F.3d 1048, 1052 (9th Cir. 2003) .................................................................. 19, 20

*Foman v. Davis*
 371 U.S. 178 (1962) ............................................................................................ 19

*G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.*
 (D. Nev. 2006) 460 F.Supp.2d 1246, 1261 ............................................................... 10

*Gonzalez v. Las Vegas Metro. Police Dep't*
 No. 2:12-CV-01247-LDG, 2014 WL 1091012, at *14 (D. Nev. Mar. 18, 2014) .................... 14

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

ii

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

**TABLE OF AUTHORITIES**
(continued)

Page

*Hidalgo v. State*
   381 P.3d 620 (2012) ................................................................................. 19

*Holmes v. Security Protection Investor Corp.*
   503 U.S. 258, 269 (1992) ............................................................................. 3

*Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*
   376 P.3d 167, 171 (2016) ........................................................................... 14

*In re Wal-Mart Wage and Hour Empl. Prac. Litig.*
   490 F.Supp.2d 1091 (D. Nev. 2007) ............................................................ 2

*Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*
   74, 110 P.3d 30, 51 (2005) ........................................................................ 19

*Kerns v. Hoppe*
   381 P.3d 630, 2012 WL 991651 at *3 (2012) ...................................... 15, 16

*Knevelbaard Dairies v. Kraft Foods, Inc.*
   232 F.3d 979, 991 (9th Cir. 2000) ...................................................... 5, 6, 7

*LeasePartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*
   942 P.2d 182, 187 (Nev. 1997) ........................................................... 11, 13

*Mendoza v. Zirkle Fruit Co.*
   301 F.3d 1163, 1168 n.4 (9th Cir. 2002) ............................................ 2, 6, 7

*Mizushima v. Sunset Ranch, Inc.*
   737 P.2d 1158, 1161 (1987) ...................................................................... 16

*Morongo Band of Mission Indians v. Rose*
   893 F.2d 1074, 1079 (9th Cir.1990) .......................................................... 19

*Nevada Indus. Dev., Inc. v. Benedetti*
   741 P.2d 802, 804 (Nev. 1987) ................................................................. 12

*Newcal Indus., Inc. v. Ikon Office Sol.*
   513 F.3d 1038, 1055 (9th Cir. 2008) ................................................... 4, 6, 7

*Oscar v. University Students Co-Op Ass'n*
   965 F.2d 780, 785 (9th Cir. 1992) .............................................................. 4

*Owens v. Kaiser Found. Health Plan, Inc.*
   244 F.3d 708, 712 (9th Cir.2001) .............................................................. 19

*Rae v. Union Bank*
   725 F.2d 478, 481 (9th Cir. 1984) ............................................................ 20

*Reeves v. Ernst & Young*
   507 U.S. 170 (1993) .................................................................................... 7

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1

2

### TABLE OF AUTHORITIES
### (continued)

Page

3

*Thomas v. Wachovia Mortg., FSB*
    (D. Nev., July 25, 2011, No. 2:10-CV-01819-ECR) 2011 WL 3159169, at *6 ....................... 13

4

*Turner v. Mandalay Sports Entm't, LLC*
    180 P.3d 1172, 1177 (2008) ................................................................................................ 16

5

6

*Ungaro v. Desert Palace, Inc.*
    732 F. Supp. 1522, 1532 (D. Nev. 1989) ............................................................................. 18

7

*United States v. Remolif*
    227 F. Supp. 420, 425 (D. Nev. 1964) ................................................................................. 18

8

9

*Wickenkamp v. Hostetter Law Grp., LLP*
    No. 2:15-CV-296-PK, 2015 WL 9948219, at *18 (D. Or. Dec. 3, 2015) .................................. 2

10

*Wright v. Starr*
    42 Nev. 441, 179 P. 877, 877 (1919) ................................................................................... 17

11

**Statutes**

12

18 U.S.C. Section 1961(4) ......................................................................................................... 7

13

**Treatises**

14

57B Am.Jur.2d Negligence § 766 (2004) ................................................................................ 15

15

Prosser and Keeton on the Law of Torts § 68 at 484 (5th ed. 1984) ........................................ 16

16

17

18

19

20

21

22

23

24

25

26

27

28

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

iv

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Plaintiff, MARK HUNT ("Hunt"), submits this memorandum of points and authorities in opposition to the motion to dismiss filed by Defendant, Brock Lesnar ("Lesnar").

## I.

## __INTRODUCTION__

This Court granted Defendants' first motion to dismiss as to the RICO causes of action primarily on the grounds of lack of standing, noting that it would wait to see "what facts [Hunt] left on the cutting room floor." Hunt's Amended Complaint revealed those facts, which include, among other things, text messages between Hunt and Defendant DANA WHITE ("White") which indicated White's assurances that Lesnar would be a clean fighter and indicating Lesnar's directing the operation of the enterprise, facts demonstrating harm to Hunt's business and property in the form of lost appearance and other revenue; and facts linking Defendants' conduct to Hunt's damages. The Amended Complaint cured any pleading defects and demonstrates that Hunt has a viable claim against Lesnar, not just for Federal and Nevada RICO, but for fraud, unjust enrichment, battery, and related claims.

Lesnar's motion substitutes impassioned assertions in place of application of facts to law. Lesnar, for example, asserts a lack of proximate causation based on the possibility that other factors caused or contributed to Hunt's damages; the law is that Hunt need only show "some direct relation," and that, at the pleading stage, the Court need not sort through which of various factors could have contributed to Hunt's damages and to what extent. Here, Hunt has alleged that, but for the Defendants' unlawful agreement to pit a cheating fighter against Hunt, Hunt would have fared better against Lesnar (or another opponent), and that fighters who win or otherwise perform well in fights earn more for business and property income. As to the battery cause of action, Lesnar improperly seeks to hide behind a contract to which he is not a party, a defense Nevada law does not afford him. Hunt never consented to fighting an artificially-enhanced fighter, and therefore his battery claim is viable. As to unjust enrichment, Lesnar mistakenly asserts that Hunt must prove he is entitled to Lesnar's purse, but Nevada law indicates that an independent entitlement to the defendant's gain is not required for disgorgement based on unjust enrichment. As Judge Pro recognized, the law in Nevada demonstrates that Hunt need only establish that Lesnar unjustly

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   retained money "against the fundamental principles of justice or equity and good conscience." *In*

2   *re Wal-Mart Wage and Hour Empl. Prac. Litig.*, 490 F.Supp.2d 1091 (D. Nev. 2007).   Indeed,

3   based on the totality of facts alleged, a jury may find that it is inequitable and unjust for Lesnar to

4   keep his purse and pay-per-view earnings.[1]

5         As to fraud and conspiracy, the facts underlying this action should not be lost: Lesnar, UFC,

6   and White conspired to defraud not just Hunt, but millions of mixed martial arts and wrestling fans,

7   through a scheme whereby UFC, White, and Lesnar would each richly line their respective pockets

8   through manipulating UFC's own anti-doping measures to pit a cheating superstar Lesnar against

9   Hunt.   Lesnar made repeated assertions that he was returning to the UFC, creating a clear

10  understanding that he would adhere to UFC agreements, including its testing protocol. After full

11  review of the Amended Complaint and the legal authorities applicable to Hunt's claims against

12  Lesnar, Hunt respectfully requests that this Court deny Lesnar's motion.

## II.

### HUNT'S RICO CAUSES OF ACTION ARE ADEQUATELY PLEADED
### (CLAIM NOS. 1 & 2)

**A.  Hunt has alleged loss to "business or property"**

17        The Ninth Circuit in *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002)

18  held that "a legal entitlement to business relations unhampered by schemes prohibited by the RICO

19  predicate statutes" was adequate to confer standing on a plaintiff.   While *Mendoza* was pre-

20  *Iqbal/Twombly*, *Iqbal* and *Twombly* elucidate a pleading standard, whereas *Mendoza* is not an

21  adequacy of pleading case, but a category of damages case.[2]   The *Mendoza* court held that violating

22  a plaintiff's right to pursue business relations unhampered by illegal schemes is compensable RICO

23  harm; it had nothing to do with the level of pleading needed to establish RICO damages.  Hunt has

---

[1] Indeed, UFC was authorized to strip Lesnar of his purse, but declined to do so, consistent with Defendants' conspiracy to pay Lesnar a "boatload of money" to return to the UFC despite being a doping fighter.

[2] Notably, several post-*Iqbal/Twombly* cases have applied *Mendoza* in holding that the plaintiff has stated a RICO-compensable injury in the defendant's interference in the plaintiff's right to seek business relations unhampered by the defendant's illegal schemes.  *See, e.g., Wickenkamp v. Hostetter Law Grp., LLP*, No. 2:15-CV-296-PK, 2015 WL 9948219, at *18 (D. Or. Dec. 3, 2015), *report and recommendation adopted*, No. 2:15-CV-00296-PK, 2016 WL 393333 (D. Or. Jan. 31, 2016); *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 691 (S.D. Tex. 2009); *Anderson v. Brown Indus.*, No. 411CV00225HLMWEJ, 2012 WL 12860887, at *8 (N.D. Ga. June 13, 2012).

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

2

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  alleged that his opportunity to seek business relations was hampered by the Defendants' illegal

2  schemes, such that he lost advertising revenue, appearance revenue, and other business earnings.

3       Setting aside the fact that Hunt suffered RICO-compensable damages under applicable law

4  by alleging Defendants interfered with his ability to seek business opportunities unhampered by

5  their illegal scheme, Hunt's amended complaint eliminates all doubt as to his business and property

6  losses, as it sets forth specifically-identifiable business and property loss: tangible, financial

7  damage in the form of lost revenue and earnings.  This includes advertising revenue, book sales

8  revenue, revenue from Hunt's Juggernaut brand of apparel[3], lost bout and appearance revenue, and

9  depressed wages.  See, e.g., ECF No. 64 at ¶¶ 111-116.  These categories represent "concrete

10  financial" damages, which confers RICO standing upon Hunt.  *See*, *Ahn v. Hanil Dev., Inc.*, 471 F.

11  App'x 615, 617 (9th Cir. 2012).  Implicitly acknowledging that Hunt's Amended Complaint sets

12  forth "concrete financial loss" required for RICO standing, Lesnar's motion makes scant argument

13  that these damages described by Hunt could be anything *other* than RICO-compensable damages.

14  **B.  Hunt Alleges Proximate Causation**

15       The Supreme Court has held that a RICO plaintiff need only show "some direct relation"

16  between the defendant's wrongful conduct and the plaintiff's injuries.  *Bridge v. Phoenix Bond &*

17  *Indem. Co.*, 553 U.S. 639, 654 (2008), quoting *Holmes v. Security Protection Investor Corp.*, 503

18  U.S. 258, 269 (1992).  The Court in *Bridge* noted that "[t]he direct-relation requirement avoids the

19  difficulties associated with attempting 'to ascertain the amount of a plaintiff's damages attributable

20  to the violation, as distinct from other, independent, factors,' [citation], prevents courts from having

21  'to adopt complicated rules apportioning damages among plaintiffs removed at different levels of

22  injury from the violative acts, to obviate the risk of multiple recoveries,' [citation]; and recognizes

23  the fact that 'directly injured victims can generally be counted on to vindicate the law as private

24  attorneys general, without any of the problems attendant upon suits by plaintiffs injured more

25  remotely.'"  *Id*. at 654-655.  Notably, the "some direct relation" standard need not be within a given

26

27  _____
    [3] Lesnar is misplaced in his criticism that Juggernaut is not a party to this action.  Hunt has alleged that the decline in
28  Juggernaut sales has led to lost business revenue for him personally; Lesnar cites no law or argument why Hunt
    cannot allege a loss of business/property income through loss to his Juggernaut business.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

3

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1 number of steps, nor must it show the absence of other intervening factors; a plaintiff need only

2 show "some direct relation," a standard Hunt has met.

3      The focus of Lesnar's argument, made at several points throughout his motion, is the lack

4 of proximate causation.[4]  Indeed, this Court noted at the hearing on the motion to dismiss its concern

5 over the potential other intervening factors that could have contributed to Hunt's damages.  Lesnar

6 misconstrues this argument by asserting that Hunt must prove that, but for Lesnar being a doping

7 fighter, Hunt would have defeated him (or another clean fighter).  Not only is this argument

8 properly a question of fact for a jury to determine, the underlying assertion is factually incorrect in

9 itself; the Amended Complaint alleges that, had Hunt faced a clean fighter, the fight would have

10 been closer, even if he still lost.  ECF No. 64 at ¶ 23.  It is not speculative to say that doping fighters

11 like Lesnar are bigger, stronger, faster, hit harder, and can handle damaging hits better; this is the

12 very reason *why* many athletes choose to use banned substances, and why the UFC realizes a benefit

13 from having cheating fighters.[5]  But few fans want to root for a fighter who is consistently losing

14 fights by wide margins; it is no coincidence that the top-selling NBA jerseys belong to players who

15 played in the NBA finals.  Indeed, one of Hunt's most famous fights was a *draw* (not a win) against

16 the cheating Antonio Silva in UFC Fight Night 33.  Obviously, winning would have been even

17 better for his business, but a closely-fought draw was still enough to attract attention to Hunt's other

18 business opportunities, not to mention the fight bonuses and more lucrative contract UFC

19 eventually awarded him in return for his performance in UFC-sponsored bouts.  In much the same

20 way, it is not speculative to say that Hunt would have fared better against a clean competitor, which

21 would have benefitted his business interests.

22      The Amended Complaint spells out the causal link in greater detail:  the enterprise used

23 wire fraud to sponsor and promote a bout in which it knew the cheating Lesnar would fight the

24 clean Hunt (including text messages between Hunt and White falsely assuring Hunt that Lesnar

25 would be a clean fighter); as a result, Hunt fought and lost to the cheating Lesnar in a unanimous

---

26 [4] Lesnar begins his standing argument quoting from *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785

27 (9th Cir. 1992) (en banc).  The Ninth Circuit held in 2008 that it "ha[s] overturned the rules" from *Oscar*. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008).

28 [5] It is telling that UFC imposes more severe penalties for fighters who fail to make weight (and therefore cannot compete in a given event) than fighters who are subsequently caught using banned substances.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

4

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   decision, which caused a distinct, notable, and tangible decline in Hunt's businesses and business

2   opportunities, as spelled out in the Amended Complaint.  This connection satisfies the "some direct

3   relation" standard spelled out by our Supreme Court.

4          This Court referenced *Canyon County v. Sygenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008)

5   in its ruling on Defendants' initial motions to dismiss.  Respectively, aside from pre-dating the

6   more recent and poignant Supreme Court guidance in *Bridge*, the facts of *Canyon County* are

7   distinguishable from those described in Hunt's Amended Complaint.  In *Canyon County*, the

8   plaintiff alleged it suffered increased health care and law enforcement expenses due to the

9   defendants' employment of undocumented immigrants.  *Id.* at 972-973.  There, however, the court

10  couldn't even see how the alleged illegal practices *could* have contributed to the plaintiff's

11  increased health care and law enforcement costs; the court was unable to explain how the hiring of

12  undocumented immigrants would have affected the plaintiff's health care and law enforcement

13  expenses.  *Id.* at 983.  By contrast, in this case, as indicated above, there is a logical explanation for

14  precisely *how* Defendants' scheme harmed Hunt's business interests, supported with concrete facts.

15         At the pleading stage, it is not necessary that Hunt plead precisely the *amount* of damages

16  he has suffered; that is the jury's province.  He need only allege some relationship between the

17  Defendants' actions and his harm, which he has.  As the Ninth Circuit has held in a case in which

18  the defendant argued that damages were speculative: "Whether experts will be able to measure the

19  difference between the allegedly restrained price for milk and the price that would have prevailed

20  but for the antitrust violation remains to be seen; in deciding a Rule 12(b)(6) motion we are dealing

21  only with the complaint's allegations, which in this instance do not make the claim speculative."

22  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000).

23         In this circuit, three factors are relevant in determining whether a plaintiff has
24         shown proximate cause:  (1) whether there are more direct victims of the alleged
           wrongful conduct who can be counted on to vindicate the law as private attorneys
25         general; (2) whether it will be difficult to ascertain the amount of the plaintiff's
           damages attributable to defendant's wrongful conduct; and (3) whether the courts
26         will have to adopt complicated rules apportioning damages to obviate the risk of
           multiple recoveries.

27

28

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
8039206.1

5

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   *Newcal Indus., Inc.*, *supra*, 513 F.3d at 1055.  The Court in *Newcal* focused on the "most direct

2   victim" factor, and here, Hunt is the most direct victim of the Defendants' illegal scheme.  As to

3   the second factor, Hunt has set forth specific dollar amounts demonstrating his loss.  As the Court

4   in *Knevelbaard Dairies* held, the specific amount of damages is an issue for experts at the time of

5   trial; it is enough that the Amended Complaint has articulated specific and calculable losses

6   suffered by Hunt.  Finally, there is no risk of multiple recoveries in this matter; the scheme in this

7   case primarily targeted and primarily harmed Hunt, and no other individuals have made or

8   threatened claims against these Defendants similar to Hunt's.  Thus, under *Newcal Industries*, Hunt

9   has established proximate causation.

10         Reviewing the factual examples from case law demonstrate the liberality with which courts

11   apply the "some direct relation" standard and the factors from *Newcal Industries*, even in cases

12   where other factors *could* have contributed to the plaintiffs' damages, or where damages may be

13   difficult to calculate.  In *Knevelbaard Dairies*, for example, the plaintiff alleged that the defendants'

14   price-fixing on cheese depressed milk prices.  Although numerous other factors could impact the

15   price of milk, and although the calculation could be difficult, the Court held these facts alone did

16   not make the plaintiff's damages speculative as a matter of law.  In *Mendoza*, the Ninth Circuit

17   reversed the trial court in holding it improperly relied on the intervening factors of the "wage paid

18   by other orchards in the area, the skill and qualifications of each plaintiff, the profitability of the

19   defendants' businesses without the undocumented workers, and the general availability of

20   documented workers in the area" in finding lack of proximate cause.  *Mendoza*, *supra*, 301 F.3d at

21   1170–71.  In *Diaz v. Gates*, the court held the plaintiff had standing when he alleged the loss of

22   vague and unspecified business, employment, and opportunities.  *Diaz v. Gates*, 420 F.3d 897, 901

23   (9th Cir. 2005).  The plaintiff in *Newcal Industries, Inc.* alleged the defendant lengthened its

24   customers' service contracts, which prevented its clients from obtaining services and equipment,

25   which led to increased costs to defendant in purchasing those contracts.  *Newcal Industries, Inc.*,

26   *supra*, 513 F.3d at 1043-44.  Notably, the court reversed the district court's finding that the

27   plaintiff's injuries were speculative.  *Id.* at 1055.  In each of these cases, any number of other factors

28   could have contributed to the plaintiffs' alleged injuries, and in each of these cases, the calculation

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

6

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   of damages could be difficult or complicated.  Indeed, in this case, the causal link is more direct

2   and damages more readily-ascertainable than those in *Knevelbaard Dairies*, *Mendoza*, *Diaz*, and

3   *Newcal Industries*.

4          The Amended Complaint satisfies the three-factor test in *Newcal Industries* and *Mendoza*.

5   Although Defendants may argue as to any number of other factors that could have contributed to

6   Hunt's damages, this is an issue properly left for the fact-finder.  As the Ninth Circuit has held, the

7   plaintiff alleging a defendant's actions caused his damages "must not be put to the test to prove this

8   allegation at the pleading stage."  *Mendoza*, *supra*, 301 F.3d at 1171.

9   **C.  Lesnar was Involved in the Operation of the Enterprise**

10         Citing no law, Lesnar contends he was not involved in the operation of the enterprise.  This

11  Court cited *Reeves v. Ernst & Young*, 507 U.S. 170 (1993) in its ruling on Defendants' first motion

12  to dismiss.  The Supreme Court in *Reeves* adopted what it referred to as the "operation or

13  management" test, explaining: "the word 'participate' makes clear that RICO liability is not limited

14  to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or

15  indirectly' makes clear that RICO liability is not limited to those with a formal position in the

16  enterprise, but some part in directing the enterprise's affairs is required."  *Id.* at 179.  Thus, Lesnar

17  was properly involved in the operation of the enterprise if he had some part in directing the

18  enterprise's affairs.

19         In response to ESPN's Hannah Storms' question: "Can you walk me through this as a

20  business deal, alright, you're sitting on your farm, you're having these thoughts [of returning to the

21  UFC], . . . then who do you call?"  Lesnar responded: "It's very simple, nobody called me, it was

22  nobody else's idea . . . I picked up the phone, it was me . . ."  According to Lesnar, the UFC 200

23  "business deal" originated with Lesnar himself.  His telephone call from his farm was integral to

24  the direction of the enterprise's affairs, specifically, UFC 200.   ECF No. 64 at ¶ 144.

25         Whether Lesnar had some part in directing the enterprise's affairs is largely dependent on

26  characterization of the terms "enterprise" and "affairs."  The definition of "enterprise" found in 18

27  U.S.C. Section 1961(4) includes "any union or group of individuals associated in fact although not

28  a legal entity."  Hunt's Amended Complaint defines this union or group of individuals to include

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

7

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    UFC, Dana White, Lesnar, and several others.  The question, then, is what does the Amended

2    Complaint allege the "affairs" of the enterprise to be?  The Amended Complaint alleges that the

3    enterprise colluded and worked together to procure a scheme to have a cheating Lesnar come out

4    of retirement and fight Hunt through the manipulation of UFC's drug-testing procedures, the result

5    of which would be a proverbial "slap on the wrist" for Lesnar and a handsome payday for all parties

6    involved in the enterprise.  The issue is whether Lesnar had "some part in directing" this scheme.

7    The Amended Complaint indicates that he did.

8         The Amended Complaint publishes text messages that demonstrate that Lesnar was

9    *personally involved* in communicating and negotiating with defendant and UFC front-man Dana

10   White to facilitate the scheme.  ECF 64 at ¶ 78.  Lesnar personally went on ESPN and bragged that

11   he was returning to UFC because "I'm a prize fighter . . . I fight for money, and it's no different,

12   they're making money, I'm making money . . . That's what this is all about . . ."  ECF 64 at ¶ 74.

13   Lesnar's participation in the enterprise is revealed about his bragging about being a "prize fighter",

14   that he and UFC were "making money", and "*that's what this [the enterprise] is all about*."  UFC

15   singled out Lesnar and Lesnar happily obliged; the problem was that Lesnar had been using banned

16   substances, so UFC, White and Lesnar agreed to manipulate the testing procedures, going so far as

17   to refuse to expedite for a nominal fee a test that would ultimately reveal a positive result, in order

18   to retain some plausible deniability.  The Defendants, including Lesnar, knew that, by the time the

19   results were revealed, their pockets would already have been lined from the UFC 200 proceeds.

20   Lesnar was not passive in this process, but was a central figure in conducting and procuring the

21   scheme (i.e., the "affairs" of the enterprise).

**III.**

**HUNT'S AMENDED FRAUD CLAIM**

**CURES THE DEFECT IDENTIFIED BY THE COURT**

**(CLAIM NO. 3)**

26        The Court identified two defects as to Hunt's fraud and false pretenses claims.  First, the

27   Court noted there is no statutory private right of action, and invited Hunt to "reassert these claims

28   under the common law elements and common law claims."  ECF No. 65, 43:4-5.  Second, the Court

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

8

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   noted that, as to Defendant White only, "there's nothing pled against White to satisfy or to form a
2   basis for the fraud claim . . . ." The Court did not find the claim's lacked specificity in any respect,
3   aside from allegations against White.

4       As to the first issue, Hunt's Amended Complaint consolidated fraud and false pretenses
5   claims and reasserted them as a consolidated common law fraud claim. While Lesnar's opposition
6   appears to fault Hunt for "rebranding" these claims, the amendment merely adheres to the Court's
7   guidance on curing a mislabeled claim. Aside from this technical defect, the Court summarily
8   rejected Defendants' arguments, noting that their contention was that *evidence* would "cut[]
9   strongly against reliance." The Court then correctly declined to accept Defendants' proffered
10  version of the facts, adhering to Hunt's well pleaded factual allegations in "the four corners of the
11  Complaint."

12      As to the second issue, Hunt's amended complaint directly addresses the Court's
13  requirement of alleging more facts as to White. Specifically, Hunt sets forth direct quotes, with
14  time stamps, from written communications between Hunt and White. Those conversations
15  demonstrate that, notwithstanding any public showmanship, Hunt relied on White's statement that
16  White and UFC would rigorously test Lesnar, however, Defendants were all engaged in a scheme
17  to delay his entry into the testing pool and conceal Lesnar's doping.

18      Lesnar appears to ask the Court to revisit causation and damages. ECF No. 68, Part II.B.iii.
19  Further, Lesnar improperly asks the Court to apply the heightened RICO injury standard to the
20  common law fraud claim. *Id.* at 23-24 ("Provable damage to Hunt's reputation and Hunt's brand
21  simply do not exist and have not been properly pled.") Unlike RICO, common law fraud places no
22  limitation on a category of damages, including without limit "personal" damages. Hunt alleges that
23  had he known of Defendants' "doping scheme, HUNT would have declined the fight, negotiated a
24  far more lucrative agreement contemplating a clean fighter being subjected to hand-to-hand combat
25  with a doping fighter, or otherwise protected his interests." ECF No. 64 at 117. Thus, Hunt
26  properly alleges financial harm and personal injury (i.e. significant strikes suffered in the UFC 200
27  bout). The Court should decline Lesnar's repeated false hurdle requiring Hunt to "prov[e] the
28  elements of fraud by clear and convincing evidence" at the pleading stage. ECF No. 68 at 13:9-10.

1    Lesnar mischaracterizes this Court's ruling by stating the element of reliance "remain[s]

2  deficient." ECF No. 68 at 11:2-3. This Court has already ruled the exact opposite:

3       I think that as pled you have pled some facts to show reliance. So I'm not going to
        ask that you supplement the reliance aspect of it. The defenses' argument is
4       essentially that when you look at the full picture of everything you're going to see
        there's going to be evidence that cuts strongly against reliance. But I'm not going
5       to step outside the four corners of the Complaint to make those conclusions at this
        point.
6

7    ECF No. 65 at 44:8-14. Hunt's amendment, including messages between White and Hunt,

8  affirmatively disproves Defendants' reliance theory. Because the Court has already determined

9  reliance is sufficiently pleaded, Hunt does not discuss it further here.

10    Lesnar also mischaracterizes the Court's ruling as to pleading specificity. Lesnar states

11  "Plaintiff has, once again, failed to plead the elements of fraud with particularity." ECF No. 68,

12  11:10-11; 12:1-2. As stated above, the Court identified two pleading issues with the fraud claims.

13  Neither was pleading specificity. Hunt's amended complaint, like the original, specifically alleges

14  the collusive UFC 200 fraud.

15    Hunt's fraud claim is adequately pleaded, and specifically remedied the two issues

16  identified in this Court's prior ruling. Hunt has adequately put Lesnar on notice that Lesnar was

17  doping, he wrongfully concealed it by false representation and omission, Hunt relied on the

18  representations and omissions, and was harmed. A jury is the proper body to determine whether

19  UFC 200 was a fraud or a foot cream faux pas.

20                                            **IV.**

21                      **CIVIL AIDING AND ABETTING FRAUD**

22                                   **(CLAIM NO. 4)**

23    Civil aiding and abetting has three elements: (1) the substantive tort was committed; (2)

24  defendant was aware of its role in promoting the tort; and (3) that defendant knowingly and

25  substantially assisted in the commission of the tort. *Dow Chemical Co. v. Mahlum* 970 P.2d 98,

26  112 (1998), *overruled on other grounds*; *G.K. Las Vegas Limited Partnership v. Simon Property*

27  *Group, Inc.* (D. Nev. 2006) 460 F.Supp.2d 1246, 1261. Hunt alleges each defendant committed a

28  fraud, that each other defendant was aware of its role in promoting the fraud, and knowingly and

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

10

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  substantially assisted in its commission.  ECF No. 64, ¶¶ 161-176.  The fraud and aiding and

2  abetting claims each incorporate by reference the detailed factual allegations in the complaint,

3  which explain Defendants' fraudulent UFC 200 scheme.  ECF No. 64, ¶¶ 161, 167.  This claim is

4  adequately pleaded.

5  **V.**

6  **UNJUST ENRICHMENT**

7  **(CLAIM NO. 7)**

8      Lesnar argues that Hunt's claim for unjust enrichment should be dismissed for two reasons:

9  first, that Hunt is not entitled to Lesnar's purse; and second, that there is a contract regarding UFC

10  200.  Lesnar's first point is legally mistaken, as **Nevada law does not require Hunt to show an**

11  **entitlement to Lesnar's purse** to demonstrate a right to disgorgement.  Hunt need only show that

12  he provided services beneficial to Defendants and that it would be unjust for Defendants to retain

13  the benefits they received from those services.  *Certified Fire Prot. Inc. v. Precision Constr.,* 283

14  P.3d 250, 257 (Nev. 2012) (hereafter "*Certified Fire*").  As to the second point, this Court has

15  previously dismissed this argument, noting "you could also at this point allege inconsistent

16  theories." [6]  ECF No. 65 at 47:5-8.  Moreover, Nevada law mandates that, even where there is a

17  contract regarding a transaction, a plaintiff may recover in restitution where there is no contract

18  between the plaintiff and the defendant being sued.  *LeasePartners Corp. v. Robert L. Brooks Trust*

19  *Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (hereafter "*LeasePartners*").  As there

20  is no written agreement between Lesnar and Hunt, Hunt may seek disgorgement of Lesnar's

21  payments in UFC 200.

22      The Court deemed the claim deficient based only on the finding that Hunt failed to plead

23  facts permitting an inference that Defendants retained benefits that rightly belong to Hunt.  ECF

24  No. 65 at 47:14-17.  Hunt's Amended Complaint clarifies the remedy he seeks.  Hunt seeks to

25  recover by quantum meruit, restitution, and disgorgement.  ECF No. 64 at ¶ 204.  That is, Hunt's

26  ---
[6] Hunt will address this issue in opposition to UFC's motion to dismiss.  In addition to being permitted to plead
27 inconsistent legal theories, Hunt has alleged that the conduct that gave rise to Defendants' unjust enrichment was not governed by the contract, because Hunt never contractually agreed to fight doping fighters, and *especially* never
28 agreed to have UFC, White and Lesnar all collude to hide Lesnar's doping from Hunt.  As such, UFC's wrongful conduct falls outside the scope of its contract with Hunt, and Hunt may plead a claim for unjust enrichment against it.

theory of recovery sounds in *quasi-contract, and is not limited to an implied-in-fact contract.* By seeking remedies in *quasi-contract,* Hunt need not show an entitlement to the benefit received by Defendants. The court in *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 (Nev. 1987), articulated the rule in the disjunctive, stating "[u]njust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Id.* at fn. 2 (underlining added). That is, the benefit may belong to plaintiff or merely be gained by defendants at the expense of plaintiff such that it is inequitable or unjust for defendants to retain the benefit. See *ibid.*

In an implied-in-fact contract, plaintiff may seek quantum meruit to recover "the reasonable value, usually market price, for his services." *Certified Fire*, *supra*, 283 P.3d at 257. Unjust enrichment, however, permits plaintiff to seek not only quantum meruit for the reasonable value of services, but also restitution to "**strip a wrongdoer of all profits gained** . . . ." *Ibid.* (emphasis added). Consistent with *Certified Fire*, Hunt's Amended Complaint requested that Defendants disgorge those ill-gotten profits. ECF NO. 64 at ¶¶ 204, 208. Hunt need not prove an entitlement to the benefits conferred on Defendants. *See Certified Fire*, *supra*, 283 P.3d at 258. Plaintiff is only required to demonstrate he conferred "**services beneficial to** or at the request of another" and that it "is unjust for him to retain [the benefit] without paying for it." *Id.* at 257-58 (emphasis added).

In *Certified Fire*, the plaintiff drafted plans for the defendant that did not conform to bid specifications, and as such were worthless to the defendant. The trial court found that the plaintiff had failed to confer "services beneficial to or at the request of" the defendant. Unlike the plaintiff in *Certified Fire*, Hunt's appearance at UFC 200 not only constitutes "services beneficial to" the Defendants, but they were provided "at the request" of the Defendants. Lesnar could not fight himself; he needed an opponent, in this case Hunt, to fight, and in so agreeing, Hunt conferred a substantial benefit on Lesnar (indeed, on all the Defendants). In addition to Hunt providing physical services by fighting in the bout, Defendants used Hunt's own name recognition (see ECF No. 64 at ¶ 114) to increase pay-per-view sales and bolster the prestige of the UFC 200 card. Thus, because Hunt provided a benefit to Defendants, and has alleged that it would be inequitable for

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
8039206.1

12

CASE NO.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   Defendants to retain the profits they received, Hunt has properly alleged a claim for disgorgement

2   based on unjust enrichment.

3          Lesnar selectively quotes *Thomas v. Wachovia Mortg., FSB* (D. Nev., July 25, 2011, No.

4   2:10-CV-01819-ECR) 2011 WL 3159169, at \*6, out of context for the proposition that there can

5   be no unjust enrichment *any time* there is a contract regarding the underlying interaction.  This is

6   not what the court in *Thomas* held, and is not the state of the law.  *See Certified Fire*, 282 P.3d at

7   256 (noting quantum meruit's "17th-century origins").   The court in *Thomas* relied on

8   *LeasePartners* as the authority for its holding.  The defendant in *LeasePartners* sought summary

9   judgment on plaintiff's unjust enrichment claim in a dispute over signs that the defendant received

10  but did not pay for.  *LeasePartners*, *supra*, 942 P.2d at 187.  The defendant argued that summary

11  judgment was improper, *inter alia*, because there was a contract governing the transaction.  The

12  Nevada Supreme Court reversed the grant of summary judgment, noting that the "district court's

13  conclusion that the Brooks Trust was not unjustly enriched as a matter of law was [] erroneous."

14  Specifically, although plaintiff and defendant each had contracts with an intermediary ("Danzig

15  Corp.") governing the transaction, "no written contract existed between LeasePartners and Brooks

16  Trust."  *Id.* at 187.  In other words, Nevada law requires *direct* contractual privity.  Without a

17  contract between *the plaintiff and the defendant*, the court could not even consider summary

18  judgment on that basis.

19         *LeasePartners* makes clear that any "written contract" used to argue against an unjust

20  enrichment claim must be a "written contract" between plaintiff and defendant directly.  Here,

21  although there was an agreement between Lesnar and UFC, and Hunt and UFC, respectively, there

22  was no agreement between Lesnar and Hunt.  The court in *LeasePartners* rejected the same

23  argument Lesnar makes here: Lesnar cannot use Hunt's contract with UFC as a means to defeat

24  Hunt's unjust enrichment claim against him.

25         For the foregoing reasons, Hunt has amended his complaint to cure the lone defect as to

26  defendant Lesnar.  Hunt's complaint alleges that he provided services that were beneficial to Lesnar

27  in circumstances under which it would be inequitable for the Defendants to retain their ill-gotten

28  gains.  As such, Hunt has properly alleged a claim for disgorgement based on unjust enrichment.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

13

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# VI.

## BATTERY

## (CLAIM NO. 8)

Hunt and Lesnar agree on the essential elements of a battery: (1) intentional and offensive touching, and (2) a lack of consent.  ECF No. 68 at 21:11-12 (citing *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (2016) (hereafter "*Humboldt*"); see also *Gonzalez v. Las Vegas Metro. Police Dep't*, No. 2:12-CV-01247-LDG, 2014 WL 1091012, at *14 (D. Nev. Mar. 18, 2014) (stating "[t]o establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur.")).  As such, this claim is not a "quasi-contractual theory" as Lesnar contends.  ECF No. 68 at ¶ 2.  This claim has distinct elements.  The Court is tasked with determining whether Hunt has pleaded these elements.  He has.  *Humboldt* is especially apt, as it considers "whether the scope of consent was exceeded" when a doctor failed to adhere to certain FDA requirements in a medical procedure.  *Id.* at 172.  In *Humboldt,* the court found the complaint lacking only based on a statutory requirement to provide a medical expert affidavit, which plaintiff failed to do.  *Id.*  Here, there is no such statutory requirement.  Hunt has pleaded every element of battery, including lack of consent.  For that reason, Lesnar's motion raises a series of novel or inapplicable defenses at the pleading stage: (1) contractual assumption of the risk; (2) applied assumption of the risk; and (3) consent.[7]  Each is meritless.

### A.  Contractual Assumption of the Risk

Lesnar's contractual assumption of the risk argument fails for several reasons.  First, Lesnar asks the Court to go beyond the pleadings to a bout agreement not contained or even referenced in Hunt's complaint.  Notably, the bout agreement Lesnar seeks to introduce is the Nevada State Athletic Commission's Official Bout Agreement ("NSAC Bout Agreement").  This is *not* referenced in any manner in Hunt's complaint, which refers to and incorporates only the UFC 200 Bout agreement.  To clarify any potential confusion both documents were titled "Exhibit B." Exhibit B to Hunt's complaint is the UFC 200 Bout Agreement; the Exhibit B referenced in

---

[7] Lesnar appears to assert one more "defense," wherein he contends Lesnar's doping is not a defense to consent.  That is, Lesnar suggest Hunt must prove a defense to Lesnar's defense.  This suggestion is erroneous.  Hunt need only plead a lack of consent, and he has expressly done so.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

14

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    Lesnar's opposition is a different document, which was neither incorporated, referenced or relied

2    upon in Hunt's complaint.   Therefore, the Court should decline to consider the NSAC Bout

3    Agreement.

4        Second, Lesnar is not a party to the NSAC Bout Agreement he references.   Such an

5    agreement would be signed by the opponent, the promoter, and the manager – not Lesnar.

6    Therefore, even if the Court did consider this document, there is no contractual privity such that

7    Hunt would be precluded from complaining against Lesnar.   In fact, the terms of NSAC Bout

8    Agreement itself undermine Lesnar's contention:

9        The Contestant, . . . agrees to enter into this agreement and hereby waives any
        claim that the Contestant or Contestant's heirs may have against the
10        Commission/and/or the State of Nevada . . .

11    The plain language of the NSAC Bout Agreement unambiguously inure to the benefit of only two

12    entities, the Athletic Commission and the State of Nevada.   Therefore, even if the Court does

13    consider the NSAC Bout Agreement, and even if the Court found Lesnar had some novel third

14    party standing to invoke the NSAC Bout Agreement, the text of the agreement itself provides no

15    contractual protections to Lesnar (or UFC).

16        Third, Lesnar provides no authority, and Hunt's counsel is aware of none, applying express

17    assumption of the risk to a battery case.   Lesnar cites only to *Auckenthaler v. Grundmeyer*, 877

18    P.2d 1039, 1039 (1994), which is a case applying implied assumption of the risk in a *negligence*

19    action.   Indeed, in a battery context, express assumption of the risk is nonsensical because the very

20    elements of battery require a lack of consent.   If plaintiff consented, there would be no need for an

21    affirmative defense because plaintiff simply cannot establish a prima facie case.   This is why

22    assumption of the risk embraces negligence action but not intentional torts.

23        An agreement dealing with the express assumption of risk is governed by the law
        of contracts and will generally be enforced unless it: (1) is barred by an applicable
24        statue, (2) extends protection to willful or gross negligence, or (3) otherwise
        offends public policy. 57B Am.Jur.2d Negligence § 766 (2004).
25

26    *Kerns v. Hoppe*, 381 P.3d 630, 2012 WL 991651 at *3 (2012).   To form the predicate for

27    express assumption of the risk, a document must indicate that the plaintiff agrees to assume the risk

28

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
8039206.1

15

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   of injury caused by the other party's negligence.  *Id.* (citing *Mizushima v. Sunset Ranch, Inc.* 737

2   P.2d 1158, 1161 (1987), *overruled on other grounds*).  Here, Lesnar asks to be shielded from his

3   willful conduct of the intentional tort of battery, whereas Nevada law is clear that express

4   assumption of the risk does not apply to intentional torts.  Likewise, availing himself of an express

5   assumption of the risk defense to permit him to conceal his use of banned substances in committing

6   a battery would offend public policy.  Other district courts within the Ninth Circuit have been even

7   more explicit than *Kerns*.  For example, *Barclay v. Med. Show Land Trust*, No. CV-12-1060-PHX-

8   SMM, 2014 WL 644558, at *7 (D. Ariz. Feb. 19, 2014), noted "[O]n the basis ... of public policy

9   to discourage aggravated wrongs, [express assumptions of risk] generally are not construed to cover

10  ... any conduct which constitutes an intentional tort."  *Id.* (citing Prosser and Keeton on the Law of

11  Torts § 68 at 484 (5th ed. 1984) (bracketing and ellipses in original).)

12  **B.  Implied Assumption of the Risk**

13          In support of his implied assumption of the risk argument, Lesnar cites two cases, both are

14  negligence cases having nothing to do with a battery claim.  Lesnar cites *Turner v. Mandalay Sports*

15  *Entm't, LLC*, 180 P.3d 1172, 1177 (2008), for the unremarkable proposition that existence of a legal

16  duty is a question of law for the Court to decide.  It is.  Irrespective of any legal duty, the question

17  is whether Lesnar must refrain from committing intentional torts. Of course, even professional

18  fighters must refrain from committing intentional torts.  Hunt has pleaded every element of the

19  intentional tort of battery.

20          *Turner,* like *Auckenthaler*, is a negligence case.  *Turner*, 180 P.3d 1172 (2008).  There was

21  no battery claim alleged.  In *Turner*, a spectator was struck in the face by a foul ball at a baseball

22  game.  *Id.* at 215.  The court determined defendant had a limited duty to protect spectators in high

23  risk areas of the stadium.  *Id.* at 218-19.  Lesnar's hollow proclamation that "[h]ere, as in *Turner*,

24  the limited duty rule bars Mark Hunt's civil battery claim against Brock Lesnar, as a matter of

25  law[,]" is not supported by *Turner* or any other case.  Hunt does not contend Lesnar had an

26  affirmative duty to protect him against otherwise negligent acts; Hunt contends Lesnar should not

27  commit battery.  A lack of an affirmative legal duty is not a license to commit intentional torts.

28          Similarly, Lesnar's citation to *Burnett v. Tufguy Prods., Inc.*, No. 2:08-CV-01335-GMN,

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

16

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   2010 WL 4282116, at *3 (D. Nev. Oct. 20, 2010) does not support his position.  *Burnett* was another

2   negligence action arising from a spinal injury to a competitor on UFC's "Ultimate Fighter 4"

3   television show.  *Id.* at 1.  On a motion for summary judgment, in consideration of the question of

4   a legal duty, the court opined:

5           Perhaps a referee who was an agent of one or more Defendants failed to stop a
        fight after Plaintiff had submitted under the rules or been knocked unconscious,
6        but this appears unlikely, because <u>Plaintiff has sued no opponent for battery for
        exceeding the scope of his consent</u>.
7

8   *Id.* at 3.  Such is the case here.  Hunt has unambiguously alleged a battery and that he did not consent

9   to fight Lesnar in his doping, cheating state.  Like express assumption of the risk, the implied

10  assumption of the risk argument is merely a misguided consent argument, which is addressed

11  below.

12  **C.  Consent**

13          Consent is a question of fact.  See *Douglas v. Stalmach*, No. 2:13-CV-02326-RFB-PAL,

14  2016 WL 4479538, at *12 (D. Nev. Aug. 24, 2016) (denying motion for summary judgment where

15  reasonable jury could find that no consent was given).  As such, it is not appropriate for summary

16  judgment and especially improper at the motion to dismiss stage.  See *Wright v. Starr*, 42 Nev. 441,

17  179 P. 877, 877 (1919) (assessing sufficiency of evidence after verdict, where jury concluded

18  woman did not consent to a kiss, which was a battery).  Even if this Court were to engage in this

19  apparent factual dispute, the weight of evidence supports Hunt's position.  Prior to Hunt amending

20  his complaint, Defendants, and especially Lesnar, placed great weight on the erroneous belief that

21  Hunt could not plead reliance because of his public pre-fight statements.  As the Court correctly

22  noted, Defendants' argument was merely a factual dispute and the Court accepts Hunt's allegations

23  as true.  See ECF No. 65 at 44:16-18.  Even so, the amended complaint pleads *and proves* by a

24  series of messages with White, Hunt's reliance and lack of consent to fight a doping opponent.

25  Lesnar exceeded the scope of Hunt's consent, whether "express" or "implied" consent, by taking

26  banned substances.  Hunt consented only to hand-to-hand combat within the confines of the well-

27  established rules.  Hunt did not consent to fight an opponent on steroids, with packed gloves,

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

17

CASE NO.: 2:17-cv-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    wielding a baseball bat or any other violation exceeding the scope of fair hand-to-hand combat.

2    Lesnar's conduct was an egregious violation of the sport's written and unwritten rules,

3        Lesnar offers a brief detour into the issue of capacity, which was not pleaded in Hunt's

4    complaint.  Hunt does not claim he was incapable of giving consent; he has unambiguously alleged

5    he gave no consent at all.  ECF No. 64 at ¶ 211.  As such, whether Hunt "appreciated the nature or

6    extent of the consequences of entering into unarmed combat at UFC 200" is irrelevant, because

7    capacity is not disputed.   ECF 64 at 21:13-14.

8        Lesnar also seemingly attempts to create the additional elements of causation and damages.

9    ECF No. 68 at ¶ 22:14-15.  Causation and damages are not elements of battery.  However, even if

10   they were, Hunt has alleged more than 100 physical strikes suffered in the bout.  As indicated

11   above, doping fighters move faster, hit harder, and are able to accept and recover from strikes more

12   readily than clean fighters.  Unlike RICO, no business injury is required.

13       Finally, even if the Court assesses the factual issue of consent notwithstanding the foregoing

14   discussion, Defendants' conduct exceeded the scope of Hunt's consent.  *Burnett* demonstrates that

15   a claim for battery exists where a fighter exceeds the scope of his opponent's consent; such is the

16   case here.  Further, even if the Court determines that Hunt's consented and the conduct was within

17   the scope of consent, such consent is categorically vitiated by their fraud.  *United States v. Remolif*,

18   227 F. Supp. 420, 425 (D. Nev. 1964) (finding consent obtained by fraud, misrepresentation or

19   trickery vitiated consent, which was an issue to be presented to a jury).  Hunt has adequately pleaded

20   all elements of battery, including the absence of consent at paragraph 211.

21                                            **VII.**

22                    **CIVIL CONSPIRACY TO COMMIT FRAUD AND BATTERY**

23                                       **(CLAIM NO. 10)**

24       "An actionable civil conspiracy is a combination of two or more persons who, by some

25   concerted action, intend to accomplish some unlawful objective for the purpose of harming another

26   which results in damage." *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1532 (D. Nev. 1989).

27   For the reasons stated above, Hunt has adequately pleaded his battery and fraud claims.  However,

28   even if the Court finds those claims deficient in any manner, it has no effect on the conspiracy

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

18

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   claim.  A conspiracy, by its very elements has no requirement that the substantive offense be

2   completed (or even alleged).   For example, that defendants failed to complete a target offense is

3   no defense to conspiring to commit that offense.  *Hidalgo v. State*, 381 P.3d 620 (2012) (finding

4   conspiracy to commit battery but not a battery).

5          Lesnar confuses the elements of a civil conspiracy in reliance on *Jordan v. State ex rel.*

6   *Dep't of Motor Vehicles & Pub. Safety*, 74, 110 P.3d 30, 51 (2005).  *Jordan* identifies the elements

7   of a civil conspiracy as: (1) a conspiracy (an agreement to do something illegal, e.g. commit a

8   battery), (2) an overt act in furtherance of the conspiracy, and (3) damages.  *Id* at 74.  This is in

9   contrast to the aiding and abetting claims, where the required elements include the substantive

10  offense.  See aiding and abetting discussion, *supra,* Part IV.

11         Here, again, there is no such requirement that the target offense be completed such that the

12  failure of the battery or fraud claim would preclude the conspiracy claim.  Hunt's allegations

13  identify a detailed RICO scheme and the complaint is replete with overt acts in furtherance of that

14  scheme (such as wire fraud), and both business, property, personal, financial and physical damage.

15  While the battery and fraud claims support the conspiracy claim to the extent it incorporates

16  previous paragraphs by reference, the conspiracy claim is not reliant upon the outcome of any other

17  claim.  The Court should once again decline Lesnar's invitation to create additional, novel elements

18  to well-established common law claims.

19  ## VIII.

20  ## IF DEFENDANTS' MOTION IS GRANTED IN ANY MANNER, HUNT SHOULD BE GIVEN LEAVE TO AMEND, AND TO CONDUCT DISCOVERY

21

22         "Generally, [Federal Rule of Civil Procedure] Rule 15 advises the court that leave shall be

23  freely given when justice so requires. This policy is 'to be applied with extreme liberality.'"

24  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Owens v.*

25  *Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of*

26  *Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990)).  In *Foman v. Davis*, 371 U.S. 178

27  (1962), the Supreme Court offered the following factors a district court should consider in deciding

28  whether to grant leave to amend:

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

19

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given.

*Eminence Capital*, 316 F.3d at 1052. "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* Here, there is no bad faith conduct and no repeated failure to cure as this is the first amended complaint. Further, as to the most important factor, Lesnar has not claimed any prejudice, and would suffer no prejudice by amendment. While Hunt contends this first amended complaint cured any defect in the original complaint, Hunt reserves the right to explain the viability of amendment at the hearing on the motion should the Court be inclined to grant Defendants' motion in any respect.

If the Court grants Lesnar's motion as to any claim, Hunt should be permitted to conduct discovery in furtherance of a subsequent amended complaint. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984). As set forth in Rae, "discovery is appropriate where there are factual issues raised by the motion [to dismiss]." *Id.* This is especially true where plaintiff can "point to . . . specific information obtainable through discovery that would [enable plaintiff] to state a federal cause of action." *Id.* These would include, for example, Lesnar's communications with White and other UFC executives regarding Lesnar's return to UFC 200, discovery to which Hunt does not yet have access. For the foregoing reasons, if the Court is inclined to grant Lesnar's motion as to any claim, Hunt requests the court to deny Lesnar's drastic prayer to deprive Hunt leave to amend.

## IX.

### CONCLUSION

The motion to dismiss is a procedural device to test the sufficiency of a plaintiff's allegations. The Court is tasked with determining whether the plaintiff has put defendants on notice by pleading facts supporting the elements of his claims – subject only to a plausibility standard. Hunt's original complaint omitted certain factual allegations for strategy, inadvertence or other

Higgs Fletcher & Mack LLP
Attorneys At Law
San Diego

112567-00001
8039206.1

20

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   considerations.  Hunt respectfully contends he has addressed and cured all issues raised by this

2   Court at the previous motion to dismiss hearing, and respectfully requests the Court to deny

3   Lesnar's motion in its entirety.

4

5       DATED:  June 30, 2017                          HIGGS FLETCHER & MACK LLP

6

7                                                      By: s:/CHRISTINA M. DENNING

8                                                          CHRISTINA M. DENNING, ESQ.
                                                           SCOTT J. INGOLD, ESQ.
                                                           JOSEPH A. GONNELLA, ESQ.
9                                                          Attorneys for Plaintiff
                                                           MARK HUNT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

112567-00001
8039206.1

21

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the undersigned hereby certifies that on this day, June 30, 2017, a copy of the foregoing document entitled **MARK HUNT'S OPPOSITION TO DEFENDANT BROCK LESNAR'S MOTION TO DISMISS MARK HUNT'S FIRST AMENDED COMPLAINT** was filed and served through the Court's electronic filing system (CM/ECF) upon all registered parties and their counsel.

/s/ Melodee Lutjens
Melodee Lutjens
An employee of Higgs Fletcher & Mack LLP

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

112567-00001
8039206.1

22

CASE NO.: 2:17-CV-00085-JAD-CWH
MARK HUNT'S OPPOSITION TO LESNAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT