CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222

*Attorneys for Defendants
Zuffa, LLC and Dana White*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual, | Case No. 2:17-cv-00085-JAD-CWH |
| Plaintiffs, | **DEFENDANTS ZUFFA, LLC'S AND DANA WHITE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive, | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Hunt's Opposition (ECF No. 88) is, in some ways, the legal equivalent of the movie "Groundhog Day" as it repeats many of the same arguments the Court has already deemed unpersuasive. This Reply marks the twelfth brief filed in connection with Defendants' respective Motions to Dismiss. One thing is now clear: Hunt's inability to allege a viable RICO claim is incurable. Despite adding a myriad of new allegations to the FAC, Hunt still cannot show injury to a business or property interest, concrete financial loss, or proximate cause—all of which are required to plead RICO standing. Nor do Hunt's new allegations sufficiently plead any viable state-law claims as they, too, are subject to dismissal for the independent reasons set forth below.

# ARGUMENT

## I. HUNT STILL LACKS STANDING TO PURSUE HIS RICO CLAIMS.

Hunt's FAC[1] fails to state a valid RICO claim for multiple reasons including, most notably, his inability to satisfy RICO's rigorous standing requirements. *See Gibson v. Credit Suisse AG*, 787 F. Supp. 2d 1123, 1132–33 (D. Idaho 2011) ("statutory standing under RICO 'is a more rigorous matter than standing under Article III.'")

### A. No Cognizable RICO Injury

Hunt once again relies heavily on *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) to support the notion that he has adequately plead the tangible injury to a business or property interest required for RICO standing. *See* Opp. at 3:7-4:18. His reliance is misplaced.

First, the Court has already observed that *Mendoza* is a pre-*Twombly* and *Iqbal* opinion that employed a more lenient standard at the motion to dismiss stage. *See* Hr'g Tr. at 17:20-18:7. That standard is now outdated. *See Walters v. McMahen*, 684 F.3d 435, 442 (4th Cir. 2012) ("As the decisions in *Iqbal* and *Twombly* have made clear, the standard employed in *Mendoza* is no longer applicable.").

Second, Hunt cannot establish RICO standing simply by parroting *Mendoza's* undeveloped statement regarding "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Mendoza*, 301 F.3d at 1168, n. 4; *see also Diaz v. Gates*, 420 F.3d 897, 899-900 (9th Cir. 2005) (en banc), *cert. denied* 546 U.S. 1131 (2006) (noting that *Mendoza's* discussion of this topic was "relegated to a footnote"). The plaintiffs in *Mendoza* were a class of day laborers who alleged their employers had depressed their wages by illegally hiring undocumented workers at below market wages. *Id.* at 1166. Hunt

---

[1] Capitalized terms and abbreviations used herein shall have the same meaning as set forth in Defendants' Motion to Dismiss (ECF No. 71).

tries to analogize himself to the day laborers by arguing that "UFC's wrongful doping scheme" creates a "surplus of fighters in the heavyweight division [that] depressed and continues to depress wages of Hunt." Opp. at 4:1-10. But Hunt is nothing like the day laborers in *Mendoza*.

Hunt is not a Zuffa employee. *See* ECF Nos. 1-7 ("App'x") and 2, Ex. A §§ 20.1-20.2. He is an independent contractor and professional MMA fighter who—according to the allegations in his FAC—had offers to join any number of competing organizations but instead negotiated a new Promotional Agreement with Zuffa in April 2016, agreed on compensation in the form of multiple six-figure purse amounts (not "wages"), and voluntarily executed the contract as he had done several times in the past after having the opportunity to consult with counsel. *See* FAC ¶¶ 29-30; *see also* App'x, Ex. A §§ 13.1(d)-(e); 20.1-20.2.

Moreover, entering promotional agreements with fighters, a few of whom may have later tested positive for a prohibited substance, is not remotely analogous to *Mendoza* where the initial act of knowingly hiring "substantial numbers of illegal immigrants" in violation of 8 U.S.C. § 1324 was itself the predicate RICO offense. *Mendoza*, 301 F.3d at 1166-68. Hunt's continuing attempt to squeeze within the distinguishable facts of *Mendoza* is yet another example of trying to fit "square pegs [into] round holes." Hr'g Tr. at 26:23-27:4; *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1094-95 (E.D. Cal. 2011) (echoing the broad proposition that "employment-related claims may be the basis for a RICO claim" is insufficient to establish standing as the question "is whether *this particular employment-related claim* alleges RICO injury.") (emphasis in original) (distinguishing *Mendoza*).

Third, even if Hunt had properly alleged impaired "business relations," he still has not shown the "concrete financial loss" required for RICO standing. *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). Zuffa established that Hunt's alleged past damages in the form of three "lost fights" due to a broken hand are not recoverable under RICO

Page 3 of 13

because they are the economic consequences of a personal injury. *See* Mot. 9:16-10:2. Similarly, Hunt cannot recover "decreased brand valuation" because his brand is owned by a separate company. *Id.* at 10:16-11:2. Hunt never bothers to address these defects. He instead tries to defend only one category of his claimed damages—cancelled appearance fees. Opp. at 3:2-06. Hunt, though, fails to address the salient point that this category of damages is speculative and premised on contingent future events. *See* Mot. at 10:3-15. As such, any injury is prospective and not recoverable under RICO. *Id.* And while it may be true at the pleading stage that courts will "presume that general allegations embrace those specific facts that are necessary to support the claim," *see* Opp. at 3:14-19 (quoting *Mendoza*, 301 F.3d at 1168), the Ninth Circuit, while acknowledging this principle, has subsequently instructed that "courts need not allow RICO plaintiffs leeway to continue on with their case in an attempt to prove an entirely remote causal link." *Canyon County*, 519 F.3d at 982, n.12 (dismissing RICO claims at Rule 12(b)(6) stage).[2]

**B.     No Proximate Cause**

Hunt again relies on *Mendoza* and another pre-*Twombly* opinion for the proposition that "disputed claims of causation and injury cannot be decided on a Rule 12(b)(6) motion." *See* Opp. at 6:11-17 (citing *Mendoza* and *Knevelboard v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000)). The United State Supreme Court, the Ninth Circuit, and this Court have, however, consistently dismissed RICO complaints at early stages of proceedings based on inadequate showings of proximate cause. *See, e.g., Hemi Group, LLC v. City of New York,* 559 U.S. 1

---

[2]  Hunt's Opposition also makes a conclusory reference to having identified concrete financial losses in the form of "lost title fight compensation" and "lost opportunity to acquire valuable rights." *See* Opp. at 3:8-11. Zuffa previously demonstrated why these claimed damages do not qualify as cognizable harm to a business or property interest. *See* ECF No. 38 at 4:17-6:19.

(2010); *Canyon County*, 519 F.3d 981-83; *Brown v. Bettinger*, 2015 WL 4162505 (D. Nev. July 8, 2015).

Zuffa has thoroughly addressed the lack of a direct causal link between the alleged RICO predicate acts and Hunt's alleged injuries. *See* ECF No. 11 at 13:17-16:2; ECF No. 38 at 7:1-9:9; ECF No. 71 at 11:3-13:9. Even if Hunt's claimed categories of damages—*i.e.*, cancelled appearance fees, decreased advertising revenue, decreased brand value, and declining book sales—were not defective for the reasons already set forth elsewhere, the bottom line is that each alleged form of injury is premised on the allegation that "Lesnar's doping and illegitimate victory in UFC 200 damaged Hunt's brand." *See* FAC ¶¶ 112-116. Hunt's allegations, in other words, continue to presuppose that (i) Hunt would have won the bout against Lesnar had the latter not been "doping," and (ii) had Hunt won the bout, he would not have lost any appearance fees, advertising revenue, brand value, or books sales. This is speculative in the extreme.[3]

Fighters can lose fights for all sorts of reasons unrelated to an opponent's doping, and a business or product built around a MMA fighter can lose customers or revenues for all sorts of reasons besides the fact that the fighter may have lost a particular bout in the course of a lengthy career. Here, Hunt's own allegations confirm that no fewer than two events separate Hunt's alleged injuries from Zuffa's and White's alleged predicate acts—Lesnar's "doping" and his "illegitimate victory." Because the general tendency in the proximate cause analysis is "not to go beyond the first step," *Hemi Group*, 559 U.S. at 10, Hunt cannot satisfy this prong of the RICO standing requirements.

---

[3] Again, "[p]roximate causation is not established in cases where the court would have to engage in speculative and complicated analysis to determine what amount of damages, if any, are attributable to the underlying [loss] versus the RICO predicate acts." *Brown*, 2015 WL 4162505, at *4 (dismissing RICO complaint where "Defendant's failure to pay Plaintiff could have resulted from numerous factors other than Defendant's alleged wire fraud.") (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)).

### C.  No Predicate Acts

Zuffa and White have previously shown that Hunt failed to properly allege the predicate acts of wire fraud, larceny, false pretenses, statutory fraud and battery. *See* Mot. at 13:10-16:2. Hunt does not address any of these arguments. He instead responds that the FAC properly alleges that White directed the enterprise. *See* Opp. at 7:9-8:2. While Zuffa and White obviously disagree that they constitute an "enterprise" for purposes of the RICO statutes, their prior arguments were directed to the fact that even with the additional allegations set forth in the FAC, Hunt has failed to plead any underlying predicate acts against either of them.

## II.  HUNT'S STATE LAW CLAIMS SHOULD BE DISMISSED AGAIN.

Even though Hunt has increased the number of state-law causes of action in the FAC, none state a claim upon which relief can be granted.

### A.  Fraud

Hunt mistakenly believes the dismissal of his previous fraud-based claims was attributable to mere "technical" defects, *see* Opp. at 8:15-21, but the reality is that the Court found his theories did not "make any sense." Hr'g Tr. at 43:13-24. His new fraud claim fares no better. The bulk of the representations comprising Hunt's fraud allegations are statements made by Hunt (not White or Zuffa) and, thus, do not satisfy the first element of a fraud claim, *i.e.*, a false statement made by the defendant. *See* Mot. at 4:19-6:9; 16:6-24. The other alleged representations either contradict the final terms of the parties' contracts and, thus, cannot be actionable in fraud and/or are unquantifiable statements of opinion. *Id*. at 4:19-6:9; 16:25-18:6.

Hunt's response to these problems is largely an exercise in avoidance. Regarding the first point, he simply argues that White's statements are imputed to Zuffa. Opp. at 9:2-9. Even if true, that does not remedy the problem that the bulk of the quoted statements comprising Hunt's fraud claim were not made by White *or* Zuffa. Hunt next argues that his fraud claim primarily

concerns UFC 200 and is "entirely distinct" from his contract claim. *Id.* at 9:10-13. Again, not the point. Hunt cannot premise his fraud claim on statements made during contract negotiations when those statements contradict the terms of the parties' final agreement. Lastly, Hunt's response to White's non-quantifiable opinions about the amount of drug-testing Lesnar was undergoing is to say that "White's use of profanity does not render his assertion unintelligible." Opp. at 9:20-21. Whether intelligible or not, these statements cannot form the basis of a fraud claim as they are nonactionable "expression[s] of opinion or prediction." *Goodman v. Platinum Condo. Dev.*, 2011 WL 3893915, at *10 (D. Nev. Sept. 2, 2011); *see also Safeco Ins. Co. v. Young*, 896 F.3d 555 (9th Cir. 1990) ("a prediction as to events to occur in the future is generally a statement of opinion only"). For all these reasons, Hunt's fraud claim fails under Rules 9(b) and 12(b)(6).

**B.     Breach of Contact**

Zuffa demonstrated that Hunt has failed to identify any cognizable damages flowing from Zuffa's purported breach of the 2016 Promotional Agreement and the UFC 200 Bout Agreement (*i.e.,* for allegedly not complying with NSAC regulations) as Hunt has been paid all contractual amounts owed thereunder and the parties continue to perform under the Promotional Agreement to this day. *See* Mot. at 18:12-19:21. Hunt responds by arguing that "[f]ailure to pay a contract sum is not the only way to breach a contractual performance obligation" and that he signed the Promotional Agreement "because of the prospects of improving his brand, and promotional and business opportunities by competing in the UFC against clean fighters." Opp. at 11:4-11. Setting aside the attenuated nature of Hunt's claimed damages, they are simply not recoverable under the plain terms of the 2016 Promotional Agreement.

"Damages for a breach of contract claim are limited to those specifically outlined in the contract, if any, and those expectation damages sufficient to put the non-breaching party in the

position it would have been in had the breach not occurred." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1249–50 (D. Nev. 2016). The 2016 Promotional Agreement expressly addresses the subject of damages as follows:



*See* App'x, Ex. A § 10.5 (emphasis added). Because Hunt has undisputedly been paid everything he is owed under the 2016 Promotional Agreement for UFC 200, he cannot properly allege any damages, and his breach of contract claim necessarily fails. *See Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. June 12, 2013) ("all elements of [breach of contract] cause of action must be properly plead.").

### C. Unjust Enrichment

While the Court permitted Hunt the opportunity to re-plead the inconsistent theories of unjust enrichment and breach of contract, the allegations in the FAC and the undisputed record in this action confirm that none of the parties are contesting the validity of the written agreements between Hunt and Zuffa. *See* FAC ¶¶ 178-79 (alleging validity of 2016 Promotional Agreement and UFC 200 Bout Agreement). Nor do the parties dispute that they continue to perform under the 2016 Promotional Agreement to this day. *See* ECF No. 73 ("RJN") at 6:1-8 and Exs. 10-11 (detailing Hunt's post-lawsuit bouts under the 2016 Promotional Agreement); Hr'g Tr. at 26:2-6; 27:18 (Hunt's counsel confirming that Hunt is not seeking to invalidate the contracts and that he "continue[s] to fight [there]under."). Where, as here, the validity of the express contract(s) is not in doubt, Hunt should be foreclosed from pursuing an unjust enrichment claim. *See Tsutumi v. Advanced Power Techs., Inc.*, 2013 WL 1953716, at *8 (D. Nev. May 10, 2013) (dismissing unjust enrichment claim where validity of express contract was not in doubt).

Hunt's newfound reliance on the concepts of quantum meruit, restitution, and disgorgement is both circular and futile. To begin, "a claim for quantum meruit [like unjust enrichment] is not actionable when the claim is based on an express contract." *CASS, Inc. v. Prod. Pattern & Foundry Co.*, 2014 WL 3870247, at *5 (D. Nev. Aug. 7, 2014) (dismissing quantum meruit claim). Quantum meruit can be pled in two distinct contexts: contract and restitution. *See Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012). In contract, quantum meruit acts as a gap-filler to supply the absent term of an implied-in-fact contract when "the parties intended to contract and promises were exchanged" but the agreement remained incomplete. *Id.* Hunt does not plead this form of quantum meruit.

"Quantum meruit's other role is in providing restitution for unjust enrichment." *Id.* Under this quantum meruit theory, the plaintiff still "must establish each element of unjust enrichment." *Id.* at 257. As one of Hunt's own cases explains, "unjust enrichment is the unjust retention of a benefit to the loss ***of another***, or the retention of money or property ***of another*** against the fundamental principles of justice or equity and good conscience." *See* Opp. at 11:27-12:2) (citing *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)) (emphasis added). This, of course, brings us full circle as the Court previously dismissed Hunt's unjust enrichment claim because he failed to make the above showing: "Hunt has not pled any facts from which [the Court] can infer that any of these defendants has retained money or other benefits rightly belonging to Hunt [*i.e.*, "another"]." Hr'g Tr. at 47:14-17.

To escape the Court's earlier findings, Hunt now alleges he provided services beyond the 2016 Promotional Agreement and UFC 200 Bout Agreement by fighting an opponent who took banned substances. *See* FAC ¶¶ 107-200. This theory, however, is utterly implausible as Hunt repeatedly alleges that if "the doping scheme had not been concealed, [he] would have refused the fight altogether." *Id.* ¶¶ 23; 117. Accepting this allegation as true for purposes of this

Motion, that means Hunt was wholly unaware he was fighting a doping opponent at the time he purportedly provided his "extra" services at UFC 200 since Lesnar's positive drug tests were not known and disclosed by USADA until well after the event. *Id.* ¶¶ 96-97; 200. Where a party seeks additional compensation for "extra work" allegedly performed beyond the scope of a written contract, "the operative question is whether an express contract governed ***the same general subject matter*** as the challenged work." *Archon Const. Co., Inc. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153408, --- N.E.3d ---, at * 7 (Ill. App. March 31, 2017) (emphasis added). If so, a "quantum meruit claim is barred as a matter of law." *Id.* That is the case here.

Hunt provided the exact services the parties contemplated under the 2016 Promotional Agreement and the UFC 200 Bout Agreement—he competed in a professional MMA event against Lesnar at UFC 200, tried to win, and was paid according to the terms of the parties' contracts. While Hunt may have learned after-the-fact that Lesnar tested positive for a prohibited substance, his retroactively-labeled "extra work" is indisputably encompassed by the general subject matter of the parties' contracts. Even where a party *consciously* performs additional services arguably beyond the literal terms of an express agreement, courts are loathe to allow plaintiffs recovery in quasi-contract:

> If a quasi-contract action could be brought every time a party under contract performs a service not precisely covered by the contract, then the rule preventing quasi-contract actions when a contract exists would have little meaning. Parties to a contract often perform services not expressly demanded by the contract. They do so to enhance their position under the contract and not because they expect a different remuneration for those services from what they would receive under the contract.

*Industrial Lift Truck Serv. Corp. v. Mitsubishi Inter. Corp.*, 432 N.E.2d 999, 1002 (Ill. Ct. App. 1982) (affirming dismissal of quasi-contract claims).

Finally, quasi-contract is not a means for shifting a risk one has assumed under contract. *Id.* If nothing else, Hunt was certainly aware of the possibility that an opponent could take

banned substances in violation of the ADP and/or applicable law as he alleges this happened to him twice before in December 2013 and March 2016.  *See* FAC ¶¶ 100-102.  Hunt nevertheless voluntarily signed a new Promotional Agreement in April 2016 and subsequently agreed to fight Lesnar pursuant to the UFC 200 Bout Agreement despite professed concerns about Lesnar's drug testing.  *Id.* ¶¶ 72; 78; 178-79.  "Now that a situation plaintiff knew could occur has occurred, plaintiff seeks to shift a risk it assumed in light of the contract to defendant."  *Industrial Lift*, 432 N.E.2d at 1002.  Equity, however, will not allow Hunt "to use quantum meruit 'as a means to circumvent realities of a contract [he] freely entered into.'"  *See State Farm Fire & Cas. Co. v. Gates*, 2016 WL 3570793, at *12–14 (D. Kan. July 1, 2016) (quoting *Industrial Lift*).  The unjust enrichment claim should be dismissed with prejudice.[4]

### D.      Civil Conspiracy and Aiding and Abetting

Claims for civil conspiracy and aiding and abetting fail if the underlying torts upon which they are premised—here, fraud and battery—fail.  *See* Mot. at 21:3-16.  Hunt's fraud claim should be dismissed for the reasons set forth in the Motion at 16:4-18:6 and above.  *See* Point II(A), *supra*.  Defendants have likewise explained why Hunt's battery claim is defective.  *See* Mot. at 14:8-16:2.  Hunt never addresses the principle that a battery claim fails as a matter of law where, as here, it is premised on conduct that occurs during a sporting event in which the

---

[4] Because this quasi-contractual claim is asserted against White in his capacity as the President and an owner of Zuffa, it should likewise be dismissed against him.  *Cf. Boucher v. Shaw*, 196 P.3d 959, 963 (Nev. 2008) ("Generally, a corporate officer is not considered the employer responsible for creating the contractual employment relationship and is not personally liable for a breach of that relationship."); *see also* NRS 86.371 and NRS 86.381 (members of limited liability company are not proper parties to suit against the LLC or liable for entity's debts or liabilities); *eBC, Inc. v. Map Techs., LLC*, 2011 WL 12847702, at *7-8 (S.D.N.Y. May 17, 2011) (dismissing quantum meruit claim against individual corporate officers where express agreement existed between plaintiff and corporate defendant); *Bouriez v. Carnegie Mellon Univ.*, 2005 WL 3006831, at *9-10 (W.D. Pa. Nov. 9, 2005) (granting summary judgment on unjust enrichment claim against company shareholder); *Fort Young (1986) Ltd. v. Watson-Jones*, 2009 WL 10667735, at *7-8 (S.D. Fla. Sept. 2, 2009) (unjust enrichment claim premised on corporate officers' "respective salaries, bonuses, and ownership interest" was insufficient).

plaintiff has voluntarily assumed the risk of participating. *See id.* (analyzing *Avila v. Citrus Community College Dist.,* 131 P.3d 383 (Cal. 2006)). This is true even where the underlying conduct violates the rules of the sport. *Id.* Hunt's silence is telling.

Straining to save his civil conspiracy claim, Hunt posits that "even if the underlying act is not actionable, the conspiracy may be." *See* Opp. at 13:27-28. Controlling Ninth Circuit and Nevada precedent hold precisely the opposite. *See, e.g., Philip v. BAC Home Loans Servicing*, LP 644 Fed. Appx. 710, 711 (9th Cir. 2016) ("The district court properly dismissed Philip's civil conspiracy claim after dismissing the underlying causes of action" as a "conspiracy action for damages must generally be based on a viable, independent cause of action.") (citing *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 (Nev. 1980)). Hunt's argument, moreover, is nonsensical insofar as it is based on the faulty premise that the underlying tort or "target offense" need not "be completed." *See* Opp. at 13:18-20. Damage is an essential element of a civil conspiracy claim. *See Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989). It defies law and logic that one can suffer damages caused by a viable civil conspiracy where the underlying tort upon which the conspiracy is premised was never "completed." *See Beck v. Prupis*, 529 U.S. 494, 501 (2000) ("a plaintiff [can] bring suit for civil conspiracy only if he had been injured by an act that was itself tortious.").

## CONCLUSION

Based on the foregoing, Defendants Zuffa and White respectfully submit that Hunt's First Amended Complaint should be dismissed with prejudice.

DATED: July 27, 2017.                    CAMPBELL & WILLIAMS

                                          By   /s/ *J. Colby Williams*
                                            DONALD J. CAMPBELL, ESQ. (#1216)
                                            J. COLBY WILLIAMS, ESQ. (#5549)

                                          *Attorneys for Defendants*
                                          *Zuffa, LLC and Dana White*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendants Zuffa, LLC's and Dana White's Reply in Support of Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** was served on the 27th day of July, 2017 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

                                                /s/ *J. Colby Williams*
                                                An employee of Campbell & Williams