CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@cwlawlv.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendants*
*Zuffa, LLC and Dana White*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HUNT, an individual, | ) Case No. 2:17-cv-00085-JAD-CWH |
| | ) |
| | ) |
| Plaintiff, | ) **DEFENDANTS ZUFFA, LLC'S AND** |
| | ) **DANA WHITE'S MOTION TO** |
| vs. | ) **DISMISS PLAINTIFF'S** |
| | ) **SUPPLEMENTAL COMPLAINT** |
| ZUFFA, LLC d/b/a ULTIMATE FIGHTING | ) **PURSUANT TO FED. R. CIV. P.** |
| CHAMPIONSHIP, a Nevada limited liability | ) **12(b)(6)** |
| Company; BROCK LESNAR, an individual; | ) |
| and DANA WHITE, an individual; and DOES | ) |
| 1-50, inclusive, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Defendants Zuffa, LLC ("Zuffa") and Dana White ("White"), pursuant to the Court's Order

dated February 21, 2018 (ECF No. 110), hereby move to dismiss the Supplemental Complaint

(ECF No. 109) filed by Plaintiff Mark Hunt ("Hunt") on January 12, 2018.

1

**TABLE OF CONTENTS**

2

3

**Page**

4

TABLE OF AUTHORITIES ............................................................................................iv

INTRODUCTION ...........................................................................................................1

SUMMARY OF NEW ALLEGATIONS ........................................................................3

    A.    New Fraud Allegations ....................................................................3

        1.    Promotional Agreement Negotiations ...........................................4

        2.    Statements Related to UFC 200 ....................................................5

    B.    New Damages Allegations ..............................................................6

        1.    Alleged Past Lost Income ..............................................................6

        2.    Alleged Losses Related to UFC 200 .............................................7

    C.    New Allegations Related to Removal from UFC Fight Night 121 .......7

LEGAL STANDARD .....................................................................................................9

ARGUMENT ..................................................................................................................9

I.    HUNT'S SUPPLEMENTAL RICO CLAIMS REMAIN FATALLY
    DEFECTIVE.............................................................................................9

    A.    Hunt Lacks RICO Standing Because He Again Failed To Allege Any
        Concrete Injury To A Cognizable Business or Property Interest .........10

    B.    The Supplemental Complaint Still Fails To Satisfy RICO's Strict Proximate
        Cause Requirement ......................................................................13

    C.    The Supplemental Complaint Fails to Plead A Viable Predicate Act Against
        Zuffa or White ............................................................................15

II.    HUNT'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW ...............18

    A.    Hunt's Common Law Fraud Claim (Third Cause Of Action) Fails to
        State A Cause Of Action ...............................................................18

    B.    Hunt's Breach Of Contract And Unjust enrichment Claims Should Be
        Dismissed Again ..........................................................................21

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        1.      Breach of Contract (Fifth Cause of Action) ...............................................21

        2.      Unjust Enrichment (Seventh Cause of Action) ........................................22

  C.    Hunt's Aiding And Abetting And Conspiracy Claims (Fourth, Ninth And Tenth Causes Of Action) ...................................................................................23

CONCLUSION .................................................................................................................24

CERTIFICATE OF SERVICE ........................................................................................25

INDEX OF EXHIBITS ....................................................................................................26

iii

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Allman v. Philip Morris, Inc.*,
865 F. Supp. 665 (S.D. Cal. 1994) .................................................................11

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451, 461 (2006) .................................................................... 13, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 9

*Avila v. Citrus Community College Dist.*
131 P.3d 383 (Cal. 2006) .................................................................. 16-17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................. 9

*Bernard v. Rockhill Dev. Co.*,
734 P.2d 1238 (Nev. 1987) ..........................................................................21

*Bryant v. Mattel, Inc.*,
2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ..............................................13

*Bulbman, Inc. v. Nevada Bell*,
825 P.2d 588 (Nev. 1992) .................................................... 18, 19, 20

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ...................................................... 10, 13, 14

*Caviness v. Horizon Community Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010) .......................................................................... 9

*Cheatham v. ADT Corporation*,
161 F. Supp. 3d 815 (D. Ariz. 2016) ...........................................................20

*Collins v. Burns*,
741 P.2d 819 (Nev. 1987) ...........................................................................20

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ......................................................................20

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005), cer*t. denied*, 546 U.S. 1131 (2006) .............. 10

*Federal Reserve Bank of San Francisco v. HK Systems*,
1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ...............................................11

iv

*Graham v. City of North Las Vegas,*
2015 WL 13237298 (D. Nev. Nov. 20, 2015) .................................................................23-24

*Hacker v. Hacker,*
2016 WL 4254108 (E.D. Cal. Aug. 12, 2016) ...................................................................12

*Hale v. Burkhardt,*
764 P.2d 866 (Nev. 1988) .................................................................................................16

*Hemi Group, LLC v. City of New York,*
559 U.S. 1 (2010) ..............................................................................................................13

*Homes v. Securities Investor Protection Corp.,*
503 U.S. 258 (1992) ..........................................................................................................13

*Industrial Lift Truck Serv. Corp. v. Mitsubishi Inter. Corp.,*
432 N.E.2d 999 (Ill. Ct. App. 1982) .................................................................................23

*Jaross v. Phillips,*
2011 WL 3471865 (D. Nev. Aug. 9, 2011) .......................................................................17

*Keel v. Schwarzenegger,*
2009 WL 1444644 (C.D. Cal. May 19, 2009) ...................................................................10

*LeasePartners Corp. v. Brooks Trust,*
942 P.2d 182 (Nev. 1997) .................................................................................................23

*Mainor v. Nault,*
101 P.3d 308 (Nev. 2004) ............................................................................................22, 23

*Manson v. Stacescu,*
11 F.3d 1127 (2d Cir. 1993) .............................................................................................12

*Martin v. Bank of America,*
2016 WL 2731670 (D. Nev. May 9, 2016) ........................................................................24

*Moonin v. Dep't of Pub. Safety Highway Patrol,*
960 F. Supp. 2d 1130, 1138 (D. Nev. 2013) .....................................................................10

*Oscar v. University Students Co-Op Ass'n,*
965 F.2d 780 (9th Cir. 1992), *cert. denied,* 506 U.S. 1020 (1992) ....................10, 11, 12

*Road & Highway Builders v. Northern Nev. Rebar, Inc.,*
284 P.3d 377 (Nev. 2012) .................................................................................................19

*Rote v. Silicon Valley Bank, Inc.,*
2016 WL 4565776 (D. Or. Sept. 1, 2016) .................................................................. 12, 14

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ..................................................................15

*Savage v. Council on American-Islamic Relations, Inc.*,
2008 WL 2951281 (N.D. Cal. July 25, 2008) ...........................................11

*Scheppegrell v. Hicks*,
2016 WL 3020884 (E.D. La. May 26, 2016) .............................................12

*Soffer v. Five Mile Capital Partners*, LLC,
2013 WL 638832 (D. Nev. Feb. 19, 2013) ...............................................19

*Sparling v. Hoffman Const. Co.*,
864 F.2d 635 (9th Cir. 1988) ...............................................................2, 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...................................................................2

*Steele v. Hospital Corp. of America*, 3
6 F.3d 69 (9th Cir. 1994) .........................................................................15

*Story-McPherson v. Bank of Am., N.A.*,
2012 WL 2000693 (D. Nev. June 5, 2012) ...............................................21

*Thomas v. Wachovia Mortgage, FSB*,
2011 WL 3159169 (D. Nev. July 25, 2011) ..............................................22

*Turner v. Mandalay Sports Entm't, LLC*,
180 P.3d 1172 (Nev. 2008) .....................................................................17

**Statutes and Rules**

Fed. R. Civ. P. 8(a)(2) ..............................................................................9

Fed. R. Civ. P. 9(b) ................................................................................18

Fed. R. Civ. P. 12(b)(6) .......................................................................9, 10

Nev. Rev. Stat. § 200.481(1)(a) ...............................................................16

Nev. Rev. Stat. §§ 205.2175-2707 ...........................................................15

Nev. Rev. Stat. § 205.377 .......................................................................15

Nev. Rev. Stat. § 205.380 .......................................................................15

Nev. Rev. Stat. 207.360(4), (9), (26), and (33) ........................................15

18 U.S.C. § 1961 ......................................................................................9

18 U.S.C. § 1962 ................................................................................................................9

18 U.S.C. § 1964 ................................................................................................................9

**INTRODUCTION**

When dismissing seven of the eight causes of action asserted in Hunt's original Complaint, the Court provided Hunt and his counsel with some "cautionary advice" regarding their "overenthusiastic use of RICO in this case:"

> So, in short, I think what I see emerging from these facts – these more than a hundred and fifty paragraphs of facts is the general theory that UFC enforced the Anti-Doping Policy inconsistently which was a breach of the implied covenant of good faith and fair dealing or a breach of contract. I think that any further tort theories or racketeering theories are going to be a bit of a stretch and will probably stretch those – or possibly stretch those theories too far.

Hearing Transcript dated May 22, 2017 at 40:6-8; 48:7-14 ("Hr'g Tr.") (ECF No. 65). Rather than heed the Court's advice after being granted leave to file his Supplemental Complaint ("Supp. Comp."), Hunt instead doubled-down on his "incredibly thin" RICO and tort theories. *Id.* at 48:5-6. And though he tried to bolster his *ten* causes of action by adding more than thirty new paragraphs of "factual allegations" and nearly twenty more pages to the Supplemental Complaint, the end result is the same—Hunt's repackaged theories continue to suffer from the same factual and legal defects that compelled their dismissal in the first place.

Conveniently omitting the undisputed fact that (as recently as February 10, 2018) he continues to fight under his Promotional Agreement with Zuffa, for which he is paid escalating six-figure purses, Hunt tries to overcome his clear lack of RICO standing by alleging a scatter shot of purported tangible financial losses that harmed his business and property interests. Regarding past financial harm, Hunt claims he was deprived of income from three fights he missed while recuperating from a broken hand suffered in his 2013 fight with Antonio Silva. But even if Hunt's allegations about "missed" fights were true, and they are not, such harm would constitute the economic consequence of a personal injury (*i.e.*, damages not recoverable under RICO).

Page 1 of 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Regarding harm that allegedly flowed from his no-contest in UFC 200, Hunt claims a variety of cancelled personal appearances, declining book sales and social media traffic, and a lack of licensing deals for the company that owns his brand (Juggernaut). But Hunt's cancelled appearances were contingent future events and, thus, the type of prospective harm that RICO disdains. Nor can Hunt recover under RICO for alleged derivative harm to the separate entity that owns his brand. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640 (9th Cir. 1988) (circuits are "unanimous in holding that there is no shareholder standing to assert RICO claims where the harm is derivative harm to the corporation."). Finally, all of Hunt's claimed damages, like the alleged lost opportunities asserted in his original Complaint, are speculative in the extreme and cannot satisfy RICO's proximate cause requirement that the alleged harm be "directly related" to the alleged injurious conduct. That Hunt makes certain of these allegations "on information and belief," *see* Supp. Comp. ¶ 112, only reinforces the speculative nature of any causal link.

Though he does not seek to invalidate the parties' contracts, Hunt next attempts to plead a common law fraud claim by alleging multiple e-mail communications between him and White. Hunt boasts that his allegations "provide exact quotations of the representations, sender and recipient and time stamp," Supp. Comp. ¶ 163, but he simultaneously overlooks that "a plaintiff . . . can plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001). That is exactly what Hunt has done here as the alleged representations either contradict the final terms of the parties' contracts and are not actionable in fraud, are statements made by Hunt (not White), and/or are statements for which there could be no reasonable reliance as a matter of law.

Hunt again asserts conflicting claims for breach of contract and unjust enrichment. While he now specifies that the alleged contractual breach was Zuffa's failure to comply with the rules of the Nevada State Athletic Commission ("NSAC"), Hunt nonetheless fails to show how he was damaged

by any breach since he was admittedly paid the full amount he was owed for UFC 200 and has continued to be paid the contractual amounts owed for bouts post-dating UFC 200.

Regarding unjust enrichment, Hunt blurs this equitable theory with that of quantum meruit by proffering that he provided services exceeding the scope of the parties' contracts and is, therefore, entitled to "the reasonable value of his services" in the form of Lesnar's purse and Zuffa's profits from UFC 200. The Court has already found that "there is no connection to a right that Hunt has" when it comes to these categories of claimed damages, *see* Hr'g Tr. at 47:14-25, and nothing in the Supplemental Complaint changes this finding. Indeed, the Supplemental Complaint should reaffirm the Court's skepticism of this claim as—incredibly—Hunt asks to be awarded these damages "*regardless of [his] entitlement thereto*." Supp. Comp. ¶ 208 (emphasis added).

Finally, Hunt also now alleges various aiding and abetting and conspiracy claims. Those, of course, are dependent on the underlying claims upon which they are premised (*i.e.*, fraud and battery). Where, as here, a party fails to state the underlying substantive claim, the derivative aiding and abetting and conspiracy claims likewise fail.

## SUMMARY OF NEW ALLEGATIONS

Because the core of the Supplemental Complaint is identical to Hunt's original Complaint, Defendants will not repeat the summary of allegations contained in their original Motion to Dismiss. *See* ECF No. 11 at 3:4 – 9:7. Defendants will instead summarize the new allegations in the Supplemental Complaint.

**A.    New Fraud Allegations**

Hunt has abandoned his independent claims for false pretenses and statutory fraud and replaced them with a claim for common law fraud. *See* Supp. Comp. ¶¶ 161-166. To overcome the Court's previous finding that his fraud theories "ma[de] no sense," Hr'g. Tr. at 43:13-24, Hunt now alleges

1
2     selective portions of various email exchanges between him and White.  *See* Supp. Comp. ¶ 163

(incorporating multiple other paragraphs).  We briefly recount them here.

3          **1.     Promotional Agreement Negotiations**

4          The Court will recall that Hunt and Zuffa are parties to that certain Promotional and Ancillary

5     Rights Agreement dated April 12, 2016 (the "Promotional Agreement").  *See* Supp. Comp. ¶ 178;

6     ECF No. 1-7 ("App'x"), Ex. A; ECF No. 2.[1]  In support of his fraud claim, Hunt relies on a smattering

7
8     of statements made during the parties' negotiations preceding the execution of the final Promotional

Agreement.  *See id*. ¶ 163 (incorporating ¶¶ 29-34).   Most of the statements alleged in the
9
10    Supplemental Complaint were Hunt's, not White's.  *See id.* ¶¶ 29(b), (c), and (e); 30; 34.  Of the two

11    alleged statements by White, neither had anything to do with doping fighters as both were simply

12    responses to requests that Hunt made during contract negotiations.  *See id.* ¶¶ 29(d); 30; App'x, Ex.

13    A.  While Hunt seems to allege he relied on the foregoing contract negotiations to his detriment, *see*

14    *id.* ¶ 31, he does not seek to invalidate the Promotional Agreement.[2]
15
16
17
18

19    _____

20    [1]  The Court previously took judicial notice of the parties' Promotional Agreement, and Zuffa asks that it do so again.  *See* Hr'g Tr. at 39:21-22; *see also* Request for Judicial Notice ("RJN") at 3-4
21    (filed concurrently herewith).

22    [2]  The disconnect between Hunt's allegations and his notions of what constitutes fraud is evident in Paragraphs 30 and 34 where he complains, respectively, about not being able to "seek[ ]
23    employment with other promoters" and having to seek Zuffa's permission to use "UFC footage"
24    on his personal webpage.  *See* Supp. Comp. ¶¶ 30; 34.  No one forced Hunt to sign a new Promotional Agreement in April 2016.  Having elected to do so, Hunt is necessarily bound by its
25    terms just like Zuffa.  Those terms include a restriction on competing for other fight promotions during the Term of the Promotional Agreement and a grant to Zuffa of exclusive ancillary rights
26    to all forms of intellectual property related to UFC events.  *See* App'x, Ex. A. §§ 2.1-2.4; 36. Compliance with agreed-upon contractual obligations is not tantamount to fraud.  *See* Point II(A),
27    *infra*.

28                              Page 4 of 26

### 2.    Statements Related to UFC 200

Hunt's fraud claim is additionally premised on numerous e-mail communications leading up to UFC 200.  *See* Supp. Comp. ¶ 163 (incorporating ¶¶ 57, 61-64, 72, 77-78, 92 and 98).  Many of those communications take the form of White advising Hunt to "be in shape for [UFC] 200," but to keep his potential involvement quiet and to refrain from doing premature interviews.  *See id*. at ¶¶ 57, 61-64.  This is perfectly consistent with Zuffa's exclusive contractual rights to promote Hunt's bouts, to exploit the ancillary intellectual property rights associated with the bouts, and Hunt's contractual obligations to cooperate and assist with the advertising, publicity and promotion of the bouts.  *See, e.g.*, App'x, Ex. A §§ 1, 2.1-2.4, and 3.3.[3]

The remaining statements alleged in the Supplemental Complaint are incomplete, cherry-picked e-mail exchanges between Hunt and White beginning on June 5, 2016—prior to Hunt signing the Bout Agreement for UFC 200—and continuing through June 9, 2016.  *See* Supp. Comp. ¶¶ 72, 77-78.  These statements primarily consist of Hunt asking various questions about Lesnar's drug testing, and White responding with non-quantifiable variations of "they [USADA] are all over him" and "USADA is testing the s--t outta him."  *Id.* ¶¶ 72, 78(b), (g) and (i).  The other two UFC 200-related statements that Hunt relies on to support his fraud claim are, once again, non-actionable statements by Hunt, not White.  *Id.* ¶¶ 92; 98.

Of the two, one is a request by Hunt to allow his cameramen to film around UFC 200, which he claims White and Zuffa refused.  *See* Supp. Comp. ¶ 92.  But even if true, this would be consistent

---

[3]  A copy of the parties' Bout Agreement for UFC 200 was previously submitted as part of Plaintiff's Appendix, *see* ECF No. 1-7, Ex. B; ECF No. 2, but the Court declined to take judicial notice of the same because Hunt submitted an unsigned copy.  *See* Hr'g Tr. at 39:24-25.  Zuffa has submitted an executed version of the Bout Agreement concurrently herewith, and would ask the Court to take judicial notice of this undisputed contract.  *See* Declaration of J. Colby Williams ("Williams Decl."), Ex. 1; RJN at 3-4.

with Zuffa's exclusive contractual right to control the media around its events.  *See* App'x, Ex. A §§ 1, 2.1-2.4, and 3.3.  The second statement post-dates UFC 200 and reflects a demand by Hunt for Lesnar's purse.  *See* Supp. Comp. ¶ 98.  Neither reflects a false misrepresentation of fact by the defendant as is required to allege a fraud claim.  *See* Point II(A), *infra*.

**B.    New Damages Allegations**

In an effort to allege the tangible financial loss to a business or property interest required for RICO standing, Hunt makes various allegations concerning purported past lost income as well as income allegedly lost after UFC 200.  We review both in turn.

**1.    Alleged Past Lost Income**

One of the events about which Hunt complains is his majority draw against Antonio Silva on December 7, 2013.  *See* Supp. Comp. ¶ 102.  Hunt alleges he suffered a broken hand during the bout, underwent surgery, and missed three fights for which he was deprived of contractual income.  *Id.* at ¶¶ 102(g)-(j).  The judicially noticeable facts demonstrate otherwise.  While Hunt may not have fought again for a period of approximately nine months, that does not mean he "was deprived of contractual income for [ ] three additional fights" under the parties' then existing promotional agreement.  To the contrary, Hunt and Zuffa entered into a new, superseding multi-fight deal on August 8, 2014, under which Hunt fought five more times before entering into the parties' current Promotional Agreement.  One such bout was a rematch against Antonio Silva on November 14, 2015.[4]

---

[4]    True and correct copies of the parties' fully-executed Promotional and Ancillary Rights Agreement dated August 8, 2014, their Letter of Agreement of the same date, and their five Bout Agreements for Hunt's fights under the 2014 Promotional Agreement are attached to the Williams Decl. as Exhibits 2-8.  The Court can take judicial notice of these documents as they are undisputed and incorporated by reference in the Supp. Comp.  *See* RJN at 4-5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    Alleged Losses Related to UFC 200

Hunt alleges he lost six vaguely-described personal appearance opportunities following UFC 200 and—"on information and belief"—attributes the lost opportunities to the outcome of that bout. *See* Supp. Comp. ¶ 112.  Hunt further alleges he lost advertising revenue due to decreased traffic on his website and social media pages.  *Id.* ¶ 113.  He attributes these alleged losses to the "wrongful delay" in announcing his bout with Lesnar as well as the outcome of the bout.  *Id.*  Next, Hunt alleges he is the Director of an entity called Juggernaut that owns "Apparel & Fight Gear by Mark Hunt," that he earns licensing and royalty fees through Juggernaut, and that Juggernaut has not earned any licensing and royalty fees after and as a result of UFC 200.  *Id.* ¶ 114.  Finally, Hunt alleges he is an author of a book titled "Born to Fight," and that he has suffered damages in the form of declining book sales ostensibly attributable to the result of UFC 200.  *Id.* ¶ 115.[5]

## C.    New Allegations Regarding Removal from UFC Fight Night 121.

Hunt also now alleges that he was "wrongfully removed from 'UFC Fight Night 121' under the pretext of 'medical concerns'" and that these new allegations "are applicable to each of [his] claims."  *See* Supp. Comp. ¶ 125(a)-(k).  As explained herein, even Hunt's skewed recitation of the events surrounding his removal from the aforementioned fight card does nothing to forestall dismissal.

On or about July 4, 2017, Hunt authored a column on the website www.playersvoice.com with the title "*If I die fighting, that's fine.*"[6]  Hunt made a variety of statements in his column about his

---

[5]   Hunt's book was published in 2015, more than six months prior to UFC 200.  *See* National Library of New Zealand Catalogue, a true and correct copy of which is attached to the Williams Decl. as Exhibit 9.  The Court can take judicial notice of this document as it is an undisputed public record and incorporated by reference in the Supplemental Complaint.  *See* RJN at 5.

[6]   A true and correct copy of the subject column is attached as Exhibit 12 to the accompanying to the Williams Decl.  *See also*, RJN at 7.

alleged health problems caused by fighting.  After initially acknowledging that he is one of the "highest-paid fighters in the world," Hunt went on to state that his "body is f----d," that he "d[oes]n't sleep well," that he is "starting to stutter and slur his words," and that "his memory is not that good anymore."  *See* Williams Decl. at Ex. 12.  At the time he authored his column, Hunt was scheduled to fight Marcin Tybura in the main event of UFC Fight Night 121 in Sydney, Australia on November 19, 2017.  *See* Supp. Comp. ¶ 125(a)-(b).  As detailed in the accompanying Request for Judicial Notice, Zuffa had put Hunt in two fights under the terms of his existing Promotional Agreement since the filing of Hunt's original Complaint in January 2017—once in March 2017 against Alistair Overeem, and again on June 10, 2017 against Derrick Lewis.  *See* ECF No. 73 (Request for Judicial Notice) at 6 and Exs. 10-11.  In other words, Zuffa continued to provide Hunt with fight opportunities under the parties' Promotional Agreement despite the fact that Hunt was suing the Company.

Zuffa previously explained its decision to remove Hunt from the November 19 fight card until he agreed to undergo additional medical testing, as well as the public response thereto.  *See* ECF No. 103 (Response to Motion for Leave to File Supplemental Complaint).[7]   In early December 2017, Hunt's manager announced that Hunt had undergone additional testing the Lou Ruvo Center for Brain Health, that he "tested well above average and that he's good to compete."[8]  Zuffa, thus, promptly rescheduled Hunt to fight Curtis Blaydes at UFC 221 in Perth, Australia on February 10, 2018.[9]  Hunt

---

[7]  *See also*, Dana White's Open Letter published in The Daily Telegraph on or about October 28, 2017 (a true and correct copy of which is attached to the Williams Decl. as Exhibit 13) and the column authored by Kevin Iole of Yahoo Sports titled "*Mark Hunt Shouldn't be Mad at UFC or Dana White*" dated October 11, 2017 (a true and correct copy of which is attached to the Williams Decl. as Exhibit 14); RJN at 7-8.

[8]  A true and correct copy of an article titled "*Manager: Mark Hunt Cleared to Fight, Eyes Fabricio Werdum Rematch at UFC 221*" dated December 5, 2017 is attached to the Williams Decl. as Exhibit 15.  *See also*, RJN at 7-8.

[9]  A true and correct copy of Hunt's Bout Agreement for UFC 221 is attached to the Williams Decl. as Exhibit 16.  *See also*, RJN at 6; 8.

accepted the fight, participated therein, and was paid his purse in accordance with the Promotional Agreement.[10]

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if taken as true, demonstrate "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (interpreting pleading standards required under Fed. R. Civ. P. 8(a)(2)). This means a plaintiff must allege facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Community Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). A complaint fails to plead a "plausible" claim and must be dismissed if the facts alleged are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.    HUNT'S SUPPLEMENTAL RICO CLAIMS REMAIN FATALLY DEFECTIVE

Despite the Court's admonitions during the May 22, 2017 hearing, Hunt has reasserted a RICO claim under "18 U.S.C. § 1961, et seq." as well as a conspiracy to commit RICO violations under 18 U.S.C. § 1962(d). *See* Supp. Comp. ¶¶ 126-152 (First Cause of Action). Substantive RICO violations are defined in 18 U.S.C. § 1962, which makes it illegal "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. 1962(c). "Any person injured in his business or property by reason of a violation of [Section 1962] may sue therefor[.]" 18 U.S.C. § 1964(c). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2)

---

[10]  *See* Williams Decl., Ex. 16; *see also* the Event Brief for UFC 221 issued by the Government of Western Australia (Combat Sports Commission), a true and correct copy of which is attached to the Williams Decl. as Exhibit 17; RJN at 8.

Page 9 of 26

that his harm was 'by reason' of the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v. Syngenta Seeds, Inc.,* 519 F.3d 969, 972 (9th Cir. 2008) (affirming Rule 12(b)(6) dismissal of RICO claim due to lack of standing); *Moonin v. Dep't of Pub. Safety Highway Patrol*, 960 F. Supp. 2d 1130, 1138 (D. Nev. 2013).

Hunt's supplemental allegations still fail to show a cognizable injury to a business or property interest, still fail to show proximate cause between the alleged injurious conduct and Hunt's alleged injuries, and still fail to allege the elements of a viable predicate act (*i.e.*, "racketeering activity") against Zuffa and White.

### A.   Hunt Lacks RICO Standing Because He Has Again Failed To Allege Any Concrete Injury To A Cognizable Business Or Property Interest.

"Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the Court to determine and may be raised on a motion to dismiss." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009) (citing *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992) (en banc), *cert. denied,* 506 U.S. 1020 (1992)).   The Court must "carefully consider the nature of the asserted harm" when determining whether a plaintiff has sufficiently alleged injury to his business or property. *Canyon County*, 519 F.3d at 975.   The injury complained of must have resulted in "concrete" or "tangible financial loss." *Id.*; *see also Oscar*, 965 F.2d at 785.   "Financial loss alone, however, is insufficient.   'Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.'" *Id.* (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1131 (2006)).

Hunt has conjured up a veritable smorgasbord of alleged injuries in the hopes that one might qualify as the requisite concrete financial loss necessary to state a RICO claim.   None do.   First, Hunt's claim that he was deprived of income from three fights missed while recuperating from a broken hand

suffered in his 2013 fight with Antonio Silva runs smack into the bedrock principle that "[p]ersonal

injuries are not compensable under RICO." *Oscar*, 965 F.2d at 785 (multiple citations omitted).  This

includes the economic consequences that flow from a personal injury.  *See Allman v. Philip Morris,*

*Inc.*, 865 F. Supp. 665, 668 (S.D. Cal. 1994) ("for the purposes of bringing an action under RICO the

courts have been clear that even the economic consequences of personal injuries are not compensable

under RICO.").  Thus, even if Hunt had lost contractual income for three missed fights because of his

broken hand, which is demonstrably false given the judicially noticeable facts, this is not a cognizable

injury for RICO purposes.[11]

    Underscoring the speculative nature of his next category of claimed damages, Hunt alleges "on

information and belief" that he lost out on several vaguely-described personal appearance

opportunities after UFC 200, which he attributes to his loss/no-contest in that bout.  *See* Supp. Comp.

¶ 112.  All of the alleged appearances were contingent future events with all but one being scheduled

to occur anywhere from 2 to 9 months after UFC 200.  *Id.*  The Supplemental Complaint is

---

[11]   Though Hunt claims his new allegations about being wrongfully removed from UFC Fight
Night 121 "are applicable to each of [his] claims," *see* Supp. Comp. ¶ 125, they are not premised
on his underlying RICO allegations that Zuffa engaged in a pattern and scheme to allow doping
fighters to compete against clean fighters.  They are, instead, premised on the entirely new theory
that Zuffa retaliated against him for having filed the instant lawsuit.  Even if that were true—and
the incontrovertible facts demonstrate otherwise as Zuffa has placed Hunt in three fights since he
sued the Company—Hunt's alleged $100,000 in damages attributable to training camp expenses
cannot support the necessary "injury to business or property" for a RICO claim because that
alleged loss happened years after UFC 200 and, thus, is the type of prospective harm in the future
that cannot be recovered under RICO.  These new allegations similarly lack any nexus to the other
requirements of a RICO claim, including a qualifying predicate act and proximate cause.  Such
nebulous allegations do not plead a RICO claim.  *See Savage v. Council on American-Islamic*
*Relations, Inc.,* 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (RICO claim insufficient
where plaintiff set forth a "redundant narrative of allegations and conclusions of law, but [made]
no attempt to allege what facts are material to his claims under the RICO statute, or what facts are
used to support what claims under particular subsections of RICO"); *Federal Reserve Bank of San*
*Francisco v. HK Systems,* 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (complaint
insufficient for failure to "identify exactly which acts are 'predicate acts' for RICO liability").

conspicuously devoid of any allegations to support the inference that any of these appearances were actually arranged prior to UFC 200. Regardless, all of the allegedly cancelled appearances are "the sort of speculative future injur[ies] which RICO disdains." *Oscar*, 965 F.2d at 787. Again, RICO injury "must be concrete, not prospective." *Hacker v. Hacker*, 2016 WL 4254108, at *5 (E.D. Cal. Aug. 12, 2016); *Scheppegrell v. Hicks*, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016) ("future injuries are speculative and not actual damages because they have not yet occurred").

Hunt further alleges that he has suffered concrete financial harm because the company that owns his "clothing brand," Juggernaut, has not received any licensing deals or royalties after UFC 200. *See* Supp. Comp. ¶¶ 114-15. These allegations are recycled from Hunt's Opposition to Defendants' first Motion to Dismiss, *see* ECF No. 19 at 3-4, and raise a different standing problem for Hunt as Juggernaut is not a party to this action. The Ninth Circuit has long held that shareholders or others similarly situated to a corporation may not recover in RICO for harm to the corporate entity absent unique harm to the individual. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640 (9th Cir. 1988) ("The wrong alleged is a fraud on the corporation. Because [plaintiffs] are the sole shareholders they cannot show an injury distinct from that to other shareholders[;]" affirming dismissal of RICO claims); *see also Rote v. Silicon Valley Bank, Inc.*, 2016 WL 4565776, at *6-7 (D. Or. Sept. 1, 2016) (same; dismissing RICO claims with prejudice under Rule 12(b)(6)). Any alleged harm to Hunt from lost t-shirt sales is derivative of alleged harm to the separate entity that owns his brand. Such losses, therefore, fail to state a cognizable injury under RICO.[12]

---

[12] *See Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993) ("[Plaintiff] would prefer to pursue a RICO action in the federal court. [Plaintiff], however, chose to operate his business as a corporation to gain certain advantages. He cannot now avoid the consequences of the corporate structure. One of those consequences is that he does not have standing in his capacity as a creditor, shareholder, or employee of a corporation to assert a RICO claim for injuries that are derivative of those sustained by that corporation.").

**B.      The Supplemental Complaint Still Fails To Satisfy RICO's Strict Proximate Cause Requirement.**

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Homes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).  This means there must be "some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect is insufficient."  *Id.* (internal citations and quotations omitted).  Mere foreseeability is not enough to establish proximate cause, *see Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *11 (C.D. Cal. Aug. 2, 2010), "the central question the court must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Hemi Group*, 559 U.S. at 17-18 (there must be a "direct causal connection between the predicate wrong and the harm.").

Relying on *Canyon County, supra*, this Court correctly determined that Hunt failed to plead facts in the original Complaint that would permit a finding of proximate cause.  *See* Hr'g Tr. at 41:1-13.  Alternatively describing Hunt's theories as "patently speculative" and "attenuated," the Court advised Hunt that "quite candidly . . . I don't know that you can get there at this point." *Id.*; *see also id.* at 17:18-18:7.  The Supplemental Complaint confirms that Hunt "can't get there" as his new allegations inject the same type of prohibited speculation, just more of it.

For example, Hunt alleges he would not have suffered a broken hand or a majority draw in his 2013 fight with Antonio Silva had the latter not tested positive for a prohibited substance.  *See* Supp. Comp. ¶ 102(g)(i).  He also alleges that he would have defeated Lesnar at UFC 200 had Lesnar not taken a prohibited substance, that his "loss" would not have been as "lopsided," or that he would have refused the fight altogether.  *Id.* ¶ 23.  Hunt similarly claims that had he known of Defendants' doping

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

scheme, he would have "declined the fight, negotiated a more lucrative agreement . . . or otherwise protected his interests." *Id*. ¶ 117.  There is, of course, no way to prove or disprove any of the foregoing allegations.  Indeed, they are just variations of the same conjecture the Court previously found lacking.  *See, e.g.*, Hr'g Tr. at 17:15-19 (Mr. Ingold:  "Even if Mr. Hunt would have fared better against a clean Lesnar, that would have helped his brand."  The Court: "How is all of what you just described not patently speculative?").[13]

The endemic speculation contained in the Supplemental Complaint likewise precludes Hunt from being able to show a direct relationship between his asserted injuries and the alleged injurious conduct.  There is simply no way to establish that Defendants' alleged failure to uniformly apply the ADP, the alleged concealment of therapeutic use exemptions, and/or the result of UFC 200 directly caused Hunt (or the separate entity, Juggernaut) to suffer cancelled personal appearance opportunities months into the future, declining sales of a book that had been on store shelves for more than 6 months, declining social media traffic, and a lack of future licensing deals or royalties.

As Her Honor aptly observed at the May 22 hearing, "there are so many factors, possibly intervening factors here."  Hr'g Tr. at 41:6-7.  Nothing in the Supplemental Complaint has cured this fatal problem.  *See Canyon County*, 519 F.3d at 983 ("The causal chain would be difficult to ascertain because there are numerous alternative causes that might be the actual source or sources of [plaintiff's] alleged harm.") (affirming Rule 12(b)(6) dismissal); *Rote*, 2016 WL 4565776, at *7 ("the loss in value suffered by [Plaintiff's] affiliated companies 'could have resulted from other factors other than

---

[13]   Though Hunt's allegations are not capable of being proven or disproven, the e-mail communications upon which Hunt premises his defective fraud claim actually undercut his self-serving narrative as they reflect that Hunt promptly and repeatedly questioned White about Lesnar's drug testing prior to UFC 200, that he knew Lesnar had been exempted from the four-month testing period under the Anti-Doping Policy ("ADP"), and that he proceeded to sign his Bout Agreement and compete against Lesnar anyway.  *See* Supp. Comp. ¶¶ 72; 77-78.

[Defendants'] alleged [RICO violations].  Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion' of the loss in value, if any, was caused by Defendants' alleged actions that allegedly harmed [Plaintiff].") (quoting *Anza*, 547 U.S. at 459).[14]

## C. The Supplemental Complaint Fails To Plead A Viable Predicate Act Against Zuffa Or White.

In addition to wire fraud under 18 U.S.C. § 1343**,** Hunt alleges four state law predicate acts to support his RICO claims: (a) taking property in circumstances not amounting to robbery (Nev. Rev. Stat. § 207.360(9)); (b) false pretenses (Nev. Rev. Stat. § 207.360(26)); (c) statutory fraud (Nev. Rev. Stat. § 207.360(33)); and (c) battery (Nev. Rev. Stat. § 207.360(4)).  *See* Supp. Comp. ¶¶ 154-157. Zuffa and White previously analyzed in their first Motion to Dismiss why these allegations failed to state a claim against them when presented as stand-alone counts.  *See* ECF No. 11 at 16:24 – 19:10; ECF No. 38 at 9:22 – 10:21.  They fair no better when recast as predicate acts.

***Larceny, Statutory Fraud, and False Pretenses***.  In short, these three predicate acts require the victim to have suffered a loss of money or other property which, for reasons set forth above, Hunt cannot show.  *See* Nev. Rev. Stat. §§ 205.2175 – 205.2707 (defining larceny); Nev. Rev. Stat. § 205.377 (defining statutory fraud); Nev. Rev. Stat. § 205.380 (defining false pretenses).  Additionally,

---

[14]   The lack of standing that compels dismissal of Hunt's federal RICO claim likewise requires dismissal of his state-law RICO claim (Supp. Comp. ¶¶ 153-160) (Second Cause of Action).  *See Steele v. Hospital Corp. of America*, 36 F.3d 69, 71 (9th Cir. 1994).  In *Steele*, the Ninth Circuit affirmed dismissal of Nevada state-law RICO claims given that (i) plaintiff had no standing to assert his federal RICO claims, and (ii) Nevada courts had interpreted Nevada's RICO statute consistently with the federal statute.  *See id*. ("The Nevada statute, like the federal statute, also limits standing to those 'injured in business and property by reason of any violation' of the state racketeering statute.").  Similarly, to the extent Hunt has asserted RICO-based conspiracy claims under both the federal and state statutes, those too should be dismissed as he has failed to allege a substantive RICO violation under either.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (plaintiffs "cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"); *see also* Point I(C), *infra*.

the fraud and false pretenses claims must be plead with particularity. *See Hale v. Burkhardt*, 764 P.2d 866, 870 (Nev. 1988). While Hunt has added new allegations reflecting communications between him and White, those allegations nevertheless fail to state a claim for any species of fraud. *See* Point II(A), *infra*.

     *Battery*. The predicate act of battery is necessarily directed at Lesnar as Hunt certainly cannot show that Zuffa or White committed a "willful and unlawful use of force or violence" upon him. *See* Nev. Rev. Stat. § 200.481(1)(a) (defining battery). Hunt has also added a new intentional tort claim for battery that is directed only at Lesnar. *See* Supp. Comp. ¶¶ 209-213. Because Hunt has, however, asserted claims against Zuffa and White for aiding and abetting and conspiring to commit battery, they plan to join in those portions of Lesnar's Motion to Dismiss (also due to be filed on March 23) that seek to dismiss the underlying battery claim.

     Defendants would further note that Hunt appears to have pleaded the battery claim as a substitute for his dismissed negligence claim. The Court dismissed the negligence claim with prejudice because Hunt had expressly assumed and consented to the risks inherent in the dangerous combat sport of MMA when he agreed to the parties' 2016 Promotional Agreement. *See* Hr'g Tr. at 46:3-13; *see also* ECF No. 11 at 22:20 – 24:4. Even where parties have not signed express contractual assumption of the risk and liability waiver provisions as Hunt has here, courts have consistently rejected attempts by participants in sporting or like events to pursue negligence and/or battery claims against fellow competitors and/or event organizers based on conduct that violates the rule of the game.

     In *Avila v. Citrus Community College Dist.*, for instance, a community college baseball player sued his college, the opposing team's college and others after he was intentionally struck in the head with a "beanball" by the opposing team's pitcher. 131 P.3d 383 (Cal. 2006). Even though the California Supreme Court acknowledged that intentionally throwing at a batter violates the rules of baseball and may subject the violator to internal sanctions prescribed by the sport, it determined that

the act was an inherent risk of baseball that should not be policed by tort law. *Id.* at 394. The *Avila*

court applied its reasoning both to negligence claims and a potential battery claim premised on the

same conduct:

> The dissent suggests primary assumption of the risk should not extend to an intentional tort such as battery and that [Plaintiff] should have been granted leave to amend to allege a proper battery claim. Amendment would have been futile. Absence of consent is an element of battery. One who enters into a sport, game or contest may be taken to consent to physical contacts consistent with the understood rules of the game. Thus, the boxer who steps into the ring consents to his opponent's jabs; the football player who steps onto the gridiron consents to his opponent's hard tackle; the hockey goalie who takes the ice consents to his opponent's slapshots; and, here, the baseball player who steps to the plate consents to the possibility the opposing pitcher may throw near or at him. The complaint establishes [Plaintiff] voluntarily participated in the baseball game; as such, his consent would bar any battery claim as a matter of law.

*Id.* at 395 (internal citations and quotations omitted); *cf. Jaross v. Phillips*, 2011 WL 3471865, at *8-

9 (D. Nev. Aug. 9, 2011) (predicting that under doctrine of primary implied assumption of risk

"Nevada likely would endorse a policy of encouraging individuals to be able to engage in social

dancing without fear of being sued for every bump, jostle or collision on the dance floor, unless they

are somehow increasing the risk beyond what would be expected in ordinary social dancing.")

(analyzing *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172 (Nev. 2008)).

    While there is zero dispute that an MMA fighter's consumption of prohibited substances

violates the rules of the sport, and is an act that Zuffa is absolutely intent on deterring and punishing

via the ADP and other measures, Hunt cannot credibly allege he was unaware of this potential risk at

the time he signed his current Promotional Agreement in April 2016. To the contrary, his entire

lawsuit is premised on the allegation that he had twice fought opponents who tested positive for

prohibited substances before he entered the Octagon against Lesnar at UFC 200.  There can be no battery claim under these circumstances.[15]

## II.    HUNT'S STATE LAW CLAIMS ALSO FAIL AS A MATTER OF LAW

### A.    Hunt's Common Law Fraud Claim (Third Cause Of Action) Fails To State A Cause Of Action.

While Hunt has tried to satisfy the requirement of pleading fraud with particularity under Fed. R. Civ. P. 9(b) by alleging numerous (albeit highly selective) e-mail communications between him and White, his strategy actually backfires as the statements alleged establish that Hunt cannot plead a viable fraud claim.  The elements of fraud are: (1) a false statement made by the defendant; (2) defendant's knowledge or belief that the representation is false; (3) defendant's intention to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; and (4) damages to plaintiff resulting from the reliance.  *See Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).  The alleged false statement must be one of fact; estimates, opinions, and commendatory sales talk are not actionable in fraud.  *Id.*

Hunt's first problem is that many of the alleged false statements upon which he relies to support his fraud claim were made by him, not White.  *See* Supp. Comp. ¶¶ 29(b), (c), and (e); 30; 34; 92; and 98.  As such, these statements cannot satisfy the first element of fraud—a false representation made *by the defendant*.  While Hunt alleges that his statements purportedly "express[ed] his reliance that Lesnar would not take banned substances," *see id.* ¶ 78, even if this were true, a plaintiff's reliance is a distinct element that must be based on a threshold false representation made by the defendant.

---

[15] Hunt's new allegations about being removed from the UFC Fight Night 121 event likewise have nothing to do with the elements of a battery claim or a claim for aiding and abetting a battery.  *See* Supp. Comp. ¶ 125.

Where a single element of the fraud claim is lacking, the claim fails. *See Bulbman*, 825 P.2d at 592. That is the case here.[16]

Hunt's next problem is that many of the e-mail exchanges he relies upon occurred in the context of the parties' negotiations leading to the 2016 Promotional Agreement. *See* Supp. Comp. ¶¶ 29-24. While Hunt may have wanted one million dollars per fight, pay-per-view profit sharing and/or the opportunity to compete in other combat sports promotions, the fact that he did not achieve those terms in the final version of the 2016 Promotional Agreement does not constitute fraud. Far from it, as Nevada "law precludes assertions of fraud when the alleged misrepresentation is contradicted by the parties' bargained for terms." *Road & Highway Builders v. Northern Nev. Rebar, Inc.,* 284 P.3d 377, 380-81 (Nev. 2012) (reversing judgment premised on fraudulent inducement claim where alleged misrepresentations directly contradicted terms of the parties' final contract); *Soffer v. Five Mile Capital Partners*, LLC, 2013 WL 638832, at *9 (D. Nev. Feb. 19, 2013) ("fraudulent inducement claim fails as a matter of law where it directly contradicts the terms of an express written contract."). This same principle disposes of Hunt's related complaints that Zuffa exercised its contractual rights to preclude Hunt's use of UFC intellectual property on his website and cameramen to film pre-bout events related to UFC 200. *See* Supp. Comp. ¶¶ 34; 92.

Hunt's final problem is that the few statements alleged in the Supplemental Complaint that were made by White in connection with UFC 200 are simply not actionable. White's statements to Hunt that he should "stay in shape" and keep his potential involvement in UFC 200 quiet until further notice, *see* Supp. Comp. ¶¶ 57, 61-64, are not misrepresentations of anything. Nor do they qualify

---

[16]   Nor do Hunt's new allegations about UFC Fight Night 121 cure these defects as they have nothing to do with the elements of a fraud claim, *i.e.*, knowing false statements of facts, intended to be relied upon by defendant, actual reliance, and damages. *See* Supp. Comp. ¶ 125. Because the new allegations do not support Hunt's fraud claim, they cannot support his aiding and abetting claim either. *See* Point II(C), *infra*.

1   as "wrongfully delaying" the announcement of the Hunt-Lesnar bout, whatever that means, as Zuffa

2   has the absolute contractual right to control the timing of events and the announcements related

3   thereto.  *See* App'x, Ex. A §§ 1, 2.1-2.4, and 3.3-3.4.

4         The other statements Hunt relies upon consist primarily of White telling Hunt that USADA is

5   "all over" Lesnar and is "testing the s—t outta him."  *See* Supp. Comp. ¶¶ 72, 78(b), (g) and (i).  But

6   these are non-quantifiable statements that are not amenable to verification or falsification as there is

7   no way to prove what being "all over" someone means from a testing standpoint or how much testing

8   qualifies as "testing the s—t" out of someone.  None of White's statements were a guarantee that

9   Lesnar would not test positive for a prohibited substance. The statements are simply White's

10  subjective opinions about the amount of drug testing that Lesnar would undergo by USADA.  They

11  are not actionable misrepresentations of fact sufficient to support a fraud claim.  *See Bulbman*, 825

12  P.2d at 592 ("estimates and opinions based on past experience with the system" or "representations

13  as to the reliability and performance of the system" are not actionable in fraud.).  The fraud claim

14  should be dismissed for all of these reasons.[17]

---

[17] "Whether a defendant's statement is puffery or a representation of fact is a question of law that may properly be decided on a motion to dismiss."  *Cheatham v. ADT Corporation*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)).  While perhaps not amenable to verification or falsification as to quantity, White's statements are certainly consistent with the undisputed fact that Lesnar was being drug tested by USADA in connection with UFC 200.  Even the allegations of the Supplemental Complaint acknowledge this fact. *See, e.g.,* Supp. Comp. ¶¶ 76, 89, 95.  Defendants likewise maintain that Hunt cannot show he suffered any damages attributable to his alleged reliance on White's statements.  There are two types of damages available in a fraud action.  First, "a defrauded party may be able to recover the 'benefit of the bargain,' that is the value of what he would have received had the representation been true, less what he actually received." *Collins v. Burns*, 741 P.2d 819, 822 (Nev. 1987).  The second measure of damages available is "out-of-pocket" loss, "that is the difference between what [the defrauded party] gave and what he actually received." *Id.* at 822.  Hunt has shown neither.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Hunt's Breach Of Contract And Unjust Enrichment Claims Should Be Dismissed Again.**

Hunt once more asserts conflicting claims for breach of contract and unjust enrichment. Neither states a claim.

**1.      Breach of Contract (Fifth Cause of Action)**

The elements of a breach of contract claim are: (1) a valid contract, (2) that the plaintiff performed or was excused from performance, (3) the defendant failed to perform, and (4) the plaintiff suffered economic damage as a result of the defendant's breach. *See Story-McPherson v. Bank of Am., N.A.*, 2012 WL 2000693, at *4 (D. Nev. June 5, 2012) (citing *Bernard v. Rockhill Dev. Co.,* 734 P.2d 1238, 1240 (Nev. 1987)).  Hunt now alleges that Zuffa breached the Promotional and Bout Agreements by failing to comply with the rules and regulations of the NSAC.  *See* Supp. Comp. ¶¶ 180-182.

While the subject agreements admittedly contain provisions to the effect that the parties will be bound by the rules of the NSAC, it is questionable whether an alleged violation of said rules can give rise to a private cause of action for damages.  Even if a private cause of action is available, Hunt has not shown and cannot show any damages attributable to a breach of contract based on an alleged violation of the NSAC rules.  That is because Hunt's compensation under the Promotional Agreement and Bout Agreement was not impacted by any of the purported rules violations set forth in the Supplemental Complaint.  *See* Supp. Comp. ¶¶ 182(a)-(d) (citing rules pertaining to conducting honest bouts, to violating Nevada laws, to providing false information to the NSAC, and to not knowingly dealing with persons who are detrimental to the interests of unarmed combat).

Simply put, Hunt was owed a specified amount of money for competing against Lesnar as part of UFC 200—win, lose, draw, or no contest—and he admits he was paid that amount.  *See*

Supp. Comp. ¶ 93; *see also* App'x, Ex. A § 6.1(A)(i)(a); Williams Decl., Ex. 1 at Sched. A.  Hunt and Zuffa, moreover, continue to perform their respective obligations under the Promotional Agreement.  The undisputed, judicially noticeable facts establish that Hunt has fought three times since UFC 200—on March 4, 2017, on June 10, 2017, and most recently on February 10, 2018—for which he was paid more money in each fight than the $700,000 purse he earned for UFC 200.  *See* Williams Decl., Exs. 10-11 and 16; RJN at 6.  Without any damages, there can be no breach of contract.

### 2. **Unjust Enrichment (Seventh Cause of Action)**

Unjust enrichment occurs whenever "a person has and retains a benefit which in equity and good conscience *belongs to another*."  *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004) (emphasis added).  A plaintiff cannot, however, "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party."  *Thomas v. Wachovia Mortgage, FSB*, 2011 WL 3159169, *6 (D. Nev. July 25, 2011).  The Court dismissed this claim previously because there were no facts from which it could "infer that any of these defendants has retained money or other benefits *that rightly belong to Hunt*."  Hr'g Tr. 47:14-25 (emphasis added).  The allegations in the Supplemental Complaint likewise fail to support such an inference.

Hunt now claims he provided services that far exceeded the scope of the Promotional and Bout Agreements because he was never compensated for fighting an opponent taking banned substances.  *See* Supp. Comp. ¶¶ 197-200.  Invoking a kitchen sink of equitable theories that includes unjust enrichment, quantum meruit, restitution and disgorgement, Hunt continues to ask the Court to award him Lesnar's fight purse, Lesnar's pay-per-view proceeds, Zuffa's UFC 200 profits, and all of Defendants' other "ill-gotten gains."  *Id.* ¶¶ 203-208 (emphasis added).

The new allegations contained in the Supplemental Complaint confirm that Hunt is seeking compensation for services controlled by the parties' contracts, namely his participation against

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lesnar in UFC 200.  The Promotional Agreement and the Bout Agreement expressly state that, other than his Fighter's Purse, Hunt is not entitled to any other form of compensation for participating in a bout.  *See* App'x, Ex. A § 6.5; Williams Decl., Ex. 1 § 3(b).  Hunt should not be permitted to use equitable principles to circumvent the provisions of his written agreements with Zuffa.  *See LeasePartners Corp. v. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) **(**stating "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."); *Industrial Lift Truck Serv. Corp. v. Mitsubishi Inter. Corp.*, 432 N.E.2d 999, 1002 (Ill. Ct. App. 1982) ("If a quasi-contract action could be brought every time a party under contract performs a service not precisely covered by the contract, then the rule preventing quasi-contract actions when a contract exists would have little meaning.").

Even if the Court is not yet inclined to dismiss Hunt's unjust enrichment claim on the foregoing basis, Hunt has nonetheless failed to plead a viable theory supporting his contention that Lesnar's purse, Zuffa's profits from UFC 200, etc. "belong to him."  *See Mainor, supra*.  Indeed, Hunt's overreach in this regard knows no bounds as he asks the Court to transfer these categories of funds from Defendants to Hunt "*regardless of Hunt's entitlement thereto*."  *See* Supp. Comp. ¶ 208 (emphasis added).  Hunt, in other words, does not seek equity—he seeks a windfall.

## C.   Hunt's Aiding And Abetting And Conspiracy Claims (Fourth, Ninth And Tenth Causes of Action).

Rather than eliminate (or narrow) his dubious tort theories, Hunt has expanded on them in the Supplemental Complaint by adding five new claims for fraud, aiding and abetting fraud, battery, aiding and abetting battery, and civil conspiracy to commit fraud and battery.  *See* Supp. Comp. ¶¶ 167-176; 214-218; and 219-223.  A conspiracy claim, however, is not an independent cause of action as it must be premised on an underlying intentional tort.  *See Graham v. City of*

*North Las Vegas*, 2015 WL 13237298, at *8 (D. Nev. Nov. 20, 2015).  Where the underlying tort claim fails, so too does the conspiracy claim.  *Id.*  The same principle applies to aiding and abetting claims.  *See Martin v. Bank of America*, 2016 WL 2731670, at *3-4 (D. Nev. May 9, 2016) (dismissing civil conspiracy and aiding and abetting claims premised on failed breach of duty claim).  Because Hunt's underlying claims for fraud and battery fail, his aiding and abetting and conspiracy claims must likewise be dismissed.

### CONCLUSION

Based on the foregoing, Defendants Zuffa and White respectfully submit that Hunt's Supplemental Complaint should be dismissed as to all causes of action but for his claim for breach of the implied covenant of good faith and fair dealing (which the court previously allowed to proceed).  The dismissal, moreover, should be with prejudice and without further leave for Hunt to amend his incurably groundless claims.

DATED this 23rd day of March, 2018.

CAMPBELL & WILLIAMS

By    /s/ *J. Colby Williams*
        DONALD J. CAMPBELL, ESQ. (#1216
        J. COLBY WILLIAMS, ESQ. (#5549)

*Attorneys for Defendants*
*Zuffa, LLC and Dana White*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendants Zuffa, LLC's and Dana White's Motion to Dismiss Plaintiff Mark Hunt's Supplemental Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** was served on the 23rd day of March, 2018 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.


　　　　　　　　　　　*/s/ J. Colby Williams*
　　　　　　　　　　An employee of Campbell & Williams

Page 25 of 26

**INDEX OF EXHIBITS**

Declaration of J. Colby Williams

Exhibit 1 – Bout Agreement for UFC 200 dated June 6, 2016

Exhibit 2 – Promotional and Ancillary Rights Agreement dated August 8, 2014

Exhibit 3 – Letter of Agreement dated August 8, 2014

Exhibit 4 – Bout Agreement dated August 11, 2014 (Hunt-Nelson)

Exhibit 5 – Bout Agreement dated October 23, 2014 (Hunt-Werdum)

Exhibit 6 – Bout Agreement dated February 2, 2015 (Hunt-Miocic)

Exhibit 7 – Bout Agreement dated October 5, 2015 (Hunt-Silva)

Exhibit 8 – Bout Agreement dated January 7, 2016 (Hunt-Mir)

Exhibit 9 – National Library of New Zealand Catalogue – *Born to Fight*

Exhibit 10 – Bout Agreement dated January 1, 2017 (Hunt-Overeem)

Exhibit 11 – Bout Agreement dated March 11, 2017 (Hunt-Lewis)

Exhibit 12 – "*If I die fighting, that's fine*" by Mark Hunt dated July 4, 2017

Exhibit 13 - Open Letter by Dana White dated October 28, 2017

Exhibit 14 - Column authored by Kevin Iole of Yahoo Sports titled "*Mark Hunt Shouldn't be Mad at UFC or Dana White*" dated October 11, 2017

Exhibit 15 - "*Manager: Mark Hunt Cleared to Fight, Eyes Fabricio Werdum Rematch at UFC 221*" dated December 5, 2017

Exhibit 16 – Bout Agreement executed December 13, 2017 (Hunt-Blaydes)

Exhibit 17 – Event Brief for UFC 221 issued by the Government of Western Australia (Combat Sports Commission)