PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No. 5254
pete@christiansenlaw.com
KENDELEE L. WORKS, ESQ.
Nevada Bar No. 9611
kworks@christiansenlaw.com
CHRISTIANSEN LAW OFFICES 810
S. Casino Center Blvd., Suite 104 Las
Vegas, Nevada 89101 Tel: (702) 240-
7979   Fax: (866) 412-6992
-and-
HOWARD L. JACOBS, ESQ.
howard.jacobs@athleteslawyer.com
Law Offices of Howard L. Jacobs 2815
Townsgate Road, Suite 200 Westlake
Village, California 91361 Tel: (805)
418-9892   Fax: (805) 418-9899
*Attorneys for Defendant Brock Lesnar*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MARK HUNT, an individual,<br><br>Plaintiff<br><br>vs.<br><br>ZUFFA, LLC d/b/a ULTIMATE FIGHTING CHAMPIONSHIP, a Nevada limited liability Company; BROCK LESNAR, an individual; and DANA WHITE, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:17-cv-00085-JAD-CWH<br><br>**DEFENDANT BROCK LESNAR'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF MARK HUNT'S SUPPLEMENTAL COMPlAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

**I.    INTRODUCTION**

Plaintiff Mark Hunt's Opposition to Brock Lesnar's Motion (ECF No. 118) *still* relies upon facts which do not exist, submissions of legal theory that have already been rejected by this Court, and a refusal to entertain the fact that Brock Lesnar has already been subject to the adjudication of, and sanctioned under, the UFC Anti-Doping Program.  It is also essentially a *verbatim* submission of Plaintiff's previous Opposition filed on June 30, 2017 [ECF No. 78].  If Plaintiff did not intend to take the instructions of the Court seriously, and make identical submissions nearly 16 months after he filed his first Complaint, then this court should not seriously entertain his repetitive arguments against

1

Brock Lesnar another time. All claims against Brock Lesnar should be dismissed without leave to amend.

Plaintiff's assertion that "given the procedural history" [ECF No. 118 at 1:22], this Court has not considered the allegations laid out by Plaintiff in his Original Complaint, and then subsequently in his Amended Complaint, is absurd. This Court already expressed severe reservations about Plaintiff's ability to state any claims against defendant Brock Lesnar at the Motion Hearing held on May 22, 2017 [ECF No. 63], and Plaintiff failed to address those concerns in his First Amended Complaint (and by virtue of its identical content as it concerns Brock Lesnar, in his Supplemental Complaint). There may be more than one way to skin a cat, but in this case, Mark Hunt does not even have a knife. His Supplemental Complaint has failed to state any viable claims against Mr. Lesnar, and should be dismissed on the following grounds:

- Plaintiff cannot show proximate causation between any acts of Brock Lesnar and any alleged injuries;
- Plaintiff has not adequately pled a claim of fraud against Brock Lesnar, and therefore cannot assert a claim for civil aiding and abetting of fraud;
- Plaintiff states no legal basis for unjust enrichment against Mr. Lesnar; and,
- Plaintiff's Battery claim against Mr. Lesnar is fundamentally flawed, and further states no legal basis for a claim of civil conspiracy to commit battery.

Without repeating (for a third time) arguments already made in his prior motions to dismiss, defendant Brock Lesnar maintains that Plaintiff has failed to show that he was part of a RICO Enterprise, or that he conspired to be part of a RICO Enterprise. Furthermore, Plaintiff's tort claims are fundamentally flawed.

## II. ARGUMENT

### A. PLAINTIFF'S SUPPLEMENTAL RICO CAUSES OF ACTION REMAIN DEFICIENT AS TO BROCK LESNAR

Mr. Lesnar does not dispute the simplified pleading standards relied upon by Plaintiff [See ECF No. 78 at 3:15-16], but those standards do not change the fact that Plaintiff remains unable to demonstrate any relief that could be granted under the amended facts and allegations before this Court. In fact, Mr. Hunt's amendments to his RICO claim could be largely characterized as "rebranding" the same claim that the court already found was deficient. [See ECF No. 68 at pp. 4-5].

2

Because Hunt's RICO claim remains substantively similar, Mr. Lesnar submits that they should be dismissed without leave to amend.

### i.   Plaintiff Cannot Show Proximate Causation

Plaintiff largely relies on *Mendoza v. Zirkle Fruit Co.* 301 F.3d 1163, 1168 n.4 (9th Cir. 2002) for the proposition that he has a legal entitlement to unhampered business relations from a RICO scheme, and thus is entitled to speculative business profits that were supposedly caused by Mr. Lesnar.  Yet, Plaintiff then asks this Court to not rely on *Mendoza* in its analysis of proximate causation and instead cites to *Bridge v. Phoenix Bond & Indem. Co.* 553 U.S. 639, 648 (2008), arguing that he need only show "some direct relation" between Lesnar's conduct and Hunt's injuries. ECF No. 78 at 3:15.   Courts, however, have narrowed the standard in RICO-specific pleadings.  For example, the connection between the RICO activity and the injury can be "neither remote, purely contingent, nor indirect."   *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457, (1991)[1]. Furthermore, the mere fact of having been misled does not "ineluctably give rise to a RICO cause of action unless the act of misleading the plaintiff actually caused them injury in their business or to their property that they would not otherwise have suffered."  *Ray v. Spirit Airlines* 836 F.3d 1340, 1351 (11th Cir. 2016) [relying on *Bridge*].  Here, Plaintiff is simply incapable of meeting his burden of showing that the alleged racketeering activity proximately caused his injuries.  See *Holmes v. Sec. Inv'r Prot Corp.*, 503 U.S. 258, 268 (1992).  A showing of direct injury is required to sustain a RICO claim.  *Ray* at 1351.

Plaintiff argues that proximate cause is "properly a question of fact for a jury to determine" because if Hunt faced a clean fighter, he would have been "closer," even if he still lost [ECF No.118 at 5:8-9].   Ostensibly, in anticipation that this statement would be exposed as being wildly speculative, Plaintiff continues to say, "It is not speculative to say doping fighters like Lesnar are bigger, stronger, faster, hit harder, and can handle damaging hits better; this is the very reason *why* many athletes choose to use banned substances and why the UFC realizes a benefit from having cheating fighters, in addition to not having the fighter roster decimated by the exclusion of doping fighters." [*Id* at 5:11-15].  Of course, this is *totally* speculative, particularly given that Mr. Lesnar

---

[1]  In order to meet the causation requirement in a RICO action, in general, a direct relationship must be shown between the injuries asserted by plaintiff and the injurious conduct alleged.

tested positive for *clomiphene*, which is not an anabolic steroid but rather a *nonsteroidal* ovulatory stimulant which can also be used to treat some cases of male infertility[2]. Though Plaintiff would prefer this Court accept his inaccurate characterization of Mr. Lesnar as a steroid-loaded athlete, or even just a "doping fighter", the facts – even as pled – remain otherwise[3].

### ii.  Plaintiff Remains Unable to Allege Recoverable Damages.

Plaintiff continues to rely on *Mendoza*, ignoring that alleged RICO damages cannot be "too remote." The three-part test for recoverable damages is as follows[4]:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

Plaintiff hopes that this Court will merely accept his conclusory statements ["Hunt's Supplemental Complaint eliminates all doubt as to his business and property losses, as it sets forth specifically-identifiable business and property loss…"[5]] in his Opposition, despite the fact that the alleged financial loss suffered by Plaintiff following UFC 200 (i.e., his loss of income from cancelled appearances) remains wholly speculative. Plaintiff negotiated his earnings with *the UFC*, not with Mr. Lesnar. Furthermore, Plaintiff is one of many fighters in the UFC who has lost a bout; and certainly, not the first to have lost to an athlete who tested positive for a banned substance. Finally, ascertaining the amount of damages allegedly attributable to Mr. Lesnar's conduct would be a grand project of speculation.

Plaintiff also asks this Court to consider *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d

---

[2] Plaintiff's claim that "this is the very reason *why* many athletes choose to use banned substances" ignores the fact that the World Anti-Doping Agency categorizes various banned substances for a broad variety of reasons.

[3] Plaintiff cites to Brock Lesnar's anti-doping rule violation throughout his pleadings [e.g. ECF 118 at 3:6-9, but does not want this court to consider the ADRV proceedings, or Mr. Lesnar's subsequent sanction by both the Nevada State Athletic Commission *or* the UFC. If Plaintiff takes issue with the way the UFC has implemented its anti-doping program, perhaps Plaintiff's efforts would be better placed in lodging a complaint with the Nevada State Athletic Commission (or any athletic commission, for that matter) over licensing of fights.

[4] Mr. Lesnar previously addressed Hunt's reliance upon *Mendoza* in ECF 48 4:2-23.

[5] ECF No. 3:5-6.

1038, 1055 (9th Cir. 2008) and *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000), claiming that they demonstrate the "liberality with which courts apply the 'some direct relation' standard" where other factors could have contributed to the plaintiff's damages, or where damages may be difficult to calculate. ECF No. 78 at 5:15-6:9. Unfortunately for Plaintiff, the applicability of those cases to the facts pled in this case is incredibly suspect. *NewCal* and *Knevelbaard* involved circumstances where the defendants had fixed prices of products or inappropriately extended contracts to the financial detriment of Plaintiffs. Though subject to other external factors, calculable losses were ascertainable as to those defendants' conduct. See *NewCal, supra* at p. 1055 ["In this case, Newcal alleges two injuries. First, it claims that IKON's fraud foreclosed "specific named customer accounts" from competition, thereby decreasing Newcal's market share. Second, Newcal claims to have paid a fraudulently inflated price to buy out certain accounts that were under flexed IKON contracts"]; and *Knevelbaard, supra* at pp. 990-991:

> "[W]hat the complaint says—that the defendants were buyers in the milk market, that they conspired to depress the price of milk produced in California, and that they did so by rigging the NCE bulk cheese price at artificially low levels. According to these allegations, the NCE price was a tool used by the conspirators to manipulate the California milk price … The [Plaintiff] milk sellers, insofar as the alleged conspiracy was meant to and did reduce their sales prices, suffered a direct injury … The cheese makers argue that because other factors influence milk prices, the harm to plaintiffs is speculative. [Citation Omitted] This argument fails in light of the complaint's allegation that the rigged NCE price controlled the price of fluid milk produced in California."

Here, there are no named purchasers of Plaintiff's services or goods who were foreclosed from doing business because of the alleged conduct of the defendants. Plaintiff's contractually-agreed payment for UFC 200 was not deflated by the alleged conduct of the defendants. Defendants did not conspire to depress the value of Plaintiff's services as a UFC fighter, and defendants did not conspire to manipulate the value of Plaintiff's services. If plaintiff believed that the UFC was unfairly low-balling his payment for the fight, then there was a simple answer available to him: do not sign the contract to fight. *NewCal* and *Knevelbaard* do not change the *purely* speculative nature of the damages alleged by Plaintiff in his RICO claims. This is *not* too narrow a reading of the cases, as Plaintiff suggests [ECF No. 118 at 7:14]; they *are* meaningfully distinguishable; and, evidently, Plaintiff has the UFC confused with the WWE when it comes to comparing the organization as "rigged…like the California milk and cheese market." [ECF No. 118 at 7:15-17]. Plaintiff simply has

no leg to stand on here.

### iii. Plaintiff Cannot Demonstrate that Defendant Lesnar was Involved in an Enterprise

In addition to Mr. Lesnar's interview with Hannah Storm, [ECF No. 109 at Par. 144], the only other "evidence" that Plaintiff cites to this Court to suggest that Mr. Lesnar "participated" in an enterprise are text messages exchanged between *Plaintiff* and Dana White. [ECF No. 109 at Par. 78]. However, there is absolutely nothing in those text messages that suggests Mr. Lesnar was *personally involved* in communicating and negotiating with Dana White **as to Mark Hunt**. Furthermore, Dana White never represented to Plaintiff that Brock Lesnar would be "clean," as Plaintiff claims; Mr. White merely stated that Brock Lesnar had been exhaustively tested for banned substances leading up to the fight, which is true. Plaintiff further ignores the fact that multiple urine samples provided by Mr. Lesnar to USADA leading up to UFC 200 did not test positive for any banned substances[6].

Returning to Mr. Lesnar's interview with Ms. Storm, Plaintiff attempts to put words into Mr. Lesnar's mouth:

> "Lesnar personally went on ESPN and bragged that he was returning to UFC because 'I'm a prize fighter…I fight for money, and it's no different, they're making money, I'm making money…That's what this is all about.'" ECF 64 at Par. 74 "Lesnar's participation in the enterprise is revealed about his bragging about being a 'prize fighter', that he and the UFC were 'making money', and '*that's what this [the enterprise] is all about.*'"

This, Plaintiff suggests, proves that Mr. Lesnar participated in direction of an "enterprise." Indeed, the federal statute requires a person to be involved in directing the broader operation or management of the enterprise. *Ahearn v. State* 2016 WL 1109110 (S.Ct. Nev. 2016) at *3, citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (interpreting language of 18 U.S.C. § 1962(c) proscribing a person employed by or associating with an enterprise from participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity"). Under no circumstances can this Court find Mr. Lesnar to fall within this requirement.

---

[6] Furthermore, Brock Lesnar should not have to cite to any case law [See ECF No. 118 at 8:25-27] to demonstrate that he was not a part of an "Enterprise" when there are absolutely no facts or allegations contained within the Supplemental Complaint that support that claim, *Ernst* or otherwise.

Any reference Brock Lesnar made to earning money from the UFC cannot logically be read to mean anything more than mere bragging in anticipation of the fight.[7]  Furthermore, UFC athletes are incentivized to compete financially (otherwise, they would be less likely to subject themselves to serious bodily injury that inherently results from the sport).  Finally, if Mr. Lesnar asked to participate in UFC 200, that does not equate to directing an enterprise – in fact it would suggest the opposite.  There is no allegation that Mr. Lesnar directed who he would fight, when he would fight, where he would fight, how much he would be paid, how much *his* opponent would be paid, how frequently he would be tested, or the timing of any of his tests[8].

### B. PLAINTIFF'S AMENDED FRAUD CLAIM DOES NOT CURE THE DEFECTS IDENTIFIED BY THE COURT

In support of the consolidation of his fraud and false pretense claims as a common-law fraud claim in his Amended Complaint, and now again in his Supplemental Complaint, Plaintiff cherry picks language from the Motion to Dismiss Hearing Transcript [ECF No. 65 at 9:4-11]:

> "…the amendment merely adheres to the Court's guidance on curing a mislabeled claim. Aside from this technical defect, the Court summarily rejected Defendants' arguments, noting that their contention was that *evidence* would "cut [] strongly against reliance."  The Court then correctly declined to accept Defendants' proffered version of the facts adhering to Hunt's well pleaded factual allegations in "the four corners of the Complaint."

This remains deceptive at best.  The Court merely said, "I'm not going to step outside the four corners of the Complaint in order to make those conclusions *at this point*."  Having addressed the notice pleading standard, this Court should still evaluate the facts as pled in Plaintiff's Amended Complaint [and now Supplemental Complaint], and conclude that they do not indicate any reliance by Mr. Hunt upon any actions or omissions by Mr. Lesnar.

Furthermore, Plaintiff continues to ignore the fact that this Court raised concerns over this very topic; and that this Court was skeptical as to Plaintiff's ability to plead causation and recoverable

---

[7]  Of course, Plaintiff has previously claimed that his media interviews should be disregarded as pre-fight bragging, but he hopes the Court will simply forget that fact in connection with this Motion.
[8]  Furthermore, following Brock Lesnar's positive test, he was subject to the *exact same* procedural rules and doping violation sanctions *as every other fighter who has tested positive from a sample collected in-competition*.

damages (which were hardly augmented in his Amended or Supplemental Complaint).  See *Id* at 16:24-17:4. Hunt has simply failed to address these concerns.

Finally, even if this Court were to somehow find that Plaintiff relied on any single act or omission of Mr. Lesnar, the evidence [from Mr. Hunt and Mr. White's text message exchange alone] shows that Plaintiff not only suspected Mr. Lesnar to be doping, but *expected* him to be doping.  ECF No. 109 at 16-17:72-78.  Further, reliance cannot be attributed to a conversation to which Mr. Lesnar was not a party.  ECF No. 65 at 44:8-14.

### C. BECAUSE PLAINTIFF'S CLAIM OF FRAUD FAILS, SO TOO DOES HIS CIVIL AIDING AND ABETTING FRAUD CLAIM

Mr. Lesnar does not dispute the elements set forth by Plaintiff for a civil aiding and abetting claim: that (1) the substantive tort was committed; (2) defendant was aware of its role in promoting the tort; and (3) defendant knowingly and substantially assisted in the commission of the tort.  *Dow Chemical Co. v. Mahlum* 970 P2d 98, 112 (1998).  Plaintiff has not met this standard.  Further, Plaintiff appears to concede that, if his claim of Fraud fails as to Defendant Lesnar, so too does his Civil Aiding and Abetting of Fraud claim:

> "Hunt alleges each defendant committed a fraud, that each other defendant was aware of its role in promoting the fraud, and knowingly and substantially assisted in its commission.  The fraud and aiding and abetting claims each incorporate by reference the detailed factual allegations in the complaint, which explain Defendants'' fraudulent UFC 200 scheme."

Mr. Lesnar submits that for all of the reasons that Plaintiff 's Fraud claim fails, so does his claim of Civil Aiding and Abetting.  Additionally, if Mr. Lesnar intentionally violated the UFC Anti-Doping Rules, which he did not [as evidence from the NSAC public records shows], to suggest that Mr. Lesnar informed the UFC that he intended to "dope," and that the UFC then helped him conceal that intentional doping is beyond farcical; disregards the implementation of the UFC Anti-Doping Program under the authority of the United States Anti-Doping Agency; fails to explain why the UFC would have USADA test its athletes if it wanted to encourage participation of doping fighters; and ignores the repercussions suffered by Mr. Lesnar for testing positive [namely, that he was significantly fined by the NSAC, and was subject to two separate sanctions and punishments].  Mr. Lesnar certainly did not walk away from UFC 200 with a proverbial "slap on the wrist," as Hunt characterized.  ECF No.118 at 9:21.

### D. PLAINTIFF REMAINS UNABLE TO OFFER A LEGAL BASIS FOR HIS UNJUST ENRICHMENT CLAIM

Plaintiff's attempts to craft an equity claim where none exists. In complete disregard of the laws governing UFC-fighter contracts, Plaintiff shockingly suggests that because a jury would likely sympathize with his story, that alone entitles him to Mr. Lesnar's purse.[9] In order for Plaintiff to have a claim for unjust enrichment against Mr. Lesnar, however, he must demonstrate that he provided some sort of service to Defendant Lesnar, which Plaintiff has conceded in his Opposition:

> "…Nevada law does not require Hunt to show an entitlement to Lesnar's purse to demonstrate a right to disgorgement. **Hunt need only show that he provided services beneficial to Defendants[10] and that it would be unjust for Defendants to retain the benefit they received form those services**. *Certified Fire Prot. Inc. v. Precision Constr.,* 283 P.3d 250, 257 (Nev. 2012)…" ECF No. 118 at 13:10-14. [Emphasis added].

Plaintiff ignores the fact that his participation in UFC 200 – while perhaps providing a service to the UFC - provided no service to Brock Lesnar. Competitors in a mixed martial arts event are not providing "services" to each other, and the suggestion that they do is a desperate attempt to squeeze the "square" facts pled in this Complaint into the "round" hold that is the law of unjust enrichment.

Plaintiff suggests that this Court's statement that "you could also at this point allege inconsistent theories"[11] saves his Unjust Enrichment claim. Had this been true, Mr. Lesnar's Original Motion to Dismiss would have been denied as to the original Unjust Enrichment claim. Plaintiff then cites *LeasePartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) to suggest that, notwithstanding the lack of privity between Plaintiff and Mr. Lesnar, Plaintiff is entitled to disgorgement of Mr. Lesnar's purse. This case is easily distinguishable, as *LeasePartners* involved an identifiable, tangible lease of physical property (and therefore, identifiable services beneficial to the party which was found the be unjustly enriched). Plaintiff's claim that he conferred services beneficial to or at the request of another [in this case, Mr. Lesnar] are incomparable.

---

[9] Plaintiff seems to erroneously suggest that juries are entitled to award damages under any theory that they desire.
[10] The fact that Plaintiff may have provided services to the other defendants is irrelevant as to the adequacy of the claim against Brock Lesnar.
[11] ECF No.118 at 13:15-16.

9

Under no circumstances could Mr. Lesnar be forced to pay Plaintiff pursuant to his UFC 200 Contract (and vice versa). Plaintiff's participation in the event was not a prerequisite to Mr. Lesnar's participation; as he could have fought a number of other heavyweights and still received the same fight purse. It is impossible for Mr. Lesnar, therefore, to have retained a benefit from Plaintiff that he would have to "pay back."

### E.     HUNT'S CLAIM OF BATTERY IS ALSO DEFICIENT

Battery means any willful and unlawful use of force or violence upon the person of another. Plaintiff claims that, based on his series of text messages with Dana White, he has adequately identified lack of consent to fight a "doping fighter." Several factors undermine this theory.

First, the text messages between Mark Hunt and Dana White have no bearing as to the consent issue between Mark Hunt and Brock Lesnar: Dana White spoke on behalf of the UFC, not Mr. Lesnar. Second, Plaintiff's reliance on representations made by White (even if this Court agrees they go as far as Plaintiff claims), do not help Plaintiff in his claim as to Lesnar: "…the amended complaint pleads and proves by a series of messages with White, Hunt's reliance and lack of consent to fight a doping opponent." ECF No. 118 at 19:26-27. Again, Plaintiff has made it clear from these texts, as well in public forums, that he believed Mr. Lesnar was doping and fought him anyways. Third, Brock Lesnar never tested positive for steroids: Plaintiff claims the following:

> "Hunt did not consent to fight an opponent on **steroids**, with packed gloves, wielding a baseball bat or any other violation exceeding the scope of fair hand-to-hand combat. Lesnar's conduct was an egregious violation of the sport's written and unwritten rules."

ECF No. 118 at 20:3-4. These are words of distraction. Mr. Lesnar also never "packed gloves" or engaged in any other "egregious violation of the sport's written and unwritten rules," whatever those may be. Nor was this ever alleged in the complaint or amended complaint. Plaintiff's reference to "hand-to-hand combat" is undefined and meaningless in the context of his amended complaint and Mr. Lesnar's motion. These comments fly in the face of an *actual, written* anti-doping code that Plaintiff repeatedly ignores and asks this Court not to consider. It is beyond apparent that Plaintiff is grasping at straws to try to save his case against Brock Lesnar from dismissal.

Plaintiff then asks this Court to consider irrelevant Arizona law as a matter of "public policy," and to ignore the fact that MMA is and always will be an inherently dangerous sport that poses a

significant risk of injury to the fighters who participate: "Likewise, availing himself of an express assumption of the risk defense to permit him to conceal his use of banned substances in committing a battery would offend public policy." ECF No. 118 at 18:6-8.

Finally, without basis and drawing on anti-steroid hysteria reminiscent of "Reefer Madness," Plaintiff states that "doping fighters move faster, hit harder, and are able to accept and recover from strikes more readily than clean fighters." ECF No.118 at 20:19-21.  Assuming this were true as to *all banned substances*, this Court would have to guess just how different the quality of "hits" sustained by Hunt in UFC 200 would have been had Mr. Lesnar not tested positive for clomiphene.  In a sport where the entire activity is characterized by intentional, harmful contact, there is simply no measure by which this Court could speculate to whether Mr. Lesnar exceeded the scope of harm to Mr. Hunt.

### F. **PLAINTIFF IS UNABLE TO ADEQUATELY PLEAD CIVIL CONSPIRACY TO COMMIT FRAUD OR BATTERY AGAINST BROCK LESNAR**

Mr. Lesnar does not dispute Plaintiff's legal definition of Civil Conspiracy.  To prove a claim of civil conspiracy, a plaintiff has the burden of proving (1) that **two or more persons** or entities, who by some concerted action, intended to accomplish an unlawful objective for the purpose of harming plaintiff; and (2) that Plaintiff suffered damages as a result of this act.  *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251 (Nev. 1998).  An alleged conspiracy is not actionable unless it results in the preparation of an unlawful act or some injurious act by lawful means.  *Graham v. City of North Las Vegas*, 2015 WL 13237298 at *8, citing to *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 (Nev. 1980).  Nevada courts have incorporated Eikelberger, stating that **conspiracy is not an independent cause of action in and of itself, but must be premised on an international tort**.  *Rivercard, LLC v. Post Oak Prods., Inc.*, No. 2:12–CV–1150–JCM–CWH, 2013 WL 1908315, at *4 (D. Nev. May 6, 2013). In *Rivercard*, the plaintiff brought a cause of action for fraudulent misrepresentation.  The court, after granting the Motion to Dismiss the fraud claims, ruled that, because the underlying tort claims failed, so too did the plaintiff's claim for **civil conspiracy**, thus disposing of the **conspiracy** cause of action. See also, *Shoemaker v. Northrop Grumman Corp.*, 2011 U.S. Dist. LEXIS 139576 (2011) ("Shoemaker has not

shown an underlying tort or other legal wrong ... *thus, there is no underlying tort or wrong on which Shoemaker's **civil conspiracy** claim could possibly lie*."). [Emphasis added]

Here, Plaintiff has not adequately pled who the "two or more persons" are who conspired to commit battery against him. There are absolutely no facts asserted by the Plaintiff that could motivate this court to infer conspiracy of this tort. It certainly cannot be from text messages between Hunt and White; nor can it be from innocuous pre-bout interviews conducted by Lesnar, which remain the sole basis for Plaintiff's fraud claim. Furthermore, Plaintiff relies on case law which is inapplicable to this matter. *Hidalgo v. State*, 381 P.3d 620 (2012) (finding conspiracy to commit battery but not a battery), was a *criminal* case that found conspiracy to commit battery with a deadly weapon and not battery because the defendant was ultimately found guilty of the second-degree murder that resulted from the conspiracy to commit serious bodily injury.

Finally, Plaintiff suggests that Lesner has created additional or novel elements that Plaintiff must satisfy to sustain these claims [ECF No. 118 at 22:7-8]. This is not true; what is true is that Plaintiff has failed to offer any factual legal basis as to why a civil conspiracy claim (for fraud or battery) should apply to Brock Lesnar. Any finding of conspiracy would be wildly speculative, even if this Court somehow found Plaintiff's fraud and battery claims against Brock Lesnar to be actionable. It therefore follows that his claim of conspiracy for both torts must be dismissed.

## VIII. CONCLUSION

For all the above reasons, defendant Brock Lesnar respectfully requests that his Motion to Dismiss Plaintiff's Supplemental Complaint should be granted in its entirety without leave to amend.

RESPECTFULLY SUBMITTED this 13TH day of April 2018.

CHRISTIANSEN LAW OFFICES

By _____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
-and-
HOWARD L. JACOBS, ESQ.
THE LAW OFFICES OF HOWARD L. JACOBS
*Attorneys for Defendant Brock Lesnar*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and the Court's Local Rules, the undersigned hereby certifies that on this day, April 13, 2018, a copy of the foregoing document **Defendant Brock Lesnar's Reply in Support of Motion to Dismiss Mark Hunt's Supplemental Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 118]** was filed and served through the Court's electronic filing system (CM/ECF) upon all registered parties and their counsel.

_____
An employee of Christiansen Law Offices