**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARK HUNT, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> ZUFFA, LLC, DBA Ultimate Fighting Championship; et al., <br><br> Defendants-Appellees. | No.   19-17529 <br><br> D.C. No. 2:17-cv-00085-JAD-VCF <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted October 5, 2020
Portland, Oregon

Before: PAEZ and RAWLINSON, Circuit Judges, and PREGERSON,** District Judge.
Concurrence by Judge RAWLINSON

Plaintiff-Appellant Mark Hunt appeals the district court's dismissal of

---

    \*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*    The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

claims stemming from his participation in a mixed martial arts ("MMA") bout.[1]

We have jurisdiction under 28 U.S.C. § 1291, and review de novo both the district court's Rule 12(b)(6) dismissal and grant of summary judgment de novo. *Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). We review for abuse of discretion the district court's dismissal of Hunt's claims with prejudice. *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012). Applying these standards, we affirm in part, reverse in part, and remand for further proceedings.

1. We affirm the district court's dismissal of Hunt's breach of contract claim, as well as the grant of summary judgment on Hunt's related claim for breach of the implied covenant of good faith and fair dealing.[2] The Promotional and Ancillary Rights Agreement ("PARA") provides that Hunt's "sole remedy" for any breach is the recovery of any unpaid compensation. "A basic rule of contract interpretation is that every word must be given effect if at all possible." *Musser v. Bank of Am.*, 114 Nev. 945, 949 (1998) (per curiam) (internal quotation marks and brackets

---

[1] Hunt also appeals the district court's grant of summary judgment in favor of Defendants-Appellees with respect to Hunt's claim for breach of the implied covenant of good faith and fair dealing.

[2] Although we generally will not consider arguments raised for the first time on appeal, an exception to that rule applies when "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (citation omitted). Such is the case here.

2

omitted). "A court should not interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 94 Nev. 279, 282 (1978) (per curiam). The PARA's explicit exclusion of certain specific remedies does not permit us to simply read the phrase "sole remedy" out of the PARA, as Hunt would have us do.

Furthermore, the damages Hunt seeks are consequential damages explicitly foreclosed by the PARA, not reliance damages. A reliance claim seeks to put a party "back in the position in which he would have been had the contract not been made." Restatement (Second) of Contracts § 344 cmt. a (1981); *see also ALLTEL Info. Servs., Inc. v. FDIC*, 194 F.3d 1036, 1039 n.3 (9th Cir. 1999). Hunt's arguments are premised on the contention that he was put "in a worse position than he would have otherwise found himself absent UFC's breach." This is the very essence of an expectation interest, not a reliance interest, and is barred by the PARA. *See ALLTELL*, 194 F.3d at 1039 n.3.

2. We also affirm the district court's dismissal of Hunt's unjust enrichment claim. Although a party generally may plead even inconsistent claims in the alternative, Fed. R. Civ. P. 8(d)(2), (3), "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747, 755 (1997) (per curiam). Even assuming Hunt alleged his unjust enrichment claim in the

3

alternative, he does not allege or contend that the PARA or any other pertinent agreement is invalid.

3.  Hunt's racketeering claims also fail. "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity . . . (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005) (internal quotation marks and citation omitted); *see also* 18 U.S.C. §§ 1962(c), 1964(c). Under RICO, an enterprise includes "any individual . . . or group of individuals associated in fact." *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) (en banc) (quoting 18 U.S.C. § 1961(4)). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Such an enterprise, however, cannot exist without "relationships among those associated with the enterprise." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Here, although Hunt alleges that Appellees, other UFC fighters, UFC officials, and a wrestling organization are members of the RICO enterprise, he does not sufficiently allege that these alleged associates functioned as a unit, as opposed to a collection of unrelated individuals. *See United States v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011).

4

4.  With respect to Hunt's fraud claims, although certain of his damages theories are impermissibly speculative, his withdrawal-based theory is potentially viable. As an initial matter, Hunt adequately alleges actionable misrepresentations.[3] UFC is correct that, under Nevada law, "expressions of opinion[,] as distinguished from representations of fact, may not be the predicate for a charge of fraud." *Clark Sanitation, Inc. v. Sun Valley Disposal Co.*, 87 Nev. 338, 341-42 (1971). However, White's representations to Hunt that Lesnar "will be the most tested athlete on this card," that officials were "testing [Lesnar] as we speak," and other similar representations, made in response to Hunt's direct questions about Lesnar's testing status, can hardly be considered statements of White's subjective opinions, particularly in light of White's alleged knowledge of and role in the testing scheme. Lesnar's contention that he made no misrepresentations directly to Hunt is of no moment. *See* Restatement (Second) of Torts § 533 (1977) ("The maker of a fraudulent misrepresentation is subject to liability . . . if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that . . . it will influence his conduct in the transaction or type of transaction involved.").

---

[3] A false representation of a material fact is, of course, one of the essential elements of a fraud claim. *See Chen v. Nevada State Gaming Control Bd.*, 116 Nev. 282, 284 (2000) (listing elements of a fraud claim).

5

As to damages, proximate cause is an essential element of Hunt's fraud claims. *Chen*, 116 Nev. at 284. The Supplemental Complaint alleges, among other things, that Hunt's damages, including the loss of paid appearances and reduced advertising and licensing revenues, stemmed from Hunt's loss to Lesnar, which itself was a product of the fraudulent doping scheme. Absent such a scheme, Hunt alleges, he would have (1) defeated Lesnar or (2) suffered a "less lopsided and less damaging loss." We agree with the district court that the links in this alleged chain of causation are speculative, and that Hunt cannot possibly prove either of these two alternative core premises.

The district court did not, however, address Hunt's third theory of causation: had he known the truth about the doping scheme, he would have withdrawn from the fight altogether rather than face a doped Lesnar, thus avoiding even the possibility of suffering the reputational and other harms associated with a loss in a marquee bout.[4] Hunt's allegations regarding what his own actions would have been are not as speculative as, and are far more susceptible to proof than, his counterfactual allegations about how a clean fight would have been qualitatively different. So too is the next link in the chain of causation; expert testimony and other evidence might conceivably demonstrate that a withdrawal, as opposed to a

---

[4] This is not to say, of course, that a finder of fact necessarily would so conclude.

high-profile loss, would not have caused Hunt's patrons, followers, and licensees to abandon him to the extent they did in the wake of Lesnar's victory.

Our decision in *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), is not to the contrary. There, we noted that the plaintiff had not alleged any link between an increase in demand for public services and the defendant's alleged hiring of undocumented, as opposed to documented, workers. *Canyon Cnty.*, 519 F.3d at 982-83. Furthermore, the proceedings required to "evaluate the extent to which the companies' illegal hiring practices had created increased demand for County services" would be "speculative in the extreme." *Id.* at 983; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459-60 (2006). Here, in contrast, there are far fewer potential confounding variables. Hunt's loss to Lesnar was a salient event separating Hunt's periods of increased and decreased renown, and Hunt's and others' histories of waxing and waning success and the correlation of those histories to fighters' records might well provide a sufficient basis of comparison to allow Hunt to demonstrate the varying pernicious effects of a loss versus a withdrawal. Thus, the issues of feasibility of proof that were present in *Canyon County* do not appear to be fatal concerns here.

Accordingly, we reverse the district court's dismissal of Hunt's fraud claims on proximate cause grounds, and remand for further proceedings under Hunt's withdrawal theory of causation.

7

5. We also reverse the district court's dismissal of Hunt's battery and aiding and abetting battery claims. "A battery is an intentional and offensive touching of a person who has not consented to the touching . . . ."[5] *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 132 Nev. 544, 549 (2016) (citation omitted). Although "[c]onsent negates the existence of the tort," *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 392 (1970), "[t]o be effective, consent must be . . . to the particular conduct, or to substantially the same conduct." *Davies v. Butler*, 95 Nev. 763, 774 (1979) (quoting Restatement (Second) of Torts § 892A (1979). Because the Nevada Supreme Court has not spoken to the question whether, or to what extent, a battery claim may be brought on the basis of conduct in sporting activities, we must predict how that court would decide the issue. *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

The principles of assumption of risk and of consent are similar. *See* Restatement § 892A cmt. a. Nevertheless, the Restatement draws an important distinction between the two, identifying assumption of risk as "[c]onsent to conduct that is merely negligent, creating an unreasonable risk of harm," and specifying that the concept is explained in a chapter separate and apart from the discussion of consent. Restatement § 892 cmt. a; *see In re Frei Irrevocable Tr.*

---

[5] Because lack of consent is an essential element of a battery claim, consent need not be pleaded as an affirmative defense. *See Wright v. Starr*, 42 Nev. 441 (1919).

8

*Dated Oct. 29, 1996*, 133 Nev. 50, 53 n.3 (2017) ("In the absence of controlling law, we often look to the Restatements for guidance."); *Davies*, 95 Nev. at 774 (relying on the Second Restatement of Torts to define consent). Thus, although the Restatement does counsel that "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort . . .," that principle does *not* apply to assumption of risk. Restatement § 892A(1). The Court of Appeals of Nevada's recent decision in *Kuchta v. Sheltie Opco, LLC* also suggests that the Nevada Supreme Court would follow a similar course. 466 P.3d 543, 2020 WL 3868434, at *6 n.8 (Nev. App. 2020) (unpublished disposition) ("Both express and implied assumption of the risk would not bar Kuchta's battery claim.").[6]

We therefore reverse and remand Hunt's battery claims.[7]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[6] Even if the Supreme Court of Nevada were to conclude otherwise, dismissal of Hunt's battery claims would not be appropriate at the pleading stage. The California Supreme Court's application of assumption of the risk principles in *Avila v. Citrus Community College District* was predicated on a factual finding that intentional beaning is within the range of ordinary baseball activity. *Avila*, 38 Cal. 4th at 165, 171 (Kennard, J, dissenting). Here, there has been no similar conclusion that doping is within the normal scope of organized MMA activity, nor does the question appear to be beyond reasonable dispute.

[7] Having reversed the dismissal of Hunt's fraud and battery claims, we also reverse the dismissal of his civil conspiracy claim, which is predicated on the fraud and battery claims.

9

FILED

SEP 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Hunt v. Zuffa, LLC*, Case No. 19-17529
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.