# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Mark Hunt,

     Plaintiff

v.

Zuffa, LLC d/b/a Ultimate Fighting Championship, Dana White, and Brock Lesnar,

     Defendants

Case No.: 2:17-cv-00085-JAD-VCF

**Order Granting Defendants' Motions for Summary Judgment and Denying as Moot Motions to Exclude Expert Testimony**

[ECF Nos. 219, 220, 223, 231]

     Mark Hunt lost a 2016 mixed-martial-arts bout to Brock Lesnar and blames the loss on Lesnar's use of performance-enhancing drugs and the Ultimate Fighting Championship (UFC) organization's complicity in that anti-doping policy breach.  So he sues Lesnar, the UFC, and UFC President Dana White.  Though Hunt's lawsuit was dismissed in the early stages of this case, the Ninth Circuit Court of Appeals revived his fraud, battery, aiding-and-abetting battery, and civil-conspiracy claims, permitting Hunt to conduct discovery that might support his theories.  With discovery now complete, all defendants move for summary judgment, arguing that Hunt's efforts were for naught as evidentiary holes in each of his claims prevent them from getting to trial.  Despite extensive briefing and oral argument, Hunt has been unable to provide the necessary evidentiary support for his theories.  So I grant summary judgment in favor of the defendants and again close this case.

**Background**[1]

**I.     The negotiations leading up to UFC 200**

This case arises from the marquee bout between Mark Hunt and Brock Lesnar at "UFC 200," a mixed-martial-arts (MMA) event held in Las Vegas, Nevada, on July 9, 2016.  To set up the fight, UFC President Dana White negotiated with both fighters in the months leading up to it. In March 2016, White and Hunt discussed signing Hunt for a series of UFC bouts through direct messaging on Twitter.[2]  White expressed that he wanted Hunt to retire with the UFC, and Hunt said that he was interested but he "would want [his] next contract to be his last."[3]  The following month, the UFC and Hunt entered into a "Promotional and Ancillary Rights Agreement" in which Hunt agreed to participate in six MMA bouts for a fixed purse amount that would increase with each fight.[4]  In the ensuing weeks, White told Hunt that he should be in shape for UFC 200 but to keep his potential involvement on the down-low.[5]  On May 27, 2016, Hunt asked who he would be fighting.  White responded that he was "working on it" and that he would announce an opponent in the next week.[6]

Around the same time, Lesnar was also negotiating with White to fight in UFC 200.[7] Lesnar had retired from the UFC in 2011 and was employed by World Wrestling Entertainment, Inc. (WWE) when he reached out to White.  To fight for the UFC, Lesnar needed permission

---

[1] These facts are undisputed unless noted.

[2] *See* ECF No. 219-7 (direct messages between White and Hunt).

[3] *Id.* at 4–6.

[4] ECF No. 235-1 (sealed).

[5] ECF No. 219-7 at 19, 23.

[6] *Id.* at 21.

[7] *See* ECF No. 255-1 (text messages between White and Lesnar) (sealed).

from WWE's president, Vince McMahon.[8]  White expressed interest in Lesnar returning, and from March to June 2016, they had several conversations about that possibility.[9]  In April, Lesnar began training for his return to the UFC.[10]  Lesnar's training camp was not affiliated with the UFC and, aside from White sending Lesnar training gear that he specifically requested, no one at UFC told Lesnar to train or was involved in any aspects of his training.[11]

At first the White-Lesnar negotiations did not focus on Hunt—in late March, White and Lesnar were discussing other potential opponents.[12]  But on June 3, 2016, the UFC formally announced that Lesnar would fight in UFC 200, and Lesnar signed his bout agreement acknowledging that Hunt would be his opponent.[13]  Three days later, Hunt inked his own deal, consenting to the Lesnar fight.[14]

## II.   Hunt's concerns about Lesnar's drug use

But Hunt was apprehensive about this pairing.  He testified at his deposition that people were telling him that Lesnar was using performance-enhancing drugs while wrestling for the WWE.[15]  The UFC adopted an anti-doping policy in 2015 that requires athletes to submit to drug testing by the United States Anti-Doping Agency (USADA), an independent administrator distinct from the UFC.[16]

---

[8] *See id.* at 8–9; ECF No. 219-3 at 11–12 (deposition of Dana White).

[9] ECF No. 255-1 at 8–11.

[10] *Id.* at 9.

[11] ECF No. 219-10 at 4–5 (deposition of Brock Lesnar).

[12] *Id.* at 8.

[13] ECF No. 255-3 (Lesnar's bout agreement) (sealed).

[14] ECF No. 235-2 (Hunt's bout agreement) (sealed).

[15] ECF No. 222-1 at 50–52 (Hunt's deposition).

[16] ECF No. 219-4 (2015 version of UFC's anti-doping policy); ECF No. 219-5 at 18.

So Hunt texted White asking, "Can u make sure he gets tested properly [4 laughing emojis] doesn't matter anyways [5 laughing emojis]."[17]  White responded that USADA was "all over him."[18]  Hunt expressed gratitude for the pairing, noting that "Brock is such a huge draw card" and exclaiming that he was "very excited" for the fight.[19]  A few days later, Hunt texted White, "if [Lesnar] test[s] positive for juicing[,] send me his [pay-per-view] numbers [5 laughing emojis]."[20]  The next day, Hunt asked White what would happen if Lesnar tested "positive for cheating?"[21]  White responded that "USADA is testing the shit out of him."[22]  And in media interviews before the bout, Hunt repeatedly stated that he believed Lesnar was "juiced to the gills," but Hunt boasted that he was "still going to knock [Lesnar] out."[23]

Two days after Hunt signed his bout agreement, he learned that the UFC had granted Lesnar an exemption from its anti-doping policy's requirement that retired UFC athletes returning to the UFC must be tested for four months before competing.[24]  The exemption came from the policy itself, which states that "UFC may grant an exemption to the four-month written-notice rule in exceptional circumstances or where the strict application of that rule would be manifestly unfair to an athlete."[25]  The exemption had never been invoked before and has not

---

[17] ECF No. 219-7 at 33–34.

[18] *Id*. at 34.

[19] *Id*. at 34, 39.

[20] *Id.* at 40.

[21] *Id.* at 41.

[22] *Id.*

[23] ECF No. 219-2 at 27.

[24] *See* ECF No. 219-7 at 42.

[25] ECF No. 219-4 at § 5.7.1.

been used since.[26]  UFC's Vice President of Athlete Health and Performance Jeff Novitzky explained the decision to the Nevada Athletic Commission via email on July 1, 2016, stating that Lesnar was unable to join the USADA testing pool within four months of competing because he was awaiting WWE's permission to contract with UFC.[27]  Novitzky also testified at deposition that USADA was involved in discussions to grant Lesnar the exemption and that USADA supported UFC's decision.[28]

Hunt asked White about the waiver, stating "on a serious not[e] why is he exempt from testing for 4 months w[h]en everyone has to[?]"[29]  White explained that the exemption was the result of "getting a deal done with" Vince McMahon and reiterated that "USADA is testing the shit outta him as we speak.  We went after [Lesnar].  He has no problem doing whatever tests the USADA wants."[30]  Hunt expressed concern that the exemption would give Lesnar time to get "everything . . . out of his system."[31]  White responded, "Brock is not exempt [from] any testing. He will be the most tested athlete on the card.  Th[ey] are ALL OVER HIM."[32]

### III.    UFC 200, Lesnar's drug tests, and the aftermath

Lesnar entered the UFC's testing pool on June 6, 2016.[33]  Between then and June 16, USADA tested Lesnar six times; every test came back negative for any prohibited substances.[34]

---

[26] ECF No. 219-5 at 17 (deposition of Jeff Novitzky).

[27] ECF No. 219-12.

[28] ECF No. 219-5 at 16–17.

[29] ECF No. 219-7 at 42.

[30] *Id.*

[31] *Id.* at 44.

[32] *Id.*

[33] ECF No. 219-12 at 2; ECF No. 219-5 at 14.

[34] ECF No. 235-3 (Lesnar's early-June drug-test results) (sealed).

Lesnar tested three more times, including on July 9, 2016, the night of the fight, but the results of those final tests didn't come back before the bout.  Lesnar won the fight, defeating Hunt by unanimous decision after three rounds.[35]  Nevertheless, Hunt texted White to thank him for "hooking [Hunt] up with the Brock fight," expressing that, "regardless [of] the result . . . I'm happy Brock is such a famous person he has made me more famous."[36]

But that gratitude evaporated when two of Lesnar's final three tests came back positive for low levels of clomiphene and its metabolite on July 15th.[37]  Clomiphene is not a steroid, but it can stimulate the natural production of testosterone and is thus one of the prohibited substances listed in UFC's anti-doping policy.[38]  Hunt messaged White, furious at the results and asking if UFC was "going to make an example of [Lesnar] and give [Hunt] half of [Lesnar's] purse" from the fight.[39]  He asked to be released from his UFC contract, repeatedly insisted that White give him Lesnar's purse, and accused White of not doing enough to combat steroid use in the organization.[40]  While Lesnar challenged the results and has maintained that he has never taken any banned substances,[41] he agreed to a stipulated judgment with the Nevada Athletic Commission: he was suspended from MMA for one year, had to pay a $250,000 fine, and the result of the bout was changed from a win to a "no contest."[42]

---

[35] ECF No. 235-4; ECF No. 235-5 (Lesnar's June 28 and July 9 drug-test results) (sealed).

[36] *Id.* at 52.

[37] ECF No. 235-5 (sealed); ECF No. 219-5 at 12–13.

[38] ECF No. 219-5 at 13; ECF No. 219-18 at 5.

[39] ECF No. 219-7 at 53.

[40] *Id.* at 53–56.

[41] ECF No. 219-10 at 6.

[42] ECF No. 252-4 at 10–11; ECF No. 219-18 (proposed adjudication agreement and order).

## IV.   Procedural history of this litigation

Hunt filed this lawsuit in 2017 against Lesnar, White, and Zuffa, LLC, dba Ultimate Fighting Championship for RICO violations, fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, battery, and civil conspiracy.[43]  All of his claims are founded on the theory that White and the UFC knew Lesnar was using performance-enhancing drugs but encouraged him to fight Hunt anyway and induced Hunt to fight a knowingly doping fighter.  At the motion-to-dismiss stage, I disposed of all of Hunt's claims except for the implied-breach claim.[44]  As relevant here, Hunt's fraud claims were dismissed because he failed to adequately allege that the misrepresentations he complained of were the proximate cause of his economic damages.[45]  I dismissed his battery claims because he signed a bout agreement in which he expressly assumed all risks of the fight and implicitly assumed the risk of fighting a doping opponent.[46]  A few months later, I granted summary judgment in favor of UFC on the remaining implied-breach claim and closed the case.[47]

Hunt appealed, and the Ninth Circuit reversed in part and affirmed in part, reviving his fraud, battery, aiding-and-abetting-battery, and civil-conspiracy claims.[48]  The panel held that Hunt had sufficiently pled his fraud claims and that at least one of his causation theories (that Hunt would have withdrawn from the fight had he known Lesnar was using prohibited substances) was viable because "expert testimony and other evidence might conceivably

---

[43] ECF No. 1; ECF No. 109 (supplemental complaint).

[44] ECF No. 152.

[45] *Id.* at 21–22.

[46] *Id.* at 24–26.

[47] ECF No. 184.

[48] ECF No. 203.  The implied-breach claim was not revived on appeal.

demonstrate that a withdrawal, as opposed to a high-profile loss, would not have caused" Hunt's economic harm.[49]  The panel also held that Hunt's battery claim could go forward because it predicted that the Nevada Supreme Court would not apply assumption-of-risk principles to the intentional tort of battery.[50]  By reviving Hunt's fraud and battery claims, the Ninth Circuit also breathed new life into Hunt's derivative aiding-and-abetting and civil-conspiracy claims.[51]  The case was remanded, and discovery was completed.

Lesnar, White, and UFC now move for summary judgment in their favor on all of Hunt's revived claims,[52] arguing that Hunt has failed to identify any statements or omissions attributable to any defendant that were false—an essential element of the fraud claim.  Lesnar also contends that the battery claim against him isn't sustainable because Hunt consented to the fight with him regardless of his drug-testing results.  UFC agrees and adds that Hunt can point to no evidence that the organization encouraged Lesnar to use prohibited substances before fighting Hunt and thus cannot support his aiding-and-abetting-battery claim against UFC or White.  Finally, all defendants aver that Hunt's inability to prove these underlying torts causes his derivative civil-conspiracy claim to topple, too.  These arguments have been fully briefed and were further tested at a June 8, 2023, hearing on these motions.[53]

---

[49] *Id.* at 6–7.

[50] *Id.* at 8–9.

[51] *Id.* at 9 n.7.

[52] ECF No. 219 (UFC and White's summary-judgment motion); ECF No. 220 (Lesnar's summary-judgment motion).

[53] ECF No. 262 (minutes of 6/8/23 hearing).

**Analysis**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[54]  When considering a summary-judgment motion, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[55]  When the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[56]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[57]

**I.     Hunt cannot support all elements of his fraud claims.**

To establish fraud, a plaintiff must prove that (1) the defendant made a false, material representation; (2) that the defendant knew to be false; (3) the defendants intended the plaintiff to rely on this misrepresentation; (4) the plaintiff relied on this misrepresentation to his detriment; and (5) the misrepresentation proximately caused damages.[58]  The plaintiff bears of the burden of proving every element of fraud by clear and convincing evidence.[59]  The UFC and White contend that Hunt's fraud claim against them fails at the first element: he cannot show that any

---

[54] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[55] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[56] *Celotex*, 477 U.S. at 323.

[57] *Id.* at 322.

[58] *Chen v. Nev. State Gaming Control Bd.*, 994 P.2d 1151, 1152 (Nev. 2000).

[59] *Hindenes v. Whitney by Vogelheim*, 697 P.2d 932, 933 (Nev. 1985).

of their statements or omissions concerning Lesnar's drug testing were false.[60]  They also argue that Hunt cannot present any evidence suggesting that White or UFC knew that Lesnar was using prohibited substances, that Hunt relied on any of White's misrepresentations or omissions, or that Hunt suffered damages from the alleged fraud.[61]  And Lesnar contends that Hunt cannot point to any representation he made that Hunt reasonably relied on to believe that Lesnar was going to be a "clean" fighter.[62]

### A.   Hunt's fraud claim against UFC and White

#### 1.   *Hunt cannot show that White's alleged misrepresentations were false.*

Hunt argues that White, in his capacity as president of UFC, made materially false statements when he gave Hunt "assurance[s] [that] Lesnar would be clean when he entered the Octagon" to fight Hunt.[63]  He also theorizes that White made a material omission when he "knew Lesnar would be Hunt's opponent" before Hunt agreed to participate in UFC 200 and "continued to conceal and misrepresent who Hunt's opponent would be by delaying the announcement of Lesnar's return to the UFC."[64]

Hunt's arguments are untethered from the record in this case.  Throughout his briefing, Hunt claims that he solicited White for assurances that Lesnar was clean and that White falsely gave him those assurances.  But Hunt and White's contemporaneous communications about the topic do not include any statements that could be construed as "assurances" that Lesnar was

---

[60] ECF No. 219 at 25–26.

[61] *Id.* at 26–30.

[62] ECF No. 220 at 21–23.

[63] ECF No. 253 at 18.

[64] *Id.*

clean.[65]  White told Hunt that USADA was "testing the shit outta" Lesnar, that he was not

exempted from any testing, and that he would be "the most tested athlete on the card."[66]  None of

these statements guarantees any particular outcome for Lesnar's drug tests.  Hunt admitted as

much at his deposition:

> Q: Mr. White [and] others at the UFC told you that Mr. Lesnar
> would be tested, right?
> A: Yes.
> Q: They never told you that he was going to be clean, did they?
> A. No.[67]

Even if one could infer that White was attempting to "assure" Hunt that Lesnar would be

caught before the bout if he were indeed using prohibited substances, Hunt has not shown that

any of White's statements were actually false.  UFC presents evidence showing that Lesnar was

indeed tested more in the months leading to UFC 200 than any other fighter who competed in the

event.[68]  To the extent that White's statements about USADA being "all over" Lesnar could be

considered representations grounded in fact, Hunt presents no evidence to show that USADA

was not diligent in testing Lesnar or that White knew his representations to be false.  Instead,

Hunt admitted in his deposition that UFC made sure Lesnar was entered into USADA's testing

pool, and that was the extent of UFC's obligation:

> Q: Are you aware of anything [UFC] could do insofar as their job
> was concerned other than have USADA follow that anti-doping
> policy and test fighters?
> A: I don't —no.  I just—no.

---

[65] Hunt testified during deposition that the direct messages between himself and White were the only communications he had with UFC personnel about UFC 200 during this timeframe.  *See* ECF No. 219-2 at 93.

[66] ECF No. 219-7 at 42–44.

[67] ECF No. 219-2 at 20.

[68] ECF No. 219-16 (summary of USADA testing for athletes participating in UFC 200).

1  Q: Do you contend that any of the tests the UFC or USADA
   administered to Brock Lesnar were improper in any way?
2  A: No.[69]

3      At oral argument, Hunt doubled down on his assertion that White's direct messages to

4  Hunt before the bout constituted misrepresentations.  Though he admitted that White's statement

5  that Lesnar would be the most tested fighter on the card was true, he argued that White "had no

6  basis for saying that other than . . . to assure [Hunt] that he was going to be fighting a clean

7  fighter."[70]  But White stated in his deposition that he was communicating with Jeff Novitzky,

8  UFC's USADA liaison, at the time and would have been relaying information that Novitzky told

9  him about the state of Lesnar's testing.[71]  Hunt presents no evidence to contradict that White was

10 merely passing along information and offering assurances that Lesnar would be tested, not that

11 Lesnar would pass those tests.  Because Hunt cannot show that those assurances were indeed

12 false or that White promised that Lesnar would be a clean fighter, I grant UFC and White

13 summary judgment on Hunt's fraud claim that is based on White's alleged affirmative

14 misrepresentations.

15

16          *2.     Hunt cannot show that White or UFC had the requisite knowledge to
                    support his fraud-by-omission claims.*

17     Hunt also argues that White omitted material information because he (1) knew that

18 Lesnar was using prohibited substances but didn't tell Hunt, and (2) he concealed the identity of

19 Hunt's opponent to delay Lesnar's entry into the testing pool and justify Lesnar's exemption

20 from the four-month testing protocol.[72]  Hunt presents no evidence to support his theory that

21 ──────────────────
   [69] ECF No. 219-2 at 20.
22
   [70] ECF No. 262 (motion hearing).
23 [71] ECF No. 223-13 at 16.
   [72] ECF No. 253 at 18.

White or UFC knew the information Hunt accuses them of omitting.  He relies instead on the fact that Lesnar came from the WWE—which does not have a comprehensive testing policy like the UFC's—to speculate that White must have known Lesnar was indeed using prohibited substances.[73]

But Hunt's inferential leap is belied by the evidence demonstrating that White, UFC, and Lesnar himself did not know that Lesnar would test positive for banned substances.  Everyone deposed on this topic—including Hunt—testified unequivocally that they did not believe Lesnar was violating the anti-doping policy before the bout.[74]  And indeed, Lesnar's first six tests were negative.[75]  Without more, a jury could not reasonably infer that White or UFC *knew* that Lesnar was using prohibited substances.[76]

Nor has Hunt pointed to any evidence that White knew that Lesnar would be fighting Hunt with enough lead time to defraud Hunt.  At most, the record shows that White and Lesnar discussed Lesnar fighting in the UFC 200, but they did not discuss Lesnar fighting Hunt at that

---

[73] *Id.* at 18–19.

[74] *See* ECF No. 219-2 (Hunt's deposition, stating that he did not assume Lesnar was doping because "he assumed that [Lesnar] was following the regulations like everyone else"); ECF No. 222-13 at 6 (White's deposition testimony that he had no knowledge of Lesnar using steroids, had no discussions prior to the fight about the possibility of Lesnar using steroids, and he was not at all concerned that Lesnar was using steroids); ECF No. 219-5 at 8 (Novitzky's deposition testimony  that Lesnar never conveyed that he was concerned about USADA's testing when they met to discuss the anti-doping policy's requirements); ECF No. 219-8 at 6 (Lesnar's agent Brian Stegeman testimony that Lesnar has never "been caught using steroids in the past").

[75] ECF No. 235-3 (sealed).

[76] Hunt cites a CNN article from 2007 reporting on the use of steroids by some wrestlers in the WWE.  ECF No. 253 at 7 n.27.  He does not explain how this singular 2007 article demonstrates that WWE wrestlers in 2016 were "notorious" for their use of steroids.

event.[77]  And while Lesnar told White that he was training for his UFC fight and asked for

training gear, there is no evidence that Lesnar was training specifically to fight Hunt.  Indeed,

there is no evidence that Lesnar and White were negotiating the bout agreement with any

certainty at all until June 3, 2016.  Hunt was made aware of the pairing two days later, as

evidenced by his messages with White.  And three days after that, UFC executed Lesnar's bout

agreement, bringing him within USADA's purview.  Thus, the notion that UFC and Lesnar knew

of the Hunt-Lesnar pairing months before the bout is based on Hunt's pure speculation alone.

The record is also devoid of evidence that White and Lesnar intentionally delayed their

deal to justify the four-month testing exemption.  And Hunt offers no viable alternative

interpretation of the evidence that the deal was not reached until one month before the bout

because Lesnar needed permission from the president of the WWE before committing to the

fight, and that permission wasn't given until early June.[78]  So I grant summary judgment to

White and UFC on Hunt's fraud-by-omission claims.

> ### 3.   *Hunt's arguments concerning Lesnar's testing exemption and UFC's failure to expedite test results fall short of establishing detrimental reliance on a false statement.*

As a third fraud theory, Hunt suggests that White and UFC committed fraud by

(1) granting Lesnar an exemption from the four-month testing requirement and (2) declining to

expedite the return of Lesnar's pre-fight testing results.[79]  As to Hunt's mistrust of UFC's

decision to extend a testing exemption to Lesnar, Hunt fails to support any fraud element.  He

---

[77] *See* ECF No. 22-1 at 8–9 (White and Lesnar discussing possible opponents for UFC 200, not including Hunt); ECF No. 252-4 at 9 (Lesnar testifying that "many different opponents . . . were proposed").

[78] ECF No. 219-12 (Novitzky's email to the Nevada Athletic Commission explaining the reasons for the exemption decision).

[79] ECF No. 253 at 18.

has not presented evidence to suggest a nefarious purpose behind the decision to grant the exemption. He cannot dispute contemporaneous proof that the exemption was given because Lesnar's contract was held up by the need to get permission from WWE's president, which only happened in early June.[80] And he does not challenge Novitzky's testimony that Lesnar was not the type of athlete the four-month testing rule—which applied only to retired UFC athletes—was meant to target in the first place. Novitzky explained that the rule was intended to apply to athletes who retired after the anti-doping policy was put in place, to prevent them from leaving the sport to avoid testing and returning later and "competing right away" without being tested.[81] Because Lesnar retired from the UFC years before the testing program was put in place, he and USADA believed that his situation was not within the spirit of the four-month-testing rule,[82] and the decision to apply the rule to him—and then exempt him from it—was made "out of an abundance of caution" because Lesnar technically fell within the letter of the rule.[83] Hunt can point to no evidence, let alone clear and convincing evidence, that these justifications for Lesnar's exemption hid the more nefarious purpose of helping him avoid testing.

Plus it's clear from the record that Hunt knew that Lesnar was granted the four-month testing exemption before the fight but still chose to enter the Octagon. Because he had that information in time to make the choice not to fight Lesnar, Hunt could not have detrimentally relied on any omission of that information. So any fraud claim predicated on UFC's failure to tell Hunt about the exemption or some secret reason for granting it fails at two elements: Hunt

---

[80] ECF No. 219-12.

[81] ECF No. 222-9 at 12. Novitzky explained that the four-month testing rule was only for retired UFC athletes and that new athletes did not have to be in the USADA testing pool for any period of time before competing. *Id.* at 10.

[82] *Id.* at 12.

[83] *Id.* at 9.

cannot show that the exemption was made for some purpose other than those presented on the record, and he cannot show that he relied on any such information or omission.

Hunt's theory that UFC should have rushed Lesnar's immediate pre-bout test results but chose not to also fails for want of proof. He offers no evidence that UFC had the authority to expedite USADA's testing process or that Hunt demanded that relief but was denied it. And given that Lesnar had six negative tests leading up to the fight, a jury could not reasonably infer that White and UFC had ignored a valid reason to expedite the process and get those last results before the fight.

In sum, each of Hunt's fraud theories requires far too many inferential leaps and ignores too much contrary evidence for a jury to reasonably find in his favor, particularly by clear and convincing evidence. So I grant UFC and White summary judgment on Hunt's fraud claim against them.

**B.    Hunt's fraud claim against Lesnar fails because he cannot show that Lesnar intended for Hunt to rely on any statement about his use of prohibited substances.**

Lesnar moves for summary judgment on Hunt's fraud claim against him, arguing that Hunt admits that "(i) he and Lesnar never met, spoke to one another, or communicated with one another in any manner prior to UFC 200; (ii) Lesnar never made any written or oral . . . representations to him of any kind; and (iii) Lesnar never represented to anyone that he was a 'clean fighter' or that he would not test positive for substances prohibited by the UFC [anti-doping policy]."[84]  Hunt acknowledged in written discovery responses that he didn't rely on any

---

[84] ECF No. 220 at 21.

statements by Lesnar, either directly to him or made to any third party,[85] but he did state that he "understood . . . Lesnar's written agreement(s) with the UFC including his commitment to adhere to the UFC's anti-doping policy" and that Hunt "was a third-party beneficiary to any such agreement."[86]  Hunt doesn't rely on any third-party-beneficiary argument at this stage, but he does declare that he "relied on Lesnar's signing his bout agreement for UFC 200, which requires that UFC fighters comply with the UFC's anti-doping policy, as evidence that Lesnar would be a clean, fair fighter at UFC 200."[87]

### 1.   *Hunt's affidavit creates a genuine issue of fact about his reliance on Lesnar's bout-agreement anti-doping promise.*

Lesnar notes that Hunt's summary-judgment affidavit represents the first time Hunt has claimed that he relied on Lesnar's bout agreement as a clean-fight promise.[88]  He also points out that Hunt has presented no evidence that he even read Lesnar's deal before the fight or understood it as Lesnar's affirmative representation that he would abide by the anti-doping policy.[89]

To be sure, the timing of Hunt's belated claim that he relied on Lesnar's bout agreement as a promise that Lesnar would comply with the anti-doping policy makes this statement dubious.  Not to mention, Hunt presents no evidence that he knew Lesnar signed the agreement or that he even saw Lesnar's agreement before the fight.  But this sworn statement nevertheless

---

[85] ECF No. 222-11 at 6–7 (in response to interrogatories, Hunt acknowledged that he could not identify any statements Lesnar made directly to him or to any third parties in which he claims to have relied); ECF No. 222-1 (Hunt's deposition, testifying to the same).

[86] ECF No. 222-11 at 7.

[87] ECF No. 243-15 at ¶ 5 (Hunt's declaration) (cleaned up).

[88] ECF No. 246 at 11.

[89] *Id.*

creates a genuine issue of fact about whether Hunt relied on Lesnar's bout-agreement promise that he would "not . . . use those prohibited substances and prohibited methods identified in the" policy.[90]

### 2. The record establishes that Hunt's reliance was not reasonable.

The unreasonableness of Hunt's reliance, however, proves fatal for this claim. The record reflects that Hunt was quite certain before the fight that Lesnar was violating his agreement's anti-doping term. Hunt testified at deposition that several people told him that Lesnar was using performance-enhancing drugs after the UFC 200 bout was announced.[91] Hunt repeatedly asked White questions that indicated he believed Lesnar was "juicing," and he inquired what would happen if Lesnar's tests came back positive.[92]

Hunt's prior experience with dirty fighters who were bound by the same contract language also rendered any reliance on that language patently unreasonable. He acknowledged in his complaint that he had fought other UFC "cheaters" who tested positive for prohibited

---

[90] ECF No. 255-3 at 6.

[91] ECF No. 222-1 at 50–52.

[92] ECF No. 219-7 at 40–41. Lesnar also points to the comments that Hunt made to media outlets before the fight in which he stated that he knew Lesnar was "juiced to the gills" but Hunt was "always going to fight anyway" as proof that Hunt believed Lesnar was using prohibited substances and thus didn't reasonably rely on any representations that Lesnar was "clean." ECF No. 220 at 12 (citing Fox Sports, *Mark Hunt blasts Brock Lesnar as being 'juiced to the gills' after four-month drug testing notice is waived* (June 9, 2016), https://perma.cc/5FCU-Z7GE). Hunt testified at his deposition that his comments to news outlets were "bullshit talk" (in his declaration, he uses the phrase "smack talk") meant to promote the bout. ECF No. 252-1 at 13; ECF No. 253-15 at ¶ 5. Because there may be a genuine dispute about whether Hunt meant what he said to media outlets about Lesnar's drug use, I do not consider those statements to be probative of Hunt's beliefs prior to the fight. Regardless, all of the other available evidence points to the conclusion that Hunt did indeed believe that Lesnar was using prohibited substances.

substances before UFC 200.[93]  Although Hunt claims that he "assumed that [Lesnar] was

following the regulations like everyone else" and "put [his] trust in [UFC] to look after these

things,"[94] when his experience was that fighters in the UFC were, in fact, using prohibited

substances, he cannot show that he reasonably relied on Lesnar's bout agreement as his promise

to fight clean.

### 3.     The record is devoid of evidence that Lesnar intended Hunt to rely on his contract's language.

Even if Hunt could persuade a jury that he reasonably relied on Lesnar's agreement to

comply with the UFC's anti-doping policy, he cannot show by clear and convincing evidence

that Lesnar intended for Hunt to do so.  Hunt points to no evidence that Lesnar knew that Hunt

would even read his agreement, let alone that he signed it with the intention that Hunt would rely

on the anti-doping provision to believe that Lesnar would not test positive for any prohibited

substances.  Nor does Hunt show that Lesnar himself knew such a representation to be false—he

has steadfastly denied intentionally ingesting a prohibited substance, and Hunt has identified no

evidence suggesting that Lesnar knew he would violate the policy but signed it anyway.  With no

genuine issue of fact about Lesnar's intent for Hunt to rely on his bout agreement as a drug-free

promise, Lesnar is entitled to summary judgment on Hunt's fraud claim against him, too.

---

[93] ECF No. 109 at ¶ 101 (describing March 2016 bout against Frank Mir, who tested positive for an anabolic steroid); ¶ 102 (describing 2013 fight against Antonio "Bigfoot" Silva, who tested positive for "abnormally high" testosterone levels).

[94] ECF No. 252-1 at 12, 16.

**II.     Hunt cannot succeed on his battery claims.**

    **A.     Hunt's consent to the bout bars recovery on his battery claim against Lesnar.**

In Nevada, "[a] battery is an intentional and offensive touching of a person who has not consented to the touching."[95]  "One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or from harm resulting from it."[96]  As the Nevada Supreme Court, relying on the Second Restatement of Torts, explained in *Davies v. Butler*, "[t]o be effective, consent must be . . . to the particular conduct, or to substantially the same conduct."[97]  The Court elaborated that  "capacity to consent requires the mental ability to appreciate the 'nature, extent[,] and probable consequences of the conduct consented to.'"[98]  It explained that "consent is not effective as a defense to battery 'where the beating is excessively disproportionate to the consent, given or implied, or where the party injured is exposed to loss of life or great bodily harm.'"[99]

The line between substantially same and disproportionate conduct is often illustrated by the hornbook example that one who consents to a fist fight doesn't consent to his opponent's use of brass knuckles or a knife.[100]  The Restatement further clarifies this distinction: "Minor differences in degree or extent, such as the fact that the force exerted by the actor in delivering

---

[95] *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.2d 167, 171 (Nev. 2016) (cleaned up).

[96] Restatement (Second) of Torts § 892A (Am. L. Inst. 1979).

[97] *Davies v. Butler*, 602 P.2d 605, 612 (Nev. 1979) (citing Restatement (Second) of Torts § 892A).

[98] *Id.* (citing Restatement (Second) of Torts § 892A cmt. b).

[99] *Id.* (quoting *Wright v. Starr*, 179 P. 877 (Nev. 1919)).

[100] *See* Restatement (Second) of Torts § 892A cmt. c ("Thus consent to a fight with fists is not consent to an act of a very different character, such as biting off a finger, stabbing with a knife, or using brass knuckles.").

1   the blow is slightly greater than would ordinarily have been contemplated, usually will not be

2   held to exceed the consent, although a much greater force would clearly exceed it."[101]

3       Hunt claims that the touching he experienced during the Lesnar bout was a battery

4   because, while he consented to fighting Lesnar so long as he abided by the UFC's anti-doping

5   policy, he did not consent to fighting an opponent who was using performance-enhancing

6   drugs.[102]  He contends that "fighting a clean, non-doping fighter . . . is far different from fighting

7   a well-trained fighter who is supercharged with enhanced strength, speed, agility, and stamina

8   due to the effects of doping."[103]  Neither side disputes that the expected activity from a clean

9   fighter and a doping fighter is the same: either will punch, kick, and even aim to knock out their

10  opponent to win the bout.  The difference—as Hunt frames it—is one of degree, and while he

11  consented to getting beaten up by a person of natural strength, he would not consent to fighting

12  someone who has been "supercharged" by performance-enhancing drugs.  In essence, Hunt

13  argues that the clomiphene was the brass knuckles that Lesnar brought to this fist fight.

14

15   ### 1.   *There is no evidence that Lesnar's performance was enhanced by a banned substance.*

16      Hunt's distinction between the natural-strength and supercharged fighter cannot carry the

17  day on this record, however, because there is no evidence that Lesnar was supercharged in this

18  fight.  The closest Hunt gets to proof is the expert opinion of Mike Israetel, an athletic coach who

19  opined generally on the effects of anabolic-androgenic steroids.[104]  Lesnar didn't test positive for

20  steroids—just clomiphene.  Israetel attempts to bridge that chasm by opining that the presence of

21  _____

22  [101] *Id.*
    [102] ECF No. 252 at 18.

23  [103] *Id.*
    [104] *See* ECF No. 252-11.

clomiphene in Lesnar's system implies that he was using steroids prior to the fight and took clomiphene to manage "high estrogen levels at the conclusion of a steroid cycle."[105]  And such steroids, Israetel explains, can increase muscle strength, recovery ability, work capacity, endurance, mental acuity, power, speed, and endurance while decreasing injury down-time and body fat.[106]

At best, Israetel's opinion shows that Lesnar tested positive for a prohibited substance that suggests the use of another substance that can have an effect of enhancing a person's physical strength.[107]  But Hunt points to no evidence that Lesnar showed any signs of enhanced strength typically associated with the use of performance-enhancing drugs during this match. Indeed, the record, viewed in the light most favorable to Hunt, supports only the opposite inference.  While Hunt lost the fight, he was not knocked out and did not suffer any injuries beyond those typically expected from this inherently dangerous sport.[108]  A few days after the fight, Hunt thanked White for the opportunity to fight Lesnar, saying that, regardless of the result, he was "happy" with the exposure from fighting such a "famous person."[109]  And at his deposition five years later, Hunt still acknowledged that he thought it was a "great" and "even"

---

[105] *Id.* at 2.

[106] *Id.* at 2–5.

[107] *See id.*

[108] *See* ECF No. 222-1 at 43 (Hunt testifying at deposition that Lesnar didn't injure him in the fight and he thus didn't need to see a doctor or go to the hospital for treatment), 88 (Hunt agreeing at deposition that he "didn't receive any injuries in [his] fight with Brock Lesnar" and didn't miss any fights due to physical injuries sustained from the fight); ECF No. 222-3 at 89 (admitting in response to interrogatories that Hunt wasn't taken to any medical facility for treatment or placed on medical suspension because of injuries suffered as a result of the Lesnar fight).

[109] ECF No. 219-7 at 52.

1  fight.[110]  So on this record, there was nothing truly different about this fight than any other in

2  Hunt's career or what would be expected in a natural-strength MMA match.

3            **2.    *Hunt cannot show that Lesnar's cheating vitiated his consent.***

4            Apparently recognizing the evidentiary infirmity of this supercharged-fighter theory,

5  Hunt shifted away from it by the time of oral argument.  Hunt's counsel acknowledged that he

6  wasn't focused on whether Lesnar was "supercharged" or "super human" when he fought Hunt.

7  The issue, according to Hunt's counsel, was solely that Lesnar was caught "cheating."[111]  So he

8  rested the battery claim instead on the theory that Hunt couldn't have consented "to go into a

9  combat sport or any other sport with a cheater."[112]

10           But a violation of the rules of the game won't vitiate consent to battery unless that

11  violation caused a meaningful change in the physical contact that's expected.  The Supreme

12  Court of Virginia's opinion in *Koffman v. Garrett* is illustrative of this principle.  A middle-

13  school football player sued his coach for battery after the coach slammed him to the ground to

14  demonstrate "the proper tackling technique to the defensive players."[113]  The force of the tackle

15  broke the student's arm.[114]  The coach argued that the player consented to be tackled when he

16  joined the football team.  The player responded that, while he consented to physical contact with

17  other students, he did not consent to being tackled by an adult coach with obvious differences in

18  strength than the average middle-school football player.[115]  The court agreed at the motion-to-

19

20  [110] ECF No. 219-2 at 59.

21  [111] ECF No. 262 (motion hearing).

22  [112] *Id.*

     [113] *Koffman v. Garrett*, 574 S.E.2d 258, 260 (Va. 2003).

23  [114] *Id.*

     [115] *Id.* at 261.

dismiss stage, finding that "reasonable persons could disagree on whether [the student] gave such consent."[116]

The Nevada Court of Appeals' unpublished opinion in *Kuchta v. Sheltie Opco, LLC* similarly reflects that, under Nevada battery law, consent can be deemed withdrawn if an offensive contact is not substantially the same as what was expected. The Court held that a plaintiff could maintain a battery claim against a nightclub that promised a mild ride on a mechanical bull but instead intentionally and "significantly increased the speed and violence of the bull's movements," causing the plaintiff to be thrown from the bull and suffer injuries.[117] The defendant maintained that the plaintiff consented to the ride by signing a release-of-liability form.[118] The Court rejected that argument at the motion-to-dismiss stage and held that the plaintiff only consented to a mild ride, so "if the ride went beyond a mild ride, then there is a material question of fact as to the nature of the ride and to whether [the plaintiff] consented to the resulting physical contact as the result of the unexpectedly rough ride."[119]

In this case, however, there was no unexpectedly rough ride or tackling by an opponent of disproportionate size and strength. Hunt fought a man in his weight class and proclaimed that he believed it was an even fight. He expected a fight typical of the mixed-martial arts, one with kicking, punching, and other tactics endorsed by the sport. As he readily acknowledged after the

---

[116] *Id.*

[117] *Kuchta v. Sheltie Opco, LLC*, 466 P.3d 543, at *1 (Ct. App. Nev. 2020). I recognize that this is an unpublished decision, and the Nevada Rules of Appellate Procedure prohibit Nevada courts from citing it. NRAP. 36(c). But the Ninth Circuit referenced the case as a signal that Nevada courts could allow battery cases in the scenario in which a party signed a release and agreed to certain conduct, but the actual conduct exceeded expectations. *Hunt*, 2021 WL 4355728, at *3 (9th Cir. 2021) (unpublished). I reference it for the same purpose.

[118] *Kuchta*, 466 P.3d at *1.

[119] *Id.* at *6.

fight, that's precisely what he received.[120]  Because the record establishes without genuine dispute of material fact that Hunt consented to the same or substantially the same contact, degree of force, and consequences that he experienced, I find that his consent to the fight precludes him from establishing his battery claim against Lesnar.  Thus, Lesnar is entitled to summary judgment in his favor on Hunt's battery claim against him.

### B.    Hunt's derivative claim for aiding and abetting battery also fails.

A civil claim for aiding and abetting is a derivative one that requires the underlying substantive tort be accomplished.[121]  Because Hunt consented to Lesnar's conduct and thus cannot prove his underlying battery claim, Hunt cannot maintain this derivative claim against UFC or White either.  But even if Hunt could establish his battery claim against Lesnar, UFC and White would still be entitled to summary judgment on his aiding-and-abetting-battery claim. To establish such a claim, a plaintiff must prove that the alleged aider and abetter "knowingly and substantially assisted the primary violator in committing" battery.[122]  Hunt relies on UFC's decision to grant Lesnar a four-month-testing exemption and its failure to expedite his testing

---

[120] *See* ECF No. 219-2 at 59.  Hunt also attempts to analogize his battery case to those in which courts have found negligent conduct in sports contexts.  *See* ECF No. 242 at 19 & n.91.  But those cases were decided under the assumption-of-risk doctrine and, as the Ninth Circuit explained in the appeal in this case, that doctrine does not apply to intentional torts like battery. *See Hunt*, 2021 WL 4355728, at * 3 (Ninth Circuit explaining that the Restatement (Second) of Torts identifies assumption of risk as "consent to conduct that is merely negligent" and specifies "that the concept is explained in a chapter separate and apart from the discussion of consent") (cleaned up).  So I need not and do not address Lesnar's argument that Hunt assumed the risk of fighting someone who used performance-enhancing drugs when he signed an agreement stating that he assumed all risks, foreseen and unforeseen.  *See* ECF No. 220 at 24.

[121] *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001).

[122] *Terrell v. Cent. Washington Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1314 (D. Nev. 2016) (quoting *Dow Chem. Co.*, 970 P.2d at 112).

results to argue that UFC was intentionally encouraging Lesnar to use prohibited substances.[123] But he points to no evidence that UFC or White knew Lesnar would test positive for prohibited substances, nor any evidence that they helped or encouraged Lesnar to take performance-enhancing drugs or that they slow-walked the final test results or even had the ability to do so.[124] So UFC and White are entitled to summary judgment on Hunt's aiding-and-abetting-battery claim.

### III.   Hunt's civil-conspiracy claim fails because Hunt has no evidence of collusion to accomplish an unlawful objective.

Hunt also asserts a civil-conspiracy claim against UFC, White, and Lesnar for colluding "to defraud Hunt and commit a battery" against him.[125]  "Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results."[126]  But Hunt's inability to prove fraud or battery also means that he cannot show that the unlawful predicates to his civil-conspiracy claim have occurred.  So I grant the defendants summary judgment on Hunt's civil-conspiracy claim, too.

### IV.   UFC's motions to exclude Hunt's experts are denied as moot.

Along with their summary-judgment motion, UFC and White move to exclude the opinions of Hunt's proffered experts on economic damages and psychological harm.[127]  Because

---

[123] ECF No. 253 at 21.

[124] *See supra* at pp. 14–16.

[125] ECF No. 109 at ¶ 220.

[126] *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014) (internal quotation omitted).

[127] ECF Nos. 223, 231.

I find that all of Hunt's claims fail on their primary elements and never reach the issue of damages, I need not and do not consider whether the testimony of these challenged experts must be excluded.  So I deny as moot the motions to exclude the expert testimony of Brian Buss and Dr. Carrie Hastings.

### Conclusion

IT IS THEREFORE ORDERED that Zuffa, LLC, Dana White, and Brock Lesnar's motions for summary judgment **[ECF Nos. 219 and 220] are GRANTED**.  The Clerk of Court is directed to **ENTER JUDGMENT for Zuffa LLC, Dana White, and Brock Lesnar and against Mark Hunt on all claims.**

IT IS FURTHER ORDERED that Zuffa, LLC's motions to exclude experts **[ECF Nos. 223 and 231] are DENIED as moot.**

IT IS FURTHER ORDERED that **the Clerk of Court is directed to CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 25, 2023